IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC., and HONEYWELL INTELLECTUAL PROPERTIES, INC., <br><br>       Plaintiffs, <br><br>       v. <br><br>AUDIOVOX COMMUNICATIONS CORP., AUDIOVOX ELECTRONICS CORP., NIKON CORPORATION, NIKON INC., NOKIA CORPORATION, NOKIA INC., SANYO ELECTRIC CO., LTD., and SANYO NORTH AMERICA, <br><br>       Defendants. <br>_____ | C.A. No. 04-1337 (KAJ) |

**SEIKO EPSON CORPORATION'S BRIEF IN SUPPORT OF ITS
MOTION TO INTERVENE**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................4

II.  NATURE AND STAGE OF THE PROCEEDING ...............................4

III.  SUMMARY OF ARGUMENT ..........................................................5

IV.  STATEMENT OF FACTS .................................................................7

V.  AS THE MANUFACTURER OF ACCUSED PRODUCTS SOLD BY
MORE THAN 25 CUSTOMER DEFENDANTS, SEIKO EPSON SHOULD
BE ALLOWED TO INTERVENE IN THE PENDING LITIGATION ..............10

    A.  Seiko Epson's Interest in this Litigation Supports Intervention
    Of Right Under Rule 24(a)(2) .................................................12

    B.  In the Alternative, Seiko Epson Should be Permitted Under
    Rule 24(b) ..............................................................................17

    C.  In the Absence of Intervention, Seiko Epson Would Likely Be
    Impleaded as a Third Party Defendant and Would Counterclaim for
    Declaratory Judgment of Non-Infringement, Invalidity and
    Unenforceability ......................................................................19

    D.  In the Absence of Intervention or a Third-Party Complaint,
    Seiko Epson Would File a Separate Declaratory Judgment Action,
    And Honeywell Would Move To Consolidate the Actions ....................21

    E.  Honeywell's Motion to Consolidate the *Optrex v. Honeywell*
    Action with the Current Proceeding Strongly Supports Seiko
    Epson's Motion to Intervene ....................................................22

VI.  CONCLUSION ...............................................................................23

\\\LA - 81747/0239 - 232070 v1

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                    <u>Page(s)</u>

*Agere Systems Guardian Corp. v. Proxim, Inc.,*
    190 F.Supp.2d 726 (D. Del. 2002) ...................................................................19

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.,*
    133 F.Supp.2d 354 (D. Del. 2001) ...................................................................21

*A.P.T., Inc. v. Quad Environmental Technologies Corp., Inc.,*
    698 F.Supp. 718 (N.D. Ill. 1988)......................................................................14

*Brody By and Through Sugzdinis v. Spang,*
    957 F.2d 1108 (3rd Cir. 1992).........................................................................17

*Carella v. Starlight Archery and Pro Line Co.,*
    804 F.2d 135 (Fed. Cir. 1986) .........................................................................12

*Deutschman v. Beneficial Corp.,*
    132 F.R.D. 359 (D. Del. 1990).........................................................................17

*Durango Associates, Inc. v. Reflange, Inc.,*
    843 F.2d 1349 (Fed. Cir. 1988) .......................................................................12

*General Electro Music Corp. v. Samick Music Corp.,*
    19 F.3d 1405 (Fed. Cir. 1994) .........................................................................19

*HBB Ltd. Partnership v. Ford Motor Co.,*
    1992 WL 348870 (N.D. Ill. 1992)...........................................................11, 18

*Hemphill v. McNeil-PPC, Inc.,*
    134 F.Supp.2d 719 (D. Md. 2001)...................................................................18

*International Business Machines Corp. v. Conner Peripherals, Inc.,*
    1994 WL 706208 (N.D. Cal. 1994)...........................................................14, 15

*Kahn v. General Motors Corp.,*
    889 F.2d 1078 (Fed. Cir. 1989) .................................................................14, 21

*Katz v. Lear Siegler, Inc.,*
    909 F.2d 1459 (Fed. Cir. 1990) .............................................................4, 14, 21

*Kleissler v. U.S. Forest Service,*
    157 F.3d 964 (3rd Cir. 1998)....................................................................12, 13

*Lemelson v. Larami Corp.,*
    1981 WL 319072 (S.D.N.Y. 1981) ......................................................18, 19, 20

3

## TABLE OF AUTHORITIES, Cont'd.

**Cases**, Cont'd.                                                                                                      **Page(s)**

*LG Electronics Inc. v. Q-Lity Computer Inc.*,
    211 F.R.D. 360 (N.D. Cal. 2002) ........................................................................14, 15, 16

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3rd Cir. 1995)................................................................................12, 13, 15

*Nikon Corp. v. ASM Lithography B.V.*,
    222 F.R.D. 647 (N.D. Cal. 2004) .......................................................................16, 17, 18

*Proxim Inc. v. 3Com Corp.*,
    2003 WL 403348 (D. Del. 2003)......................................................................................11

*Rates Technology, Inc. v. New York Telephone Co.*,
    1995 WL 438954 (S.D.N.Y. 1995) .................................................................................14

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
    279 F.Supp.2d 554 (D. Del. 2003) ...................................................................11, 14, 21

*Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co., Inc.*,
    223 F.R.D. 386 (D. Md. 2004) ................................................................................17, 18

*Skil Corp. v. Millers Falls Co.*,
    541 F.2d 554 (6th Cir. 1976)...........................................................................................14

