**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| HONEYWELL INTERNATIONAL INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 04-1337-KAJ |
| | ) | |
| AUDIOVOX COMMUNICATIONS CORP., et. al. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**HONEYWELL'S ANSWERING BRIEF OPPOSING
IN PART SEIKO EPSON CORPORATION'S MOTION TO
INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
302-654-1888
*Attorneys for Plaintiffs*

*Of Counsel:*

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Denise S. Rahne
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
111 Huntington Ave., Suite 1300
Boston, MA 02199-7610
(617) 267-2300

Dated: March 31, 2005

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING............................................................1

SUMMARY OF ARGUMENT ..................................................................................2

STATEMENT OF FACTS ......................................................................................4

    A.    Honeywell's Patent Infringement Claims In The Present Action...........................4

    B.    Seiko Epson's Motion to Intervene ...................................................................5

ARGUMENT ........................................................................................................5

THIS COURT SHOULD PERMIT SEIKO EPSON TO INTERVENE ONLY
UPON THE CONDITION THAT ITS PROPOSED DECLARATORY
JUDGMENT CLAIMS BE STAYED FOR ALL NON-DISCOVERY
PURPOSES ..........................................................................................................5

    A.    This Court has the Discretionary Authority to Condition Any Rule 24
        Interventions by Component Suppliers Such as Seiko Epson ................................6

    B.    This Court Should Condition Seiko Epson's Intervention By Staying its
        Claims in Favor of Honeywell's First Filed Action Against End Product
        Manufacturers .................................................................................................9

        1.    Under the "First Filed" Doctrine, Honeywell is Entitled to Try its
              Action Against the Named End Product Manufacturers Before Trying
              Seiko Epson's Intervening Declaratory Judgment Claims .............................10

        2.    This Court Should Stay Seiko Epson's Intervening Claims In Order to
              Simplify the Issues and Trial of the Honeywell Actions ................................13

        3.    A Post-Discovery Stay of Seiko Epson's Claims Will Not Result in
              Any Undue Prejudice to Seiko Epson.............................................................16

CONCLUSION....................................................................................................17

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                                                    **Page**

*Air Products & Chemicals, Inc. v. MG Nitrogen Services,*
    133 F. Supp. 2d 354 (D. Del. 2001)....................................................3, 9, 10, 11, 12, 13

*American Lung Associate of New Jersey v. Kean*, 871 F.2d 319 (3d Cir. 1989).............2, 8

*Beauregard, Inc. v. Sword Services, LLC*, 107 F.2d 351 (5th Cir. 1977)............... 2-3, 7, 8

*Bechtel Corp. v. Local 215, Laborers of North America, AFL-CIO,*
    544 F.2d 1207 (3d Cir. 1976) ......................................................................................9

*Beights v. W.R. Grace & Co., Inc.*, 67 F.R.D. 81 (W.D. Okla. 1975) ...............................15

*Cerro Metal Products v. Marshall*, 620 F.2d 964 (3d Cir. 1980).......................................8

*Cheyney State College Faculty v. Hufstelder,*
    703 F.2d 732 (3d Cir. 1983) ...................................................... 3-4, 9, 11, 14

*Codex Corp. v. Milo Electric Corp.*, 353 F.2d 735 (4th Cir. 1977)..................................12

*Dentsply Int'l Inc. v. Kerr Mfg. Co.,* 734 F. Supp. 656 (D. Del. 1990) ................. 10, 11-12

*Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) ..........................13

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) ...............................................................8

*Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) .......................3, 9, 10, 12

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) ..............................................13

*Kleissler v. U.S. Forest Service*, 157 F.3d 964 (3d Cir. 1995) ...........................................6

*La Chemise Lacoste v. Alligator Co., Inc.*, 60 F.R.D. 164 (D. Del. 1973)..................10, 11

*Landis v. North American Co.*, 299 U.S. 248 (1936) .....................................................3, 9

*League of United Latin American Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir.1997) ......................................................................................6

*Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d Cir. 1965).......................................12

*McDonald v. E.J. Lavion Co.*, 430 F.2d 1065 (5th Cir. 1970)............................................8

*Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) ............................................................................6

*Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders
  Associate*s, 979 F.2d 117 (4th Cir. 1981) ....................................................7

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996).............. 6-7

*US v. Duke Energy Corp*., 171 F. Supp. 2d 560 (D.N.C. 2001) .........................................9

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
  766 F. Supp. 212 (D. Del. 1991).....................................................2-3, 9, 10, 13-14, 16

*William Gluckin & Co. v. International Playtex Corp*.,
  407 F.2d 177 (2d Cir. 1969) .......................................................................10

