IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC. and
HONEYWELL INTELLECTUAL PROPERTIES
INC.,

                Plaintiffs,

      v.

AUDIOVOX COMMUNICATIONS CORP.,
AUDIOVOX ELECTRONICS CORPORATION,
NIKON CORPORATION, NIKON INC., NOKIA
CORPORATION, NOKIA INC., SANYO
ELECTRIC CO., LTD., and SANYO NORTH
AMERICA,

           Defendants.

_____

AUDIOVOX COMMUNICATIONS CORP.,

           Third-Party Plaintiff,

      v.

CURITEL COMMUNICATIONS INC. and
TOSHIBA CORPORATION,

           Third-Party Defendants.

_____

NOKIA CORPORATION and NOKIA INC.,

           Third-Party Plaintiffs,

      v.

KONINKLIJKE PHILIPS ELECTRONICS N.V.,
and SAMSUNG SDI CO., LTD.,

           Third-Party Defendants.

C.A. No. 04-1337-KAJ

JURY TRIAL DEMANDED

### THIRD-PARTY COMPLAINT OF
### DEFENDANTS NOKIA CORPORATION AND NOKIA INC.

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendants Nokia

Corporation and Nokia Inc. (collectively, "Nokia") hereby assert their Third-Party Complaint

against Third-Party Defendants Koninklijke Philips Electronics N.V. ("Philips") and Samsung

SDI Co., Ltd. ("Samsung") (hereinafter, collectively "Third-Party Defendants"), as follows:

## PARTIES

1.    Nokia Corporation is a Finnish corporation having its principal place of business in Espoo, Finland.

2.    Nokia Inc. is a Delaware corporation having its principal place of business in Irvine, Texas.

3.    On information and belief, Philips is a Dutch corporation having its principal place of business in Eindhoven, Netherlands.

4.    On information and belief, Samsung is a Korean corporation having its principal place of business in Seoul, Korea.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1332 and 1367.

6.    This Court has personal jurisdiction over Philips based on Delaware's long-arm statute, 10 Del. C. § 3104.  On information and belief, Philips has sufficient minimum contacts with the State of Delaware to satisfy the requirements of due process.

7.    This Court has personal jurisdiction over Samsung based on Delaware's long-arm statute, 10 Del. C. § 3104.  On information and belief, Samsung has sufficient minimum contacts with the State of Delaware to satisfy the requirements of due process.

8.    Venue is proper in the District pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

9.    Plaintiffs Honeywell International, Inc. and Honeywell Intellectual Properties, Inc. (collectively, "Honeywell") have commenced an action against Nokia, claiming patent

infringement.  A copy of Honeywell's Second Amended Complaint is attached hereto as Exhibit A.

      10.    Honeywell's Second Amended Complaint alleges that "Nokia has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD)," and that "[a]t least some of the LCD screen-containing products manufactured, imported, offered for sale, and/or sold by . . . Nokia . . . infringe [Honeywell's United States Patent No. 5,280,371] literally and/or under the doctrine of equivalents, making . . . Nokia . . . liable for direct and/or indirect infringement under 35 U.S.C. § 271." Second Amended Complaint at ¶¶ 21, 23 (Ex. A).  A copy of Honeywell's United States Patent No. 5,280,371 ("the '371 patent") is included in Exhibit A.

      11.    Nokia answered Honeywell's Second Amended Complaint on February 24, 2005, denying Honeywell's allegations.

      12.    The Third-Party Defendants have manufactured and/or sold to Nokia LCD devices that Nokia incorporates and has incorporated into various Nokia products.  On information and belief, these LCD devices are all or a portion of the accused products for which Honeywell alleges Nokia is liable for infringement of the '371 patent.

## COUNT I

      13.    Nokia repeats and realleges each and every allegation contained in paragraphs 1 through 14 hereof as if fully set forth herein.

      14.    By the terms of one or more contractual agreements between Nokia and Philips, Philips has a duty to indemnify Nokia against claims or liability arising from Nokia's incorporation of Philips's LCD devices into Nokia's products.

15.     By the terms of one or more contractual agreements between Nokia and Samsung, Samsung has a duty to indemnify Nokia against claims or liability arising from Nokia's incorporation of Samsung's LCD devices into Nokia's products.

