IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL, INC., and
HONEYWELL INTELLECTUAL
PROPERTIES, INC.,

              Plaintiffs,

           v.

AUDIOVOX COMMUNICATIONS CORP.,
AUDIOVOX ELECTRONICS CORP., NIKON
CORPORATION, NIKON INC., NOKIA
CORPORATION, NOKIA INC., SANYO
ELECTRIC CO., LTD., and SANYO NORTH
AMERICA,

              Defendants.

_____

C.A. No. 04-1337 (KAJ)

## SEIKO EPSON CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. HONEYWELL'S INFRINGEMENT CLAIMS ARE BASED ON
THE STRUCTURE OF SEIKO EPSON'S LCDS ...................................................2

III. SEIKO EPSON'S INTERVENTION SHOULD NOT BE CONDITIONED
ON A STAY OF SEIKO EPSON'S CLAIMS .........................................................5

      A.     Seiko Epson Would Be Severely Prejudiced By A
Stay Of Its Declaratory Judgment Action While
Honeywell Proceeds To Trial Against Its Customers ............................................6

      B.     Under The "Customer Suit Exception," The Declaratory
Judgment Action Brought By Seiko Epson Should Be Given
Priority Over Honeywell's Infringement Suit Against
Seiko Epson's Customers ......................................................................................8

      C.     Seiko Epson Is The Manufacturer Of The Accused Products
For Purpose Of The "Customer Suit Exception" ..................................................10

      D.     Honeywell Does Not Have A "Special Interest" That Warrants
Proceeding To Trial Against The Customer Defendants
First Merely Because They Manufacture End Products......................................12

      E.     There Is No Basis For Staying A Manufacturer's Action And
Proceeding With An Infringement Action Against Its Customers
When Both Actions Are Pending Before The Same Court ..................................15

      F.     Honeywell Did Not Simplify Or Streamline This Litigation
By Only Suing One Type Of Defendant ..............................................................17

      G.     Honeywell's Motion To Stay Seiko Epson Is Not Supported By
The Existence Of Any Indemnification Issues ....................................................19

    IV. CONCLUSION...............................................................................................20

\\\CC - 81747/0239 - 46540 v1

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*,
    133 F.Supp.2d 354 (D. Del. 2001) ................................................................11

*Argos v. Orthotec LLC*,
    304 F.Supp.2d 591 (D. Del. 2004) .................................................................6

*Beck Systems, Inc. v. Marimba, Inc.*,
    2001 WL 1502338 (N.D. Ill. Nov. 20, 2001) ................................................17

*Codex Corp. v. Milgo Electronics Corp.*,
    553 F.2d 735 (1st Cir.), *cert. denied*, 434 U.S. 860 (1977)................................9

*Collier v. Airtite, Inc.*,
    1988 WL 96363 (N.D. Ill. Sept. 15, 1988).........................................................9

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
    293 F.Supp.2d 423 (D. Del. 2003) ....................................................11, 14, 16

*Commissariat a l'Energie Atomique v. Dell Computer Corp.*,
    2004 WL 1554382 (D. Del. May 13, 2004) .............................................*passim*

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
    734 F.Supp. 656 (D. Del. 1990) .............................................................9, 14, 17

*Ellenby Technologies, Inc. v. AT Systems Inc.*,
    2002 WL 356686 (D. Del. Feb. 8, 2002).............................................................8

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) .................................................................8, 11

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ....................................................................8, 9

*LG Electronics, Inc. v. Q-Lity Computer Inc.*,
    211 F.R.D. 360 (N.D. Cal. 2002) .....................................................................7

*Loral Fairchild Corp. v. Matsushita Elec.*,
    266 F.3d 1358 (Fed. Cir. 2001) .......................................................14, 16, 17, 19

*Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*,
    931 F.Supp. 1014 (E.D.N.Y. 1996)..................................................................16

*Nikken, USA, Inc. v. Robinson-May, Inc.*,
    2003 WL 21781149 (C.D. Cal. July 8, 2003) ..............................................9, 17

\\\CC - 81747/0239 - 46540 v1

*Philips Electronics North America Corp. v. Contec Corp.*,
220 F.R.D. 415 (D. Del. 2004) ............................................................................................19

*Rates Technology, Inc. v. New York Telephone Co.*,
1995 WL 438954 (S.D.N.Y. July 25, 1995) ....................................................................17

*Refac Int'l, Ltd. v. IBM*,
790 F.2d 79 (Fed. Cir. 1986) ...............................................................................9, 16, 17

*Ricoh Co. v. Aeroflex Inc.*,
279 F.Supp. 554 (D. Del. 2003) .................................................................8, 10, 11, 12, 14

*Rottlund Homes of New Jersey, Inc. v. Saul, Ewing, Remick & Saul, LLP*,
243 F.Supp.2d 145 (D. Del. 2003) ............................................................................ 19-20

*T.J. Smith and Nephew Ltd. v. Ferris Corp.*,
1987 WL 7496 (N.D. Ill. March 2, 1987) ..........................................................11, 12, 14

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
766 F.Supp.2d 212 (D. Del. 1991) .........................................................................................5

*Whelen Technologies, Inc. v. Mill Specialties, Inc.*,
741 F.Supp. 715 (N.D. Ill. 1990) ...............................................................................11, 14

\\\CC - 81747/0239 - 46540 v1

## I.  INTRODUCTION

Honeywell has sued 35 companies alleging that a wide range of consumer products infringe its '371 patent, including portable televisions, laptop computers, digital cameras, cellular phones, video games, PDAs, and video cameras.  Honeywell contends that these products infringe its patent because they contain liquid crystal displays ("LCDs").  If the LCDs do not infringe the '371 patent, then the end products do not infringe either.

