Case 1:04-cv-01337-JJF   Document 59-9   Filed 04/07/2005   Page 1 of 6

Not Reported in F.Supp.  
1995 WL 438954 (S.D.N.Y.)  
**(Cite as: 1995 WL 438954 (S.D.N.Y.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,  
S.D. New York.  
RATES TECHNOLOGY INC., Plaintiff,  
v.  
NEW YORK TELEPHONE COMPANY d/b/a  
Nynex, Telesector Resources Group, Inc.,  
Mitsui & Co. (U.S.A.), Inc., and Tamura Electric  
Works, Ltd., Defendants.  
**No. 94 Civ. 9297 (DC).**

July 25, 1995.  
Ferber Greilsheimer Chan & Essner, by Robert N. Chan, New York City, - and -James & Franklin New York City, for plaintiff.

Richard H. Wagner, White Plains, NY, - and - Joel Bossom, New York City, for defendants Nynex and Trg.

MEMORANDUM DECISION

CHIN, District Judge.

*1 Defendants New York Telephone Company d/b/a NYNEX ("NYNEX") and Telesector Resources Group, Inc. ("TRG") move for an order: (i) staying plaintiff's patent infringement claim against NYNEX and (ii) dismissing or staying plaintiff's three state law breach of contract claims. For the reasons that follow, the motion is denied.

*Background*

This dispute concerns debit card pay telephones and a patent licensing agreement among plaintiff Rates Technology Inc. ("RTI"), NYNEX and its subsidiary TRG. RTI is the beneficial and record owner of a patent, U.S. Patent 4,122,308 (the "Patent"), which covers certain telephone device technology. [FN1] (Amended Complaint ("AC") at ¶ 8). In late 1991 or January 1992, NYNEX undertook a market test of debit card pay telephones manufactured by Landis & Gyr, Inc. ("Landis"). (AC at ¶¶ 10-11). RTI claimed that the Landis telephones infringed the Patent, and the dispute was resolved by RTI, NYNEX and TRG entering into a patent license agreement dated January 13, 1992 (the "Letter Agreement"), pursuant to which RTI granted NYNEX and TRG a license to use the Landis telephones. (AC at ¶ 12). Under the terms of the Letter Agreement, NYNEX and TRG agreed to pay RTI a license fee for each debit card telephone utilized in the market test. (AC at ¶ 14). NYNEX and TRG also agreed to obtain licenses, and to ensure that their suppliers had licenses, for any future intended use of technology covered by the Patent. (AC at ¶ 15).

In late 1994 and early 1995, NYNEX installed debit card pay telephones throughout its service area. These telephones were manufactured by defendant Tamura Electric Works, Ltd. ("Tamura") and distributed by defendant Mitsui & Co. (U.S.A.), Inc. ("Mitsui") (AC at ¶¶ 21-22). Plaintiff alleges that these telephones infringe the Patent and that defendants do not have a license for this use. (AC at ¶¶ 21-24).

In this action plaintiff alleges four claims:
(i) Breach of the Letter Agreement by NYNEX and TRG through theirfailure to pay plaintiff the license fee for each of the debit card pay telephones used in their market test (the first cause of action);
(ii) Infringement of the Patent by NYNEX, Mitsui and Tamura (the second cause of action);
(iii) Breach of the Letter Agreement by NYNEX knowingly infringing the Patent by deploying the Tamura and Mitsui debit card pay telephones (the third cause of action); and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
1995 WL 438954 (S.D.N.Y.)

**(Cite as: 1995 WL 438954 (S.D.N.Y.))**

(iv) Breach of the Letter Agreement by NYNEX acquiring telephones from suppliers which did not have a valid license for the Patent, thereby denying plaintiff its expected fee (the fourth cause of action).

By order dated March 23, 1995, I stayed discovery against NYNEX and TRG pending disposition of this motion to dismiss.

*Discussion*
1. *Stay of the Patent Claim against NYNEX*

NYNEX and TRG argue that plaintiff's infringement claims against them should be stayed for several reasons: First, NYNEX and TRG are mere customers of the true transgressors, *i.e.,* the manufacturer of the allegedly infringing products, and suits directly against manufacturers are preferred over suits against presumably less culpable customers. Second, Mitsui and Tamura are the real parties in interest and resolution of the claims against them would be dispositive of the patent claims against NYNEX and TRG. Third, fairness and efficiency require that NYNEX and TRG be spared the expense of litigating this matter at this time.

a. *The Customer Suit Exception*

**\*2** As a matter of sound judicial administration, courts have fashioned a "customer suit" exception to the general rule that where there are two competing lawsuits, the first-filed suit should have priority. Under this exception first-filed patent infringement actions against customers are stayed pending the adjudication of later claims against manufacturers. *See Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming stay of suit against customers pending resolution of separate suit against manufacturer); *William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 178-79 (2d Cir. 1969) (affirming stay of action against Woolworth Company in favor of separate action against manufacturer); *see also Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737-38 (1st Cir.), *cert. denied,* 434 U.S. 860 (1977) (affirming stay granted to determine priorities between competing lawsuits raising the same issue in different forums). The customer suit exception has been applied to different claims within a single lawsuit in the unusual situation where there were 37 defendants, and the 31 customer defendants agreed to be bound by any decision against the manufacturers. *Refac Int'l Ltd. v. IBM,* 790 F.2d 79 (Fed. Cir. 1986), *modified on other grounds,* 798 F.2d 459 (Fed. Cir. 1986) (affirming stay as method of separating claims against 31 customers from claims against 6 manufacturers). The rationale underlying the customer suit exception is that the manufacturer and the patent holder are the true parties in interest, and an action between them is to be favored over an action commenced in another district against a reselling customer of the manufacturer. *William Gluckin & Co.,* 407 F.2d at 178-79.

The customer suit exception is inapplicable to the instant action. First, there is no question of competing lawsuits and no issue of priority between actions. The parties have not cited to any related proceedings, and all the alleged infringers are parties to this action. Nor do the considerations that warranted a stay of the claims against customers in the *Refac* case exist in the present case. In *Refac,* there were 37 defendants, and thus it made sense to simplify the case. Here, there are only three defendants. More importantly, the customers in *Refac* agreed to be bound by the result; NYNEX and TRG have offered no such agreement here.

Second, NYNEX is not a mere customer of Tamura and Mitsui within the meaning of the "customer suit" exception. *Cf. William Gluckin & Co.,* 407 F.2d at 178. Rather plaintiff alleges that NYNEX studied the Patent during the test market and then induced Tamura and Mitsui to produce infringing telephones. (AC at ¶ 26). Hence, according to the allegations of the amended complaint, NYNEX is not a mere "innocent" customer.

Third, efficient case management does not require a stay under these circumstances. On the contrary, as the patent claims against defendants Tamura and Mitsui and, as set forth below, the contract claims against NYNEX will be proceeding, efficiency and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp.

Not Reported in F.Supp.