**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and<br>HONEYWELL INTELLECTUAL PROPERTIES INC.,<br><br>       Plaintiffs,<br><br>v.<br><br><br>AUDIOVOX COMMUNICATIONS CORP.;<br>AUDIOVOX ELECTRONICS CORPORATION;<br>NIKON CORPORATION; NIKON INC.;<br>NOKIA CORPORATION; NOKIA INC.;<br>SANYO ELECTRIC CO., LTD.; and<br>SANYO NORTH AMERICA CORPORATION,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 04-1337-KAJ<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and<br>HONEYWELL INTELLECTUAL PROPERTIES INC.,<br><br>       Plaintiffs,<br><br>v.<br><br>APPLE COMPUTER, INC.; ARGUS A/K/A<br>HARTFORD COMPUTER GROUP, INC.; CASIO<br>COMPUTER CO., LTD.; CASIO, INC.; CONCORD<br>CAMERAS; DELL INC.; EASTMAN KODAK<br>COMPANY; FUJI PHOTO FILM CO., LTD.; FUJI<br>PHOTO FILM U.S.A., INC.; FUJITSU LIMITED;<br>FUJITSU AMERICA, INC.; FUJITSU COMPUTER<br>PRODUCTS OF AMERICA, INC.; KYOCERA<br>WIRELESS CORP.; MATSUSHITA ELECTRICAL<br>INDUSTRIAL CO.; MATSUSHITA ELECTRICAL<br>CORPORATION OF AMERICA; NAVMAN NZ<br>LIMITED; NAVMAN U.S.A. INC.; OLYMPUS<br>CORPORATION; OLYMPUS AMERICA, INC.;<br>PENTAX CORPORATION; PENTAX U.S.A., INC.;<br>SONY CORPORATION; SONY CORPORATION OF<br>AMERICA; SONY ERICSSON MOBILE<br>COMMUNICATIONS AB; SONY ERICSSON MOBILE<br>COMMUNICATIONS (USA) INC.; TOSHIBA<br>CORPORATION; and TOSHIBA AMERICA, INC.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)    C.A. No. 04-1338-KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPENING BRIEF IN SUPPORT OF CUSTOMER DEFENDANTS'
JOINT MOTION TO STAY CASES PENDING RESOLUTION OF
LCD MODULE MANUFACTURERS' CASES**

OF COUNSEL:

Barry W. Graham
John F. Hornick
Darren M. Jiron
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413


OF COUNSEL:

Stuart Lubitz
David H. Ben-Meir
Robert J. Benson
HOGAN & HARTSON, LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067


OF COUNSEL:

Michael J. Fink
P. Branko Pejic
Neil F. Greenblum
GREENBLUM AND BERNSTEIN, PLC
1950 Roland Clarke Place
Reston, VA 20191



Dated: April 12, 2005

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
Phone: (302) 984-6000

*Attorneys for Defendants*
*Nikon Corporation and Nikon Inc.*


Donald W. Huntley
HUNTLEY & ASSOCIATES, LLC
1105 North Market Street
P.O. Box 948
Wilmington, DE 19899-0948
Phone: (302) 426-0610

*Attorneys for Defendant*
*Kyocera Wireless Corp.*


Adam Wyatt Poff
YOUNG, CONAWAY, STARGATT, &
TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Phone: (302) 571-6600

*Attorneys for Defendants*
*Pentax Corporation and*
*Pentax of America, Inc.*

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

II.   SUMMARY OF ARGUMENT ............................................................... 5

III.  FACTUAL BACKGROUND ............................................................... 8

      A.  NIKON SITUATION ...............................................................    8

      B.  PENTAX SITUATION ...............................................................10

      C.  KWC SITUATION...................................................................11

IV.   ARGUMENT........................................................................... 12

      A.  A STAY OF THE PROCEEDINGS AGAINST THE CUSTOMER DEFENDANTS
          PENDING DISPOSITION OF HONEYWELL'S CLAIMS AGAINST THE LCD
          MANUFACTURERS WILL SIMPLIFY THE ISSUES AND THE TRIAL
          OF THE CASE......................................................................14

      B.  HONEYWELL WILL NOT BE PREJUDICED BY A STAY IN THE PROCEEDINGS
          AGAINST THE CUSTOMER DEFENDANTS PENDING RESOLUTION OF THE
          CLAIMS AGAINST THE LCD MANUFACTURERS...............................18

V.    CONCLUSION ........................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
   C.A. 03-484-KAJ, 2004 WL 1554382, at \*3 (D. Del. 2004) ......................5, 12, 13, 17

