# Exhibit A

WLM\208366.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., et al.<br>　　　　　Plaintiffs,<br><br>v.<br><br>AUDIOVOX COMMUNICATIONS CORP., et al.<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　C.A. No. 04-1337-KAJ<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF C. MICHAEL STOEHR IN SUPPORT
OF AUDIOVOX COMMUNICATIONS CORP.'S MOTION TO STAY**

C. Michael Stoehr, declares as follows:

1. I am Senior Vice President and Chief Financial Officer of Audiovox Corporation ("Audiovox"). I was appointed Senior Vice President in 1990. I have held the position of Chief Financial Officer since 1979. Audiovox was incorporated in Delaware in 1987 and has a principal place of business at 180 Marcus Boulevard, Hauppauge, New York 11788. Unless otherwise stated, I have personal knowledge of the facts set forth herein, and I could and would testify competently thereto if called upon to do so.

2. In the Second Amended Complaint filed in the above-captioned action, Honeywell has alleged that Audiovox Communications Corp. ("ACC") "has been and is engaged in the manufacture, importation, offer for sale, and/or sale of products that include a liquid crystal display (LCD) in the United States" and that such products (the "Accused Devices") include at least one of the following: "laptop computers, cellular

phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems."

3.   On November 1, 2004, Audiovox sold the business assets of ACC to UTStarcom, Inc. Although the assets of ACC have been sold, ACC currently exists as a juristic entity. ACC no longer has any employees pertaining to the cellular business conducted prior to November 1, 2004 and, as a condition to the sale of ACC, ACC is expressly prohibited from re-entering the cellular market.

4.   Prior to the sale of ACC, ACC did not design, manufacture, assemble, purchase or sell LCD modules.

5.   ACC purchased for resale consumer products containing LCD modules. ACC added nothing to the consumer products it purchased for resale. ACC did not design, manufacture, or assemble any consumer product having an LCD module. ACC had no control over the selection of the LCD modules in the consumer products it purchased for resale.

6.   ACC purchased consumer products containing LCD modules from Sharp Corporation, Toshiba Corporation, Curitel Communications, Inc., High Tech Computer Corp., and Wistron Corporation (individually and collectively, "Suppliers"). All of the Suppliers are parties to this civil action or are being made parties to this civil action.

7.   ACC did not and does not know whether or not the consumer products purchased from the Suppliers are manufactured by such Suppliers or purchased from others. ACC was not privy to any proprietary or confidential technical information relating to the LCD modules in the consumer products that ACC purchased from the Suppliers.

2

I declare the foregoing to be true and correct under the penalties of perjury under the laws of the United States, and that this declaration was executed on May 9, 2005, in Hauppauge, New York.

_____<br>C. Michael Stoehr