# Morris, Nichols, Arsht & Tunnell

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
———
302 658 9200
302 658 3989 Fax

Thomas C. Grimm
(302) 575 7273
(302) 425-4661 Fax
tgrimm@mnat.com

June 17, 2005

**BY E-FILING**

The Honorable Kent A. Jordan
U.S. District Court, District of Delaware
J. Caleb Boggs Federal Building
844 North King Street, Room 6325
Lockbox 10
Wilmington, DE 19801

>   Re:   *Honeywell International Inc., et al. v. Audiovox Communications Corp., et al.*
>      C.A. 04-1337-KAJ
>      *Honeywell International Inc., et al. v. Apple Computer, Inc., et al.*
>      C.A. No. 04-1338-KAJ
>      *Optrex America, Inc. v. Honeywell International Inc., et al.*
>      C.A. No. 04-1536-KAJ

Dear Judge Jordan:

Pursuant to the Court's Order of May 18, 2005, Honeywell is writing to report on the status of the parties' discussions regarding the contours of the stay granted in that Order. As reflected in my letter to the Court of June 1, the parties have some fundamental differences regarding the contours intended by the Court. Although the parties have had a number of communications, these differences have prevented them from making a joint proposal today, as the Court requested.

In granting defendants the stay they requested, the Court indicated that there would be a *quid pro quo*; namely, defendants would be expected to cooperate in transitioning this case to a case against the LCD suppliers so that the transitioned case can be tried in 18-24 months. Honeywell believes that a number of areas of cooperation are required to get this case on a trial ready track in the time contemplated. Although at least four individual defendants have been willing to provide the information necessary to begin this process, many of the defendants believe that their obligations are much more limited.

The Honorable Kent A. Jordan
June 17, 2005
Page 2

In Honeywell's view:

- § Each defendant who wants to benefit from the stay should take affirmative steps to bring in their LCD supplier(s) to stand in for them. Defendants' position is that Honeywell should amend its complaint to name them. Defendants' proposal is unworkable, as it is more likely to raise jurisdictional and other procedural issues that will delay the transition. Defendants can and should use both their general business relationships and any indemnification agreements to ensure that the LCD suppliers step up and defend the case. This is exactly what Audiovox and Nokia have done.

- § Secondly, each defendant should provide to Honeywell a list of all products they manufacture that fall within the product categories identified in the Complaint and then identify the model number and the supplier of each LCD module used in such products. Defendants' claim that they are unable to do this is belied by the fact that at least four individual defendants have now come forward and offered to provide most, if not all, such information for the products they manufacture. Letter of Nikon's counsel, dated June 6, 2005; letter of Olympus's counsel, dated June 10, 2005; letter of Nokia's counsel, dated June 14, 2005; letter of Concord's counsel, dated June 10, 2005, – attached collectively as Exhibit A.

- § The Defendants' general position is that Honeywell's case should be limited to the specific models analyzed by Honeywell's pre-suit investigation and identified in Honeywell's May 27, 2005, letter, a copy of which is attached hereto as Exhibit B. As Honeywell stated in that letter, however, its charge of infringement involves all portable consumer electronic products that use LCD modules with the claimed components.

    As a practical matter, Honeywell could not, without the tools of discovery, analyze every product manufactured and sold by defendants prior to filing the Complaint. Given that Honeywell has developed a good faith basis for its charge of infringement, it is now entitled to use discovery to compile a full list of infringing products. *Montecatini Edison, S. p. A. v. Rexall Drug & Chemical Co.*, 288 F. Supp. 486, 491 (D. Del. 1968) ("Plaintiff will be afforded full opportunity to inspect all of defendant's products and decide for itself those which it claims infringe the '300 patent."); *see also IP Innovation L.L.C. v. Sharp Corp.*, 219 F.R.D. 427, 428 (N.D. Ill. 2003) (defendant required to identify other products which have allegedly infringing features, where rapid changes in defendant's model numbers made it difficult for plaintiffs to independently identify all accused models).

- § Indeed, the widespread nature of infringement makes Honeywell certain that the defendants sell products that Honeywell has not been able to obtain and analyze, yet which nonetheless infringe the '371 patent. If Defendants are allowed to limit their identification of module parts only to those products

The Honorable Kent A. Jordan
June 17, 2005
Page 3

> Honeywell was able to analyze pre-suit, Honeywell will be unable to match up the LCD suppliers' products with the defendants' complete infringing conduct occurring in the United States, thereby unfairly limiting this case and forcing Honeywell to engage in inefficient piecemeal litigation, filing a new Complaint every time it obtains a new infringing product.

§ Honeywell is eager to finalize its lists of accused products, but wants that list to be as comprehensive and accurate as possible. Honeywell understands that many of the defendants have claimed that they do not know how the LCD modules used in their products are configured. In order to expedite compilation of a final product list, Honeywell asks that the defendants provide samples of the identified modules (at Honeywell's cost), after which Honeywell will report back as to whether it is accusing such module of infringement. If Defendants are unable to do this, Honeywell will have to wait until it can obtain technical documentation from the LCD suppliers in order to confirm the full scope of infringement.

§ Finally, the liability portion of the case is being reconfigured against the LCD suppliers because the end product manufacturers claimed that the LCD suppliers had superior technical knowledge relevant to the case, and were thus in the best position to defend against Honeywell's claims. It therefore makes little sense to try liability issues of infringement, validity and enforceability in the first phase of the litigation and then have to retry these same issues in any following phases against the end product manufacturers. Accordingly, any defendant seeking to benefit from the stay should agree to be bound by the results of this initial phase.

Honeywell believes that once these issues are resolved, it will be in a position to negotiate a complete schedule with the reconfigured defendants.

Honeywell respectfully submits a proposed Order for the Court's consideration.

Respectfully,

*/s/ Thomas C. Grimm (#1098)*
Thomas C. Grimm

TCG/dam
Enclosures
cc:   Clerk of the Court (w/encls., via hand delivery & e-filing)
      All Counsel of Record (w/encls., via e-filing)
      Steven J. Balick, Esq. (w/encls., via e-mail)
      Martin R. Lueck, Esq. (w/encls., via e-mail)
      Matthew L. Woods, Esq. (w/encls., via e-mail)