

# Potter Anderson & Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Philip A. Rovner
Partner
provner@potteranderson.com
302 984-6140 Direct Phone
302 658-1192 Fax

March 9, 2006

**BY E-FILE**

The Honorable Kent A. Jordan
United States District Court
  for the District of Delaware
U.S. Courthouse
844 King Street
Wilmington, Delaware 19801

    Re:    Honeywell International, Inc., *et al.*, v. Apple Computer, Inc., *et al.*,
            D. Del., C.A. No. 04-1338-KAJ
            Honeywell International Inc., *et al.* v. Audiovox Communications Corp., *et al.*
            D. Del., C.A. No. 04-1337-KAJ
            Optrex America, Inc. v. Honeywell International Inc., *et al.*,
            D. Del., C.A. No. 04-1536-KAJ

Dear Judge Jordan:

        We write on behalf of the Manufacturer Defendants, other than Optrex, in connection with the parties' submission yesterday of a joint discovery plan and, where disagreement emerged, the parties' competing proposals.

        In accordance with paragraph 2 of the Court's Order of January 19, 2006 (D.I. 312), there have been several conferences and exchanges between the Manufacturer Defendants, Optrex and Honeywell regarding a scheduling order for this matter. While the parties have made progress in bringing their respective initial proposals closer together, some important differences remain. The two most important areas where the parties are apart are in the areas of a) discovery limitations and b) the format for trial. The Manufacturer Defendants respectfully submit the following in support of their position on those issues.

**Discovery Limitations**

Three proposals for discovery limitations have been made:

a) Honeywell – Each defendant "family" will produce its witnesses to Honeywell for a total of 50 hours of testimony. Honeywell will produce its witnesses, including the named inventors of the '371 patent, for a total of 100 hours of testimony on "common" issues. In addition, each defendant/defendant "family" may take an additional 10 hours of deposition testimony of Honeywell representatives on "party specific" topics and each side may take 75 hours for third-party discovery.

b) Manufacturer Defendants – 300 hours per side for fact depositions on common issues; each Manufacturer Defendant family may take 50 deposition hours of Plaintiffs for party-specific issues and Plaintiffs may take 50 deposition hours per Manufacturer Defendant family for party-specific issues; each party family may take an additional 50 deposition hours for party-specific issues; and Manufacturer Defendants shall have an additional 150 hours of third-party depositions and Plaintiffs shall have an additional 75 hours for Third-Party depositions. These limitations do not apply to expert discovery.

c) Optrex – Each defendant family will produce witnesses to Honeywell for a total of 50 hours of testimony; Honeywell will produce its witnesses for 150 hours of testimony on "common" issues; each defendant family may take an additional 21 hours of "party specific" deposition testimony of Honeywell representatives; and each side may take 112 hours for third-party depositions.

By way of background, the '371 patent in suit was filed on July 9, 1992 and issued January 18, 1994. Honeywell decided to wait until October 6, 2004 (more than ten years later) to assert its patent against the initial defendants, and another year to assert the patent against the new Manufacturer Defendants. The long delay in asserting the '371 patent against the defendants compounds the normal problem of finding prior art and relevant contemporaneous third-party work in the field at issue. Not only does this delay impact on validity and enforceability discovery, it creates an impact on many of the party-specific issues of the Manufacturer Defendants, such as infringement, laches, damages and willfulness.

Several factors justify the need for increased time for depositions of Honeywell (including the inventors and prosecuting attorneys) and of third parties by the Manufacturer Defendants. None of the inventors listed on the face of the '371 patent now work for Honeywell, although Honeywell has represented that its attorneys represent the inventors and, therefore, control their availability. It is also likely that Honeywell employees who worked on the project or projects for which the claimed LCD module design was developed, may have been used or in which use was rejected, have also left Honeywell. Authenticating documents that were created by the inventors and other Honeywell employees and their testimony will require multiple depositions, especially where so much time has passed since the events at issue. In addition, persons working in the field with other companies at the time of the alleged making of the claimed invention have dispersed, many of their companies have merged and, to the extent their

The Honorable Kent A. Jordan
March 9, 2006
Page 3

documents have survived, they are likely in the hands of third parties other than the witnesses with knowledge. Based on the information available to the Manufacturer Defendants, the requested number of party and third-party deposition hours is the minimum required to complete the discovery in the circumstances created by Honeywell's delay in bringing suit.

Honeywell's proposal is inadequate to permit both common and party-specific discovery and is unbalanced in the extreme, since it leaves all of the Manufacturer Defendants with, at most, only 100 hours of depositions on common issues plus 75 hours of third-party depositions plus 10 hours (less than 1.5 depositions) per Manufacturer Defendant family of Honeywell on party specific topics, while Honeywell is permitted 50 hours per Manufacturer Defendant family, about a total of about 1000 hours, plus 75 hours for third party depositions.

The Manufacturer Defendants' proposal gives Plaintiffs its requested 50 hours of discovery of each Manufacturer Defendant family on party-specific issues and 75 hours of Third Party depositions, gives each party family an additional 50 hours of discovery on party specific issues, gives each Manufacturer Defendant family 50 hours of depositions of Plaintiffs on party specific issues, gives each party family an additional 50 hours of depositions on party specific issues, gives both sides 300 deposition hours for common-issue discovery, and gives 150 additional deposition hours for Third Party depositions by the Manufacturer Defendants. It is submitted that, under the circumstances, our proposal provides for a fairer and balanced amount of discovery.

In the remote event that the use by the Manufacturer Defendant families of their respective 50 hours results in unduly duplicative and burdensome discovery of Honeywell, Honeywell is free to apply to the Court for protection. But, it is the Manufacturer Defendants' good faith belief, as presently advised, that they will require at least the requested discovery.

