# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1338-KAJ |
| APPLE COMPUTER, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1337-KAJ |
| AUDIOVOX COMMUNICATIONS CORP., et al., | ) ) ) | |
| Defendants. | ) | |

## SEIKO EPSON CORP.'S AND SANYO EPSON IMAGING DEVICES' BRIEF IN OPPOSITION TO HONEYWELL'S MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS

SMITH, KATZENSTEIN & FURLOW LLP
Robert J. Katzenstein (ID No. 378)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
[Courier 19801]
302-652-8400 – telephone
302-652-8405 – fax
rjk@skfdelaware.com – e-mail

OF COUNSEL:
Stuart Lubitz
Robert J. Benson
HOGAN & HARTSON L.L.P.
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601       Attorneys for Defendants
                                         SEIKO EPSON CORP. and SANYO
                                         EPSON IMAGING DEVICES

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     NATURE AND STATE OF PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . 3

III.    SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     BACKGROUND FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.      HONEYWELL HAS NOT STATED A CLAIM AGAINST
        THE SEC FOREIGN AFFILIATES FOR DIRECT INFRINGEMENT
        OR INDUCING INFRINGEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.    Mere Knowledge That Foreign Customers Are Subsequently Selling
              In The United States Cannot Give Rise To Liability For Inducement . . . 9

VI      CONCLUSION AND RELIEF SOUGHT. . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Apple Computer, Inc. v. Articulate Systems, Inc.,*
    991 F.Supp. 1189 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*A. Stucki Co. v. Buckeye Steel Castings Co.,*
    963 F.2d 360, 362 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Aventis Pharma Deutschland GMBH v. Cobalt Pharmaceuticals, Inc.,*
    355 F.Supp.2d 586, 598-99 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . .10

*Engate, Inc. v. Esquire Deposition Services, LLC,*
    No. 01 C 6204, 2004 WL 609800 (N.D. Ill. Mar. 26, 2004) . . . . . . . . . 10, 11

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.,*
    394 F.3d 1368, 1376 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Hamilton v. Civigenics,*
    No. Civ.A. 03-826 GMS, 2005 WL 418023 (D. Del. Feb. 22, 2005). . . . . 8, 9

*ICN Pharmaceuticals, Inc. v. Geneva Pharmaceuticals Technology Corp.,*
    272 F.Supp.2d 1028, 1048-50 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . 12

*International Rectifier Corp. v. Samsung Electronics Co., Ltd.,*
    361 F.3d 1355 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Jacobs Vehicle Systems, Inc. v. Pacific Diesel Brake Co.,*
    424 F.Supp.2d 388 (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Manville Sales Corp. v. Paramount Sys., Inc.,*
    917 F.2d 544, 553 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp.,*
    420 F.3d 1369, 1375 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Rotec Indus. v. Mitsubishi Corp.,*
    215 F.3d 1246, 1251 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington,*
    646 F.Supp. 118, 120 (D. Del. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Warner-Lambert Co. v. Apotex Corp.,*
    316 F.3d 1348, 1364 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes and Other Authorities**                                    **Page(s)**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

35 U.S.C. § 271(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

## I. INTRODUCTION

Honeywell has filed these two actions against more than 65 defendants who are alleged to manufacture or sell LCD modules that are accused of infringing its '371 patent. Two of the "manufacturing defendants" are Seiko Epson Corp. and Sanyo Epson Imaging Devices.[1]  By its two motions to amend[2], Honeywell now seeks to extend this ever-expanding litigation even further, to encompass five new foreign entities related to SEC: Suzhou Epson Co., Ltd., [3]  Sanyo Epson Imaging Devices (Hong Kong) Ltd., Sanyo Epson Imaging Devices (Philippines) Inc., Epson Europe Electronics GmbH, and Epson Hong Kong Ltd. (collectively, the "SEC Foreign Affiliates").  However, Honeywell has not alleged – and has no basis for alleging – that any of these SEC Foreign Affiliates sell the accused LCD modules in the United States or induce their sale in the United States.