*Stewart-Warner Corp. v. Westinghouse Elec. Corp.*,
    325 F.2d 822 (2d Cir. 1963) ............................................................................................11

*Technology Licensing Corp. v. Gennum Corp.*,
    2004 WL 1274391 (N.D. Cal. 2004)...............................................................................19

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ........................................................................................................15

*U.S. v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3rd Cir. 1994)....................................................................................13, 14

*Vanmoor v. Wal-Mart Stores, Inc.*,
    201 F.3d 1363 (Fed. Cir. 2000) ......................................................................................12

*Wang Laboratories, Inc. v. Toshiba Corp.*,
    993 F.2d 858 (Fed. Cir. 1993) ........................................................................................12

\\\LA - 81747/0239 - 232070 v1

**TABLE OF AUTHORITIES, Cont'd.**

<u>Rules</u>

Federal Rules of Civil Procedure
>Rule 13 ................................................................................................................19
>Rule 14 ...........................................................................................................19, 20
>Rule 24(a) ....................................................................................................*passim*
>Rule 24(b) ..............................................................................................6, 12, 17, 23

<u>Articles</u>

J. Haley, *Strategies and Antitrust Limitations for Multiple Potential Patent Infringers*,
>21 AIPLA Q.J. 327 (1993) ................................................................................11

\\\LA - 81747/0239 - 232070 v1

## I. INTRODUCTION

Honeywell has filed two lawsuits in this Court against 32 defendants, seeking to enjoin the manufacture and sale of products that incorporate liquid crystal displays (LCDs) that allegedly infringe its '371 patent. However, more than 25 of those defendants purchase LCDs from Seiko Epson – and nearly half of those customers have already requested indemnity from Seiko Epson.

Seiko Epson seeks to intervene in this action so it can adequately protect both its own interests and the interests of its customers. As the Federal Circuit has observed, "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

Intervention is the most efficient and expeditious way to facilitate Seiko Epson's litigation of the patent issues surrounding its LCD products. Moreover, intervention is appropriate under *either* Rule 24(a)(2) (intervention of right) *or* Rule 24(b)(2) (permissive intervention). Indeed, Honeywell has already moved to consolidate a companion action with a declaratory judgment complaint filed by another LCD manufacturer, Optrex America Inc. Accordingly, Seiko Epson's motion to intervene should be granted. [1]

## II. NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Honeywell International Inc. and Honeywell Intellectual Properties, Inc. (collectively, "Honeywell") have filed two related patent infringement actions before this Court: *Honeywell International Inc. v. Apple Computer Inc. et al. ("Honeywell I")* (Case No. 04-1338) (D.I. 1) and *Honeywell International Inc. v. Audiovox Corp. et al. ("Honeywell II")* (Case No.

---

[1] Seiko Epson's proposed declaratory judgment complaint in intervention has been lodged with the Court and served herewith.

6

04-1337) (*Honeywell II* D.I. 1).  In both actions, Honeywell alleges that defendants sell consumer electronic products incorporating LCD modules that infringe U.S. Patent No. 5,280,371.

Most of the defendants in the two actions have answered and have asserted various affirmative defenses and counterclaims against Honeywell.  In lieu of answering, the Fuji defendants filed a motion for more definite statement and also filed a motion to transfer venue. (*Honeywell I,* D.I. 95, 97).  Kyocera filed a third-party complaint on January 20, 2005, against three of its suppliers.  (*Honeywell I,* D.I. 114).  A Rule 16 Scheduling Conference has not yet been held in either case and discovery has not yet commenced.

On December 20, 2004, Optrex America, Inc. filed a related action against Honeywell seeking declaratory judgment that the LCDs sold by Optrex to Kyocera Wireless do not infringe the '371 patent and that the '371 patent is invalid.  *Optrex America, Inc. v. Honeywell International Inc. et al.* (Case No. 04-1536) (*"Optrex"*) (*Optrex* D.I. 1).  Honeywell answered and counterclaimed on February 16, 2005 (*Optrex* D.I. 11).

On March 10, 2005, Honeywell filed a motion to consolidate *Honeywell I* with *Optrex,* arguing that consolidation "represents an efficient and economical course of action" because Optrex manufactures the LCD displays incorporated into Kyocera's products, one of the existing customer defendants in that action.  (*Honeywell I,* D.I. 134).  The same arguments apply even more forcefully here and strongly support Seiko Epson's motion to intervene.

### III.  SUMMARY OF ARGUMENT

1.    Seiko Epson manufactures and supplies LCD modules to more than 25 of the 32 defendants in the pending lawsuits, which components are accused of infringing Honeywell's '371 patent.  Eleven of those customer defendants have placed Seiko Epson on notice of indemnification claims, and at least two customer defendants have expressed an intent to file third-party complaints against Seiko Epson if it does not intervene.  Under these facts, Seiko

7

Epson satisfies each of the requirements of Federal Rule of Civil Procedure 24(a)(2) and may intervene in both actions as a matter of right:

a)　　Seiko Epson's motion to intervene is timely, as discovery has not yet commenced.

b)　　As a manufacturer of the accused products, Seiko Epson is a "real party in interest." Under Third Circuit precedent, this interest is sufficient to warrant intervention under Rule 24(a)(2).

c)　　There is a threat that Seiko Epson's interest will be impaired or affected by the disposition of this action because, *inter alia*, Honeywell seeks an injunction against the manufacturer and sale of Seiko Epson's accused LCDs and Seiko Epson may have obligations of indemnity to the customer defendants for judgments arising out of the litigation.

d)　　Seiko Epson's interests may be inadequately represented by the customer defendants in the litigation because, *inter alia,* the customer defendants lack knowledge concerning the design and manufacture of the accused LCDs and may not assert (or adequately support) all defenses that would be applicable to Seiko Epson's products.