## State Cases

*Joseph v. Shell Oil Co*., 498 A.2d 1117 (Del. Ch. 1985)...................................................14

## Miscellaneous Authorities

Advisory Committee Notes, "Amendments To Rules Of Civil Procedure,"
  39 F.R.D. 69 (1966) .......................................................................2-3, 7, 9-10

Fed. R. Civ. P. 24 ........................................................................................ passim

Fed. R. Civ. P. 42 .....................................................................................2, 5, 9

David L. Shapiro, "Some Thoughts on Intervention Before Courts, Agencies and
  Arbitrators," 81 *Harv. L. Rev.* 721 (1968) ...................................................7

C. Wright, A. Miller & M. Kane,
  *Federal Practice and Procedure* § 1922 (2d. Ed. 1986) .................................. 2-3, 7, 8
  *Federal Practice and Procedure* § 1908 (2d. Ed. 1986) ...........................................16

## NATURE AND STAGE OF THE PROCEEDING

Honeywell recognizes that certain efficiencies can be gained from Seiko Epson's appearance in this matter, and therefore, Honeywell does not generally oppose Seiko Epson's motion to intervene so long as such an intervention is conditioned to protect Honeywell's right to first adjudicate its claims against the original Defendants in its first filed suit. Accordingly, Honeywell respectfully requests that this Court condition any intervention by Seiko Epson by issuing a post-discovery stay of its proposed counterclaims until Honeywell's first filed claims have been adjudicated.[1]

On October 6, 2004, Honeywell filed the present action asserting a single cause of action for patent infringement against seven manufacturers and/or distributors of consumer electronic end products.[2] (D.I. 1). Honeywell's Complaint alleges that each Defendant, through the manufacture, sale and/or distribution of certain consumer electronic end products, infringes United States Patent No. 5,280,371 ("the '371 patent") relating to a "Directional Diffuser For A Liquid Crystal Display (an 'LCD')."[3]

Each of the Honeywell Actions is directed at a particular level of the distribution chain (i.e., end product manufacturers/distributors). On March 14, 2005, Seiko Epson moved to

---

[1]   Should the Court find it appropriate, Honeywell acknowledges efficiencies that also may be gained by consolidation for other pretrial purposes and is amenable to such an outcome.

[2]   Honeywell amended its complaint to include an additional Audiovox entity on February 9, 2005. (D.I. 39).

[3]   On the same day, Honeywell also filed a related action in this Court, C.A. No. 04-1338, asserting infringement of its '371 patent against twenty-seven additional Defendants (collectively, C.A. Nos. 04-CV-1337 and 1338 will be referred to as the "Honeywell Actions").

intervene in both of the Honeywell Actions under Fed. R. Civ. P. 24.[4]  Unlike the original named Defendants in the Honeywell Actions, Seiko Epson does not manufacture, sell or distribute end products.  To the contrary, Seiko Epson merely supplies component LCD modules to many of the named Defendant manufacturers.

In its moving papers, Seiko Epson has not carried its burden of proving that it has *a right* to intervene in this action pursuant to Rule 24(a).  However, for the purposes of the present motion, Honeywell does not dispute that Seiko Epson may well be able to satisfy the *permissive* intervention standard of Rule 24(b), and Honeywell acknowledges that Seiko Epson's presence in this litigation will provide certain efficiencies for discovery purposes.  As explained more fully below, to simplify and streamline the Honeywell Actions and to avoid prejudicing Honeywell and the original named Defendants, this Court should condition intervention upon a post-discovery stay of Seiko Epson's proposed declaratory judgment claims, effective until the Honeywell Actions against the original Defendants have been fully adjudicated.  Indeed, this type of stay should likewise be imposed against any other LCD module supplier like Seiko Epson that may attempt to intervene in this action in the future.

## SUMMARY OF ARGUMENT

1.    Using its discretionary authority, this Court should condition Seiko Epson's intervention by entering a post-discovery stay of its proposed declaratory judgment claims effective until Honeywell's present patent infringement claims against end product manufacturers have been fully adjudicated.   *See* Fed. R. Civ. P. 24 and 42; *American Lung Assoc. of New Jersey v. Kean*, 871 F.2d 319, 326-27 (3d Cir. 1989); Advisory Committee Notes,

---

[4]    Seiko Epson has similarly moved to intervene in C.A. No. 04-1338, D.I. 136.  Honeywell likewise opposes in part that motion through papers filed concurrently herewith under a separate cover.