16.     The Third-Party Defendants are liable to Nokia for all or a portion of Honeywell's claims concerning Nokia's alleged infringement of the '371 patent and are also liable to Nokia for all expenses incurred in defending itself against Honeywell's claims.

## DEMAND FOR JURY TRIAL

17.     Nokia hereby demands a trial by jury for any and all issues raised in this Third-Party Complaint and for any and all issues triable of right by jury in the above-captioned action.

## PRAYER FOR RELIEF

WHEREFORE, Nokia respectfully requests:

A.     An order requiring each of the Third-Party Defendants to specifically perform their duties to indemnify Nokia;

B.     A judgment against the Third-Party Defendants for the amount of judgment, if any, awarded to Honeywell against Nokia for infringement of the '371 patent based upon Nokia products incorporating the Third-Party Defendants' LCD products, including all expenses that may be awarded, including, but not limited to, costs, attorneys' fees and interest;

C.     A judgment against the Third-Party Defendants for any and all expenses Nokia incurs in defending this action based upon Nokia products incorporating the Third-Party Defendants' LCD products, including, but not limited to, costs, attorneys' fees and interest; and

D.     An award of such other and further relief that this Court deems just proper.

Dated:  April 5, 2005                    FISH & RICHARDSON P.C.


By: _____
    William J. Marsden, Jr. (#2247)
    Tara D. Elliott (#4483)
    919 N. Market Street, Suite 1100
    P.O. Box 1114
    Wilmington, DE  19899-1114
    Tel:  (302) 652-5070
    Fax:  (302) 652-0607

    Lauren A. Degnan
    Andrew R. Kopsidas
    1425 K Street, N.W.
    Washington, D.C.  20005
    Tel:  202-626-6392
    Fax:  202-783-2331

Attorneys for Defendants and Third-Party Plaintiffs,
NOKIA CORPORATION and NOKIA INC.

A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1337-KAJ |
| AUDIOVOX COMMUNICATIONS CORP.; AUDIOVOX ELECTRONICS CORPORATION; NIKON CORPORATION; NIKON INC.; NOKIA CORPORATION; NOKIA INC.; SANYO ELECTRIC CO., LTD.; and SANYO NORTH AMERICA CORPORATION; | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, for their Second Amended Complaint against Defendants, hereby allege as follows:

### Nature of the Action

1.      This is an action for the willful infringement of a United States patent.

### The Parties

2.      Plaintiff Honeywell International Inc. ("Honeywell International") is a corporation organized and existing under the laws of Delaware with its principal place of business in Morristown, New Jersey.

3.      Plaintiff Honeywell Intellectual Properties Inc. ("HIPI") is a corporation organized and existing under the laws of Arizona with its principal place of business in Tempe, Arizona.  (Honeywell International and HIPI will be referred to collectively as "Honeywell.")

1

4.      Upon information and belief, Defendant Audiovox Communications Corp. ("ACC") is a Delaware corporation having its principal place of business in Hauppauge, New York.

5.      Upon information and belief, Defendant Audiovox Electronics Corporation ("AEC") is a Delaware corporation having its principal place of business in Hauppauge, New York.

6.      Upon information and belief, Defendant Nikon Corporation ("Nikon Japan") is a Japanese corporation having its principal place of business in Tokyo, Japan.

7.      Upon information and belief, Defendant Nikon Inc. ("Nikon America") is a New York corporation having its principal place of business in Melville, New York. (Nikon Japan and Nikon America will be referred to collectively as "Nikon.")

8.      Upon information and belief, Defendant Nokia Corporation ("Nokia Finland") is a Finnish corporation having its principal place of business in Finland.

9.      Upon information and belief, Defendant Nokia Inc. ("Nokia Americas") is a Delaware corporation having its principal place of business in Irvine, Texas. (Nokia Finland and Nokia Inc. will be referred to collectively as "Nokia.")

10.     Upon information and belief, Defendant Sanyo Electric Co., Ltd. ("Sanyo Japan") is a Japanese corporation having its principal place of business in Osaka, Japan.