At least 25 of the defendants sued by Honeywell purchase LCDs from Seiko Epson. Accordingly, Seiko Epson seeks to intervene in this action so it can defend its LCD products against Honeywell's claims of infringement.  Honeywell does not oppose Seiko Epson's motion to intervene, but seeks to condition its intervention on a "post discovery stay" of Seiko Epson's declaratory judgment action so Honeywell can proceed first to trial against Seiko Epson's customers without Seiko Epson.  Honeywell's Opposition at pp. 1-2 (D.I. 55).  In essence, Honeywell seeks to secure the opportunity to conduct discovery against Seiko Epson, but at the same time wants to prevent Seiko Epson from defending its LCD products on behalf of its customers at trial.

Seiko Epson, a third party based in Japan, does not seek to intervene in this litigation simply to subject itself to substantial U.S. discovery obligations.  Seiko Epson seeks to intervene so it can protect its own interests and the interests of its customers by establishing that its LCDs do not infringe the '371 patent and that the patent is invalid.  Requiring that Seiko Epson sit on the sidelines while its customers adjudicate infringement as to Seiko Epson's LCDs defeats the purpose of intervention altogether. It would be highly prejudicial to force Seiko Epson to rely on its customers to adjudicate Honeywell's claims of infringement when the customers lack Seiko Epson's knowledge and expertise concerning the LCDs at issue.  The customer defendants also

lack Seiko Epson's level of interest in the outcome of this action, considering that the customer defendants will likely seek indemnification from Seiko Epson for any adverse judgment.

Honeywell suggests that LCD manufacturers, such as Seiko Epson, should not be consolidated with their customers for purposes of trial. However, if Seiko Epson does not proceed to trial *with* its customers, then Seiko Epson's claims should proceed to trial ***first,*** ahead of its customers. This would be the most efficient way of proceeding with the litigation, because determining infringement as to Seiko Epson's LCDs will, as a practical matter, resolve Honeywell's claims against Seiko Epson's 25 customers. It is far more efficient for Seiko Epson to litigate Honeywell's infringement allegations against its own products than to have 25 customer defendants litigating the same infringement issues as to components they know nothing about. Honeywell's attempt to condition Seiko Epson's intervention on a stay of Seiko Epson's claims is without precedent and should be denied.[1]

## II. HONEYWELL'S INFRINGEMENT CLAIMS ARE BASED ON
## THE STRUCTURE OF SEIKO EPSON'S LCDS

Honeywell contends that Seiko Epson is not a "party in interest" because the "accused products" are those consumer electronic products that Honeywell has chosen to accuse of infringement, and Seiko Epson only supplies the LCD components for those "end products." Honeywell's Opposition at p. 6 (D.I. 55). However, the "accused products" – whether they be digital cameras, laptop computers, or some other consumer product – only infringe the '317 patent if they contain LCD modules of a specific design that is covered by the patent. If the LCD modules do not infringe, then neither do the end products. If the LCD modules do infringe, then

---

[1] As in its moving papers, Seiko Epson refers to *Honeywell International Inc. v. Apple Computer Inc. et al.* (Case No. 04-1338) as *"Honeywell I,"* *Honeywell International Inc. v. Audiovox Corp. et al.* (Case No. 04-1337) as *"Honeywell II,"* and *Optrex America, Inc. v. Honeywell International Inc.* (Case No. 04-1536) as *"Optrex."*

the end products likewise infringe.  Moreover, the end product manufacturers have put Seiko Epson on notice that they will seek indemnification for any damages award based on products containing Seiko Epson LCDs.  Accordingly, Seiko Epson is the "real party in interest," not the customer defendants who merely purchase LCDs and incorporate them into end products.

Honeywell contends that in the 1980's it developed new LCD displays that would meet the needs of the aviation and aerospace industry.  Complaint ¶ 15 (D.I. 39).  One of these claimed inventions was an improved LCD that allegedly produced "a brighter image (making the screen easier to see) without requiring additional power while helping to reduce the appearance of an undesirable interference pattern called the 'Moire effect.'"  *Id.* ¶ 16.  Honeywell alleges that it protected this invention by obtaining U.S. Patent No. 5,280,371 ("the '371 patent").  *Id.*

The abstract of the '371 patent describes "a display apparatus including a light source, a liquid crystal panel, and one or more directional diffuser lens arrays disposed there between." More specifically, claim 3 of the '371 patent recites,

> "A display apparatus comprising:
>         a light source;
>         a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
>         first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenslets and said liquid crystal panel."