*Kahn v. General Motors Corp.*,
   889 F.2d 1078, 1081-82 (Fed. Cir. 1989) ..............................................................16, 17

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459, 1464 (Fed.Cir.1990) ..........................................................................16

*Ricoh Co. v. Aeroflex Inc.*,
   279 F.Supp.2d 554, 558 (D. Del. 2003).......................................................................17

*T.J. Smith and Nephew Ltd. v. Ferris Corp.*,
   1987 WL 7496 (N.D. Ill. March 2, 1987).....................................................................17

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
   766 F. Supp. 212, 217 (D. Del. 1991)..........................................................................13

**Other Authorities**

David F. Herr, Annotated Manual for Complex Litigation, §33.63 (3d ed.2003)............16

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Simply put, the nature of the proceedings is complicated and complex; the stage of the proceedings, nascent.  By this motion to stay, Nikon Corporation and Nikon Inc. ("Nikon"), Pentax Corporation and Pentax of America, Inc.[1] ("Pentax"), and Kyocera Wireless Corp. ("KWC"), as customer defendants whose suppliers are in this litigation, coming into the litigation, or are settling, seek to simplify and streamline these cases so that they can proceed with as much judicial and litigant economy as possible.  The economies can be fostered by staying the litigation against these customer defendants -- who neither design nor manufacture the allegedly infringing component but purchase and use the component or purchase original equipment manufactured products containing the component -- pending the outcome of the cases against the manufacturers of the component.

These are two cases filed by Honeywell International Inc. and Honeywell Intellectual Properties Inc. ("Honeywell") alleging infringement of U.S. Patent No. 5,280,371, entitled "Directional Diffuser for a Liquid Crystal Display" ("the '371 patent").[2] The '371 patent claims are directed to a specific liquid crystal display ("LCD") structure.[3]

---

[1] Formerly, Pentax U.S.A. Inc.

[2] C.A. No. 04-1338-KAJ ("the 1338 case") and C.A. No. 04-1337-KAJ ("the 1337 case") (collectively, "the Honeywell suits").

[3] The '371 patent contains three claims, two of which are independent claims and all of which are for "a display apparatus" comprising "a light source," "a liquid crystal panel," and "first and second lens arrays."  Honeywell has identified independent claim 3 as the only asserted claim.  Claim 3, reads as follows:

A display apparatus comprising:
    a light source;
    a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and
      first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a

*footnote continued on next page*

Complicating the matter, Honeywell sued a mix of defendant types -- totaling 35 companies --, asserting that the products sold by the defendants contain, as a component, the claimed LCD structure. The defendant types are:

      1. <u>LCD module manufacturers ("LCD Manufacturers")</u>, who design and make the allegedly infringing component. Some of the LCD Manufacturers, called "hybrids," not only manufacture and sell LCDs as component parts for others to use in end products but also incorporate LCDs as components in products sold under their own brand names or under brands of others on an original equipment manufacturer ("OEM") basis; and

      2. <u>Non-manufacturers of LCDs</u>, who do not design and do not make the LCDs. The non-manufacturers of LCDs either purchase the LCDs as components for use in their own products or purchase, on an OEM basis, products containing LCDs chosen by the OEMs. Within this type of defendant are Movants Nikon, Pentax, and KWC, all of whose upstream suppliers are in the litigation, coming into the litigation, or are settling. The Movants are referred to in this motion as the "Customer Defendants".[4]

---

    predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenslets and said liquid crystal panel.

[4] Nikon buys LCD screens, incorporates them as components in Nikon-brand digital still cameras ("DSCs"), and then sells the end product DSCs. Nikon also purchases DSCs OEMed by others, which cameras contain LCD screens manufactured or purchased by those camera OEMs, and then sells the DSCs as Nikon-brand cameras. Pentax is in the same situation. KWC buys LCD screens, incorporates them as components in cell phones, and then sells the end product phones. All of the LCD suppliers to Nikon are defendants as are Nikon's OEMs. Pentax's LCD suppliers are either in the litigation, coming into the litigation, or are settling. Pentax's OEM is a defendant. And all of KWC's LCD suppliers are either in or coming into the litigation or are settling. The LCD supply chain to Nikon is illustrated in attached Ex. A.