**Trial**

The parties propose the following trial schedules (but no party proposes bifurcating discovery):

a) Optrex proposes a trial solely between Optrex and Honeywell on all issues wherein each side has 22 hours each to present their case. Optrex proposed a schedule, which would enable it to proceed to trial prior to the other Manufacturer Defendants.

b) The Manufacturer Defendants propose an initial trial which is limited to the common issues of validity and enforceability of U.S. Patent No. 5,280,371 (the '371 patent), the outcome of which would be binding on all Manufacturer Defendants. The trial time estimate proposed by the Manufacturer Defendants takes into account that the trial is limited to the common issues of validity and enforceability. If the parties identify any other common issues (such as marking), they could be tried at the same time. After the initial trial, if there are any issues left to try (or at such earlier time as the Court directs), the parties and the Court will have to determine how to conduct the trial of the remaining issues, all of which are factually

The Honorable Kent A. Jordan
March 9, 2006
Page 4

implicated and specific to each individual Manufacturer Defendant (e.g. infringement, laches, damages and willfulness).

        c)      Honeywell proposes an initial trial phase beginning on October 22, 2007 and lasting approximately 18 days. Issues to be tried to verdict in this phase include whether modules using the Accused Structure manufactured by the Manufacturer Defendants practice any valid claims of the McCartney '371 patent. Each side would have 45 hours to present their case on these issues. Judgment can then be entered as against the "manufacturer" defendants, at least as to the issues of injunctive relief. The issue of damages, if necessary, will be tried against the "customer" (stayed) defendants in a second phase, following a reasonable period of additional discovery to be determined later. The "customer" defendants will be bound by the infringement and validity determinations of the verdict of the first phase. Judgment will then be entered as against the "customer" defendants.

        The Manufacturer Defendants understand neither the structure nor the basis for Honeywell's trial proposal. As best as we could understand, Honeywell proposes a first trial phase between it and the Manufacturer Defendants which covers at least the issues of validity and infringement (and possibly enforceability) with an injunction against the Manufacturer Defendants as a possible outcome. In the second stage, the issue of damages (if necessary) is to be tried against the stayed Customer Defendants which, Honeywell claims, are to be bound by the infringement and validity determinations of the verdict of the first phase. In-between the two phases, Honeywell proposes "a reasonable period of additional discovery to be determined later", although nowhere in the discovery limitations section (paragraph 3(a) of the Proposed Scheduling Order) is there any indication that damages discovery will not take place prior to the first proceeding as contemplated by the Manufacturer Defendants. Nowhere does Honeywell explain what happens to the damages claims asserted in the Complaint against the Manufacturer Defendants.

        Concerning Honeywell's proposal that the Customer Defendants (referred to by the Court as "Non-manufacturer Defendants") "be bound by the infringement and validity determinations of the verdict of the first phase," the Customer Defendants are currently stayed, did not participate in the preparation of the Proposed Scheduling Order and are not subject to its provisions. The Manufacturer Defendants are aware of no agreement by the Customer Defendants to be bound by a judgment against the Manufacturer Defendants. In fact, the Court rejected this very suggestion previously. By letters dated June 1 and June 17, 2005, Honeywell's counsel specifically raised the issue of the Customer Defendants being bound by the results of any liability trial against their suppliers. This Court's Order of October 7, 2005, however, made no mention of conditioning the stay of paragraph 4 on an Agreement by the Customer Defendants to be bound by the results of a trial of the Manufacturer Defendants, as Honeywell proposed.

        In addition, it is premature to include any reference to "injunctive relief" in the Scheduling Order, especially where the issues to be tried and the appropriateness of an injunction have not been determined. Accordingly, the Manufacturer Defendants object to including

The Honorable Kent A. Jordan
March 9, 2006
Page 5

Honeywell's statements regarding the Customer Defendants being bound and injunctive relief in the Scheduling Order.

   The Manufacturer Defendants submit that a common trial on all defendant-specific infringement issues of more than 20 Manufacturer Defendant families would be unwieldy, impractical and unfair to the individual Manufacturer Defendant families. It would be difficult if not impossible for a jury to distinguish between so many issues relating separately to so many defendants and products. Additionally, the ability of each Manufacturer Defendant family to present its separate defenses to infringement in the limited time contemplated by Honeywell in their proposal would be severely prejudicial to each Manufacturer Defendant. In effect, the time allotted to each Manufacturer Defendant by Honeywell on all of its specific infringement issues would amount to slightly more than one hour. The reality is that it was Honeywell who delayed bringing this action for more than ten years, permitting the number of products, parties and issues to multiply, and then elected to join a large number of disparate defendants in a single action. The individual Manufacturer Defendants should not be forced to suffer the inevitable consequences of Honeywell's course of action (or inaction).

   At the least, it is premature to set an all-infringement-issue trial schedule with this many disparate defendants and products. It is equally unfair for each of the Manufacturer Defendant families to have to present their other defendant-specific issues such as laches, damages and willfulness in a common trial, no less to shift the focus of the case back to the Customer Defendants.

   The Manufacturer Defendants do not agree with Optrex's go-it-alone approach. At the least, the outcome of a separate Optrex trial would not bind the other Manufacturer Defendants and might leave the Court with the need to retry even the common issues.

   Should Your Honor have any questions regarding the parties' respective proposals prior to Monday's teleconference, counsel is available at the Court's convenience.

                   Respectfully,

                   Philip A. Rovner
                   provner@potteranderson.com

PAR/mes/723006
cc: All Local Counsel of Record – By ECF