Foreign sales do not infringe Honeywell's patent.  Such sales only give rise to liability if foreign defendants induce their foreign customers to resell the LCD products in the United States.  To allege such inducement, Honeywell contends that the SEC Foreign Affiliates sell LCDs to foreign customers knowing that they will use the LCDs in products sold in the U.S.  However, such knowledge is insufficient to support a claim of

---

[1] Although Seiko Epson Corporation and Sanyo Epson Imaging Devices are distinct corporate entities whose liabilities will differ in this litigation, in many instances, both entities were involved in selling and manufacturing the same products at different points in time.  In essence, Seiko Epson's LCD business was transitioned to Sanyo Epson in October 2004.  Accordingly, for the sake of simplicity, both entities will be referred to collectively as "SEC" in the present brief.

[2] Plaintiffs' Motion for Leave to File Fourth Amended Complaint, C.A. No. 04-1337-KAJ, D.I. 206; and Motion for Leave to File Second Amended Complaint, C.A. No. 04-1338-KAJ, D.I. 515.

[3] For purposes of clarification, Suzhou Epson Co., Ltd., is an affiliated entity of Seiko Epson, not of Sanyo Epson, as identified by Honeywell.

1

10016553.doc

inducement as a matter of law. A claim of inducement must be supported by allegations and evidence that the foreign defendants *encourage or promote* the use or sale of their LCD products in the U.S. and that they <u>also</u> *intend to induce* infringement in the U.S.

Honeywell has not alleged any such acts of inducement. Honeywell cannot identify, and has not alleged, any conduct by which the SEC Foreign Affiliates encouraged their foreign customers to use or sell the accused LCD products in the U.S. Accordingly, Honeywell has not stated a claim for inducing infringement, and its proposed amendment to add the five new affiliated entities would be legally futile.

Honeywell may contend that it needs discovery before it can determine whether the SEC Foreign Affiliates sold the accused LCD products in the U.S. or induced their foreign customers to resell those products in the U.S. However, this is only another variation of Honeywell's "sue first, take discovery later" approach to litigation that the Court previously rejected (multiple times) when Honeywell sought to take discovery as to all of defendants' LCD products in order to determine whether they infringe. The Court made it clear that Honeywell must have a factual basis for alleging infringement against a particular product before it can take discovery on that product. Likewise, Honeywell must have a factual basis for alleging that a foreign defendant directly infringes in the U.S., or induces infringement in the U.S., before adding them as another defendant.

In such circumstances, Honeywell's motions to amend should be denied. This litigation does not need five new foreign defendants, when Honeywell cannot currently state a claim against them. This litigation should proceed as to LCD products that the existing SEC defendants, Seiko Epson and Sanyo Epson, actually sell or ship into the U.S., which are the only products that are legitimately at issue in this action.

2

## II. NATURE AND STAGE OF PROCEEDINGS

Honeywell commenced the current litigation on October 6, 2004, against more than 30 defendants, most of whom were manufacturers of consumer products that use LCDs. Honeywell's complaint alleged that the LCDs in those products infringe U.S. Patent No. 5,280,371. However, Honeywell did not specify which LCD modules were actually accused of infringement. (D.I. 1.)[4]

On March 14, 2005, Seiko Epson moved to intervene and filed a declaratory judgment action, on the basis that many of the named defendants were customers of Seiko Epson. (D.I. 136.) However, Seiko Epson did not know, at the time, which of its LCD modules Honeywell actually accused of infringement. Honeywell subsequently counterclaimed against Seiko Epson (D.I. 223), and added Sanyo Epson as a defendant on November 7, 2005.

On April 12, 2005, the end product manufacturers filed a motion to stay the present litigation, arguing that Honeywell should first pursue its infringement claims against the manufacturers of the LCDs. (D.I. 158.) The Court granted defendants' motion to stay on May 18, 2005, and restructured the litigation so that Honeywell would first proceed against the LCD module manufacturers, and then against the end product manufacturers who use those LCDs in their products. (D.I. 202.)

On March 29, 2006, Honeywell served its First Set of Interrogatories on Seiko Epson and Sanyo Epson. In response to those interrogatories, SEC identified five foreign affiliated companies that are involved in the manufacture or sale of the accused LCD products. *See* Exh. A at p. 7. None of this information indicated that the SEC Foreign

---

[4] Citations are to the record in the 1338 Action, unless otherwise noted.