2.　　Seiko Epson also satisfies the requirements of Federal Rule of Civil Procedure 24(b)(2). Accordingly, even if Seiko Epson does not have a right to intervene under Rule 24(a), Seiko Epson should be permitted to intervene because:

a)　　Seiko Epson's motion to intervene is timely, as discovery has not yet commenced.

\\\LA - 81747/0239 - 232070 v1

b)      Seiko Epson's claim for declaratory judgment of non-infringement, invalidity and unenforceability of the '371 patent, raises completely overlapping issues of law and fact with the existing customer actions.

c)      Seiko Epson's intervention would not unduly delay the proceedings and or prejudice the rights of the original parties. If anything, the presence of Seiko Epson as a party would expedite discovery, as Seiko Epson possesses and controls documents and witnesses that are relevant to issues of non-infringement.

3.      If Seiko Epson is not granted leave to intervene, one or more of the customer defendants in each action are likely to file third-party complaints against Seiko Epson for indemnification. Seiko Epson would then counterclaim against Honeywell for declaratory judgment of non-infringement, invalidity and unenforceability. Intervention would promote judicial efficiency by avoiding the additional complexity that would result from such third-party complaints.

4.      In the absence of intervention or third-party complaints, Seiko Epson would anticipate filing a separate declaratory judgment action in order to protect its own interests and the interests of its customers. Based on its recent motion to consolidate *Honeywell I* with *Optrex*, it seems likely that Honeywell would likewise move to consolidate any declaratory judgment action filed by Seiko Epson with either *Honeywell I* or *Honeywell II*. Intervention would avoid the need for such a multiplication of actions involving identical issues of non-infringement, invalidity and unenforceability, and/or the need for a subsequent motion for consolidation.

## IV. STATEMENT OF FACTS

On October 6, 2004, Honeywell filed two related actions in this Court, which are referenced herein as *"Honeywell I"* and *"Honeywell II."* In *Honeywell I,* plaintiffs accuse 27

9

different companies of infringing U.S. Patent No. 5,280,371.  Plaintiffs accuse five other defendants of infringing the '371 patent in *Honeywell II*.  The same LCD modules are at issue in both actions.  Defendants understand that Honeywell filed two different actions because the attorneys retained for *Honeywell I* had a conflict of interest and therefore could not represent Honeywell against the defendants named in *Honeywell II.*

The '371 patent covers technology that ostensibly increases the brightness of images and reduces certain interference effects on a liquid crystal display, or LCD.  LCDs are incorporate into a wide variety of consumer electronic products.  However, Honeywell's complaint is not specific as to which designs of LCDs are accused of infringement or which end products incorporate the accused LCDs.  As to each defendant, Honeywell broadly alleges that LCDs are incorporated into "at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, and portable televisions, and/or portable game systems."  *See, e.g.,* Complaint ¶¶ 37 (*Honeywell I,* D.I. 1).  Honeywell further alleges that "at least some of the LCD screen-containing products" manufactured or sold by the defendants infringe the '371 patent.  *Id.* ¶ 53.  Honeywell's complaint seeks recovery of compensatory damages, treble damages, attorneys' fees, and injunctive relief.  *Id.* at Prayer for Relief.  The complaints in both actions recite the same allegations of infringement.

Prior to the filing of the pending litigation, Honeywell sent Seiko Epson a notice letter that read in relevant part, "The '317 Patent relates to LCD modules and products made and sold by your company and others, including Kyocera Corporation."  Declaration of Kenji Sakamoto ("Sakamoto Decl."), Exh. A.  The letter enclosed a copy of the '371 patent, its prosecution history, and related references.  *Id.*  Honeywell also offered to meet with Seiko Epson "to explore a business resolution to our patent issues."  *Id.*  During subsequent discussions, Honeywell more

10

specifically stated its contention that LCD modules manufactured and sold by Seiko Epson

infringe the '371 patent.  *Id.* ¶ 4.

Among the 32 defendants in the two actions, more than 25 of those companies have

purchased LCD displays manufactured and/or sold by Seiko Epson.  The customer defendants in

*Honeywell I* who have purchased Seiko Epson LCDs include:

> Casio Computer Co., Ltd.
> Casio, Inc.
> Concord Cameras
> Eastman Kodak Company
> Fuji Photo Film Co., Ltd.
> Fuji Photo Film U.S.A. Inc.
> Fujitsu Limited
> Fujitsu America, Inc.
> Fujitsu Computer Products of America, Inc.
> Kyocera Wireless Corp.
> Matsushita Electrical Industrial Co.
> Matsushita Electrical Corporation of America
> Olympus Corporation
> Olympus America, Inc.
> Pentax Corporation
> Pentax U.S.A., Inc.
> Sony Corporation
> Sony Corporation of America
> Sony/Ericsson Mobile Communications AB
> Sony/Ericsson Mobile Communications (USA)
> Toshiba Corporation
> Toshiba America, Inc.
>
> Total:  23 out of the 27 current defendants