2

"Amendments To Rules Of Civil Procedure," 39 F.R.D. 69, 111 (1966); *Beauregard, Inc. v. Sword Services, LLC*, 107 F.2d 351, 352-53 (5th Cir. 1977); *see also* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1922 p. 502 (2d Ed. 1986).

2.    A post-discovery stay of Seiko Epson's counterclaims will streamline and simplify this litigation by allowing the Court and the parties to focus on a single comprehensive class of defendants – the original named end product manufacturers and distributors. By directing its claims against a single class of defendant, Honeywell avoids the complications faced by this Court in the French government's LCD action, C.A. No. 03-484. Moreover, a post-discovery stay against LCD module suppliers like Seiko Epson avoids multiple piecemeal litigations that would occur based on a small subset of the module supplier class participating in this action. *See Cheyney State Coll. Faculty v. Hufstelder*, 703 F.2d 732, 737-38 (3d Cir. 1983) (*citing Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)); *United Sweetener*, 766 F. Supp. at 216-217.

3.    Under the "first filed" rule, Honeywell's claims for direct infringement by end product manufacturers/distributors must take priority over those of any module suppliers such as Seiko Epson. *See Air Prods. & Chems., Inc. v. MG Nitrogen Servs.,* 133 F. Supp. 2d 354, 356 (D. Del. 2001) (*citing Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)). Because the value of the invention is linked to particular end products in which the LCD display may be used – in this case, the cell phones, laptops, PDAs, etc. manufactured by the named Defendants, Honeywell may be denied full value for its '371 patented technology if it is denied the opportunity to recover the value from directly infringing end product sales. On the other hand, conditioned intervention would adequately protect Seiko Epson's interests, and a post-discovery stay would not create any undue prejudice to LCD module suppliers like Seiko Epson.

*See Cheyney State Coll. Faculty*, 703 F.2d at 737-38 (3d Cir. 1983); *United Sweetener USA, Inc. v. Nutrasweet Co*, 766 F. Supp. 212, 216-217 (D. Del. 1991).

## STATEMENT OF FACTS

### A.    Honeywell's Patent Infringement Claims In The Present Action

In the present action, Honeywell asserts a single claim for infringement of its '371 patent against eight infringers for the manufacture and/or sale of accused end products.  (D.I. 39, at ¶¶ 18-24).  Honeywell's Complaint targets the Defendants' infringing end product sales of various consumer electronic products, including laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, and/or portable game systems.  (*Id.* at ¶¶ 18-22).

The '371 patent resulted from efforts on the part of Honeywell to develop an improved LCD display.  (*Id.* at ¶ 15-16).  Specifically, the '371 invention represents "technology that enables a display to produce a brighter image (making the screen easier to see) without requiring additional power while helping to reduce the appearance of an undesirable interference pattern called the 'Moire effect' on the screen." (*Id.* at ¶ 16).  The accused products in this case, which include laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, and portable game systems, incorporate such an LCD display, thereby taking advantage of the benefits that the '371 patent offers.  (*Id.* at ¶¶ 18-22).

In an effort to streamline and simplify this litigation, Honeywell brought its claim against only one class of possible defendants – i.e., those companies that manufacture and sell consumer electronic end products containing LCD displays that incorporate the '371 invention.[5]  Each

---

[5]    This is in contrast to the French government's LCD litigation currently before this Court. *See, e.g.,* (*Commissariat a l'Energie Atomique v. Dell Computer Corp., et. al,* C.A. No. 03-484 (KAJ)).  By bringing its claim against only one class of possible defendants, Honeywell

accused infringer manufacturers and/or distributes an accused end product.  (*Id.*).  The accused

products all incorporate an LCD display.  (*Id.*).

**B.**    **Seiko Epson's Motion to Intervene**

Unlike the named Defendants, Seiko Epson is a component supplier that manufactures

LCD modules used in some of the accused end products.  (D.I. 50, Ex. 2, at ¶ 5).  It is not a

member of the class of Defendants targeted by Honeywell in this litigation; rather, it is one of

many upstream module suppliers.[6]  Seiko Epson apparently brought this motion to intervene in

Honeywell's action in response to requests from some of the named Defendants for

indemnification resulting from Honeywell's claims.  (D.I. 50, at 2).  In its moving papers, Seiko

Epson proposes to bring counterclaims for non-infringement, invalidity, and unenforceability

against Honeywell.  (D.I. 50, Ex. 5, at ¶¶ 53-63).