11.     Upon information and belief, Defendant Sanyo North America Corporation ("Sanyo N.A.") is a Delaware corporation having its principal place of business in San Diego, California. (Sanyo Japan and Sanyo N.A. will be referred to collectively as "Sanyo.")

## Jurisdiction and Venue

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a).

2

13.     Personal Jurisdiction over defendants comports with the United States Constitution and § 3104 of Title 10 of the Delaware Code because defendants have committed and continue to commit, have contributed and continue to contribute to, and have induced and continue to induce acts of patent infringement in this district as alleged in this complaint.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

### Background to the Action

15.     In the 1980s, years before LCD screen-containing products such as cellular phones, digital cameras, PDAs, and portable DVD players became ubiquitous in the consumer electronics market, the aviation and aerospace industry became interested in replacing traditional cockpit displays with LCD displays.  Honeywell invested heavily in developing the technology necessary to provide LCD displays that would meet this need.

16.     Among Honeywell's LCD display inventions was technology that enables a display to produce a brighter image (making the screen easier to see) without requiring additional power, while helping to reduce the appearance of an undesirable interference pattern called the "Moire effect" on the screen.  Honeywell protected this invention by obtaining United States Patent No. 5,280,371, (the "'371 Patent"), which was duly and legally issued by the United States Patent and Trademark Office on January 18, 1994.  A copy of the '371 Patent is attached hereto as Exhibit A.

17.     Honeywell possesses the right to sue infringers of the '371 Patent.

### Acts Giving Rise to the Action

18.     ACC has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the

3

United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems.

19.     AEC has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems.

20.     Nikon has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems.

21.     Nokia has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems.

22.     Sanyo has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the

4

United States, including this judicial district. Such products include at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems.

23. At least some of the LCD screen-containing products manufactured, imported, offered for sale, and/or sold by ACC, AEC, Nikon, Nokia, and Sanyo infringe the '371 patent literally and/or under the doctrine of equivalents, making ACC, AEC, Nikon, Nokia, and Sanyo liable for direct and/or indirect infringement under 35 U.S.C. § 271.

24. The manufacture, importation, offer for sale, or sale of these infringing products, and/or the continued such manufacture, importation, offer for sale, or sale of them in the future by ACC, AEC, Nikon, Nokia, and Sanyo is and/or will be willful, warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285, entitling Honeywell to an award of treble damages and attorneys' fees.

## Prayer For Relief

WHEREFORE, Plaintiffs respectfully request the following relief:

a.    The entry of judgment that Defendants have infringed the '371 patent;

b.    That Defendants, and their respective agents, servants, officers, directors, employees and all persons acting in concert with them, directly or indirectly, be permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '371 patent;

c.    The entry of judgment that the Defendants must account for and pay to Plaintiffs damages adequate to compensate them for Defendants' infringement, in the amount proven at trial, together with interest and costs as fixed by the Court;

d.    The entry of judgment finding that the Defendants' infringement has been willful and trebling the award of damages;

5

e.     The entry of judgment declaring that this case is exceptional and awarding

Plaintiffs their costs and attorneys' fees in accordance with 35 U.S.C. § 285; and

f.     That Plaintiffs be awarded such other and further relief as the Court deems just

and equitable.

### Jury Demand

Plaintiffs hereby respectfully request a trial by jury on all issues so triable.


ASHBY & GEDDES


Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899
302-654-1888

*Attorneys for Plaintiffs*


*Of Counsel:*

Martin R. Lueck
ROBINS, KAPLAN, MILLER
     & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Dated:  February 9, 2005
153155.1



US005280371A

# United States Patent [19]

## McCartney, Jr. et al.

[11] Patent Number: 5,280,371

[45] Date of Patent: Jan. 18, 1994

[54] **DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY**

[75] Inventors: Richard I. McCartney, Jr., Scottsdale; Daniel D. Syrold, Glendale; Karen E. Jachimowicz, Goodyear, all of Ariz.

[73] Assignee: Honeywell Inc., Minneapolis, Minn.