'317 patent, column 6, lines 27-42.  Accordingly, the accused products in this case (*e.g.,* laptop computers and cellular phones) infringe the '371 patent ***only*** if they "***incorporate such an LCD display.***"  Honeywell's Opposition at p. 4 (D.I. 55).[2]  Since the internal structure of the LCDs

---

[2] In a recent motion that discussed the allegedly infringing activities of one of Seiko Epson's customers, Kyocera Wireless Corp., Honeywell recognized that the customer itself did not manufacture the LCDs at issue, but that "KWC buys LCD modules from Optrex (and others) and

will determine whether they are covered by the patent, and consequently, whether the end products infringe the patent, LCD manufacturers such as Seiko Epson are the parties best positioned to adjudicate Honeywell's infringement claims.

Honeywell has also confirmed, in its communications with Seiko Epson, that Seiko Epson's LCD modules are the components actually accused of infringement. For example, Honeywell's notice letter to Seiko Epson read in relevant part, "The '317 Patent relates to LCD modules and products made and sold by your company and others." Declaration of Kenji Sakamoto ("Sakamoto Decl."), Exh. A (D.I. 50 #3). During subsequent discussions, Honeywell more specifically stated its contention that LCD modules manufactured and sold by Seiko Epson infringe the '371 patent. *Id.* ¶ 4. Seiko Epson subsequently received numerous letters from the defendants in this action requesting that Seiko Epson defend and/or indemnify them from any liability arising from this litigation. *Id.* ¶ 6.

The need for LCD manufacturers such as Seiko Epson to take a leading role in this litigation is highlighted by Honeywell's apparent strategy to keep the end product manufacturers in the dark as to which of their products allegedly infringe. As to each defendant, Honeywell has broadly alleged that the defendant is "engaged in the manufacture, importation, offer for sale, and/or sale of products that include … at least one of the following: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, and portable televisions, and/or portable game systems." Complaint ¶¶ 18-22 (D.I. 39). Honeywell is never more specific as to which products it contends are at issue. Specifically, Honeywell has refused to identify which models of products contain the type of LCD that Honeywell contends is covered by the '371 patent. Honeywell will not even disclose which LCD designs it contends are within

---

then independently incorporates those modules into the accused products." Honeywell's Motion to Consolidate at p. 1 (*Honeywell I* D.I. 134).

the scope of the patent.  And since the end product manufacturers have no information concerning

the internal structure of the LCDs they purchase from Seiko Epson and others, the customer

defendants have no way to ascertain which of their products are actually at issue.

Accordingly, LCD manufacturers such as Seiko Epson are the "real parties in interest"

and should take the leading role in defending against Honeywell's infringement claims.  Once

Honeywell decides to disclose what LCD structures it contends are infringing, only Seiko Epson

(and other LCD manufacturers) will be able to effectively litigate which LCDs fall within the

scope of Honeywell's infringement contentions, because the LCD manufacturers are the only

parties familiar with the design and structure of their own LCDs.  Moreover, Seiko Epson's

customers will likely seek to hold Seiko Epson financially responsible if their "end products" are

found to infringe at trial.  Under these facts, there is no question that Seiko Epson has the greatest

interest and the highest stake in the outcome of this litigation, and Seiko Epson – not its

customers – should be the party to defend against Honeywell's infringement claims at trial.

### III.  SEIKO EPSON'S INTERVENTION SHOULD NOT BE CONDITIONED ON A STAY OF SEIKO EPSON'S CLAIMS

Although Honeywell does not oppose Seiko Epson's intervention in this action,

Honeywell argues that Seiko Epson's declaratory judgment action should be stayed while

Honeywell proceeds to trial against Seiko Epson's customers.  Such a stay makes little sense –

from a judicial, practical or logical perspective – and would entirely defeat the purpose of Seiko

Epson's intervention.

When considering whether to grant a stay, "a district court must evaluate the possible

damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the

fulfillment of judicial objectives of simplification of the issues in question." *United Sweetener*

*USA, Inc. v. Nutrasweet Co.,* 766 F.Supp.2d 212, 217 (D. Del. 1991).  Seiko Epson and its

customers would all be significantly prejudiced if the customers were compelled to adjudicate at trial whether Seiko Epson's LCDs infringe Honeywell's patent without Seiko Epson.  Indeed, Seiko Epson might even have a duty to defend its customers at trial, which would make it even more absurd that its own declaratory judgment claim would be stayed and tried later.

The only basis for Honeywell's requested stay is that Honeywell sued Seiko Epson's customers first.  However, as a manufacturer of the accused LCDs, Seiko Epson has a greater interest in this litigation than its customers and is better able to defend against Honeywell's infringement claims.  Applying the reasoning of the "customer suit exception" to the first-to-file rule, Seiko Epson's claims should be given priority and proceed to trial first, not Honeywell's claims against Seiko Epson's customers.  Accordingly, the Court should deny Honeywell's request that Seiko Epson's claims be stayed for purposes of trial.[3]

A.    **Seiko Epson Would Be Severely Prejudiced By A Stay Of Its Declaratory Judgment Action While Honeywell Proceeds To Trial Against Its Customers**

In considering a motion to stay, the first and primary factor for the Court to consider is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D. Del. May 13, 2004); *Argos v. Orthotec LLC,* 304 F.Supp.2d 591 (D. Del. 2004).  Honeywell's proposed stay would create severe problems of prejudice and "tactical disadvantage" for both

---

[3]  Seiko Epson understands that at least some of the defendants in this action intend to move for a stay of Honeywell's litigation against the end product manufacturers, so the litigation would proceed only as to those parties who actually manufacture the LCDs accused of infringement. Seiko Epson would support such a solution for streamlining the litigation, which was recently adopted in a very similar LCD patent litigation involving more than 60 parties, *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D. Del. May 13, 2004). However, the present brief only focuses on the narrower question of whether Seiko Epson's participation in this litigation should be conditioned on its customers proceeding to trial first.