In response to the Honeywell suits, LCD module manufacturers named as defendants in these cases are defending their LCDs against Honeywell's infringement allegations. Additionally, LCD module manufacturers not already named as defendants in either case are also defending their LCDs against Honeywell's infringement allegations. Optrex America, Inc. ("Optrex"), an LCD manufacturer, filed a declaratory judgment action in this Court, C. A. No. 04-1536-KAJ ("the 1536 case"), against Honeywell asserting that Optrex's LCDs do not infringe the '371 patent and/or that the '371 patent is invalid. Optrex's declaratory judgment action arises out of Honeywell's patent infringement allegations against KWC, which purchases LCD modules from Optrex. Additionally, Seiko Epson Corporation ("Seiko Epson"), as an LCD manufacturer, has filed motions to intervene in the 1337 and 1338 cases. (1337 D.I. 50; 1338 D.I. 136.) Seiko Epson sells LCD modules to over 25 of the 36 named defendants in the 1337 and 1338 cases and seeks to intervene to protect both its own interests and the interests of its customers by a declaratory judgment action against Honeywell. (1337 D.I. 50, Seiko Epson's Mot. to Intervene, p. 2.)

Honeywell has filed a motion to consolidate LCD manufacturer Optrex's declaratory judgment action with the 1338 case. (1338 D.I. 134.) Honeywell's motion also seeks to postpone the trial of Optrex's declaratory judgment action, pending resolution of the 1338 case. Honeywell has also opposed Seiko Epson's motions to intervene and asks the Court to condition intervention by postponing the trial of Seiko Epson's challenge to Honeywell's patent. (1337 D.I. 55; 1338 D.I. 147.) Oppositions to Honeywell's attempt to

stay the declaratory judgment action trial of LCD Manufacturer Optrex have been filed by

Optrex and by Customer Defendant KWC.[5](1536 D.I. 19; 1338 D.I. 154.)

       In both the 1337 case and the 1338 case, customer defendants, including

Movant KWC, have initiated efforts to bring their LCD suppliers into the litigation. In the

1337 case, Audiovox Communications Corp. ("ACC") filed a Third Party Complaint against

Toshiba Corporation ("Toshiba") and Curitel Communications, Inc. ("Curitel"), alleging

breach of warranty and seeking indemnification against Honeywell's claims arising from

infringement of the '371 patent. (1337 D.I. 49.) Also in the 1337 case, Nokia Corporation

and Nokia Inc. have filed a Motion for Leave to File a Third-Party Complaint against their

LCD suppliers Koninklijke Philips Electronics N.V. and Samsung SDI Co., Ltd., seeking

indemnification. (1337 D.I. 57.) Additionally in the 1337 case, Audiovox Electronics

Corporation ("AEC") is seeking a stipulation from the 1337 parties regarding AEC's filing a

Third Party Complaint seeking indemnification from Panasonic Industrial Sales. Co.,

Chunghwa Picture Tubes Limited, AU Optronics Corporation, and Prime View International

Co. Limited ("Prime View") regarding Honeywell's allegations of infringement of the '371

patent.

       Also, in the 1338 case, KWC filed a third party action against Optrex, Philips

Electronics North America Corp. ("Philips"), and Wintek Electro-Optics Corporation

---

[5] As fully explained in the oppositions, the appropriate, most efficient way to proceed in these litigations is for the LCD Manufacturers to defend the infringement assertions by proceeding through trial while the customer defendants are stayed. Simply put, Honeywell -- who wants the customer defendants, including Movants, to go forward through discovery and trial rather than the LCD manufacturers -- has it backwards. The LCD manufacturers should go forward rather than the customer defendants.

("Wintek") seeking indemnification for all or a portion of Honeywell's claims concerning the '371 patent and expenses incurred defending against those claims. (1338 D.I. 114.)

Fuji Photo Film Co., Ltd. and Fuji Photo Film U.S.A., Inc. ("Fuji Photo") have filed a motion to require Honeywell to amend its Complaint to provide a more definite statement of its claims. (1338 D.I. 95.) The Fuji Photo motion is based on Honeywell's failure in its 1338 Complaint to identify any specific products that allegedly infringe the '371 patent, thus making the identity and scope of allegedly infringing products unclear. (The 1337 original, First Amended, and Second Amended Complaints suffer from the same deficiencies. (1337 D.I. 1; D.I. 9; and D.I. 39.)) Fuji Photo has also moved for a change of venue. (1338 D.I. 97.)

Presently, in addition to Honeywell, and taking into consideration Declaratory Judgment Plaintiff Optrex, Intervenor Seiko Epson, and the existing and pending third-party defendant LCD manufacturers as parties, the "defendants" consist of:

1. 16 LCD Manufacturers, 5 of which are hybrids; and

2. 30 non-LCD manufacturers, 5 of which are the Movant-Customer Defendants.

A scheduling conference is set for May 16, 2005. No discovery has been taken or requested. No trial dates have been set.