3

Affiliates manufacture or sell the accused LCD products in the U.S., or that they are in any way involved in supporting or encouraging the marketing of products in the U.S. *Id.* Nevertheless, based on this information, Honeywell filed the present motions to amend its complaints in the 1337 Action (D.I. 206) and the 1338 Action (D.I. 515), seeking to add these five foreign affiliates as defendants in this ever-expanding litigation.

### III. SUMMARY OF ARGUMENT

1.    The SEC Foreign Affiliates cannot be liable for direct infringement as to products that they make, use, sell, or offer for sale outside the United States. The foreign sales of these companies only give rise to liability if the defendants take some further action to induce infringement of the '371 patent within the United States.

2.    Honeywell seeks to add the SEC Foreign Affiliates as defendants solely because they have been identified as entities that are "involved" in the manufacture or sale of accused LCD products outside the United States.

3.    Honeywell alleges that the SEC Foreign Affiliates sell LCD products to their foreign customers knowing that they sell end products in the U.S. containing those LCDs. Such knowledge, by itself, cannot sustain a claim for inducing infringement as a matter of law. Since Honeywell has not alleged, and cannot allege, any conduct (acts of inducement) by the SEC Foreign Affiliates that somehow encourage or assist in the sale of the accused LCD products in the United States, Honeywell has failed to state a claim for inducing infringement. Its motion to amend to add these defendants is therefore "futile" and should be denied.

## IV. BACKGROUND FACTS

Seiko Epson Corporation has its origins in a group of manufacturing companies that were originally known as The Seiko Group. Today, Seiko Epson's product lines include an array of high-quality technology products, including some of the world's most advanced printers. Seiko Epson also manufactures and sells electronic components such as liquid crystal displays ("LCD's"), which are sold to companies that incorporate those components into their own end products.

On October 6, 2004, Honeywell filed the present litigation against more than 30 defendants, most of whom were manufacturers of "end products" that use the accused LCDs. (D.I. 1.) On April 12, 2005, the end product manufacturers filed a motion to stay the present litigation, arguing that Honeywell should first pursue its infringement claims against the manufacturers of the LCDs. (D.I. 158.) The Court granted defendants' motion to stay on May 18, 2005, and restructured the litigation so that Honeywell would first proceed against the LCD module manufacturers. (D.I. 202.) During this time, Seiko Epson moved to intervene and filed a declaratory judgment action, on the basis that many of the named defendants were customers of Seiko Epson. (D.I. 136.) Honeywell subsequently counterclaimed against Seiko Epson (D.I. 223), and added Sanyo Epson as a defendant on November 7, 2005.

In its Interrogatory No. 1 to Seiko Epson and Sanyo Epson, Honeywell requested that defendants "identify any affiliated entity that is involved in the manufacture, distribution and/or sale of the Accused Structure." In response, Seiko Epson and Sanyo Epson identified five related entities, stating in relevant part,

> "[T]he affiliated entities that were involved in manufacturing this product were Suzhou Epson Co., Ltd., Sanyo Epson Imaging Devices (Hong Kong) Ltd.

5

10016553.doc

[address omitted] and Sanyo Epson Imaging Devices (Philippines) Inc. [address omitted].  Additional affiliated entities involved in the sale and distribution of this product were SEC, SEID, Epson Europe Electronics GmbH, and Epson Hong Kong Ltd."

Exh. A. at p. 7.

Based on this mere identification of five foreign affiliates, Honeywell has now filed motions seeking to add all five entities as defendants in this litigation.  All five companies are in other countries (namely, China, Hong Kong, the Philippines and Germany), and Honeywell has (1) no basis for alleging that the SEC Foreign Affiliates sell the accused LCD modules in the U.S., and (2) no basis for alleging that the SEC Foreign Affiliates encourage or assist their customers in reselling the accused products in the U.S.