*Id.* ¶ 2.   Similarly, in *Honeywell II,* the following customer defendants purchased accused LCDs

from Seiko Epson:

> Nokia Corporation
> Sanyo Electric Co., Ltd.
> Sanyo North America
>
> Total:  3 out of the 5 current defendants

*Id.*

Not surprisingly, Seiko Epson has already received notice letters from many of these customer defendants, who contend that Honeywell's infringement claims are based upon Seiko Epson's LCD modules. In those notice letters, the customer defendants have requested that Seiko Epson defend them in the pending litigation and/or indemnify them from any resulting liability. Those letters include:

- Letter from Sanyo Electric Co., Ltd. to Seiko Epson, dated October 12, 2004.

- Letter from Kyocera Wireless Corporation to Seiko Epson, dated October 15, 2004.

- Letter from Sony Ericsson to Epson Electronics America (a subsidiary of Seiko Epson), dated November 2, 2004.

- Letter from Nokia Corp. to Seiko Epson, dated November 3, 2004.

- Letter from Sony Corporation to Seiko Epson, dated November 16, 2004.

- Letter from Fuji Photo Film Co. Ltd. to Seiko Epson, dated December 3, 2004.

*Id.* ¶ 6. Accordingly, Seiko Epson has received more than six indemnification letters to date, on behalf of more than 10 different customer defendants, asking Seiko Epson defend or indemnify them against the infringement claims asserted by Honeywell. At least two customer defendants – Kyocera and Nokia – have also placed Seiko Epson on notice that if it does not become a party and directly litigate the infringement claims, they will file third party complaints against Seiko Epson for indemnification. *Id.* ¶ 7. Kyocera has already filed a third party complaint against several other suppliers. (*Honeywell I,* D.I. 114).

### V.  AS THE MANUFCTURER OF ACCUSED PRODUCTS SOLD BY MORE THAN 25 CUSTOMER DEFENDANTS, SEIKO EPSON SHOULD BE ALLOWED TO INTERVENE IN THE PENDING LITIGATION

Honeywell has filed suit against 32 different entities that sell products using LCDs. More than 80% of those customer defendants have purchased LCD modules from Seiko Epson, and more than 40% of those customer defendants have already put Seiko Epson on notice of their

indemnification claims.  The most efficient way to resolve a dispute such as this is directly between "the parties in interest," namely, the patentee and the manufacturer of the accused devices.  *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F.Supp.2d 554, 557 (D. Del. 2003).  The only remaining question is how this might best be accomplished.

If Seiko Epson does not intervene, it will be added to both actions as a third party defendant on indemnification claims asserted by its customers.  Seiko Epson would then counterclaim against Honeywell for declaratory judgment of non-infringement, validity and unenforceability.  Alternatively, Seiko Epson could file a new declaratory judgment action.  Either of those options, however, would unnecessarily multiply either the number of claims or the number of actions that seek to litigate identical issues of infringement and invalidity.

In order to avoid such inefficiencies and increased complexity, Seiko Epson requests leave to intervene in both actions as a defendant and to assert its declaratory judgment action as a counterclaim against Honeywell.  "Permitting the intervention by a manufacturer in a patent infringement case against its customers is *well supported* by case law."  *HBB Ltd. Partnership v. Ford Motor Co.,* 1992 WL 348870 (N.D. Ill. 1992) (emphasis added) (in patent infringement action against sixteen car companies, court granted motion to intervene brought by eight manufacturers of the accused products).  "Intervention is *routinely allowed* where manufacturers seek to intervene in patent infringement suits against their customers."  J. Haley, *Strategies and Antitrust Limitations for Multiple Potential Patent Infringers,* 21 AIPLA Q. J. 327, 334 (1993) (emphasis added).  *See, e.g., Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 826 (2d Cir. 1963) ("no doubt" regarding the propriety of intervention by the manufacturer of the

\\\LA - 81747/0239 - 232070 v1

accused equipment); *Proxim Inc. v. 3Com Corp.*, 2003 WL 403348 (D. Del. 2003) (motion to

intervene by manufacturer granted).[2]

Intervention may be accomplished under either Federal Rule of Civil Procedure 24(a)

(intervention of right) or Rule 24(b) (permissive intervention).  Under the facts of this case, the

requirements of both rules are satisfied.  Accordingly, Seiko Epson moves to intervene under both

Rule 24(a) and 24(b), in the alternative.

**A.**     **Seiko Epson's Interest in this Litigation Supports Intervention of Right Under Rule 24(a)(2)**

Under the present facts, Seiko Epson has a right to intervene under Federal Rule of Civil

Procedure 24(a).  Rule 24(a) provides in relevant part,

> "Upon timely application anyone shall be permitted to intervene in an action … when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The Third Circuit has interpreted Rule 24(a)(2) to require proof of four elements to warrant

intervention as of right:  "first, a timely application for leave to intervene; second, a sufficient

interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical

matter, by the disposition of the action; and fourth, inadequate representation of the prospective

intervenor's interest by existing parties to the litigation."  *Kleissler v. U.S. Forest Service*, 157