**ARGUMENT**

**THIS COURT SHOULD PERMIT SEIKO EPSON TO INTERVENE ONLY
UPON THE CONDITION THAT ITS PROPOSED DECLARATORY
JUDGMENT CLAIMS BE STAYED FOR ALL NON-DISCOVERY PURPOSES**

To avoid prejudice to Honeywell and to promote judicial economy, this Court should

permit Seiko Epson to intervene under Fed. R. Civ. P. 24(b) into Honeywell's action against end

product manufacturers, but only if conditioned by a post-discovery stay of Seiko Epson's

proposed declaratory judgment claims.  Using its broad discretion to condition intervention

under Rule 24 and to stay proceedings under Rule 42, this Court can efficiently manage the

---

intended to simplify and streamline liability and damages issues, and to avoid piecemeal
litigation.

[6]    To date, only one other LCD module manufacturer besides Seiko Epson has made an effort
to enter this litigation.  *See Optrex America, Inc. v. Honeywell International Inc. et. al.*,
(C.A. No. 04-1536 (KAJ)).

Honeywell Actions by allowing Seiko Epson's intervention for discovery purposes, while preserving Honeywell's status as the first party to file a claim in this action directed against original equipment manufacturer/distributors.

A.    **This Court has the Discretionary Authority to Condition Any Rule 24 Interventions by Component Suppliers Such as Seiko Epson**

Seiko Epson's status as an intervening party is only appropriate under Rule 24(b), since Seiko Epson has not met its burden to intervene as of right. Specifically, Seiko Epson fails to meet its burden of demonstrating that it is a "real party in interest" under Fed. R. Civ. P. 24(a). *See Mtn. Top Condo. Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). While Seiko Epson repeatedly refers to itself as a "manufacturer of accused products" (D.I. 50, Ex. 1 at 2, 12-16), such a representation is wholly inaccurate as it pertains to the Honeywell Actions. Here, Honeywell's claims are against eight manufacturers and distributors of consumer electronic products. (*See* D.I. 39, at ¶¶ 18-24). As a result, the "accused products" in this litigation are the consumer electronic products that Honeywell alleges infringe the '371 patent, not individual components or modules thereof. *See id.* Notably, Seiko Epson does not allege that it manufactures, sells, or distributes consumer electronic products; rather, it admits that it is one of several *component suppliers* to some of the Defendants. (*See* D.I. 50, Ex. 1 at 18, 24). Consequently, Seiko Epson's reliance upon case law in which manufacturers of accused products are deemed intervenors as of right is misplaced. (*See id.* at 13-17). Seiko Epson's status as a component LCD module supplier of a part of an accused product does not entitle it to "party in interest" status, and therefore Seiko Epson has not met its burden under Rule 24(a) to intervene as of right.[7]

_____

[7]    Seiko Epson also fails to meet its burden of demonstrating that the eight original Defendants will provide inadequate representation of its interests. (*See* D.I. 50, Ex. 1, at 14, 17-18);

Regardless, even if Seiko Epson had met its burden under Fed. R. Civ. P. 24(a), this Court has the discretionary authority to condition intervention of right by granting a post-discovery stay of Seiko Epson's counterclaims because such a stay would facilitate the "efficient conduct" of the Honeywell Actions. *See* Advisory Committee Notes, 39 F.R.D. at 111. The Advisory Committee Notes to the 1966 amendment to Rule 24(a) states that:

> [a]n intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings. *Id.*

Vetted by courts and commentators over time, "it is now a firmly established principle that reasonable conditions may be imposed even upon someone who intervenes as of right." *Beauregard, Inc. v. Sword Services, LLC*, 107 F.2d 351, 352-53 (5th Cir. 1977); *see* Wright, Miller & Kane, § 1922 at 505-07; *see also Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders Assoc.*, 979 F.2d 117, 122 (4th Cir. 1981) (concluding that intervention of right may properly be made conditional by exigencies of the particular case); David L. Shapiro, "Some Thoughts on Intervention Before Courts, Agencies and Arbitrators," 81 HARV. L. REV. 721, 756 (1968) (determining that "[s]ome limitations would seem appropriate even

---

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1995); *see also League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) (*citing Northwest Forest Resource Council*, 82 F.3d at 838) (finding that where an application for intervention and an existing party "have the same *ultimate objective*, a presumption of adequacy of representation arises") (emphasis in original)). The eight original Defendants present in this case all have the same "ultimate objective" – to successfully contest the validity, enforceability, and infringement of the '371 patent, and indeed, all of the defendants have already raised such counterclaims or defenses. (*See, e.g., Audiovox Electronics Corporation's Answer to Plaintiff's Second Amended Complaint and Counterclaim*, D.I. 48, at 4-8). Moreover, Seiko Epson acknowledges that its interests are aligned with the current Defendants and that these Defendants are represented by competent counsel. (D.I. 50, Ex. 1, at 18).

when intervention is as of right, so long as the limits imposed do not preclude effective presentation of the intervener's interest").