[21] Appl. No.: 911,547

[22] Filed: Jul. 9, 1992

[51] Int. Cl.⁵ .................................... G02F 1/133
[52] U.S. Cl. ........................ 359/40; 359/69
[58] Field of Search .................. 359/69, 40, 41

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,416,515 | 11/1983 | Fumada et al. | 359/69 |
| 5,052,783 | 10/1991 | Hamada | 359/41 |
| 5,101,279 | 3/1992 | Kuramatsu et al. | 359/40 |
| 5,128,783 | 7/1992 | Abileah et al. | 359/40 |
| 5,161,041 | 11/1992 | Abileah et al. | 359/40 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0068400 | 10/1977 | Japan | 359/69 |
| 2-14822 | 8/1990 | Japan | 359/69 |

### OTHER PUBLICATIONS

IBM Corp., "Polarized backlight for liquid crystal display", IBM Technical Disclosure Bulletin, vol. 33, No. 1B, Jan. 1990, pp. 143–144.

Primary Examiner—William L. Sikes
Assistant Examiner—Huy Mai
Attorney, Agent, or Firm—Dale E. Jepsen; A. Medved

[57]     **ABSTRACT**

A display apparatus including a light source, a liquid crystal panel, and one or more directional diffuser lens arrays disposed therebetween provides a tailored variation of luminance with viewing angle, a uniform variation of luminance with viewing angle within a first predetermined range of viewing angles and a concentration of light energy within a second predetermined range of viewing angles.

**3 Claims, 11 Drawing Sheets**





**Fig.1**
*PRIOR ART*

U.S. Patent    Jan. 18, 1994    Sheet 1 of 11    5,280,371

U.S. Patent

Jan. 18, 1994

Sheet 2 of 11

5,280,371



**Fig.2**



*Fig. 3*

U.S. Patent     Jan. 18, 1994     Sheet 3 of 11     5,280,371





$$\Theta_V = \text{VERTICAL VIEW ANGLE}$$

*Fig. 4A*



$$\Theta_H = \text{HORIZONTAL VIEW ANGLE}$$

*Fig. 4B*



Fig. 5

U.S. Patent          Jan. 18, 1994          Sheet 5 of 11          5,280,371

U.S. Patent

Jan. 18, 1994

Sheet 6 of 11

5,280,371



Fig.6

U.S. Patent

Jan. 18, 1994

Sheet 7 of 11

5,280,371



Fig. 7



Fig.10

$\Theta_V$ = VERTICAL VIEW ANGLE



Fig. 8

U.S. Patent

Jan. 18, 1994

Sheet 8 of 11

5,280,371



Fig. 9

U.S. Patent

Jan. 18, 1994

Sheet 9 of 11

5,280,371



Fig.11

U.S. Patent

Jan. 18, 1994

Sheet 10 of 11

5,280,371

U.S. Patent

Jan. 18, 1994

Sheet 11 of 11

5,280,371



θ

θ ∿ 2° TO 16°

40

30

*Fig.12*

5,280,371

1

# DIRECTIONAL DIFFUSER FOR A LIQUID CRYSTAL DISPLAY

## BACKGROUND OF THE INVENTION

This invention relates in general to flat panel liquid crystal displays and, more particularly, to a liquid crystal display (LCD) having a directional diffuser to provide a tailored variation of luminance with viewing angle.

There are commercially available liquid crystal displays for use in various applications, including for example aircraft cockpit displays. However, a typical characteristic of the liquid crystal panel used therein is a wide variation of the light transmission of the liquid crystal panel with viewing angle, especially the vertical viewing angle. This results in gray-scale errors and off-state errors with viewing angle. That is to say, the brightness of certain areas of the display when viewed at angles above or below a vertical viewing angle normal to the display surface, may be substantially different than the brightness of those areas when viewed at an angle normal to the display surface. This variation of brightness or luminance with viewing angle is generally undesirable and particularly undesirable in those cases where the information being displayed on the liquid crystal display is critical to an operation such as controlling or navigating an aircraft.

In addition, a typical diffuser used to provide a light source for backlighting a typical liquid crystal display ordinarily provides a constant luminance with viewing angle and therefore provides the same amount of energy for any given viewing angle of the display. In certain applications, such as for example an aircraft cockpit, the typical vertical viewing angle is fixed within a relatively narrow range and it would therefore be desirable to concentrate a higher percentage of the energy from the light source within a particular range of viewing angles.