Seiko Epson and its LCD customers, and on that basis alone, Honeywell's motion to stay should be denied.

The potential prejudice to Seiko Epson's customers is evident. The customer defendants have no knowledge as to the design or manufacture of the LCDs supplied by Seiko Epson, and therefore have no basis of knowing (apart from Seiko Epson) whether Honeywell's patented technology is contained in any of the LCD modules they incorporate in their end products. If Honeywell's infringement action is tried first – and Seiko Epson's action is stayed – then Seiko Epson's customers will have to litigate infringement as to Seiko Epson's LCDs without any assistance from Seiko Epson. Conversely, if Seiko Epson tried the infringement issues as to its LCDs first, there would be no need for Seiko Epson's customers to litigate the same issues thereafter.

Seiko Epson would also be significantly prejudiced by a stay of its claims for trial because its customers will **not** adequately represent Seiko Epson's interests if Honeywell's suit against them proceeds to trial first, without Seiko Epson's participation. *See* Motion to Intervene at pp. 17-18 (D.I. 50 #1). Seiko Epson could suffer from at least the following forms of prejudice:

- Honeywell might obtain an injunction against Seiko Epson's customers purchasing Seiko Epson's LCDs. A manufacturer's interest "will unquestionably be impaired" if injunctive relief is obtained and the manufacturer is no longer able to sell its accused products. *LG Electronics, Inc. v. Q-Lity Computer Inc.,* 211 F.R.D. 360, 365 (N.D. Cal. 2002).

- Damages might be awarded against Seiko Epson's customers, and Seiko Epson may be liable to indemnify those customers for the amount of the judgment.

- An adverse determination as to infringement by Seiko Epson's LCDs could have far-reaching effects on the market for Seiko Epson's LCD products.

\\\CC - 81747/0239 - 46540 v1

For each of these reasons, Honeywell's motion to stay Seiko Epson's claims should be denied.

**B.     Under The "Customer Suit Exception," The Declaratory Judgment Action Brought By Seiko Epson Should Be Given Priority Over Honeywell's Infringement Suit Against Seiko Epson's Customers**

Honeywell contends that its lawsuit against Seiko Epson's customers should be given priority over Seiko Epson's declaratory judgment claims because Honeywell filed its lawsuit first. However, it is well-established that the "first-to-file" rule will give way where, as here, the second-filed action involves the manufacturer of the components accused of infringement.  Under a proper application of the "customer suit exception" to the first-to-file rule, Seiko Epson's declaratory judgment action should proceed to trial *before* Honeywell's action, not after.

"The customer suit exception is a limited exception to the first-filed rule, whereby a second filed declaratory relief action filed by a manufacturer takes precedence over a first filed action brought by a patent owner against a mere customer."  *Ellenby Technologies, Inc. v. AT Systems Inc.*, 2002 WL 356686, n. 4 (D. Del. Feb. 8, 2002).  "Under Federal Circuit precedent, a manufacturer's declaratory judgment suit should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products."  *Ricoh Co. v. Aeroflex Inc.,* 279 F.Supp. 554, 557 (D. Del. 2003), *citing Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990).

"The customer suit exception is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement."  *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989).  For this reason, the manufacturer's action is given priority because "it is more efficient for the dispute to be settled directly between the parties in interest."  *Ricoh,* 279 F.Supp. at 557.  As stated by the First Circuit in an oft-cited opinion,

> "At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit … it is a simple fact of life that a manufacturer must protect its customers, either as a matter

8

of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products."

*Codex Corp. v. Milgo Electronics Corp.,* 553 F.2d 735, 737-78 (1st Cir.), *cert. denied,* 434 U.S. 860 (1977), *cited by Katz,* 909 F.2d at 1464.

Although the customer suit exception is often applied when two separate suits are filed in different jurisdictions, the exception also applies when the customer and manufacturer actions are filed in the same court. *Refac Int'l, Ltd. v. IBM,* 790 F.2d 79 (Fed. Cir. 1986); *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D. Del. May 13, 2004); *Nikken, USA, Inc. v. Robinson-May, Inc.*, 2003 WL 21781149 (C.D. Cal. July 8, 2003); *Collier v. Airtite, Inc.,* 1988 WL 96363 (N.D. Ill. Sept. 15, 1988).   When the actions are pending before the same court, "the court may separate customer and manufacturer defendants during the liability phase of the case and stay further proceedings (regarding liability and damages) with respect to the customer defendants until the liability issue is resolved." *Nikken,* 2003 WL 21781149 at *2, *citing Refac,* 790 F.2d 79.