## II.    SUMMARY OF ARGUMENT

As in the *CEA* case pending before this Court, the Customer Defendants should be stayed from the Honeywell suits pending resolution of the patent infringement claims defended by the Customer Defendants' LCD Manufacturers. *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, C.A. 03-484-KAJ, 2004 WL 1554382, at *3

(D. Del. 2004) (Memorandum Order granting customer defendant stay while the LCD manufacturer defendants defend the patent infringement claims) (Attached as Ex. B.).

The resolution of Honeywell's allegations of infringement against the Customer Defendants hinges on whether the LCD devices manufactured by the LCD Manufacturers infringe any valid, enforceable claim of the '371 patent. As has been recognized in similar contexts, the determination of patent infringement claims against the device manufacturers will, as a practical matter, resolve the case against the users of the manufactured devices. It is the device manufacturers -- in these cases, the LCD Manufacturers -- who have an overriding interest in defending their products and who have the technical information necessary to defend against claims of patent infringement. As purchasers and users of the allegedly infringing devices, the Customer Defendants have no technical information concerning the design or manufacture of the LCD modules, nor any ability to address fully and thoroughly the substance of the claims raised by Honeywell.

The barrier to technical information and inability to defend fully is exacerbated in the OEM situation, where an OEM is in the supply chain between the Customer Defendant and the LCD Manufacturer who supplies LCDs to the OEM. Both Nikon and Pentax are in this difficulty. Some of the DSCs are made by camera OEMs who choose the LCD supplier and select which LCDs will go into the cameras OEMed for Nikon and Pentax. All of the Nikon and the Pentax OEMs are defendants in the Honeywell suits. Moreover, the LCD manufacturers who supply the LCDs to Nikon's and Pentax's OEMs are either already defendants, are being joined as defendants, or are settling with Honeywell. Similarly, all of the LCD manufacturers who sell LCDs directly to Nikon, Pentax, and KWC are either already defendants and/or declaratory judgment action plaintiffs, are being joined

6

as defendants, or are settling with Honeywell. Thus, all of the LCD manufacturers in the supply chains to Movants are in the suits, or are being brought in and can defend their LCDs, or have already resolved any liability of their downstream customers by taking a license from Honeywell. Simply put, no justification exists for the expenditure of the resources that would be required of the Court and of the Customer Defendants' by the Customer Defendants' needless participation in the Honeywell suits.

Furthermore, the LCD Manufacturers are far better situated to litigate the issues and have a greater interest in defending their products against charges of patent infringement. In their Answers, the LCD Manufacturers have denied all charges of infringement and have asserted defenses of non-infringement, patent invalidity, and patent unenforceability, among other defenses. The LCD Manufacturers, not the Customer Defendants, have all the witnesses and documents needed to establish these defenses.

This Court's consideration of Honeywell's claims and the LCD Manufacturers' defenses will efficiently dispose of all infringement issues involving the Customer Defendants. Either the LCD Manufacturers will prevail and the sale of the LCD Manufacturers' products will be determined as non-infringing (and/or the '371 patent will be held invalid and/or unenforceable), or Honeywell will prevail and the LCD Manufacturers will be forced to pay damages, stop selling the LCD modules, and/or negotiate a license under the patent. Regardless of the outcome, the Customer Defendants' liability (or lack thereof) will be determined by litigation between Honeywell and the LCD Manufacturers. The continued presence of the Customer Defendants in this action will not advance the resolution of the dispute between Honeywell and the LCD Manufacturers.

Moreover, Honeywell will suffer no prejudice as a result of a stay of proceedings against the Customer Defendants pending resolution of the claims against the LCD Manufacturers because the relief sought by Honeywell from the Customer Defendants will be dependent on the outcome of the proceedings against the LCD Manufacturers. If any "clean-up" issues remain at the conclusion of the litigation between Honeywell and the LCD Manufacturers, Honeywell will be able to pursue those issues at that time. Thus, the Customer Defendants respectfully submit that equity and good case management strongly counsel for a stay of this proceeding with respect to the Customer Defendants, pending resolution of the claims against the LCD Manufacturers.

## III.    FACTUAL BACKGROUND

None of the Customer Defendants designs or manufactures LCD modules. All of the Customer Defendants merely purchase LCDs as components or purchase OEMed products containing LCDs as components.