Nevertheless, without any basis for alleging either direct infringement or inducing infringement against the five SEC Foreign Affiliates, Honeywell now seeks to add them to the complaints – "just in case."  This is implicitly confirmed in Honeywell's motion to amend, which describes the activities of the SEC Foreign Affiliates as follows:

"Suzhou Epson Co., Ltd., Sanyo Epson Imaging Devices (Hong Kong) Ltd., and Sanyo Epson Imaging Devices (Philippines) Inc., are affiliated entities of Seiko Epson that *manufacture modules*.  Epson Europe Electronics GmbH and Epson Hong Kong Ltd. are affiliated entities of Seiko Epson that *sell and distribute LCD modules.*"

Motion at p. 2 (1338 Action, D.I. 515) (emphasis added).  *See also* Motion at p. 2 (1337 Action, D.I. 206).  Honeywell further states, "Each of the proposed additional entities has been identified … as a related entity that is *involved in the manufacture, sale and/or distribution of the LCD modules accused of infringement.*"  *Id.* at p. 3 (emphasis added).  Notably, Honeywell never states that any of the SEC Foreign Affiliates manufacture, sell or distribute LCD modules *within the United States,* or that the SEC Foreign Affiliates

6

engage in conduct that encourages or assists in the subsequent sale of the LCD modules *within the United States.* Honeywell only alleges that these entities are involved in the manufacture, sale or distribution of the accused LCD products ... somewhere. But without being able to connect the activities of the SEC Foreign Affiliates with the United States, Honeywell cannot state a claim against those entities.

Honeywell's proposed amended complaints are also carefully worded, and they likewise reflect the fact that Honeywell has no factual basis for alleging that the SEC Foreign Affiliates either directly infringe the '371 patent or induce infringement. Specifically, Honeywell alleges,

> "107. The Epson subsidiaries have been and are engaged in the manufacture, importation, offer for sale, and/or sale of liquid crystal display (LCD) modules that are incorporated into products that are sold in the United States with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States."

Proposed Second Amended Complaint in the 1338 Action ¶ 107. Parallel allegations are stated in the 1337 Action. *See* Proposed Fourth Amended Complaint ¶ 12-15, 27.

Parsing this language carefully, Honeywell alleges that the "Epson subsidiaries" manufacture and sell LCDs "that are incorporated into products that are sold in the United States." However, Honeywell does not allege that the "Epson subsidiaries" are, themselves, incorporating the LCDs into products sold in the U.S. Rather, the "Epson subsidiaries" are manufacturing and selling LCDs overseas, and those LCDs are being incorporated *by others* (i.e., foreign customers who purchase the LCDs) into end products that are subsequently sold in the U.S. Honeywell does not allege that the "Epson subsidiaries" themselves sell or import LCDs into the U.S. – Honeywell has no evidence

7

of this. Likewise, Honeywell does not allege that the "Epson subsidiaries" incorporate LCDs into end products – Honeywell has no evidence of this either.

Accordingly, Honeywell's allegations can only be read as presenting a claim of inducing infringement – *i.e.,* that the "Epson Subsidiaries" sell accused LCDs to foreign customers and then induce those foreign customers to infringe the '371 patent. However, Honeywell's only allegation in this regard is that the "Epson Subsidiaries" sell the LCDs to foreign customers "with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States." Proposed Second Amended Complaint in the 1338 Action ¶ 107. However, as discussed below, such "knowledge" is insufficient to state a claim for inducing infringement, unless the "Epson subsidiaries" also engage in conduct that actually encourages or assists the infringement, *i.e.,* the subsequent sale of the LCD products in the U.S. Honeywell has not alleged, and cannot allege, the required *acts of inducement* that result in the accused LCD products being sold in the U.S.

### V.   HONEYWELL HAS NOT STATED A CLAIM AGAINST THE SEC FOREIGN AFFILIATES FOR DIRECT INFRINGEMENT OR INDUCING INFRINGEMENT

Under Rule 15(a), on a motion to amend, a court can deny the motion if the proposed amendment would be futile. *Hamilton v. Civigenics*, No. Civ.A. 03-826 GMS, 2005 WL 418023, at *1 (D. Del. Feb. 22, 2005) (Exh. B hereto); *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington,* 646 F.Supp. 118, 120 (D. Del. 1986). In determining whether a proposed amendment is futile, the Court should apply the same standards as are applied to a Rule 12(b)(6) motion to dismiss. *Hamilton,* 2005 WL 418023, at *1; *Satellite,* 646 F.Supp. at 120. Specifically, accepting the well-pleaded facts

8

of the proposed amended complaint as true, the Court must decide whether the facts state a claim upon which relief can be granted. *Hamilton,* 2005 WL 418023, at \*2; *Satellite,* 646 F.Supp. at 120. Since Honeywell's proposed amended complaints fail to allege sufficient facts to support a claim of inducing infringement, its motions to amend adding the SEC Foreign Affiliates should be denied.