---

[2] While motions to intervene are routinely granted, they are often stipulated to by the parties. Even when contested, the granting of such motions does not frequently result in a published opinion, with the result that the fact of intervention is usually just noted in a more substantive opinion.  *See, e.g., Vanmoor v. Wal-Mart Stores, Inc.,* 201 F.3d 1363, 1365 (Fed. Cir. 2000) (Glidden permitted to intervene as an additional defendant where it supplied several of the accused products to one of the existing defendants); *Wang Laboratories, Inc. v. Toshiba Corp.,* 993 F.2d 858, 862, n. 6 (Fed. Cir. 1993) (manufacturer of accused products intervened as defendant to challenge the accusation of infringement and prevailed on a motion for summary judgment of invalidity); *Durango Associates, Inc. v. Reflange, Inc.,* 843 F.2d 1349, 1355 (Fed. Cir. 1988) (manufacturer of accused products intervened as a defendant and counterclaimed for declaratory judgment of non-infringement or invalidity); *Carella v. Starlight Archery and Pro*

14

F.3d 964, 969 (3rd Cir. 1998); *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3rd Cir. 1995).

The requirements of Rule 24(a) are intended to allow flexibility in application on a case-by-case basis. The rule was amended in 1966 "to relax the interest requirement and 'to foster more flexible, pragmatic judicial treatment of intervention as of right.'" *U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1180 (3rd Cir. 1994). "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Kleissler,* 157 F.3d at 972. The Third Circuit has rejected the "narrow" and "mechanical" approaches applied in other Circuits, which "contravene a major premise of intervention -- the protection of third parties affected by pending litigation." *Id.* at 971.

Seiko Epson satisfies each part of the Third Circuit's flexible test for determining intervention of right. First, Seiko Epson's motion to intervene is clearly timely. Honeywell filed its complaints on October 6, 2004. Discovery has not yet commenced in either action. Intervention at this stage of the litigation is necessarily timely, will not disrupt either litigation, and will not work any prejudice to Honeywell and the other existing parties.

Seiko Epson also has a sufficient "interest" in the litigation to warrant intervention. Under Third Circuit precedent, there is no "bright line" standard as to what constitutes a sufficiently "protectable interest" to support intervention of right. Rather, there is "elasticity" inherent in the rule that allows the requisite interest to be found in a variety of factual situations where the party seeking intervention "might be practically disadvantaged by the disposition of the action." *Kleissler*, 157 F.3d at 969-70. Whether a party has a "mere economic interest" in the litigation is not "decisive," but whether the party "will be directly affected in a substantially

---

*Line Co.,* 804 F.2d 135, 137 (Fed. Cir. 1986) (manufacturer intervened as party defendant and filed counterclaims seeking declaratory judgment of invalidity and non-infringement).

\\\LA - 81747/0239 - 232070 v1

concrete fashion by the relief sought."  *Id.* at 972 (finding that timber companies' substantial

economic interest in a lawsuit that sought to halt logging justified intervention of right).

      In the Third Circuit, the "interest" requirement is satisfied where the party seeking to

intervene is the "real party in interest."  *Mountain Top Condominium Ass'n v. Dave Stabbert*

*Master Builder, Inc.,* 72 F.3d 361, 366 (3rd Cir. 1995); *U.S. v. Alcan Aluminum, Inc.,* 25 F.3d

1174, 1185 (3rd Cir. 1994).  In the patent infringement context, the manufacturer of an accused

product is routinely recognized as being the "real party in interest," as opposed to mere

purchasers of the accused product.  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir.

1990) ("in reality, the manufacturer is the true defendant in the customer suit"); *Kahn v. General*

*Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989) (manufacturer has a "presumed greater

interest in defending its actions against charges of patent infringement"); *Ricoh Co., Ltd. v.*

*Aeroflex Inc.*, 279 F.Supp.2d 554, 557 (D. Del. 2003) ("a manufacturer's declaratory judgment

suit should be given preference over a patentee's suit against the manufacturer's customers"

because "it is more efficient for the dispute to be settled directly between the parties in

interest").[3]

      There is little question that Seiko Epson is a "real party in interest."  Seiko Epson

manufactures accused products for more than 25 customer defendants, the sale of which

Honeywell seeks to enjoin.  Moreover, Seiko Epson is a potential indemnitor on the infringement

claims asserted by Honeywell against those customers.  These facts clearly give rise to a "legally

protectable interest."  *See, e.g., LG Electronics Inc. v. Q-Lity Computer Inc.,* 211 F.R.D. 360, 365

---

[3] *See also Skil Corp. v. Millers Falls Co.*, 541 F.2d 554 (6th Cir. 1976) ("Lucerne is
manufacturer of the accused structures and is indemnifier of the other defendants and is the real
party in interest"); *Rates Technology, Inc. v. New York Telephone Co.*, 1995 WL 438954
(S.D.N.Y. 1995) ("the manufacturer and the patent holder are the true parties in interest"); *A.P.T.,*
*Inc. v. Quad Environmental Technologies Corp., Inc.,* 698 F.Supp. 718, 721 (N.D. Ill. 1988) ("the
manufacturer of an allegedly infringing device is the real party in interest in a lawsuit against a
mere customer").

(N.D. Cal. 2002) (holding that "there can be no question" that manufacturer has "a legally protectable interest" in the products accused of infringement); *International Business Machines, Corp. v. Conner Peripherals, Inc.,* 1994 WL 706208 (N.D. Cal. 1994) (intervening manufacturer had "played an important role in manufacturing and designing the controllers that allegedly infringed" and "should be able to present facts relevant to whether the controllers actually did infringe").