The Third Circuit has acknowledged that "several courts have accepted the [Advisory Committee] Note's position and allowed conditions to be placed on intervention of right." *Cerro Metal Products v. Marshall*, 620 F.2d 964, 969 n.7 (3d Cir. 1980) (*citing McDonald v. E.J. Lavion Co.*, 430 F.2d 1065, 1073 n. 7 (5th Cir. 1970)). Moreover, the Third Circuit has concluded, at least in the context of complex public law litigation, that "permitting courts to limit intervention as of right to discrete phases of the litigation may be necessary in some cases." *Harris v. Pernsley*, 820 F.2d 592, 599 n.11 (3d Cir. 1987).

Additionally, it is well established that a court can condition permissive intervention under Fed. R. Civ. P. 24(b). *See American Lung Association of New Jersey*, 871 F.2d at 326-27; *see also Beauregard*, 107 F.3d at 352 n.2 (concluding it is undisputed that virtually any condition may be attached to a grant of permissive intervention); Wright, Miller & Kane, § 1922 at 502 (stating that "[s]ince the trial court has full discretion to grant or deny an application for permissive intervention under Rule 24(b), it may if it chooses impose conditions on its grant of the application"). Accordingly, whether Seiko Epson intervenes under Rule 24(a) or (b), it is within this Court's province to place conditions on Seiko Epson's participation in the Honeywell Actions.

As discussed below, conditioning Seiko Epson's intervention upon a post-discovery stay of its proposed counterclaims against Honeywell would not only avoid prejudicing Honeywell as the first party to sue, but would help keep this case organized. Such a stay would allow Honeywell's case against the original Defendants to proceed, while still permitting module suppliers to participate in the discovery phases of litigation.

8

**B.    This Court Should Condition Seiko Epson's Intervention By Staying its Claims in Favor of Honeywell's First Filed Action Against End Product Manufacturers**

Whether Seiko Epson's intervention is "of right" under Rule 24(a) or is permitted under Rule 24(b), this Court should exercise its considerable discretion by issuing a post-discovery stay of Seiko Epson's proposed declaratory judgment claims because such "reasonable limitations will insure the efficient adjudication of the litigation." *See U.S. v. Duke Energy Corp.*, 171 F. Supp. 2d 560 (D.N.C. 2001).

A court has broad discretion to stay proceedings. Fed. R. Civ. P. 42; *Bechtel Corp. v. Local 215, Laborers of North America, AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976). The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel and for litigants. *Cheyney State Coll. Faculty v. Hufstelder*, 703 F.2d 732, 737-38 (3d Cir. 1983) (*citing Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). In exercising this discretion, a court must weigh the competing interests of the parties and attempt to maintain an even balance. *Id*.

When considering a motion for stay, a court should give great weight to the rights of the parties in a first filed action. *See Air Prods. & Chems., Inc. v. MG Nitrogen Servs.*, 133 F. Supp. 2d 354, 356 (D. Del. 2001) (*citing Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)). Moreover, courts have found questions of whether a stay will simplify the issues and trial of the case, and whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, to be important considerations. *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).

In the present case, Honeywell's status as the first filing plaintiff deserves strong consideration. *See Air Prods. & Chems.*, 133 F. Supp. 2d at 356. Moreover, a stay would permit

Honeywell to bring its case against the original Defendants without further complicating the litigation with the injection of peripheral issues unique to LCD module suppliers.[8]  *See* Advisory Committee Notes, 39 F.R.D. at 111.  Lastly,  Seiko Epson would not be prejudiced by a partial stay because it would be permitted to engage in discovery.  *See United Sweetener USA*, 766 F. Supp. at 217.   Accordingly, the Court should grant a post-discovery stay of Seiko Epson's proposed counterclaims because it would prevent undue delay and prejudice to Honeywell as an original party to the litigation, promote judicial economy, and prevent prejudice to Seiko Epson.