It would therefore be desirable to provide a directional diffuser for use with a liquid crystal display to provide a tailored variation of luminance with viewing angle while also providing a concentration of the light energy from the light source within a predetermined range of viewing angles.

## SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide a directional diffuser element for a liquid crystal display to provide a tailored variation of luminance with viewing angle.

It is a further object of the present invention to provide a liquid crystal display having less variation of intermediate gray-level luminance with viewing angle.

It is still further an object of the present invention to provide a liquid crystal display combining the above features to provide a higher concentration of light energy, and therefore increased luminance, within a particular range of viewing angles thereby providing a more efficient use of light energy available from a light source.

The foregoing and other objects are achieved in the present invention wherein there is provided a liquid crystal display apparatus comprising a light source, a liquid crystal planar array of pixels for creating an image by controlling the amount of light allowed to pass through each of the pixels, and one or more directional diffuser lens arrays disposed between the light

2

source and the liquid crystal array for providing a tailored variation of luminance from the liquid crystal display as a function of vertical viewing angle.

## BRIEF DESCRIPTION OF THE DRAWINGS

The above mentioned and other features and objects of the present invention and the manner of attaining them will become more apparent and the invention itself will be best understood by reference to the following description of alternative embodiments of the invention taken in conjunction with the accompanying drawings wherein:

FIG. 1 is an exploded view of a typical prior art backlit liquid crystal display;

FIG. 2 is an exploded view of the liquid crystal display of the present invention, having a directional diffuser lens array;

FIG. 3 illustrates a typical prior art LCD gray-level response showing the variation of luminance with vertical viewing angle;

FIGS. 4A and 4B show cross sectional side and top views of a typical assembly including the lens array of the present invention;

FIG. 5 illustrates the variation of luminance with viewing angle for a light source alone and a light source combined with a single lens array;

FIG. 6 illustrates the path of various light rays when striking the lens array at various angles;

FIG. 7 is a cross sectional view of a preferred embodiment of the present invention with two lens arrays;

FIG. 8 illustrates the variation of luminance with viewing angle for the dual lens array configuration;

FIG. 9 illustrates the variation of luminance with viewing angle for a triple lens array configuration;

FIG. 10 is a cross sectional view of a configuration utilizing a triangular shaped lens array;

FIG. 11 illustrates the variation of luminance with viewing angle for the triangular shaped lens array; and

FIG. 12 shows the angular rotation of the lens array with respect to the LCD matrix array to eliminate residual moire effects.

## DESCRIPTION OF A PREFERRED EMBODIMENT

Referring now to FIG. 1 there is shown a cross section of a typical prior art liquid crystal display apparatus including backlight array 25 comprising lamp 10, rear reflecting surface 15 and lambertian diffuser 20. The backlight array provides a source of light which impinges on liquid crystal panel 30 comprised of a number of individual liquid crystal elements which are alternately energized in order to form a desired pattern or image for viewing from the front of the liquid crystal display.

While this typical prior art liquid crystal panel may be adequate for certain applications where the normal viewing angle is more or less at an angle normal to the display surface, this display is not optimum for applications wherein the typical viewing angle is other than at an angle normal to the display surface. This prior art display exhibits a relatively wide variation of light transmission with viewing angle, especially the vertical viewing angle. As illustrated in FIG. 3 this variation also changes with the level of lumination for various gray-levels or intermediate intensities for a given display.

5,280,371

| 3 | 4 |

As can be seen in the curves of FIG. 3, the luminance emitted from the lower gray-levels of the LCD system increases significantly with increasing vertical viewing angle. This variation presents an undesirably large luminance increase with angle when the information being presented is low-level luminance information, such as for avionics applications including weather radar or attitude director indicator presentations. As a pilot viewing the display moves his vertical perspective, or his viewing angle, higher above a normal angle to the display (larger vertical viewing angles), he observes a low luminance field increase significantly in luminance, thereby causing confusion in interpretation of critical display information.

In addition, the lambertian diffuser of the typical prior art display, element 20 of FIG. 1, provides for a nearly equal luminance in all angular viewing directions. In most applications a 180° field of view in both horizonal and vertical directions is not required. It would therefore be more energy efficient if a substantial portion of the light energy could be redirected so as to be concentrated in the viewing angles of interest for a particular application.