The customer suit exception is directly applicable.  As explained *supra* at pp. 2-5, Honeywell's '371 patent allegedly covers LCDs that are incorporated into various consumer electronic products.  Honeywell accuses those "end products" of infringement *on the basis that* the products incorporate an LCD display.  Companies that merely purchase LCDs from Seiko Epson and incorporate them into their products have no technical information concerning the internal structure of those LCDs and therefore have limited ability to defend themselves against Honeywell's infringement claims.  There is no basis for putting Seiko Epson's customers at the tactical disadvantage of proceeding to trial first, when Seiko Epson has intervened and is willing and able to litigate the infringement allegations directed toward its own LCD products.

The principal case relied upon by Honeywell, *Dentsply Int'l, Inc. v. Kerr Mfg. Co.,* 734 F.Supp. 656 (D. Del. 1990), is readily distinguishable.  In *Dentsply,* the manufacturer's motion to

9

stay was filed on February 6, 1990, only four months before the scheduled trial date in the original action, June 5, 1990. *Id.* at 658. The Court denied the motion because of the prejudice that would result to the patentee if it postponed the imminent trial of plaintiff's infringement action. *Id.* at 658-59. In contrast, discovery has not yet commenced in this action, the initial Scheduling Conference has not yet occurred, and no trial date has been set.

Adjudicating Seiko Epson's claims first will ***not*** significantly delay the adjudication of Honeywell's claims against its customers, if at all. Indeed, given the much greater complexity of Honeywell's two lawsuits against 35 different defendants selling a wide array of products containing LCDs supplied by many different manufacturers, Seiko Epson's claims could proceed to trial on a much more efficient and expeditious basis, and would potentially resolve liability issues for the more than 25 customer defendants who procure their LCDs from Seiko Epson.

**C.    Seiko Epson Is The Manufacturer Of The Accused Products For Purposes Of The "Customer Suit Exception"**

Honeywell contends that the "customer suit exception" is inapplicable in this case because Seiko Epson's customers "directly infringe the '371 patent in their own right." Honeywell's Opposition at p. 13 (D.I. 55). However, it is invariably the case that a customer defendant is a direct infringer, by virtue of its own use or sale of an accused product that is purchased from a manufacturer. What renders the "customer suit exception" applicable is that a determination of liability as to Seiko Epson and its LCD products will likewise determine infringement by the customer defendants' end products which incorporate the accused LCDs.

When a defendant purchases a component that is accused of infringement and then incorporates it into a different product, that defendant is still a "customer" for purposes of the "customer suit exception." If a determination of non-infringement against the manufacturer will release the customer of liability, then the "customer suit exception" is applicable, and the manufacturer's action will be given priority. *Ricoh Co. v. Aeroflex Inc.,* 279 F.Supp. 554, 558 (D.

10

Del. 2003); *Whelen Technologies, Inc. v. Mill Specialties, Inc.,* 741 F.Supp. 715, 716 (N.D. Ill. 1990). Stated another way, the manufacturer's suit will have priority where the patentee's "infringement claims against the [customer] defendants are fundamentally claims against the ordinary use" of the product purchased from the manufacturer. *Ricoh,* 279 F.Supp.2d at 557-58.

Numerous cases illustrate this point. For example, in *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D.Del. May 13, 2004), the patentee alleged infringement of two patents covering LCD technology. The Court stayed the action as to the original equipment manufacturers that incorporated the LCDs into "end products" such as computer monitors. The litigation proceeded only against the LCD manufacturers. *Commissariat,* 2004 WL 1554382 at *1-3; *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 293 F.Supp.2d 423, 425 (D. Del. 2003). Similarly, in *T.J. Smith and Nephew Ltd. v. Ferris Corp.*, 1987 WL 7496 (N.D. Ill. March 2, 1987), the Court stayed infringement claims against the manufacturer of certain adhesive dressings and gave priority to the suit involving Avery, the manufacturer of the base material used to make the dressings. *See also Ricoh,* 279 F.Supp.2d at 556-58 (giving priority to a later-filed declaratory judgment suit brought by the manufacturer of a software design tool, rather than the infringement action against the customers who used that tool to design and manufacture integrated circuit products).

The only fact pattern in which the manufacturer of a component product is ***not*** given priority is where the component itself does not infringe, but only infringes if it is used by the customer in a particular manner or is incorporated by the customer into an infringing product. This was the fact pattern in two of the cases cited by Honeywell. *See Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F.Supp.2d 354, 357 (D. Del. 2001) (manufacturer's equipment had many applications, only some of which allegedly infringed the process claims of the patent); *Kahn,* 889 F.2d at 1081-82 ("customer suit exception" inapplicable

to Motorola, whose integrated circuits were *not* accused of infringement, only the AM stereo receivers which used those components).

As these cases demonstrate, the focus of the "customer suit exception" is not which entities in a distribution chain engage in a manufacturing process, but where in the distribution chain the infringement first occurs. The entity that first manufactures the product accused of infringement is the "manufacturer defendant" and downstream purchasers of the product are "customer defendants" regardless of whether they use the product to manufacture something else, because a determination of liability as to the "manufacturer defendant" will also determine the liability of the downstream purchasers.