### A.    Nikon Situation

In its Complaints, Honeywell did not specifically identify any allegedly infringing Nikon products. (1337 D.I. 1; D.I. 9; and D.I. 39.) In subsequent communications, however, Honeywell has indicated that the Coolpix 2100 and Coolpix 3100 --two Nikon DSCs-- allegedly infringe claim 3 of the '371 patent. Nikon purchased both the Coolpix 2100 and the Coolpix 3100 from Defendant Sanyo as OEM products. Defendant Sanyo manufactured the LCD modules included in the Coolpix 3100 and acquired the LCD modules for the Coolpix 2100 from Defendant Casio. Thus, not only are the manufacturers of the accused Nikon DSCs defendants in the Honeywell suits, but also all of the LCD module suppliers to Sanyo for the OEMed Nikon DSCs are defendants in the Honeywell suits. Even if Honeywell broadened its infringement claims to include Nikon DSCs other

8

than the Coolpix 2100 and Coolpix 3100, the result would be the same. Specifically, every LCD module contained in Nikon DSCs is manufactured either by a defendant in the Honeywell suits, by a soon-to-be third-party defendant in the Honeywell suits, or by a settling, non-party LCD manufacturer. (Okishio Decl., Ex. C at 9-11.)

The LCD supply chain for Nikon's DSCs is described below and illustrated in Exhibit A.

DSCs sold by Nikon Inc. in the United States are either manufactured by Nikon wholly-owned subsidiaries or supplied to Nikon Corporation by a camera OEM. (Okishio Decl., Ex. C at 5.) LCD modules for the DSCs manufactured by the Nikon wholly-owned subsidiaries are purchased from two LCD Manufacturers through suppliers in Japan or Singapore. (*Id.* at 7.) The Nikon wholly-owned subsidiaries merely install the purchased LCD modules into the cameras. (*Id.*)

Regarding the OEM-supplied DSCs, Nikon receives them from the OEMs already equipped with LCD modules selected, purchased, and installed by the OEMs. (*Id.* at 8.) Nikon does not design, manufacture, or assemble any of the LCDs incorporated into any of its DSCs. (*Id.* at 6; LoPinto Decl., Ex. D at 2.)

Every direct supplier to Nikon of an LCD module is named as a party in the Honeywell suits, specifically,

Defendant Sanyo[6], and

Defendant Sony.  (Ex. C at 9.)

---

[6] After Honeywell sued Nikon in October 2004, Nikon's supply of Sanyo LCDs began coming from a joint venture owned by Defendant Sanyo and Intervenor Seiko Epson, that is, Sanyo Epson Imaging Devices Corp. ("Sanyo Epson").

9

Every camera OEM supplier to Nikon of DSCs containing an LCD screen is named as a party in the Honeywell suits, specifically,

Defendant Sanyo, and

Defendant Matsushita. (*Id.* at 10.)

Moreover, every LCD module contained in the DSCs OEMed for Nikon is manufactured either by Defendants in the Honeywell suits, by a soon-to-be third-party defendant in the Honeywell suits, or by a settling, non-party LCD manufacturer, specifically,

Defendant Sanyo[7],

Defendant Sony,

Defendant Casio,

Third-Party Target PrimeView, and

Settling, non-defendant Sharp. (*Id.* at 11.)

## B. Pentax Situation

The LCD supply chain for Pentax's DSCs is described below and illustrated in Exhibit E.

DSCs sold by Pentax are either manufactured by Pentax Corporation or supplied to Pentax by a camera OEM. (Itami Decl., Ex. F at 2, 8; Hodnett Decl., Ex. G at 2.) LCD modules for the DSCs manufactured by Pentax Corporation are obtained from five independent LCD Manufacturers. (Ex. F at 7.) Regarding the OEM-supplied DSCs, Pentax receives them from the OEM already equipped with LCD modules. (Ex. F at 8, 11.) Thus, Pentax does not design, manufacture, or assemble any of the LCDs incorporated into its DSCs. (Ex. F at 6; Ex. G at 2.)

---

[7] After October 2004, Sanyo LCDs have been supplied by Defendant Sanyo's and Intervenor Seiko Epson's joint venture, Sanyo Epson.

Pentax obtains its LCD modules from the following suppliers:

Defendant Sanyo,

Defendant Sony,

Defendant Casio,

Intervenor Seiko-Epson, and

Settling Sharp. (Ex. F at 7, 9.)

Pentax's sole camera OEM, Defendant Sanyo, is named as a party in the

Honeywell suits. (*Id.* at 8, 9.)

Moreover, every LCD module contained in the DSCs OEMed for Pentax is

manufactured either by Defendants in the Honeywell suits, by a soon-to-be third-party

defendant in the Honeywell suits, or by a settling, non-party LCD manufacturer, specifically,

Defendant Sanyo,

Defendant Casio, and

Settling Sharp. (*Id.* at 11.)