**A.    Mere Knowledge That Foreign Customers Are Subsequently Selling In The United States Cannot Give Rise To Liability For Inducement**

Honeywell claims that the SEC Foreign Affiliates induce infringement of the '371 patent. However, Honeywell's only factual allegation relating to its claim of inducement is that the "Epson Subsidiaries" sell the LCDs to foreign customers "with the knowledge and intention that such LCD screen-containing products would be sold throughout the United States." Proposed Second Amended Complaint in the 1338 Action ¶ 107. However, such knowledge is insufficient as a matter of law to support a claim for inducing infringement. Liability for inducing infringement does not arise unless the SEC Foreign Affiliates engage in ***conduct*** that actually ***encourages or assists*** the direct infringement – here, the subsequent sale or importation of LCD products in the U.S. No such acts of inducement have been alleged, nor does Honeywell have any basis for alleging such facts.

"It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States." *MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005). "The right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated [on] acts wholly done in a foreign country." *Rotec Indus. v. Mitsubishi Corp.,* 215 F.3d 1246, 1251 (Fed. Cir. 2000). *Accord, Fuji Photo*

9

*Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1376 (Fed. Cir. 2005) ("the United States patent system does not provide for extraterritorial effect"); *International Rectifier Corp. v. Samsung Electronics Co., Ltd.*, 361 F.3d 1355, 1360 (Fed. Cir. 2004).

Accordingly, no liability arises under section 271(a) from the manufacture and sale of LCD products outside the United States. In order for Honeywell to maintain an infringement action against the SEC Foreign Affiliates, it must state a claim for inducement under section 271(b), which provides, "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

However, ***"mere knowledge of possible infringement by others does not amount to inducement; specific intent <u>and action</u> to induce infringement must be proven."*** *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003) (granting summary judgment despite defendant's knowledge that its customers were using its products in an infringing manner, based on lack of evidence that defendant promoted or encouraged the infringing use) (emphasis added). As held by the Federal Circuit in *Manville*,

> "It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that ***the alleged infringer's <u>actions</u> induced infringing acts <u>and</u>*** that he knew or should have known his actions would induce actual infringements."

*Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). *See, e.g., Aventis Pharma Deutschland GMBH v. Cobalt Pharmaceuticals, Inc.*, 355 F.Supp.2d 586, 598-99 (D. Mass. 2005) (knowledge that its customers used product to infringe was insufficient to withstand summary judgment of inducement, where plaintiff lacked evidence that defendant "promoted or encouraged" the infringing use); *Engate,*

10

*Inc. v. Esquire Deposition Services, LLC,* No. 01 C 6204, 2004 WL 609800 (N.D. Ill. Mar. 26, 2004) (Exh. C hereto) (defendant's knowledge that its customers might be using its software products to infringe was insufficient to avoid summary judgment).

Precedent illustrates the type of activity that is required to prove inducement where a foreign manufacturer is selling accused products to foreign customers. In *MEMC*, 420 F.3d 1369, defendant SUMCO sold accused silicon wafers to Samsung Japan, which then shipped the products to Samsung's facilities in Austin, Texas. The Federal Circuit found that a question of fact existed as to inducement, because SUMCO had "encouraged and enabled" Samsung Austin to use the accused wafers in the U.S. by, *inter alia,* providing technical support to the Samsung Austin facility. SUMCO had made adjustments to its manufacturing process to address problems encountered by Samsung Austin; sent replacement wafers to Samsung Austin; and made onsite visits to Samsung Austin to give technical presentations regarding its products. *Id.* at 1377-80.

Conversely, the Federal Circuit held that Samsung in Korea did *not* violate U.S. patent law in its sale and delivery of accused devices to IXYS in Germany, where:

- Samsung's activities occurred entirely outside the U.S.,

- Samsung knew of IXYS's importation of products into the U.S. but exercised no control over IXYS,

- Samsung did not participate in any of IXYS' activities after delivering its wafers to IXYS in Germany, and

- There was no evidence of an agreement between Samsung and IXYS to import IXYS's wafers into the U.S.