It is also evident that Seiko Epson's interest in its accused products may be "impaired or affected, as a practical matter, by the disposition of the action." A manufacturer's interest "will unquestionably be impaired" if injunctive relief is obtained and the manufacturer is no longer able to sell its accused products. *LG Electronics,* 211 F.R.D. at 365 (granting manufacturer's motion to intervene as a matter of right). In this case, Seiko Epson's interests may be impaired in a number of different ways by the disposition of this action, including:

1. If Honeywell successfully obtains an injunction against Seiko Epson's customers, those customers will no longer be able to purchase the enjoined products from Seiko Epson and will be unable to sell Seiko Epson products currently in their possession.

2. If judgment is entered against Seiko Epson's customers, Seiko Epson may be liable to indemnify those customers for the amount of the judgment.

3. A judgment and injunction that prohibits the purchase of Seiko Epson's LCD displays is likely to have a broad chilling effect on the market for those products, beyond the customers that are defendants in the present litigation.

4. The claim construction ruling and other rulings in the present litigation may be adverse to Seiko Epson's interests, and may be found persuasive in any separate action between Honeywell and Seiko Epson involving the same patents and allegations of infringement.

*See also International Business Machines,* 1994 WL 706208 (manufacturer of accused products could intervene as a matter of right in three lawsuits brought against its customers).

 Finally, Seiko Epson's interests may not be adequately represented by its customers in this action. This requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Mountain Top*, 72 F.3d 361, 368 (3rd Cir. 1995), *citing, Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972).

 There are number of different ways in which a manufacturer's interests may not be adequately represented by a customer defendant in a patent infringement action. Even though a manufacturer's interests are aligned with its customers, and its customers are "represented by highly experienced, competent lawyers and [are] assisted by talented scientific and technical experts," the manufacturer has "a very high, even unique, level of expertise" concerning its own products that is not shared by its customers. *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647 (N.D. Cal. 2004). Customers that do not participate in the design and manufacture of the accused components, but instead purchase the components and assemble them into end products, "may not be able to adequately represent [the manufacturer's] interests" in the litigation. *LG Electronics*, 211 F.R.D. at 365. This is particularly true where the manufacturer is located outside the United States, and documents and witnesses important to the infringement determination may not be available in discovery unless the manufacturer is a party to the action. *Nikon,* 222 F.R.D. at 650.[4/]  Moreover, due to its limited knowledge of the design and development of the accused

---

[4/]  The court in *Nikon* found that the manufacturer of the accused products had satisfied three of the four factors required by Rule 24(a)(2), but denied intervention of right because the manufacturer only had an "economic interest" in the litigation. *Nikon,* 222 F.R.D. at 650-51. The Third Circuit, however, has expressly departed from the "rigid" rule of the Ninth Circuit that an "economic interest" is insufficient to warrant intervention of right, has recognized intervention of right for a "real party in interest," and has specifically distinguished the precedent relied upon in

product, the customer may not assert all non-infringement and invalidity defenses that are applicable to the manufacturer's products. *LG Electronics,* 211 F.R.D. at 365. And in an action involving indemnity claims, customer defendants may be less likely to vigorously litigate claims if they believe that their suppliers will ultimately indemnify them.

For all of the foregoing reasons, Seiko Epson should be permitted to intervene in the current litigation as a matter of right under Rule 24(a)(2).

**B.      In the Alternative, Seiko Epson Should be Permitted to Intervene Under Rule 24(b)**

Even if the Court finds that Seiko Epson lacks the ability to intervene as a matter of right under Rule 24(a)(2), there can be no serious dispute that Seiko Epson satisfies the requirements of "permissive intervention." Federal Rule of Civil Procedure 24(b) provides in relevant part,

> "Upon timely application anyone may be permitted to intervene in an action … when an applicant's claim or defense and the main action have a question of law or fact in common. … In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Accordingly, the court may permit intervention when there is (1) a timely application; (2) a showing that the applicant's claim has a question of law or fact in common with the pending action; and (3) the intervention will not unduly delay or prejudice the rights of the original parties. *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1115-16 (3rd Cir. 1992); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 382 (D. Del. 1990).

"There is little question that Rule 24(b)'s three factors are present" when the manufacturer of a product accused of infringement seeks to intervene in an infringement action against its customers. *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 651 (N.D. Cal. 2004) (manufacturer of some of the accused products allowed to intervene under Rule 24(b) and seek declaratory judgment of invalidity and non-infringement). *See also Shanghai Meihao Elec.,*

---

*Nikon. Kleissler,* 157 F.3d at 971. Moreover, the court in *Nikon* still permitted intervention by the manufacturer under Rule 24(b)(2).

*Inc. v. Leviton Mfg. Co., Inc.,* 223 F.R.D. 386, 388 (D. Md. 2004) (suggesting that manufacturer of accused products should intervene in existing action brought against one of its distributors).