1.  <u>Under the "First Filed" Doctrine, Honeywell is Entitled to Try its Action Against the Named End Product Manufacturers Before Trying Seiko Epson's Intervening Declaratory Judgment Claims</u>

The Federal Circuit has recognized that, as a principle of sound judicial administration, a first filed suit should have priority, absent special circumstances.  *Air Prods. & Chems.,* 133 F. Supp. 2d at 356 (*citing Kahn*, 889 F.2d at 1081); *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969).  Generally, the disposition of the earlier case should not be delayed by later filed litigation.  *Dentsply Int'l., Inc. v. Kerr Mfg. Co.,* 734 F. Supp. 656, 659 (D. Del. 1990); *see also La Chemise Lacoste v. Alligator Co., Inc.,* 60 F.R.D. 164, 176 (D. Del. 1973) (finding that the disposition of the earlier case should not be delayed by the later filed litigation).  Except in limited circumstances that are not applicable here, this general principle holds true even where the earlier filed case is filed against the customer of a party to later filed litigation.  *See id.*

---

[8]      Honeywell notes this Court's recent stay of all but one class of defendant in the LCD patent infringement litigation involving the French government.  (C.A. No. 04-99 (KAJ) D.I. 59 (Ex. A hereto)).  Unlike the plaintiff in the Commissariat Litigation, Honeywell has targeted its claims to one class of LCD industry entity, end product manufacturers/distributors. Accordingly, this Court should stage Honeywell's Actions before any subsequent claims brought by other LCD industry classes.

Honeywell filed the present lawsuit against manufacturers and distributors of end products that employ the '371 patent well before any efforts on the part of module suppliers like Seiko Epson to participate in the present action. Accordingly, as part of finding a proper balance, this Court should give great weight to the fact that Honeywell filed its current action more than six months before Seiko Epson moved to intervene. *See Cheyney State Coll. Faculty*, 703 F.2d at 737-38. Honeywell's decision to sue defendants that manufacture, sell and/or distribute infringing consumer electronic products reflects a deliberate attempt to avoid the complications faced by this Court in the French government's LCD case resulting from contemporaneous claims against multiple classes of entities and to recover the full value of the '371 patent technology realized through end product sales.

Having filed a patent infringement suit against the manufacturers of products that practice the '371 patent, Honeywell has a well-established right to have its action disposed of in the most efficient and economical manner possible. *See La Chemise Lacoste*, 60 F.R.D. at 176. The Delaware District Court's decision in *Dentsply* provides an instructive model as to the way in which the current cases might properly be managed. *See* 734 F. Supp. 656. There, the court ordered consolidation for "discovery purposes only," but refused to allow the second-filed action to proceed ahead of the first filed case. *Id*. Rather, the plaintiff in the first filed suit was entitled to have its case tried without delay or interference by the later filed suit. *Id*. at 659; *see also Air Prods. & Chems.*, 133 F. Supp. 2d at 356.

The Honeywell Actions are subject to the general rule regarding the prioritization of first filed actions and the Delaware precedent as set forth in *Dentsply*. *See* 734 F. Supp. at 658-60. Since Honeywell filed the present lawsuit against the original Defendants months before any effort on the part of module suppliers to participate in the present action, Honeywell's case

represents a legitimate first filed infringement action entitling it to proceed unencumbered by later filed claims. *See id.*

Because the original Defendants are all manufacturers of allegedly infringing products and not "simply reseller[s] of the accused goods," the so-called "customer suit" exception to the first filed rule does not apply to the Honeywell Actions. *See Kahn*, 889 F.2d at 1081-82; *see also Dentsply*, 734 F. Supp. at 659 (*citing Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d Cir. 1965)) (noting the customer suit exception is meant to address circumstances where the first filed suit raise claims against one who is *solely* a customer) (emphasis added). Similar to its characterization of itself as a manufacturer of "accused products," Seiko Epson's repeated characterizations of the named Defendants as "mere purchasers of the accused product" is inaccurate. *See* (D.I. 50, Ex. 1, at 16, 18). None of the original Defendants is a "mere reseller" of products manufactured by Seiko Epson *See Kahn*, 889 F.2d at 1081-82. Rather, each Defendant manufacturers, sells and/or distributes infringing end products in the United States. (D.I. 39, at ¶¶ 18-24); *see Air Prods. & Chems.*, 133 F. Supp. 2d at 357.

Moreover, the customer suit exception does not apply where, as here, Honeywell has a "special interest" in the type of damages recovery that would be obtainable from the named Defendants. *See Dentsply*, 734 F. Supp. at 659-60 (*citing Codex Corp. v. Milo Elec. Corp.,* 353 F.2d 735, 736 n.6 (4th Cir. 1977)). Honeywell has a "special interest" in pursuing its actions against the end product manufacturers because they manufacture and sell accused products that take particular advantage of the improvements claimed in the '371 patent. Specifically, the '371 patent recognizes that the improved LCD display is particularly suited for applications where it is desirable to concentrate more light to a particular viewing angle. (*See* D.I. 1, Ex. A, '371 patent, 11: 33-39). Such statements link the value of the invention to particular end products in which

the LCD display may be used – in this case, the cell phones, laptops, PDAs, etc. manufactured by the named Defendants. Honeywell may be denied full value for its technology if it is forced to proceed against LCD module manufacturers such as Seiko Epson without regard to the more fundamental issue of the value such LCDs add to the end product.