The apparatus of the present invention includes the backlight array and liquid crystal of the prior art as shown in FIG. 1 with the addition of a lens array 40 inserted between the lambertian diffuser 20 of the prior art and liquid crystal display panel 30, as shown in FIG. 2. It was found that by inserting a directional diffuser consisting of a cylindrical lens array 40 between the lambertian diffuser and the liquid crystal panel that both of the desired effects could be accomplished. That is, the overall light energy is concentrated within a desired rang of viewing angles and the variation of luminance with viewing angle is tailored to offset that which is obtained through the liquid crystal display alone.

For example, FIG. 5 illustrates that with the insertion of lens array 40 as shown in FIGS. 4A and 4B, the overall luminance has increased approximately 20 percent within a range from −20° to +20° viewing angle and the desired decrease in luminance with increased vertical viewing angle is obtained between approximately +10° and +35° of vertical viewing angle. Curve 110 of FIG. 5 illustrates the variation of luminance with viewing angle for the lambertian light source only, in both the horizontal and vertical angles while curves 120 and 130 respectively represent a variation of luminance with vertical and horizontal viewing angles for the backlight including lens array 40.

The effect which results from the insertion of the cylindrical lens array is explained by reference to FIG. 6 wherein there are shown light rays from the lambertian (having uniform luminance with angle) source diffuser impinging on the lens array from various angles. An air gap must be present at the interface of the lambertian diffuser and the lens array. The normal 4 percent loss per surface due to fresnel reflections is not incurred, because the surface reflections are returned to the diffuser and reflected again.

Those rays that are normal to the source diffuser but less than the critical angle within the lens array are passed through the lens array materially unobstructed, except for a small amount of surface reflection. Rays which enter at oblique angles and are greater than the critical angle of the lens array undergo total internal reflection at the inside of the lens surface as illustrated by ray tracing 70. These rays are reflected with no loss due to the total internal reflection effect around the lens

periphery. They exit the rear of the lens array and return to the source diffuser where they undergo a secondary diffuse reflection from the source diffuser.

However, because the source diffuser is not totally reflective, some of the returned rays are transmitted through the diffuser and are then reflected from the backlight enclosure surface 15 of FIG. 4A. Some fraction of these rays are reflected internally to exit the diffuser again. These reflected rays again have a lambertian distribution at the surface of lambertian diffuser 20. It is apparent from this interaction between the lens array and the backlight that rays which impinge close to the normal tend to be intensified while those rays which impinge at oblique angles undergo total internal reflection and are returned to the diffuser and diminished somewhat from this statistical process.

However, the roll off or variation with vertical viewing angle for this single directional diffuser cylindrical lens array was not sufficient to offset the effects of the liquid crystal display, and there were significant moire patterns caused by the interference between the lens array and the display panel wherein the lens array contained 142 lenses per inch and the display panel matrix had a spatial frequency resolution of 172 dots or pixels per inch.

For the desired specific implementation it was discovered that the adverse interaction producing moire patterns could be eliminated by including a second lens array with a different number of lenses per inch. The combination of the dual lenses increased the desired reduction in luminance with increased viewing angle, and in addition reduced or eliminated the moire patterns with the selection of an appropriate pitch, or number of lenses per inch, for the two lenses in question.

As illustrated in FIG. 7, one of the lens arrays 42 was selected to have a relatively coarse pitch with respect to that of the liquid crystal display and the second lens array 44 was selected to have a relatively fine pitch with respect to that of liquid crystal display. FIG. 8 illustrates again the relatively flat response of the lambertian source diffuser alone curve 110, and the increased roll off with vertical viewing angle of curve 125 as well as the corresponding variation of luminance with horizonal viewing angle as illustrated by curve 135 for the dual lens array of FIG. 8.

In general it was discovered that the addition of additional lens arrays caused a steeper or more rapid variation of the change in luminance with vertical viewing angle, which was desirable, but the corresponding change in luminance with variations in horizonal viewing angle also became steeper, which was not desirable for the particular application in question. For the particular application in question the preferred embodiment included two lens arrays in series which provided the best tradeoff of decrease in luminance with variation of vertical viewing angle, while not adversely affecting the variation in luminance with horizonal viewing angle.