Seiko Epson designs, manufactures, and sells the LCD displays accused of infringement. Accordingly, adjudicating Seiko Epson's declaratory judgment claim will resolve the infringement issues concerning the end products manufactured and sold by Seiko Epson's customers. If Seiko Epson's LCDs do not infringe the '317 patent, then its customers do not infringe by their use or resale of those LCDs. On the other hand, if Seiko Epson's LCDs are found to infringe the '371 patent, Seiko Epson will be enjoined from supplying its LCDs to others and/or will enter into a license with Honeywell. Either way, a determination of infringement as to the LCDs sold by Seiko Epson will, as a practical matter, resolve Honeywell's infringement claims against the end products that incorporate Seiko Epson's LCDs. Accordingly, just like the end product manufacturers in *CAE, T.J. Smith* and *Ricoh,* it is appropriate for Seiko Epson's claims to proceed to trial first, not Honeywell's claims against Seiko Epson's customers.

**D.    Honeywell Does Not Have A "Special Interest" That Warrants Proceeding To Trial Against The Customer Defendants First Merely Because They Manufacture End Products**

Honeywell contends that it has a "special interest" in proceeding to trial against the customers of Seiko Epson because of "the type of damages recovery that would be obtainable"

12

from those end product manufacturers.  Honeywell's Opposition at pp. 12-13 (D.I. 55).

According to Honeywell, it "may be denied full value for its technology if it is forced to proceed

against LCD module manufacturers such as Seiko Epson." *Id.*

Honeywell fails to present any factual support for its contention that the LCDs at issue

add any significant value to the end products. Moreover, Honeywell's argument is undermined by

its own actions.  Honeywell has already entered into licenses with some LCD manufacturers, and

is using this litigation as leverage to negotiate licenses with other LCD manufacturers.  For

example, Honeywell has publicly announced license agreements with three major LCD

manufacturers, LG Philips, Samsung Electronics and NEC LCD Technologies.  Appendix, Exh.

A.  Once a manufacturer is licensed, its downstream purchasers are likewise protected against any

claims of infringement by Honeywell.  The fact that Honeywell is voluntarily negotiating royalty

agreements with LCD manufacturers, knowing that those licenses will preclude any further

recovery from downstream end product manufacturers, indisputably demonstrates that Honeywell

***can*** recover the value of its alleged invention from LCD manufacturers.  It is entirely inconsistent

for Honeywell to negotiate licenses with LCD manufacturers based on their sale of LCD modules,

and then insist that it should not be compelled to litigate directly with LCD manufacturers

because it can only recover the value of its patent from end product manufacturers.

Honeywell also fails to cite any legal precedent for the proposition that if the purchaser of

an accused component uses that component in a more economically valuable end product, that the

patentee has a "special interest" in the seller of the end product so as to avoid application of the

"customer suit exception."  Indeed, fundamental economics dictate that the sales revenues of a

"customer" – even if it is a mere reseller – will almost always exceed the sales revenues of the

"manufacturer," *i.e.,* the price charged by the customer will invariably exceed what the customer

paid for the product.  If higher revenues were sufficient to confer upon a patentee a "special

13

interest" to pursue a customer over the manufacturer, the "customer suit exception" would be inapplicable in most every instance.

Not surprisingly, Honeywell's theory is not supported in the case law. To the contrary, many courts have accorded priority in litigation to the manufacturer of an accused product, even though the accused component, materials or equipment was used by downstream purchasers to assemble or produce more economically valuable "end products." For example, in *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D.Del. May 13, 2004), the Court stayed all of the patentee's claims as to more than 55 end product manufacturers and retailers, and proceeded with only five LCD module manufacturers, even though the stayed defendants incorporated the LCDs into "larger pieces of equipment" (such as computer monitors) that had far greater economic value than the LCD panels by themselves. *See also Commissariat,* 293 F.Supp.2d at 424-25 (underlying facts of case). *Accord, Loral Fairchild Corp. v. Matsushita Elec.,* 266 F.3d 1358 (Fed. Cir. 2001) (stayed "customer defendants" manufactured end products that used the accused CCDs); *Ricoh Co. v. Aeroflex Inc.,* 279 F.Supp. 554, 558 (D. Del. 2003) (customer defendants were stayed while infringement action proceeded against Synopsys, the manufacturer of a design tool that was used by defendants to design and manufacturer integrated circuit products); *T.J. Smith and Nephew Ltd. v. Ferris Corp.,* 1987 WL 7496 (N.D. Ill. March 2, 1987) (staying customers who used the accused adhesive base materials to make adhesive dressings that were subsequently sold at retail).

The case Honeywell relies upon for its "special interest" argument is readily distinguishable. In *Dentsply,* the Court found that the patentee had a "special interest" in its action against the customer because it was the "sole vendor" of the product at issue. *Dentsply,* 734 F. Supp. at 659-60. *But cf. Whelen,* 741 F.Supp. at 716 (granting stay of customer action even though customer was the "sole instrument of promotion and subsequent sale and use of the

14

allegedly infringing products" in at least 33 states).  Such reasoning has no application here, where Seiko Epson supplies not one but more than 25 different companies with the LCDs that are accused of infringement.

    As these cases illustrate, the fact that customer defendants incorporate Seiko Epson's LCDs into "end products" such as digital cameras or cellular phones does not provide Honeywell with such a "special interest" in the customers that it warrants a stay of Seiko Epson's action. Seiko Epson remains the party with the greater interest and ability to litigate issues of infringement as to its own LCD products and should proceed to trial ahead of its customers.