### C.  KWC Situation

KWC is in the business of manufacturing and selling wireless mobile handsets

that contain liquid crystal displays ("LCDs"). (Timms Decl., Ex. H at 2.)  KWC does not

design, manufacture, or assemble any of the LCD modules contained in these wireless

mobile handsets, nor does KWC have any technical information regarding the internal

structure of the LCDs. (*Id.* at 3.)  Rather, the LCD modules used in the handsets

manufactured and sold by KWC are purchased from various LCD suppliers. (*Id.*)

The handsets sold by KWC in the United States contain LCDs that were

manufactured by and/or purchased from:

Third-Party Defendant/Declaratory Judgment Plaintiff Optrex,

11

Third-Party Defendant Philips,

Third-Party Defendant Wintek,

Intervenor Seiko Epson, and

Settling Sharp. (*Id.* at 4.)

Thus, the real parties in interest, the LCD Manufacturers, are all in the

Honeywell suits, seeking to intervene, being brought into the suits, or settling.

## IV.    ARGUMENT

The Honeywell suits are akin to another multiparty, multi-case patent

infringement litigation involving LCD technology, namely, the *CEA* cases presently pending

before the Court, in which the Court stayed the LCD customer defendants while the LCD

manufacturer defendants defend the patent infringement claims. The Court's Memorandum

Order granting the customer stay (Ex. B) is quite instructive and applicable to the Customer

Defendants' motion to stay in the Honeywell suits.

A succinct summary of the law is found on page 2 of the Memorandum Order,

which states:

> In general, a district court has broad discretion when deciding
> whether to consolidate or stay proceedings. *See* Fed. R. Civ. P.
> 42(a); *Bechtel Corp. v. Laborers' International Union*, 544
> F.2d 1207, 1215 (3d Cir. 1976). Federal Rule of Civil
> Procedure 42 provides that, "[w]hen actions involving a
> common question of law or fact are pending before the court, it
> may order a joint hearing or trial of any or all the matters in
> issue in the actions; it may order all the actions consolidated;
> and it may make such orders concerning proceedings therein as
> may tend to avoid unnecessary costs or delay." Fed. R. Civ. P.
> 42(a) (2004).
>
> The power to stay proceedings "is incidental to the power
> inherent in every court to control the disposition of the cases on
> its docket with economy of time and effort for itself, for
> counsel, and for litigants." *Cheyney State College Faculty* v.
> *Hufstedler*, 703 F.2d 732, 738 (quotation omitted). When

considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).

The Court in the *CEA* cases, disagreeing with the patent owner's argument

that a stay would not simplify the issues, ordered the customer stay, concluding at page 3 of

the Memorandum Order:

"[i]t is common practice to stay all pending [patent] litigation except the first suit between the patent owner and a manufacturer or a higher level supplier." David F. Herr, Annotated Manual for Complex Litigation, §33.63 (3d ed.2003); see also Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed.Cir.1990) ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"). Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of CEA's asserted patents. Resolving these issues prior to proceeding against the OEM/distributors and retailers would surely simplify this case. If, for example, CEA's patents were found invalid or the manufacturers would found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties.

As discussed below, the first two *United Sweetener* factors weigh in favor of

granting the Customer Defendants a stay because the stay will simplify the issues and the

trial of the cases and will not prejudice Honeywell. Additionally, discovery has not yet

commenced and no trial dates have been set in these cases and, thus, the cases are in their

nascent stages. Accordingly, the third and fourth *United Sweetener* factors also weigh in

favor of the issuance of the Customer Defendant stay. Substantial judicial and party

13

economies and savings can be achieved by the issuance of a stay of the Customer Defendants.

**A.    A Stay Of The Proceedings Against The Customer Defendants Pending Disposition Of Honeywell's Claims Against The LCD Manufacturers Will Simplify The Issues And The Trial Of The Case**

A stay of the proceedings against the Customer Defendants pending the Court's determination of the merits of Honeywell's case against the LCD Manufacturers will simplify the issues presented in this action, will simplify the trial of the case, and will provide substantial judicial and party economy. The stay will allow the suits to proceed against only those parties able to address fully the issues of infringement, validity, and enforceability of the '371 patent, namely, the real parties in interest: the LCD Manufacturers. Moreover, the stay will conserve judicial resources and prevent unnecessary expense to the Customer Defendants.

The Customer Defendants are not involved in the design, manufacture, or assembly of the allegedly infringing LCD modules. The Customer Defendants are merely purchasers and users of the allegedly infringing LCD modules or purchasers of cameras manufactured by OEMs, who select the LCD supplier and the LCDs used in the OEMed cameras.