*International Rectifier*, 361 F.3d at 1360-61.

11

Numerous cases have held that when there is insufficient evidence to support a finding of inducement, summary judgment is appropriate and should be granted. For example, in *Jacobs Vehicle Systems, Inc. v. Pacific Diesel Brake Co.*, 424 F.Supp.2d 388 (D. Conn. 2006), the court granted summary judgment because it found the evidence insufficient to support a claim for inducement. Despite the defendant's knowledge of the patent and its general dealings with its subsidiary in the U.S., summary judgment was granted because the defendant did not take "any affirmative action to induce" its subsidiary to make, use or sell the product at issue within the U.S. *Id.* at 393-94. *See also A. Stucki Co. v. Buckeye Steel Castings Co.*, 963 F.2d 360, 362 (Fed. Cir. 1992) (defendant had ceased its involvement in the management of the direct infringer); *ICN Pharmaceuticals, Inc. v. Geneva Pharmaceuticals Technology Corp.*, 272 F.Supp.2d 1028, 1048-50 (C.D. Cal. 2003) (plaintiff lacked evidence that defendant promoted or encouraged the infringing use by its customers); *Apple Computer, Inc. v. Articulate Systems, Inc.*, 991 F.Supp. 1189 (N.D. Cal. 1997) (no evidence that defendant induced its customers to use its software product in an infringing manner).

As in each of the above cases, there is no evidence that the SEC Foreign Affiliates engaged in conduct that induced infringement in the U.S. by its customers. Honeywell has failed to even *identify* any conduct of the SEC Foreign Affiliates that *allegedly* encouraged or facilitated the sale or use of accused LCD products in the U.S. Mere knowledge or "intent" that the foreign customers resell LCD products in the U.S. does *not* give rise to liability for inducement. To state a claim for inducement, Honeywell must adequately allege ***acts of inducement,*** i.e., conduct that encouraged or assisted the

12

subsequent sale of the LCD modules in the U.S., **combined with** knowledge of the subsequent sales in the U.S. and intent to encourage such sales.

Since Honeywell is unable to allege that the SEC Foreign Affiliates engaged in any conduct that actually induced the later use or sale of the accused LCD products in the United States, Honeywell cannot state a claim for inducing infringement under section 271(b). As this Court has repeatedly held, Honeywell must have a factual basis for stating a claim against a particular defendant or product before it can take discovery. Honeywell should not be permitted to take discovery in an effort to manufacture a claim. Accordingly, Honeywell's motion to amend its complaint is "futile," and its motion should be denied.

## VI. CONCLUSION AND RELIEF SOUGHT

In its motions to amend and in its proposed amended complaints, Honeywell never alleges that the SEC Foreign Affiliates directly infringe its patent by selling or importing accused LCD products into the United States. Likewise, Honeywell fails to allege **any conduct** by which SEC Foreign Affiliates induce their foreign customers to sell the accused LCDs in the United States. Accordingly, Honeywell lacks any basis on which to bring a good-faith claim of direct infringement or inducing infringement against the SEC Foreign Affiliates.

By its motions to amend, Honeywell seeks to add as a defendant any entity that has any involvement in manufacturing or selling the accused LCD products, anywhere in the world. Honeywell presumably hopes to figure out in discovery whether any of those entities actually sell into the U.S. or induce U.S. sales. However, Honeywell should not be permitted to add countless defendants to the litigation just to "make sure" that any

13

entity that might ultimately be found liable is included.  Honeywell's motions to amend

should be denied.

Dated:  August 11, 2006                    SMITH, KATZENSTEIN & FURLOW LLP

                                           Robert J. Katzenstein (ID No. 378)
                                           800 Delaware Avenue, 7th Floor
                                           P.O. Box 410
                                           Wilmington, DE 19899
                                           [Courier 19801]
                                           302-652-8400 – telephone
                                           302-652-8405 – fax
                                           rjk@skfdelaware.com – e-mail

OF COUNSEL:
Stuart Lubitz
Robert J. Benson
HOGAN & HARTSON L.L.P.
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone:  (310) 785-4600
Facsimile:  (310) 785-4601            Attorneys for Defendants
                                      SEIKO EPSON CORP. and SANYO
                                      EPSON IMAGING DEVICES

14

10016553.doc