First, as discussed *supra* at p. 13, there is no question that Seiko Epson's motion is timely at this early stage of the litigation. Second, it is indisputable that Seiko Epson's complaint in intervention has questions of law and fact in common with the existing action. The customer defendants have raised the same invalidity defenses against Honeywell's '371 patent that will be asserted by Seiko Epson, and since Seiko Epson's accused LCD displays are incorporated into the customer defendants' end products, issues of infringement are completely overlapping. *See, e.g., Nikon,* 222 F.R.D. at 651 (intervention granted where the facts and "much of the law" were identical between a manufacturer's declaratory judgment claim and an infringement action against its customer); *HBB Ltd. Partnership v. Ford Motor Co.,* 1992 WL 348870 (N.D. Ill. 1992) (requirement satisfied where manufacturer sought to litigate identical issues of invalidity and infringement and was subject to becoming a third party defendant on an indemnity claim); *Lemelson v. Larami Corp.*, 1981 WL 319072 (S.D.N.Y. 1981) ("common questions of law and fact" existed where customer and manufacturer both asserted invalidity of plaintiff's patent).[5]

Finally, allowing Seiko Epson to intervene will not unduly delay the action or prejudice Honeywell. Seiko Epson has filed its motion to intervene early in the litigation, before any discovery has commenced. *See, e.g., Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 649 (N.D. Cal. 2004) (motion to intervene by manufacturer granted, even though discovery was underway, potentially dispositive motions had been filed, and claim construction had already occurred); *HBB Ltd.,* 1992 WL 348870 (finding undue delay was unlikely early in litigation).

---

[5] *Cf. Shanghai,* 223 F.R.D. 387 ("commonality" requirement was not met where the sole patent claim that could give rise to an infringement claim against the movant was ***not*** at issue in the case); *Hemphill v. McNeil-PPC, Inc.*, 134 F.Supp.2d 719, 724 (D. Md. 2001) (denying intervention where the intervenor's products were ***not*** among those accused of infringement).

Rather than prejudicing Honeywell, Seiko Epson's complaint in intervention will provide significant benefits to Honeywell and the other parties in the litigation. Seiko Epson possesses and controls witnesses and documents relating to the accused LCDs. Therefore, Seiko Epson's participation as a defendant will significantly expedite discovery, as information relating to the design and production of the accused products will be obtainable through usual discovery procedures. Otherwise, the parties would have to utilize international discovery mechanisms to obtain information critical to the litigation. *See HBB,* 1992 WL 348870 ("Although [patentee] may incur additional costs in litigating against more parties, the presence of the [manufacturers] may actually expedite this litigation, especially since the [manufacturers] possess and control many important documents"); *Lemelson*, 1981 WL 319072 (potential prejudice of increased costs "is outweighed by the benefit of fully and finally determining virtually identical claims in one proceeding").

**C.  In the Absence of Intervention, Seiko Epson Would Likely Be Impleaded as a Third Party Defendant and Would Counterclaim for Declaratory Judgment of Non-Infringement, Invalidity and Unenforceability**

On January 20, 2005, Kyocera filed a third party complaint for indemnification against several of its suppliers in *Honeywell I.* (D.I. 114). Kyocera and Nokia have placed Seiko Epson on notice that they intend to file third-party complaints against Seiko Epson unless it intervenes in their respective actions. Sakamoto Decl. ¶ 7. Other customer defendants may have similar intentions.

Under Federal Rule of Civil Procedure 14(a), a defendant may serve a third-party complaint on a non-party "who is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Accordingly, in a patent infringement action, accused infringers may implead the supplier of the accused products on a claim for indemnification. *See, e.g., Agere Systems Guardian Corp. v. Proxim, Inc.,* 190 F.Supp.2d 726,

739-40 (D. Del. 2002) (in patent infringement action, granting defendant's motion for leave to file third-party complaint against suppliers). Once the supplier has been joined as a third-party defendant, it can then assert a counterclaim against the plaintiff seeking declaratory judgment of non-infringement and invalidity. Fed. R. Civ. P. 13, 14(a). [6/]

In the absence of intervention, it is probable that at least some of Seiko Epson's customers would join Seiko Epson as a third-party defendant. Once it is a party to the action, Seiko Epson would then be permitted to assert against Honeywell "any claim … arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). The posture of this case, at that juncture, would be little different than if Seiko Epson's motion to intervene is granted, except that the litigation would have the added complexity of the indemnification claims between defendants.

This situation also arose in *Lemelson v. Larami Corp.*, 1981 WL 319072 (S.D.N.Y. 1981) and was considered by the court as weighing in favor of intervention. In *Lemelson,* Depco manufactured and sold to defendant Larami critical material used in the alleged patent infringement and had an indemnification agreement with Larami. Granting Depco's motion to intervene, the Court noted that if it were to deny the motion, Larami would implead Depco under Rule 14(a), Depco would be able to assert the invalidity of the patent as a defense, and the case would look "much the same whether Depco is joined as a defendant or impleaded as a third-party defendant." *Id.* While there was "some possible prejudice to the plaintiff resulting from increased

---

[6/] *See, e.g., General Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1407 (Fed. Cir. 1994) (plaintiff sought declaratory judgment of non-infringement and invalidity; patentee defendant filed counterclaims for infringement against plaintiff and a third-party defendant; third-party defendant then counterclaimed for declaratory judgment of non-infringement and invalidity); *Technology Licensing Corp. v. Gennum Corp.*, 2004 WL 1274391, n. 1 (N.D. Cal. 2004) (TLC sued Videotek for infringement; Videotek filed a third-party complaint against the manufacturer, Gennum; Gennum filed a cross-complaint against TLC for declaratory judgment of non-infringement and invalidity; Gennum's declaratory judgment claim proceeded to trial and other claims were stayed).

costs," the Court held that "the potential prejudice is outweighed by the benefit of fully and finally determining virtually identical claims in one proceeding." *Id.*

As in *Lemelson,* judicial efficiency will be better served in the present case by permitting the intervention of Seiko Epson, rather than inviting multiple third-party complaints against Seiko Epson for indemnification and subsequent cross-claims by Seiko Epson against Honeywell.