Like the patentees in *Air Products*, Honeywell alleges that the products manufactured and/or distributed by the Defendants directly infringe the '371 patent. *See* 133 F. Supp. 2d at 357. This Court should find, as Judge Robinson found in *Air Products*, that "the facts of record do not fit within any exception to the first to file rule." *See* 133 F. Supp. 2d at 357; *see also Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005) (acknowledging precedent of allowing first filed action to proceed to judgment first in absence of circumstances making it "unjust or inefficient").

Because the Defendants directly infringe the '371 patent in their own right, not as "mere customers," cases in which courts have applied the "customer suit" exception to the first filed rule are inapposite to the Honeywell Actions. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). For instance, in *Katz*, a stay was issued in plaintiff's case against a sporting goods store that *merely sold the manufacturer's allegedly infringing gun product*, while a later-filed action for patent infringement proceeded against the manufacturer. *See id.* As a result of this key distinction, Seiko Epson's reliance on these cases is misplaced. Because the customer suit exception does not apply here the Court should apply the first to file rule, and condition Seiko Epson's intervention upon a post-discovery stay of its claims. *See id.*

    2.    <u>This Court Should Stay Seiko Epson's Intervening Claims In Order to Simplify the Issues and Trial of the Honeywell Actions</u>

To streamline the Honeywell Actions and to avoid piecemeal litigation, this Court should enter a post-discovery stay of intervening claims brought by Seiko Epson and any other LCD

module supplier. *See United Sweetener USA*, 766 F. Supp. at 217; (C.A. 04-99 (KAJ), D.I. 59, Mem. Order at 7 (Ex. A hereto). Honeywell's deliberate choice to bring claims against companies that manufacture and/or distribute end products avoids the unnecessary complication and delays that would be introduced by permitting the LCD module suppliers to file concurrent claims in the Honeywell Actions. Permitting an entity such as Seiko Epson to bring new claims into the litigation would create a patchwork of claims that would be inefficient for this Court, for counsel, and for the parties. *See Cheyney State Coll. Faculty*, 703 F.2d at 737-38.

Except for the overlap in discovery necessitated by the fact that Honeywell's original claims and Seiko Epson's proposed counterclaims involve the same patent, Seiko Epson's claims introduce a host of additional and complicating issues. Some of these new issues are factual, including the range of complexities necessarily introduced by bringing a differently situated party into the lawsuit. *See, e.g., Joseph v. Shell Oil Co.,* 498 A.2d 1117, 1124 (Del. Ch. 1985) (denying consolidation in part based on complication where additional party's strategy represented "a different approach to litigation" than that displayed by the parties in the main action). Other potential complexities are legal, including the intricacies of the indemnification agreement between Seiko Epson and the named Defendants it supplies. Indemnification issues are irrelevant to Honeywell and to some of the original Defendants. Because introduction of additional issues and the complexities presented by a different class of party will confuse the case, Seiko Epson's proposed counterclaims should be stayed for post-discovery purposes.

In addition, any failure to stay Seiko Epson's intervening counterclaims would produce delay and prejudice not only for Honeywell, but also for the accused infringers in the originally filed suit. As discussed above, Honeywell's right to have its case as filed proceed without unjustified delay cautions against denial of a stay. Issues specific to Seiko Epson and the

Defendants it supplies present tangential controversies unrelated to the issues between Honeywell and the other accused infringers. The result would necessarily be periods of delay during which the Court must resolve these tangential issues while Honeywell waits to turn its attention back to the suit it filed, and the accused infringers await resolution of their status. Beyond the prejudice that denial of a stay would cause to Honeywell, the delays inherent in such an outcome would be unjust and prejudicial to all the parties to the original suit and justifies a post-discovery stay of Seiko Epson's proposed counterclaims.