In addition, since moire effects result when both of the lens arrays have the same spatial frequency, the rear array 42 should have a coarse resolution or low spatial frequency while the front lens array 44 should have a fine resolution or high spatial frequency. The lens arrays and the panel spatial frequencies should be selected to avoid integral multiples of the other. Thus the fine lens array should be as high a spatial frequency as is practical and should be a non integral multiple of the panel frequency. According to these guidelines the fine

5,280,371

5             6

array frequency becomes approximately 2.5 times the display spatial frequency and the coarse array frequency should be approximately the fine array frequency divided by 3.5, 4.5, 5.5 or as required for the most convenient fabrication.

It was also discovered that the maximum increase in luminance was obtained using a triangular lens array having an included angle of 90° as illustrated in FIG. 10. This configuration resulted in a variation of luminance with vertical and horizontal viewing angles which was quite steep as illustrated by curves 160 and 170 of FIG. 11. Other lens array shapes may be selected as desired to obtain the required concentration of luminance and variation of luminance with vertical and horizontal viewing angle for a particular application.

Even though the spatial frequencies of the directional diffuser lens array and LCD panel have been selected to be greatly different and non-integer multiples, some visual banding effects or moire pattern effects may still be apparent to the viewer. This is especially true in off-axis viewing conditions. This residual moire can be removed by rotating the lens array 40 with the respect to the LCD array 30, as illustrated in FIG. 12. This rotation of the lens array by a few degrees (Typically 2 to 16 degrees) from the horizontal axis causes a small change in the effective spatial frequency difference of the two arrays and thereby eliminates the residual moire.

In addition to the angular redistribution of the light from the directional diffuser, the lens array also provides an additional diffusing effect, especially for any step variations in luminance that are parallel to (or nearly parallel to within a few degrees) the axis of the lens array. This allows the reduction of the thickness or optical density of the conventional diffuser while still achieving the same system luminance uniformity and masking of undesired spatial artifacts from the light source, but with higher luminance at the output.

While there have been described above the principals of invention in conjunction with several specific embodinents, it is to be clearly understood that these descriptions are made only by way of example and not as a limitation to the scope of the invention.

We claim:

1. A display apparatus comprising:

a light source;

a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and

first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein said liquid crystal panel comprises a plurality of pixels arranged in rows and columns, and wherein the number of rows of pixels per unit height, or pitch, of the liquid crystal panel is a first value; the number of lenslets per unit height, or pitch, of said first lens array is a second value which is less than said first value; and the number of lenslets per unit height, or pitch, of said second lens array is a third value which is greater than said first value.

2. A display apparatus in accordance with claim 1 wherein said third value is a non-integral multiple of said first value and is also a non-integral multiple of said second value.

3. A display apparatus comprising:

a light source;

a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and

first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenslets and said liquid crystal panel.

* * * * *

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2005, I electronically filed **THIRD PARTY COMPLAINT OF DEFENDANTS NOKIA CORPORATION AND NOKIA INC.** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Steven J. Balick, Esq.
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P. O. Box 1150
Wilmington, DE 19899

Attorneys for Plaintiffs
Honeywell International Inc. and
Honeywell Intellectual Properties Inc.

Paul A. Bradley
Thomas D. Walsh
McCarter & English, LLP
919 N. Market Street
P.O. Box 111
Wilmington, DE 19899-0111

Attorneys for Defendant
Audiovox Electronics Corporation

John Leonard Reed
Duane Morris LLP
1100 N. Market Street, Suite 1200
P.O. Box 195
Wilmington, DE 19899-0195

Attorneys for Defendant
Audiovox Communications Corp.

Richard L. Horwitz
David Morse
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899

Attorneys for Defendants
Nikon Corporation, Nikon, Inc., Sanyo
Electric Co., Ltd, and Sanyo North
America

Donald W. Huntley
Huntley & Associates
1105 N. Market Street, Suite 800
P.O. Box 948
Wilmington, DE 19899-0948

Attorneys for Seiko Epson Corporation

William J. Marsden
marsden@fr.com