**E.     There Is No Basis For Staying A Manufacturer's Action And Proceeding With An Infringement Action Against Its Customers When Both Actions Are Pending Before The Same Court**

    Although the "customer suit exception" often arises where a manufacturer action and a customer action are pending in different courts, manufacturers of accused products and their customers are sometimes parties to infringement litigation pending in the same court.  In this context, when there are more than 30 parties involved in the litigation, courts consistently streamline the proceedings by giving priority to the claims brought by or against the manufacturers of the infringing components and staying the litigation against purchasers of those products.  In contrast, when there are only a handful of parties, courts often proceed to trial with the manufacturers and customers simultaneously.  However, Honeywell has not cited ***any*** precedent for Honeywell's proposition that when manufacturer actions and customer actions are pending before the same Court and were both initiated before the commencement of discovery, the *manufacturers* should be stayed while their *customers* proceed to trial alone.

    The leading case on this issue could not be more directly on-point.  In *Commissariat a l'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D.Del. May 13, 2004), the patentee sued manufacturers of the accused LCD panels, OEMs which incorporated the LCDs

15

into "end products" such as computer monitors, and retailers that sold the "end products" to consumers. *Commissariat,* 293 F.Supp.2d at 425. The defendants moved to stay CAE's case against the end product manufacturers and retailers pending resolution of the case against the LCD manufacturers. *Commissariat,* 2004 WL 1554382 at *1-2. Finding that it would greatly simplify the case, the Court agreed with defendants' proposed approach and stayed the entire action as to all but the LCD manufacturers. The Court explained its reasoning as follows:

> "Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to context the validity and infringement of CEA's asserted patents. Resolving these issues prior to proceeding against the OEM/distributors and retailers would surely simplify this case. If, for example, CAE's patents were found invalid or the manufacturers [were] found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties."

*Id.* at *3.

This approach was approved by the Federal Circuit in *Refac Int'l, Ltd. v. IBM,* 790 F.2d 79 (Fed. Cir. 1986), where the district court separated for trial six manufacturer defendants from 31 customer defendants and stayed all further proceedings against the customer defendants. *Id.* at 81. The same approach was adopted when Loral alleged infringement of a patent that claimed a process for manufacturing a charge-coupled device ("CCD"), a component in electronic cameras. The Court severed and stayed Loral's claims against the "customer defendants" that purchased the accused CCDs and incorporated them into end products, and proceeded with the six CCD manufacturers. Appendix, Exh. B at p. 1. *See Loral Fairchild Corp. v. Matsushita Elec.,* 266 F.3d 1358 (Fed. Cir. 2001); *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 931 F.Supp. 1014 (E.D.N.Y. 1996). The Court stated that after the CCD manufacturers' trials were concluded, it would consider whether any further adjudication was needed as to the customer defendants on issues such as damages. Appendix, Exh. B at p. 2.

16

Although several courts have decided *not* to follow *Refac* and its progeny, those cases are readily distinguishable. For example, in *Rates Technology, Inc. v. New York Telephone Co.*, 1995 WL 438954 (S.D.N.Y. July 25, 1995), the court distinguished *Refac* on the basis that there were 37 defendants in *Refac* "and thus it made sense to simplify the case." In contrast, there were only three defendants in *Rates Technology*. Likewise, in *Beck Systems, Inc. v. Marimba, Inc.,* 2001 WL 1502338 (N.D. Ill. Nov. 20, 2001), the Court declined to apply "customer suit" exception because there were only four defendants and they were represented by the same attorneys. And in *Nikken, USA, Inc. v. Robinson-May, Inc.*, 2003 WL 21781149 (C.D. Cal. July 8, 2003), liability for infringement had already been determined.[4]

The present litigation, with more than 30 parties (and that number is growing), is directly analogous to *CAE, Refac* and *Loral,* in which the Courts streamlined similarly complex proceedings by staying the customer defendants (including end product manufacturers). Moreover, even in cases which had only three or four defendants, the courts tried the manufacturers and customers together. There is ***no*** applicable precedent supporting the relief sought by Honeywell – that claims brought by or against the LCD manufacturers should be stayed while Honeywell proceeds to trial against customers of the LCD manufacturers, which customers are only alleged to infringe because they use LCDs in their end products.

**F.    Honeywell Did Not Simplify Or Streamline This Litigation By Only Suing One Type Of Defendant**

Honeywell makes much of its claim that it has somehow avoided the complications presented in the *CAE* case by directing its claims "at a particular level of the distribution chain (*i.e.,* end product manufacturers/distributors)." Honeywell's Opposition at pp. 1, 3 (D.I. 55).

---

[4]  The primary case cited by Honeywell, *Dentsply,* 734 F.Supp. 656, is similarly inapplicable. In *Dentsply,* as in the other cases cited above, the court allowed the customer action and the manufacturer action to *both* proceed unimpeded, and *neither* was stayed. Moreover, the Court in *Dentsply* only had to address one patentee, one manufacturer, and one customer. *Id.*

17

However, it is extremely disingenuous for Honeywell to suggest that it has "simplified" this litigation by only suing those defendants who are not the real parties at interest, do not manufacture the components accused of infringement, and lack the technical information and expertise necessary to adjudicate the infringement issues.