In contrast to the Customer Defendants, the LCD Manufacturers possess detailed knowledge of the design, operation, and use of the allegedly infringing LCD modules. Thus, the LCD Manufacturers are much better suited than the Customer Defendants to contest the validity, infringement, and enforceability of the '371 patent. Requiring the LCD Manufacturers to resolve the issues of validity, infringement, and enforceability prior to proceeding against the Customer Defendants would greatly simplify this case, both pre-trial and through trial. Indeed, if the '371 patent is found to be invalid, or

14

if the LCD Manufacturers are found not infringing, or if the patent is unenforceable, then

there would be no need whatsoever to proceed against the Customer Defendants.

The LCD manufacturers are not only in a better position to defend, but some

of them also wish to defend in lieu of their customers, a point succinctly acknowledged by an

LCD manufacturer who is seeking to become an LCD Manufacturer defendant. Specifically,

Intervenor Seiko Epson states in its motion to intervene that:

> There are a number of different ways in which a
> manufacturer's interests may not be adequately represented by
> a customer defendant in a patent infringement action. Even
> though a manufacturer's interests are aligned with its
> customers, and its customers are "represented by highly
> experienced, competent lawyers and [are] assisted by talented
> scientific and technical experts," the manufacturer has "a very
> high, even unique, level of expertise" concerning its own
> products that is not shared by its customers. ... Customers that
> do not participate in the design and manufacture of the accused
> components, but instead purchase the components and
> assemble them into end products, "may not be able to
> adequately represent [the component manufacturer's] interests"
> in the litigation. ... [ ] Moreover, due to its limited knowledge
> of the design and development of the accused product, the
> customer may not assert all non-infringement and invalidity
> defenses that are applicable to the manufacturer's products.

(1337 D.I. 50, Seiko Epson's Brief in Support of Its Mot. to Intervene, p.18) (citations

omitted).

The trials of the Honeywell cases would be far simpler with the Customer

Defendants stayed. Fewer parties, fewer products, and fewer attorneys all will result in

streamlined litigation of the principal issues between the principal parties, will lead to shorter

trials, and will facilitate jury comprehension of the issues and reduce potential juror

confusion.

Additional support for staying the Customer Defendants is found by analogy

to the "customer suit exception" to the first to file situation in which the patentee sues

customers and then the manufacturer of the accused goods sues the patentee to protect the

accused goods and the manufacturer's customers. In such cases, stays of actions against

customer defendants in favor of actions by or against product manufacturers have been

consistently recognized as an appropriate exercise of judicial control over the efficient

administration of justice. As noted in the Manual for Complex Litigation:

> It is common practice to stay all pending [patent] litigation
> except the first suit between the patent owner and a
> manufacturer or a higher level supplier. Later suits against
> customers are routinely stayed, and a declaratory judgment suit
> by the manufacturer of the claimed infringing product is
> preferred over even an earlier filed suit by the patent owner
> against a customer.

David F. Herr, *Annotated Manual for Complex Litigation*, § 33.63 (3d ed. 2003); *see also,*

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("litigation against or

brought by the manufacturer of infringing goods takes precedence over a suit by the patent

owner against customers of the manufacturer"). This rule favoring the adjudication of patent

claims against the manufacturer or upstream parties applies when the customer is a reseller of

the accused goods, even if the customer suit is the first-filed. *See Kahn v. General Motors*

*Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989) (*citing William Gluckin & Co. v.*

*International Playtex Corp.*, 407 F.2d 177, 177-78 (2d Cir. 1969) (action against reseller

stayed in favor of action on the identical issues brought by manufacturer)). A manufacturer,

whose business or product line is at risk, has a far greater incentive than a customer to refute

a patentee's infringement claims against its products or their use. *Katz*, 909 F.2d at 1464

(*quoting Codex Corp. v. Milgo Electronics Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)).

When a defendant purchases a component that is accused of infringement and

then incorporates it into a different product, that defendant is still a "customer" for purposes

of the "customer suit exception." If a determination of non-infringement against the

16

manufacturer will release the customer of liability, then the "customer suit exception" is

applicable, and the manufacturer's action should be given priority. *Ricoh Co. v. Aeroflex*

*Inc.*, 279 F.Supp.2d 554, 558 (D. Del. 2003). Stated another way, the manufacturer's suit

"should be given preference over a patentee's suit against the manufacturer's customers

when those customers are being sued for their <u>ordinary use</u> of the manufacturer's products."

*Id.* at 557. (Emphasis added.)