**D.      In the Absence of Intervention or a Third-Party Complaint, Seiko Epson Would File a Separate Declaratory Judgment Action, and Honeywell Would Move To Consolidate the Actions**

If Seiko Epson were denied the opportunity to intervene in this litigation, Seiko Epson anticipates filing a separate action against Honeywell seeking declaratory judgment of non-infringement, invalidity and unenforceability of the '371 patent.  Indeed, one manufacturer of the accused products, Optrex America, Inc., has already filed its own separate lawsuit seeking declaratory judgment.  *See Optrex America, Inc. v. Honeywell International, Inc.,* Case No. 04-1536.  However, if each manufacturer is required to file its own action, this will only multiply the number of different actions litigating identical issues of patent infringement and invalidity.

There is a strong public policy against the simultaneous prosecution of multiple lawsuits involving identical issues of infringement and validity.  When this situation does arise, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989) (discussing "the manufacturer's presumed greater interest in defending its actions against charges of patent infringement"); *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F.Supp.2d 554 (D. Del. 2003) (transferring customer action to California, where manufacturer had filed declaratory judgment action); *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.,* 133 F.Supp.2d 354,

356-57 (D. Del. 2001) (transferring action to avoid the simultaneous prosecution of a customer infringement action and a manufacturer's declaratory judgment action).

The same rationale underlying the "customer suit exception" supports intervention in the present case.  If Seiko Epson is unable to participate in the current litigation, it will need to file a separate declaratory judgment action in order to adequately protect its own interests and the interests of its customers.  This would result in the same multiplication of lawsuits that the "customer suit exception" was intended to avoid, and would only lead to additional issues of consolidation and transfer.  Alternatively, Honeywell might move to consolidate the new Seiko Epson action with the current proceeding or with *Honeywell I*, as it did with the *Optrex v. Honeywell* suit, but this would result in additional, unnecessary motion practice.

**E.    Honeywell's Motion to Consolidate the *Optrex v. Honeywell* Action with *Honeywell I* Strongly Supports Seiko Epson's Motion to Intervene**

On March 10, 2005, Honeywell filed a motion to consolidate *Honeywell I* with the declaratory judgment action filed by Optrex.  (D.I. 134).  Honeywell stated that "Optrex's declaratory judgment action arises directly out of Honeywell's patent infringement allegations against Kyocera," because "Kyocera buys LCD modules from Optrex (and others) and then independently incorporates those modules into the accused products."  *Id.* at p. 1.  Therefore, Honeywell argued, consolidation represents "an efficient and economical course of action" because it would "allow the Court unified control over litigation that involves the same patented technology," "provide for unified discovery devoid of duplication, thus saving those affected parties and non-party witnesses' time and resources," and "avoid the need for Honeywell and Kyocera to resort to third party discovery in the main infringement action."  *Id.* at pp. 1-2, 5-6.

The same reasons and rationale that support consolidation *Honeywell I* with the *Optrex* suit strongly support intervention by Seiko Epson.  Like Optrex, Seiko Epson supplies the accused LCD modules to Kyocera.  However, Seiko Epson *also* provides LCD modules to about

24

25 other defendants in the two actions.  Accordingly, the efficiencies that would result from Seiko Epson intervening in this action are roughly 25 times greater than the efficiencies achieved by consolidation with the *Optrex* action, as intervention would avoid the need for *more than 25 customer defendants* to conduct third party discovery of Seiko Epson.

Since intervention is the most practical manner in which to enable Seiko Epson to litigate the patent issues pending before this Court, Seiko Epson's motion should be granted.

## VI.  CONCLUSION

Seiko Epson seeks an opportunity to litigate Honeywell's infringement claims against its LCD displays, as well as the validity and enforceability of the '371 patent, in order to protect its own interests and the interests of its customers.  In the absence of intervention, Seiko Epson is likely to be brought into the litigation as a third party defendant, or Seiko Epson would need to file a separate declaratory judgment action.  However, those courses of action would unnecessarily multiply the number of claims and/or lawsuits implicating identical issues.

Accordingly, in order to facilitate the most efficient and expeditious resolution of the patent issues already before this Court, Seiko Epson moves that the Court permit its intervention in both *Honeywell* actions, either as a matter of right under Rule 24(a)(2) or as a matter of discretion under Rule 24(b)(2).

HUNTLEY & ASSOCIATES, LLC.


By: ___/s/ Donald W. Huntley_____
        Donald W. Huntley, (No. 2096)
        1105 North Market Street, Ste. 800
        P.O. Box 948
        Wilmington, DE 19899-0948
        Tel: (302) 426-0610

*Attorneys for Defendant*
*Seiko Epson Corporation*

25

OF COUNSEL:
Stuart Lubitz
Robert J. Benson
Hogan & Hartson LLP
500 S. Grand Avenue, Suite 1900
Los Angeles, CA 90071
(213) 337-6840

Dated: March __, 2005