Perhaps most importantly, Seiko Epson's proposed counterclaims are dependent upon the resolution of the Honeywell Actions. It is the essence of third party practice that the third party action is dependent upon the outcome of the main case. *See Beights v. W.R. Grace & Co., Inc*., 67 F.R.D. 81, 86 (W.D. Okla. 1975). Honeywell recognizes that allowing Seiko Epson to participate in discovery would preserve and protect Seiko Epson's rights to pursue any interest it has in litigation related to the '371 patent and allow it to take advantage of the efficiencies and economies of consolidated discovery. Should the Defendants not be found liable to Honeywell, however, Seiko Epson's need to indemnify those Defendants it supplies and, consequently, its interest in the present action will dissolve, minimizing the need for duplicative litigation. Accordingly, the course of action proposed by Honeywell -- conditioning Seiko Epson's permissive intervention upon a stay of its proposed counterclaims -- will best serve justice and efficiency, allowing Seiko Epson to preserve its rights to the litigation in the most efficient manner possible while also protecting the interests of Honeywell and the Defendants with similar efficiency and economy.

3.      A Post-Discovery Stay of Seiko Epson's Claims Will Not Result in Any Undue Prejudice to Seiko Epson

By permitting Seiko Epson to participate in discovery in the Honeywell Actions while staying its proposed claims, this Court can ensure that Seiko Epson will not suffer any undue prejudice or tactical disadvantage in this litigation.  *See United Sweetener USA*, 766 F. Supp. at 217.  As Seiko Epson states in its moving papers, its presence as a party in the Honeywell Actions is likely to expedite discovery.  (D.I. 50, Ex. 1, at 20).  Indeed, the discovery benefits of permitting Seiko Epson to intervene will likely facilitate a more prompt disposition of the Honeywell Actions and will also serve the public's interest in an efficient disposition of court business.  *See* Wright, Miller & Kane, § 1904 at 239.  As a result, this Court should permit Seiko Epson to intervene for purposes of discovery, but should stay Seiko Epson's proposed counterclaims until Honeywell's claims have been fully adjudicated.  *See United Sweetener USA*, 766 F. Supp. at 217.

## **CONCLUSION**

For the foregoing reasons, Honeywell respectfully requests that this Court condition any intervention by Seiko Epson by issuing a post-discovery stay of its proposed declaratory judgment claims effective until after such time Honeywell's first filed claims have been fully adjudicated.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
Wilmington, DE  19899
302-654-1888

ATTORNEYS FOR HONEYWELL INTERNATIONAL INC. and
HONEYWELL INTELLECTUAL PROPERTIES INC.

*Of Counsel:*

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Denise S. Rahne
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
111 Huntington Ave., Suite 1300
Boston, MA  02199-7610
(617) 267-2300

Dated: March 31, 2005
155320.1

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 31st day of March, 2005, the attached **HONEYWELL'S**

**ANSWERING BRIEF OPPOSING IN PART SEIKO EPSON CORPORATION'S**

**MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE**

**24** was served upon the below-named counsel of record at the address and in the manner

indicated:

| | |
|---|---|
| Paul A. Bradley, Esquire<br>McCarter & English<br>919 North Market Street, Suite 1800<br>P.O. Box 111<br>Wilmington, DE 19899 | <u>HAND DELIVERY</u> |
| Richard L. Horwitz, Esquire<br>Potter Anderson & Corroon, LLP.<br>1313 North Market Street<br>Hercules Plaza, 6th Floor<br>P.O. Box 951<br>Wilmington, DE  19899-0951 | <u>HAND DELIVERY</u> |
| Timothy J. Vezeau, Esquire<br>Katten Muchin Zavis Rosenman<br>525 West Monroe Street<br>Chicago, IL  60661 | <u>VIA ELECTRONIC MAIL</u> |
| Barry W. Graham, Esquire<br>Finnegan, Henderson, Farabow,<br>    Garrett & Dunner, L.L.P.<br>901 New York Avenue, NW<br>Washington, D.C. 20001-4413 | <u>VIA ELECTRONIC MAIL</u> |
| William J. Marsden, Jr., Esquire<br>Fish & Richardson, P.C.<br>919 North Market Street, Suite 1100<br>P.O. Box 1114<br>Wilmington, DE  19899-1114 | <u>HAND DELIVERY</u> |
| Andrew R. Kopsidas, Esquire<br>Fish & Richardson, P.C.<br>1425 K Street NW, Suite 1100<br>Washington, DC  20005 | <u>VIA ELECTRONIC MAIL</u> |

John L. Reed, Esquire                                    HAND DELIVERY
Duane Morris LLP
1100 North Market Street, 12th Floor
Wilmington, DE  19801

D. Joseph English, Esquire                               VIA ELECTRONIC MAIL
Duane Morris LLP
1667 K Street, N.W., Suite 700
Washington, DC  20006


                                                         */s/ Steven J. Balick*
                                           _____
                                                         Steven J. Balick

150168.1