Even as it is currently postured, the litigation initiated by Honeywell is far more complex than it represents. For example, rather than focus on one market segment, Honeywell has sued a wide array of companies that make an incredibly diverse range of products, including "laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, and/or portable game systems." Honeywell's Opposition at p. 4 (D.I. 55). Most of these market segments have unique LCD products and unique issues as to both liability and damages. Rather than choosing one market segment, Honeywell has apparently chosen a few representatives from each of many different consumer electronic markets and brought them all together into one case.

Moreover, Honeywell is incorrect in suggesting that it has only sued end product manufacturers, as opposed to the LCD manufacturers. At least five of the defendants sued in this action do not just manufacture "end products" sold to consumers, but *also* manufacture LCD modules. These "hybrid" defendants include at least Casio, Fuji Photo, Sanyo, Sony and Toshiba. The interests of these companies are clearly different than the other defendants. Moreover, while some defendants are only selling products in one market segment (*e.g.,* KWC only markets cellular phones), other defendants sell many different types of accused products.

The litigation is even more complex because of the matrix of relationships between the LCD suppliers and the end product manufacturers. Each end product manufacturer tends to source their LCDs from multiple suppliers, and most LCD manufacturers supply many different customer defendants. Moreover, as the real parties in interest are brought into the litigation to

18

defend their own products – whether by motions to intervene, third party complaints, or separate declaratory judgment actions – the posture of the resulting litigation may actually be *more* complex than that presented in the *CAE* case, where the patentee brought everyone in at once.

Proceeding to trial first with Seiko Epson and other LCD manufacturers is the most straightforward way of reducing these complexities.  If the Court adopts this approach, liability issues as to certain suppliers' LCD modules would be resolved as to all of the customer defendants who purchase LCDs from those suppliers.  Moreover, if the Court conducted a separate trial for each LCD manufacturer, each trial would have its own unique set of accused LCD products, so there would be no overlap between the different trials as to issues of infringement.  *See, e.g.*, *Loral Fairchild Corp. v. Matsushita Elec.,* 266 F.3d 1358 (Fed. Cir. 2001) (ordering separate trials for each of the six manufacturer defendants); *Philips Electronics North America Corp. v. Contec Corp.,* 220 F.R.D. 415, 417-18 (D. Del. 2004) (refusing to join for trial two unrelated distributors who sold different products accused of infringement).

### G.     Honeywell's Motion To Stay Seiko Epson Is Not Supported By The Existence Of Any Indemnification Issues

Honeywell asserts that introducing Seiko Epson into the litigation is undesirable due to "potential complexities" arising from "the intricacies of the indemnification agreement between Seiko Epson and the named Defendants it supplies."  Honeywell's Opposition at p. 14 (D.I. 55).  However, none of Seiko Epson's customers have asserted indemnification claims against it.  Since there are no indemnification issues in the litigation that pertain to Seiko Epson, there is no merit to Honeywell's argument.

If anything, the possibility of customer defendants seeking indemnification from Seiko Epson supports Seiko Epson proceeding to trial first.  The underlying claim – here, infringement by Seiko Epson's LCDs – should normally adjudicated first, and any indemnification claims should be litigated second.  *See, e.g., Rottlund Homes of New Jersey, Inc. v. Saul, Ewing, Remick*

19

*& Saul, LLP,* 243 F.Supp.2d 145 (D. Del. 2003) (staying third party complaint for indemnification pending litigation of underlying claims between parties). This would allow Seiko Epson the opportunity to first litigate its own liability. Following this well-established approach, Seiko Epson's declaratory judgment action should proceed to trial *ahead of* Honeywell's infringement claims against Seiko Epson's customers, not after.

## IV.  CONCLUSION

Seiko Epson manufactures the LCDs that are accused of infringement, and its customers' liability – if any – depends upon infringement or non-infringement by Seiko Epson. Seiko Epson has the greatest interest in adjudicating infringement as to its own LCD products and is the party best positioned to do so. Requiring that Seiko Epson's customers litigate Honeywell's infringement claims against Seiko Epson's LCDs – without Seiko Epson – could result in Seiko Epson being found liable without having the opportunity to defend its own products. Moreover, such an approach would deprive the customer defendants of the opportunity to have Seiko Epson litigate the infringement contentions that have been asserted against Seiko Epson's own products.

In short, Honeywell's proposed stay of Seiko Epson's claims completely defeats the purpose of Seiko Epson intervening in the first place. Seiko Epson's claims – not Honeywell's suit against Seiko Epson's customers – should proceed to trial first, and Honeywell's motion to condition Seiko Epson's intervention on a "post discovery stay" should be denied.

HUNTLEY & ASSOCIATES, LLC.


By:_____/s/ Donald W. Huntley_____
        Donald W. Huntley, (No. 2096)
        1105 North Market Street, Ste. 800
        P.O. Box 948
        Wilmington, DE 19899-0948
        Tel: (302) 426-0610

\\\CC - 81747/0239 - 46540 v1

*Attorneys for Defendant*
*Kyocera Wireless Corporation*

OF COUNSEL:
Stuart Lubitz
Robert J. Benson
Hogan & Hartson LLP
500 S. Grand Avenue, Suite 1900
Los Angeles, CA 90071
(213) 337-6840

April 7, 2005

21