Numerous cases illustrate this point. For example, this Court's *CEA* case is

directly on point. The patentee alleged infringement of two patents covering LCD

technology and sued manufacturers of the accused LCD panels, OEMs that incorporated the

LCDs into "end products" (such as computer monitors), and sellers of the "end products."

The Court stayed the action as to the OEMs and the sellers of end products. The litigation

proceeded only against the LCD manufacturers. *Commisseriat*, 2004 WL 1554382 at *1-3.

Similarly, in *T.J. Smith and Nephew Ltd. v. Ferris Corp.*, 1987 WL 7496 (N.D. Ill. March 2,

1987)(Attached as Ex. I), the Court stayed infringement claims against the manufacturer of

certain adhesive dressings and gave priority to the suit involving Avery, the manufacturer of

the base material used to make the dressings. *See also Ricoh*, 279 F.Supp.2d at 556-58

(giving priority to the later-filed declaratory judgment suit brought by the manufacturer of a

software design tool, rather than the infringement action against the customers who used that

tool to design and manufacture integrated circuit products).

As these cases demonstrate, the focus of the "customer suit exception" is not

which entities in a distribution chain engage in a manufacturing process, but where in the

distribution chain the infringement first occurs. The entity that first manufactures the product

accused of infringement is the "manufacturer defendant" and downstream purchasers of the

17

product are "customer defendants" regardless of whether they use the product to manufacture something else, because a determination of liability as to the "manufacturer defendant" will also determine the liability of the downstream purchasers.

**B. Honeywell Will Not Be Prejudiced By A Stay In The Proceedings Against The Customer Defendants Pending Resolution Of The Claims Against The LCD Manufacturers**

Staying the proceedings against the Customer Defendants will not prejudice Honeywell because Honeywell will have a full opportunity to attempt to prove its allegations that the LCD modules manufactured by the LCD Manufacturers and used by the Customer Defendants, and those used by the OEMs of the Customer Defendants, are infringing. Discovery directed at the LCD Manufacturers will provide Honeywell with the relevant information regarding the allegedly infringing LCD devices. The LCD Manufacturers also will be able to provide an accounting of accused LCD modules sold to the Customer Defendants and those sold to the camera OEMs. If any "clean-up" issues remain at the conclusion of the litigation between Honeywell and the LCD Manufacturers, Honeywell will be able to pursue them at that time.

Failing to grant a stay, on the other hand, will impose on the Customer Defendants, and ultimately all of the parties and this Court, additional costs resulting from the Customer Defendants' unnecessary participation in these suits. Failing to grant a stay will also lead to extremely large and complicated trials, thus lessening juror comprehension of the matters before them for decision. Discovery directed at the Customer Defendants will not add significant information and at best will provide duplicative information on the allegedly infringing LCDs.

18

## V.    CONCLUSION

For the foregoing reasons, the Customer Defendants respectfully submit that the Court should stay proceedings against the Customer Defendants pending final resolution of Honeywell's claims against the LCD Manufacturers.


POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Barry W. Graham
John F. Hornick
Darren M. Jiron
FINNEGAN, HENDERSON FARABOW,
GARRETT & DUNNER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899-0951
    Phone: (302) 984-6000

*Attorneys for Defendants Nikon
Corporation and Nikon Inc.*


HUNTLEY & ASSOCIATES, LLC

OF COUNSEL:

Stuart Lubitz
David H. Ben-Meir
Robert J. Benson
HOGAN & HARTSON, LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067

By: _____
    Donald W. Huntley
    1105 North Market Street
    P.O. Box 948
    Wilmington, DE 19899-0948
    Phone: (302) 426-0610

*Attorneys for Defendants
Kyocera Wireless Corp.*

19

OF COUNSEL:

Michael J. Fink
P. Branko Pejic
Neil F. Greenblum
GREENBLUM AND BERNSTEIN, PLC
1950 Roland Clarke Place
Reston, VA 20191

DATED:  April 12, 2005

YOUNG, CONAWAY, STARGATT, &
TAYLOR

By: _____
Adam Wyatt Poff
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Phone: (302) 571-6600

*Attorneys for Defendants
Pentax  Corporation and
Pentax of America, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on April 12, 2005, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send notification

of such filing(s) to the following and the document is available for viewing and downloading

from CM/ECF:


William J. Marsden, Jr.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

Paul A. Bradley
Thomas D. Walsh
McCarter & English, LLP
919 N. Market Street, Suite 1800
Wilmington, DE  19899

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
17th Floor
Wilmington, DE 19899


_____
David E. Moore

677596