# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC. and )
HONEYWELL INTELLECTUAL PROPERTIES INC., )
)
        Plaintiffs, )
)
      v. )
)
AUDIOVOX COMMUNICATIONS CORP., et al., )
)
        Defendants. )
)

CA. No. 04-1337-KAJ

**CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO L.R. 26.2 – OUTSIDE COUNSEL'S EYES ONLY**

## DEFENDANT SANYO EPSON IMAGING DEVICES CORPORATION'S FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Sanyo Epson Imaging Devices Corp. ("SEID") hereby submits the following responses and objections to Plaintiffs' First Set of Interrogatories.

## GENERAL OBJECTIONS

SEID asserts the following general objections to Plaintiffs' First Set of Interrogatories. These objections are in addition to objections set forth separately in response to individual interrogatories and are incorporated in response to each individual interrogatory, whether or not they are separately stated therein.

1.    SEID objects to the definitions, instructions and interrogatories to the extent that they purport to impose any requirement or discovery obligation beyond those set forth in the applicable Federal Rules of Civil Procedure or the Local Rules of the District of Delaware.

2.    SEID objects to the definitions, instructions and interrogatories to the extent they seek the disclosure of documents or other information protected by the attorney-client privilege,

1

CONFIDENTIAL – ATTORNEYS' EYES ONLY

{10015769.DOC}

the work product doctrine, the common interest privilege or any other applicable privilege, protection or restriction upon discovery. Inadvertent disclosure of any privileged or protected information or documents in response to these interrogatories shall not be deemed a waiver of the applicable privilege or protection.

3.    SEID objects to the interrogatories to the extent they are overbroad, unduly burdensome or oppressive or vague and ambiguous.

4.    SEID objects to the definitions, instructions and interrogatories to the extent that they seek disclosure of information or documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

5.    SEID objects to the interrogatories to the extent that they seek to impose an obligation on SEID to disclose documents or information that is publicly available and/or as easily obtained by Plaintiff as by SEID, on the ground that such discovery is overbroad and unduly burdensome.

6.    SEID objects to the definitions, instructions and interrogatories to the extent that they seek information or documents that are already in the possession of Plaintiff.

7.    SEID objects to the interrogatories to the extent they seek information that is confidential or proprietary to SEID or third parties that may be used for improper purposes without the protection of an executed protective order entered by the Court and binding upon all persons allowed to access such confidential information. SEID will only produce such information once a protective order has been entered in this action. Moreover, where SEID owes a contractual obligation to obtain the consent of a third party prior to disclosure of information, SEID will only produce that information once the required consent has been obtained.

2

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

8.    SEID objects to certain of the interrogatories on the ground that they are premature. SEID reserves the right to revise and/or supplement its responses at a later date.

9.    SEID objects generally to the interrogatories on the ground that they are uncertain, overbroad and unduly burdensome to the extent that they request information with respect to "Accused Structures" and not to specific SEID products. Plaintiffs have only identified two models of products made or sold by SEC and/or SEID that they accuse of infringement. Furthermore, Plaintiffs' definition of "Accused Structures" includes claim terms that have not yet been construed by the Court.

10.    SEID objects generally to the interrogatories on the ground that they are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent that they relate to products that have not yet been accused of infringement and products that were manufactured, used, sold or offered for sale outside of the United States.

11.    SEID objects generally to the interrogatories to the extent that they purport to impose a requirement on SEID to search for information and/or documents in locations other than where SEID reasonably believes that non-duplicative responsive material might be located within the scope of a reasonable search. Such a requirement would be overbroad, unduly burdensome and oppressive.

12.    SEID objects generally to Plaintiffs' definitions and instructions on the ground that they are overbroad, oppressive and unduly burdensome, and that they result in interrogatories that seek information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

13.    SEID objects to Definition (2) to the extent that Plaintiffs seek information that is not in possession, custody or control of SEID. SEID objects to the definitions of "Sanyo

3

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Epson," "you" or "your" to the extent that through the definitions, Plaintiff seeks information from "without limitation divisions, subsidiaries, directors, agents, representatives, and employees and any predecessor with an interest." SEID has no right or responsibility to cause persons that are outside its control to provide any information in response to these interrogatories. SEID shall construe these interrogatories as being addressed to SEID, and, to those entities that are controlled by SEID, to the extent SEID reasonably anticipates that they have responsive, non-duplicative information.

14.    SEID objects to Definition (5) to the extent that it is overbroad and that, through this definition, Plaintiff seeks information that is neither relevant to this matter nor reasonably calculated to lead to the discovery of admissible evidence. SEID specifically objects to the definition of "referring or relating to" to the extent that it purports to include documents that are "in any way logically or factually relevant to the matter described" on these grounds. SEID further objects to this definition on the ground that, through this definition, Plaintiff seeks information that is not in the possession, custody or control of SEID.

15.    SEID objects to the definition of "lens array" in Definition (11) in that it is vague and ambiguous.

16.    SEID objects to the definition of "Accused Structures" in Definition (12) in that it is vague and ambiguous. Plaintiffs' definition of "Accused Structures" includes claim terms that have not yet been construed by the Court. Accordingly, interrogatories incorporating the term "Accused Structures" are also unreasonably overbroad insofar as they are not limited to products that contain the claim limitations of the '371 patent.

17.    To the extent any interrogatory seeks to impose an obligation to obtain or disclose information from suppliers, purchasers or customers, SEID objects on the grounds that such

4

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

{10015769.DOC}

information is not within SEID's possession, custody or control and is overbroad, burdensome and oppressive, and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

18.    Counsel's view as to whether information or a document is responsive or an interrogatory is objectionable is based upon present information and understanding. As discovery and investigation proceed, counsel's view as to the responsiveness of certain information or the propriety or premature nature of a particular interrogatory may change as new facts come to light, or as new facts shed a different light on previously discovered facts, or as the development of the pertinent legal issues alters the perceived significance of known facts.

19.    SEID objects generally to the interrogatories to the extent they are impermissibly compound and consist of multiple discrete parts, each of which constitute a separate interrogatory under F.R.C.P. 33.

20.    SEID will conduct a diligent search and reasonable inquiry in a good faith effort to discover information responsive to Honeywell's interrogatories. As discovery is ongoing, however, SEID reserves the right to make use of, or to introduce at hearing or trial, any additional information identified as being responsive to Honeywell's interrogatories, including, but not limited to, any information obtained in discovery or through further investigation. Likewise, SEID reserves the right to revise and/or supplement its responses in view of the Court's ruling on claim construction later in the litigation.

5

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify by trade name and model name or number, including any internal identification numbers or parts numbers, each and every Accused Structure that you make, use, sell, have made, or offer for sale from October 1998 to the present and that is based upon LCD technology contributed by Epson. For each Accused Structure, identify the date on which the model was first offered for sale or sold to others and identify any affiliated entity that is involved in the manufacture, distribution and/or sale of the Accused Structure.

**RESPONSE TO INTERROGATORY NO. 1:**

Each of the objections set forth in SEID's General Responses and Objections is incorporated fully into SEID's response to this interrogatory, which is provided subject to and without waiving any of the foregoing objections and conditions.

SEID objects to the interrogatory on the ground that it is vague, ambiguous, and uncertain, particularly with respect to the terms "trade name," "internal identification," "based upon," "contributed by," "Accused Structure," "affiliated entity" and "involved." In particular, the defined term "Accused Structure" is based upon claim terms that have not yet been construed by the Court. SEID further objects to this interrogatory as overbroad, unduly burdensome and as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. For example, the interrogatory requests information regarding products that have not been accused of infringing any of the patents-in-suit. The interrogatory also is not limited to products manufactured, used, sold or offered for sale within the United States. SEID also objects to the interrogatory as premature. Honeywell has not yet disclosed any of its contentions regarding infringement or claim construction. SEID further objects to the

6

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

interrogatory to the extent that it encompasses products imported, manufactured, sold or offered for sale by any entity other than SEID.

Subject to and without waiving the foregoing General and Specific Objections, SEID responds as follows:  In its letter dated May 27, 2005, Honeywell identified the following SEC products as allegedly practicing at least claim 3 of the '371 patent:  L2F50126 and L2F50011. These models of products were only sold by SEC or SEID outside the United States, and accordingly, the other information requested by this interrogatory is irrelevant. Nevertheless, subject to this further objection, SEID further responds as follows:

The L2F50011 was first shipped on or about November 19, 2002, and between that date and the present, the affiliated entity that was involved in manufacturing this product was Suzhou Epson Co., Ltd., 168, Jinfeng Road, Suzhou New Distruct, Suzhou, Jiangsu, China.  Additional affiliated entities involved in the sale and distribution of this product were SEC and SEID.  The L2F50126 was first shipped on or about January 20, 2004, and between that date and the present, the affiliated entities that were involved in manufacturing this product were Suzhou Epson Co., Ltd., Sanyo Epson Imaging Devices (Hong Kong) Ltd., Suite 2801, Great Eagle Center, 23 Harbour Road, Wanchai, Hong Kong, and Sanyo Epson Imaging Devices (Philippines) Inc., c/o Integrated Microelectronic Inc. 2/F Bldg. 1 North Science Ave. Special Export Pocessing Zone Laguna Technopark Inc. Binan, Lagna 4024, Philippines.  Additional affiliated entities involved in the sale and distribution of this product were SEC, SEID, Epson Europe Electronics GmbH, and Epson Hong Kong Ltd.   SEID is investigating the other LCD model numbers identified by Honeywell in its interrogatory responses, and will further supplement this response when that investigation is complete.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

{10015769.DOC}

In providing this response, SEID does not represent or concede, and expressly reserves the right to contest, that the above products contain the Accused Structure or are otherwise relevant to this action.  SEID is continuing its investigation and will supplement this response as it becomes appropriate.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 418023 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
John HAMILTON, et al., Plaintiffs,
v.
CIVIGENICS, et al., Defendants.
**No. Civ.A. 03-826 GMS.**

Feb. 22, 2005.

John H. Hamilton, Georgetown, DE, Pro se.
Joseph S. Wigate, Georgetown, DE, Pro se.
Andre L. Parker, Georgetown, DE, Pro se.
Juan Martinez, Jr., Georgetown, DE, Pro se.
Lee Ross, Georgetown, DE, Pro se.
Thomas Norwood, Georgetown, DE, Pro se.
James Colemen, Georgetown, DE, Pro se.
Christopher Gibbs, Georgetown, DE, Pro se.
Enrico D. Bates, Georgetown, DE, Pro se.
Trevor Moncrief, Georgetown, DE, Pro se.
Michael Lewis, Georgetown, DE, Pro se.
Danny Lee Parker, Georgetown, DE, Pro se.
Larry Reich, Georgetown, DE, Pro se.
Stefan Brittingham, Georgetown, DE, Pro se.
Alex Justice, Laurel, DE, Pro se.
Benjamin McKenzie, Georgetown, DE, Pro se.
Andre Hackett, Georgetown, DE, Pro se.
John D. Rickards, Georgetown, DE, Pro se.
Richard Jones, Georgetown, DE, Pro se.
Jacquie Reynolds, Georgetown, DE, Pro se.
Kevin Williams, Georgetown, DE, Pro se.
Lennie F. Childress, Georgetown, DE, Pro se.
Billy A. Winn, New Castle, DE, Pro se.
Timothy C. Duval, Sr., Georgetown, DE, Pro se.
Mitchell Hubis, Georgetown, DE, Pro se.
Darrel D. Stanley, Georgetown, DE, Pro se.
David Fowler, Georgetown, DE, Pro se.
Curtis G. Elliott, Georgetown, DE, Pro se.
Collidge Frazier, Georgetown, DE, Pro se.
Calvin L. Allen, Georgetown, DE, Pro se.
Jeremy Geiger, Georgetown, DE, Pro se.

Shawn Hopkins, Georgetown, DE, Pro se.
Edward A. Clark, Georgetown, DE, Pro se.
Daniel M. Prouse, Georgetown, DE, Pro se.
George R. Anthony, Jr., Georgetown, DE, Pro se.
Ronald Benton, Georgetown, DE, Pro se.
Eric S. Huffstutler, Georgetown, DE, Pro se.
Dedrick Chase, Georgetown, DE, Pro se.
Virgil Sudler, Georgetown, DE, Pro se.
Eric Tilghman, Georgetown, DE, Pro se.
Clifford T. Donnes, II, Georgetown, DE, Pro se.
Francis Worrell, Georgetown, DE, Pro se.
Alvin Wilson, Georgetown, DE, Pro se.
Barry L. Griffith, Georgetown, DE, Pro se.
Linwood Eley, Georgetown, DE, Pro se.
Vence D. Byrd, Georgetown, DE, Pro se.
Ronald Lofland, Georgetown, DE, Pro se.
Mark A. Mulrooney, Georgetown, DE, Pro se.
Jamaal Layne, Georgetown, DE, Pro se.
Deshawn Butter, Georgetown, DE, Pro se.
Michael P. Brown, Georgetown, DE, Pro se.
Louis J. Rizzo, Jr., Reger & Rizzo, LLP, and Aaron R. Goldstein, Wilmington, DE, for Defendants.

*MEMORANDUM*

SLEET, J.

### I. INTRODUCTION

*1 On August 21, 2003, John Hamilton ("Hamilton") filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, on behalf of himself and ninety-eight inmates (collectively, the "plaintiffs") incarcerated in the Sussex Correctional Institution ("SCI"), located in Georgetown, Delaware.[FN1] The complaint alleges that the State of Delaware Department of Corrections (the "DOC"), Rick Kearney ("Kearney"), in his capacity as warden, Civigenics ("Civigenics"), Allen Nesbit ("Nesbit"), a Civigenics employee, in his capacity as program coordinator of the KEY Program, and Civigenics employees Russell Buskirk ("Buskirk"), Dawn Burton ("Burton"), Theresa Evans Carter ("Carter"), and Michelle Reeves ("Reeves") violated the plaintiffs' First, Eighth, and Fourteenth Amendment rights.[FN2]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 418023 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

FN1. Hamilton was incarcerated at the time he initiated this lawsuit. On or about October 14, 2004, Hamilton was released from incarceration.

FN2. The KEY Program is part of the KEY Therapeutic Community, a drug rehabilitation program for incarcerated addicts that is administered by Civigenics, under contract with the State of Delaware.

Presently before the court are several motions: (1) Hamilton's motions to amend; FN3 (2) the DOC's motion to dismiss; (3) Kearney's motion to dismiss; and (4) the Civigenics defendants' motion to dismiss. For the following reasons, the court will deny the motions to amend and grant the motions to dismiss.

FN3. At present, fifty-three plaintiffs are still involved in the litigation. Hamilton is the only plaintiff that has responded to the defendants' motions to dismiss. However, Hamilton asserts that he is "the spokesperson for all the plaintiffs," and that "[h]is motion[s] not only serve[ ] him, but all the plaintiffs." (D.I. 77 ¶ 1.) Neither the defendants nor the remaining plaintiffs oppose Hamilton's assertions. The court, therefore, will treat Hamilton as the spokesperson for all of the plaintiffs.

## II. BACKGROUND

The plaintiffs allege that Kearney, Nesbit, and Civigenics violated their First, Eighth, and Fourteenth Amendment rights by "allowing inmates to have authority over them in violation of federal court mandates." The complaint alleges that since entering the KEY Program, on July 10, 2003, the plaintiffs have been given directives to keep their mouths shut. According to the plaintiffs, the directives violate their freedom of speech rights under the First Amendment.

The plaintiffs also allege violations of their Eighth Amendment rights. Specifically, the complaint alleges that the plaintiffs have been deprived of sleep since

their first night in the KEY Program because of "listen ups" that are called during the night. The complaint further alleges that the plaintiffs must lift "substantially heavy" locker boxes of other inmates during their daily cleaning requirements, and that they are required to "stand or sit tight" throughout the day. These requirements cause the plaintiffs great pain and anguish to their bodies. In addition, the complaint alleges that the plaintiffs are constantly screamed at and ridiculed by other inmates who serve as their supervisors. The plaintiffs contend that these acts constitute cruel and unusual punishment.

Lastly, the plaintiffs allege that their sentencing to the KEY Program violates their Fourteenth Amendment right to due process. The complaint alleges that if the plaintiffs choose not to participate in the KEY Program they are sent to the "hole," given a "write up" that adds points to their classification record, and lose all privileges for ninety days. The plaintiffs also allege that allowing inmates to supervise them violates their due process rights.

## III. STANDARD OF REVIEW

### A. Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997). Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington, 646 F.Supp. 118, 120 (D.Del.1986). In other words, "the court should apply the same standards

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 418023 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

as applied to Rule 12(b)(6) motions to dismiss." *Id.*

### B. Motion to Dismiss

#### 1. Rule 12(b)(1)

**\*2** A motion to dismiss under <u>Federal Rule of Civil Procedure 12(b)(1)</u> may present either a facial or factual challenge to subject matter jurisdiction. <u>Mortensen v. First Fed. Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977)</u>. The present motion makes a facial challenge to the complaint because the defendants' arguments are based solely upon the application of legal principles to the facts as alleged in the complaint. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiffs' favor. *See id.*

#### 2. Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to <u>Federal Rule of Civil Procedure 12(b)(6)</u> is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See <u>Kost v. Kozakiewicz,</u>* 1 F.3d 183 (3d Cir.1993). Thus, as in the case of a <u>Rule 12(b)(1)</u> motion, the court must accept the factual allegations of the complaint as true. *See <u>Graves v. Lowery, 117 F.3d 723, 726 (3d Cir.1997); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996).</u>* In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." <u>Colburn v. Upper Darby Tp., 838 F.2d 663, 666 (3d Cir.1988)</u>. However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3rd Cir.1997)</u>. A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See <u>Graves,</u>* 117 F.3d at 726; <u>Nami, 82 F.3d at 65</u> (both citing <u>Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)</u>). However, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " *<u>Estelle v. Gamble,</u> 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)* (quoting <u>Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)</u>).

### IV. DISCUSSION

#### A. Motion to Amend

Hamilton has filed two motions to amend (D.I.47, 72). The first amended complaint asserts a claim for retaliation. Hamilton alleges that he was unjustly removed from the Civigenics KEY Program in retaliation for filing this lawsuit.[FN4] Hamilton further alleges that, before he was dismissed from the KEY Program, Carter yelled and screamed at him calling him the "ringleader of the lawsuit," and asked what steps he had taken in terms of the state prisoner grievance procedure. He also alleges that SCI retaliated against him by placing his home phone number on its "visitors sheet," which was then circulated to all of the prisoners.

> FN4. The court notes that Hamilton now complains that he was removed from the KEY Program. However, in his original complaint, Hamilton alleges that being sentenced to the KEY program violates his right to due process.

In *<u>Rauser v. Horn,</u>* the Third Circuit defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed in that claim. *See <u>Rauser v. Horn, 241 F.3d 330 (3d Cir.2001)</u>*. The court established a three prong test for determining whether retaliation has occurred. First, the prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. *See <u>id.</u> at 333* (citing *<u>Thaddeus-X v. Blatter,</u> 175 F.3d 378, 389 (6th Cir.1999)); see also <u>Drexel v. Vaughn,</u> Civ.A.No. 96-3918, 1998 WL 15178, at \* 7 (E.D.Pa. Apr. 2,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 418023 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

1998) (determining that prisoner had engaged in constitutionally protected conduct before proceeding with retaliation inquiry). Next, the prisoner-plaintiff must show that he has suffered some adverse action at the hands of prison officials. *See Rauser,* 241 F.3d at 333 (citing *Allah v. Sieverling,* 229 F.3d 220, 225 (3d Cir.2000)). A prisoner-plaintiff can satisfy this prong by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See id.* The last *Rauser* prong requires a prisoner-plaintiff to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The court employs a burden-shifting regime to determine whether a causal link exists. The prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See id.* (citing *Mount Healthy Bd. of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. *See id.* If the defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. *See id.* at 334.

*3 In the present case, Hamilton has a constitutional right to pursue civil redress in federal court under § 1983. Therefore, Hamilton meets the first prong of the *Rauser* test. Hamilton, however, does not satisfy the second prong of *Rauser.* As previously stated, in the first sought after amendment, Hamilton has alleged that he was removed from the KEY Program, yelled at by Carter, and that his home phone number was circulated throughout the prison building. The court finds that these events would not negatively sway a reasonable prisoner from pursuing redress in the court. As a result, the court finds that these allegations are insufficient to survive a motion to dismiss, thus rendering the amendment futile. Accordingly, the court will deny Hamilton's motion to amend.[FN5]

FN5. The court does not reach the third prong

of the *Rauser* test because Hamilton has not satisfied the second prong.

The second amended complaint alleges a Double Jeopardy claim. Hamilton alleges that forcing inmates to participate in the KEY Program and giving them institutional "write ups" and sanctions, in addition to program sanctions, violates the plaintiffs' Fifth Amendment rights. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause affords three protections to the criminal defendant. The first two protect against a second prosecution for the same offense after acquittal, and against a second prosecution for the same offense after conviction. *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). The third protection is against " 'multiple punishments for the same offense' imposed in a single proceeding." *Id.* (citing *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). It ensures that the sentencing court does not exceed the total punishment authorized by the legislature. *See Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

With these protections in mind, the court turns to Hamilton's Double Jeopardy claim. The court concludes that the DOC's disciplinary guidelines do not raise a due process issue because the DOC is neither a prosecutor nor a sentencing court. Furthermore, Hamilton's complaints are not related to any judicial proceeding. Thus, Double Jeopardy does not prevent the DOC from imposing treatment program sanctions, as well as institutional sanctions or disciplinary action for the same misconduct. Hamilton's amended complaint, therefore, would not withstand a 12(b)(6) motion to dismiss and would, again, be futile. Given the foregoing, the court will deny this motion to amend.

B. Motion to Dismiss

1. Sovereign Immunity

a. The DOC and Warden Kearney

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 418023 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

The plaintiffs' complaint seeks to hold the DOC and Kearney liable in their official capacities. The plaintiffs assert that the DOC is a municipality or local government entity and not the State of Delaware. According to Hamilton, the DOC operates much like the Mayor of a town in that it has the authority to regulate and set standards for the penal institutions as well as the probation and parole authorities within the State of Delaware. Thus, the DOC is a "person" under § 1983. Hamilton also asserts that Kearney is a "person" under § 1983 because the warden is "responsible once a person is entrusted to that institution [SCI]." (D.I. 73, at 2.) The court disagrees and concludes that the doctrine of sovereign immunity bars any claims against the DOC and Kearney.

*4 The DOC is a state agency that exists pursuant to the laws of Delaware. See Del.Code Ann. tit. 11 §§ 6501, 6520. Kearney, as warden of the Sussex Correctional Institute, is a state official acting under color of state law. See Cespedes v. Coughlin, 956 F.Supp. 454, 465 (S.D.N.Y.1997). A suit against a state agency or state official in his or her official capacity is treated as a suit against the state. See Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). This is so because neither a state nor its officials acting in their official capacities are "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). While a state is normally entitled to sovereign immunity, Congress may have abrogated the state's immunity through a valid exercise of its power, or the state itself may have waived its immunity. See Lavia v. Commonwealth of Pennsylvania, 224 F.3d 190, 195 (3d Cir.2000).

Neither of the two above-mentioned sovereign immunity exceptions are relevant here. First, the state has not waived its Eleventh Amendment immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." Space Age Products, Inc. v. Gilliam, 488 F.Supp. 775, 780 (D.Del.1980) (citing Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Such an express waiver may be made through clear constitutional or statutory

language. See Lavia, 224 F.3d at 195. Neither the constitution nor any Delaware statute expressly waives Delaware's Eleventh Amendment sovereign immunity. See Ospina v. Dept. of Corr., 749 F.Supp. 572, 579 (D.Del.1990). Therefore, Delaware has not clearly waived its immunity.

Finally, Congress has not abrogated the states' immunity for claims under Section 1983. See Quern v. Jordan, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Since Delaware's immunity has not been waived or abrogated, the court will dismiss the plaintiffs' claims against the DOC and Kearney in their official capacities.

### b. Civigenics and Its Employees

The plaintiffs assert that Civigenics and its employees are not state actors. The plaintiffs further assert if the court finds that Civigenics and its employees were acting "under color of law," then they have waived sovereign immunity under Del.Code Ann. tit. 10 § 4012(2) and/or Del.Code Ann. tit. 18 § 6511. The court is not persuaded by either of the plaintiffs' assertions. First, Civigenics and its employees are state actors because they are employed by the State of Delaware to provide treatment to inmates and, therefore, acted under color of law for purposes of § 1983 when undertaking their duties in treating the plaintiffs' addictions. See West v. Atkins, 487 U.S. 42, 48-54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (holding that a physician who is under contract with the State to provide medical services to inmates at a state-prison hospital on a part-time basis acts "under color of state law" within the meaning of § 1983).

*5 Moreover, Civigenics and its employees have not waived sovereign immunity because Del.Code Ann. tit. 10 § 4012(2) and Del.Code Ann. tit. 18 § 6511 are inapplicable to these defendants. Section 4012(2) states that a governmental entity will be liable for negligent acts or omissions causing property damage, bodily injury, or death "[i]n the construction, operation or maintenance of any public building or the appurtenances thereto ..." Because Civigenics and its employees are not involved in the construction,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 418023 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

operation, or maintenance of SCI, this provision does not apply to them. Similarly, section 6511 has no relevance to this litigation. While section 6511 expressly consents to suits against the State in state court, the Delaware courts have held that section 6511 does not waive sovereign immunity to suits in federal court. *See Ospina,* 749 F.Supp. 572; *Kardon v. Hall,* 406 F.Supp. 4 (D.Del.1975). As such, Civigenics and its employees are state actors and have not waived sovereign immunity. Accordingly, the court will dismiss the plaintiffs' claims against these defendants in their official capacities.

### 2. Individual Liability under 42 U.S.C. § 1983

It is not clear from Hamilton's complaint whether he seeks to hold the defendants liable in their individual capacities. However, because Hamilton is a *pro se* plaintiff and because he has stated in response to the defendants' motions to dismiss that he is suing the defendants in both their official and individual capacities, the court will address Hamilton's claims against the defendants individually. *See Manchester v. Rzewnicki,* 777 F.Supp. 319, 324 (D.Del.1991) (noting how *"pro se* complaints are read with less stringent scrutiny than formal [one]s drafted by lawyers"). In order to recover against the defendants individually, the plaintiffs must show that they were deprived of a constitutional right by a person acting under the color of state law. *See* 42 U.S.C. § 1983. As previously discussed, the defendants were acting under color of state law. Thus, the only question raised by the motions to dismiss is whether the defendants' actions violated any of the plaintiffs' rights.

The plaintiffs allege that the defendants have violated their First, Eighth, and Fourteenth Amendment rights. The complaint, however, fails to indicate any personal involvement by any of the defendants.[FN6] At most, the complaint alleges that Kearney and Nesbit violated the plaintiffs' rights in their supervisory roles.[FN7] Thus, Hamilton's claims against the defendants are premised on the doctrine of *respondeat superior.* It is well established, however, that absent some sort of personal involvement in the allegedly unconstitutional conduct, a § 1983 defendant cannot be held liable under a

*respondeat superior* theory. *See Fagan v. City of Vineland,* 22 F.3d 1283, 1291 (3d Cir.1994); *Gay v. Petsock,* 917 F.2d 768 (3d Cir.1990). Because the plaintiffs have failed to allege any act or omission by the defendants that violated their constitutional rights, they cannot hold the defendants liable individually. Accordingly, the court will dismiss the plaintiffs' claims against the defendants in their individual capacities.

> FN6. For example, the plaintiffs allege that their First Amendment freedom of speech rights were violated when they were told to keep their mouths shut, but do not allege which, if any, of the defendants told them to keep their mouths shut.

> FN7. Buskirk, Burton, Carter, and Reeves are not listed as defendants in the complaint's caption. Nor do any of the plaintiffs' claims allege any personal involvement by these defendants.

### V. CONCLUSION

*6 After reviewing Hamilton's proposed amendments, the record, and the relevant case law, the court concludes that the amendments are futile because they would not survive a motion to dismiss. Therefore, the court will deny Hamilton's motions to amend. The court further concludes that the plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief. Thus, the court will grant the defendants' motions and dismiss the present case in its entirety.

### ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
1. The plaintiffs' Motions to Amend (D.I.47, 72) are DENIED.
2. The defendants' Motions to Dismiss (D.I.50, 67, 78) are GRANTED.
3. All claims in the plaintiffs' complaint (D.I.5) are DISMISSED with prejudice.
4. The plaintiffs' ten outstanding motions (D.I.27, 29,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                   Page 7
Not Reported in F.Supp.2d, 2005 WL 418023 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


31, 38, 40, 42, 88, 103, 104) are DENIED as moot.
5. The State defendants' Motion to Stay Discovery
(D.I.107) is DENIED as moot.


D.Del.,2005.
Hamilton v. Civigenics
Not Reported in F.Supp.2d, 2005 WL 418023 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03cv00826 (Docket) (Aug. 21, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
   United States District Court,N.D. Illinois, Eastern
                        Division.
             ENGATE, INC., Plaintiff,
                           v.
   ESQUIRE DEPOSITION SERVICES, L.L.C. and
           Atkinson-Baker, Inc. Defendants.
                  No. 01 C 6204.

                   March 26, 2004.

Joseph A. Grear, Law Offices of Rolf Stadheim, Ltd.,
Gregory M. Jordan, George C. Summerfield, Joseph A.
Grear, Stadheim & Grear, Ltd., Chicago, IL, for
Plaintiff.
William T. Enos, Oblon, Spivak, McClelland, Maier &
Neustadt, P.C., Alexandria, VA, David C. Bohan,
Sachnoff & Weaver, Ltd., Alan R. Lipton, Hinshaw &
Culbertson, Glen P. Belvis, James A. Collins, Richard
A. Kaplan, Joseph William Flerlage, Brinks, Hofer,
Gilson & Lione, Timothy Todd Patula, Charles Thomas
Riggs, Jr., Carolyn C. Andrepont, Patula & Associates,
John William Guarisco, Terry David Weissman, Neal,
Gerber & Eisenberg, Thomas Arthur Miller, Thomas
Irving Ross, Gina Marie Steele, Russell Charles
Petersen, Marshall, Gerstein & Borun, Lee F.
Grossman, Grossman & Flight, LLC, Stephen C.
Veltman, Kathleen Anne O'Connor, Pretzel & Stouffer,
Chtd., Reginald Juvann Hill, Jenner & Block, LLC,
Chicago, IL, William D. Sims, David P. Henry, Vinson
& Elkins, Dallas, TX, for Defendants.

        *MEMORANDUM OPINION AND ORDER*
KENNELLY, J.
*1 Engate, Inc., holds the rights to several patents
covering certain functions that can be used by court
reporters and attorneys to enhance the utility of real
time transcription services-but the patents do not cover
real time court reporting generally. *Engate, Inc. v.
Esquire Deposition Services, L.L.C.,* No. 01 C 6204,

2003 WL 22117805, at *2 (N.D.Ill. Sept.10, 2003).
Engate sued several court reporting services, including
the only two remaining defendants, Esquire Deposition
Services, L.L.C., and Atkinson-Baker, Inc., alleging
that they infringed Engate's patents. The defendants
sought partial summary judgment on Engate's claim that
they had engaged in direct infringement, and the Court
granted the motion, finding the defendants could not be
held vicariously liable for any infringement by
independent contractor court reporters who provide the
bulk of the defendants' deposition services. *Engate,
Inc. v. Esquire Deposition Services, L.L.C.,* 236
F.Supp.2d 912 (N.D.Ill.2002). The Court subsequently
granted the defendants' motion for summary judgment
on Engate's claim that the defendants' employee court
reporters infringed on Engate's patents, holding Engate
had failed to offer any evidence that the employees
"have actually performed the feature functionalities
disclosed in Engate's patents." *Engate,* 2003 WL
22117805, at *8.

Although the Court granted the defendants' motions for
summary judgment on Engate's claims of direct
infringement, we left open the possibility that the
defendants "might be liable for 'active inducement of a
method infringement or contributory infringement of a method
claim under 35 U.S.C. § 271(b) and (c).' " *Engate,*
2003 WL 22117805, at *3 (quoting *RF Delaware, Inc.
v. Pacific Keystone Technologies, Inc.,* 326 F.3d 1255,
1267 (Fed.Cir.2003)). At the time, the Court was "not
certain whether Engate ha[d] asserted a claim under §
271(b) or (c)" and did not decide the issue because it
was not then before the Court. *Id.* Engate now claims
the defendants are liable for inducing infringement by
court reporters and attorneys. The defendants argued
initially that Engate had waived any claim that they had
engaged in indirect infringement, but we rejected that
argument. *See* Minute Order (dated July 22, 2003). The
defendants seek summary judgment on Engate's claims
of inducement.

Summary judgment is proper " 'where the pleadings,
depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that

                © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 2
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ' *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 672 (Fed.Cir.1990) (quoting Fed.R.Civ.P. 56(c)). In assessing a summary judgment motion, the Court's "function is not to weigh the evidence but merely to determine if 'there is a genuine issue for trial." ' *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir.2002) (citation omitted). The Court evaluates admissible evidence in the record in the light most favorable to the nonmoving party. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1307 (Fed.Cir.1998). But "[t]he nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion." ' *Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir.2002) (citation omitted).

**\*2** Local Rule 56.1(a)(3) requires the party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law...." Atkinson-Baker did not file a Rule 56.1(a)(3) statement of undisputed facts, and its explanation-that it did not have to come forth with evidence because Engate has the burden of proving indirect infringement-does not excuse its omission. Engate urges the Court to deny Atkinson-Baker's motion on that ground. But "the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995) (citation omitted). Although Atkinson-Baker brazenly violated the Local Rule, the Court will not deny its motion on that basis. Even if we did so, we would still have to consider Esquire's parallel motion for summary judgment. Because Esquire is entitled to summary judgment and Atkinson-Baker raises substantially the same arguments as Esquire, it would be a waste of judicial resources to deny Atkinson-Baker's motion on procedural grounds and let the case proceed to a trial with an essentially predetermined outcome.

But before we consider the parties' arguments on the merits, we must clarify two statements in our prior opinions that the parties have taken out of context in

their briefs. Engate argues that the Court has already found direct infringement by court reporters and attorneys. Not so. In considering whether the defendants could be held vicariously liable for the actions of independent contractors, we noted that "[t]he parties agree that any actual acts of infringement are done, not by the defendants themselves, but by the court reporters who work for the defendants and by the attorneys who use the court reporters' services." *Engate, Inc.*, 236 F.Supp.2d at 913. This was not a finding of infringement. Rather, it reflected a concession made by the defendants for argument's sake: if (as the defendants argued) Esquire and Atkinson-Baker were not vicariously liable for the actions of independent contractors, the contractors' use of patented functionalities would be immaterial. Our comment did not relieve Engate of the need to prove that actual infringement occurred. This is clear from our later statement that although "[t]he evidence indicates that at least some of Esquire's employees have performed real time court reporting services," "there is no evidence to suggest that they have *actually* performed the feature functionalities disclosed in Engate's patents." *Engate*, 2003 WL 22117805, at \*8 (emphasis added).

Engate is not alone in misreading our prior rulings. The defendants erroneously conclude that one of our past decisions precludes a finding that the defendants induced infringement. The defendants argue that they "cannot be liable for the claims that only require action taken by court reporters, because the Court has previously held that 'there [is no] evidence to show that the defendants directed or required the court reporters to use the patented inventions; on the contrary, the evidence shows that the court reporters selected and bought their own equipment." ' Esquire Reply at 18 (quoting *Engate*, 236 F.Supp.2d at 914). The defendants have taken our comments out of context. When we concluded that "the defendants are not liable for the use of any patented invention by the court reporters who work for them as independent contractors," our holding pertained only to the question of whether the defendants could be held vicariously liable for direct infringement. *Id.* at 915. Today we are asked to consider whether the defendants induced court reporters and attorneys to directly infringe Engate's patents-and our prior ruling does not preclude us from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

holding the defendants liable under § 271(b).

**\*3** We now turn to whether a genuine issue of fact exists on the question of whether the defendants induced infringement. Under § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To establish liability, Engate must prove that once the defendants knew of Engate's patents, they "actively and *knowingly* aid[ed] and abett[ed] another's direct infringement." *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.Cir.1988) (emphasis in original). " '[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement." ' *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed.Cir.2003) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990)). A violation of § 271(b) can be boiled down to three essential elements: (1) direct infringement by a third party; (2) intent by the defendant to induce infringement by the third party; and (3) knowledge by the defendant that its actions would induce actual infringement by the third party. *See Met-Coil Systems Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed.Cir.1986) ("Absent direct infringement of the patent claims, there can be neither contributory infringement nor inducement of infringement."). Engate concedes that Esquire and Atkinson-Baker did not learn of Engate's patents until Engate filed this lawsuit on October 15, 2001, which means the defendants could not have known until that date of any inducement to infringe upon a patent. Therefore, Engate can survive summary judgment only if a reasonable jury could find that after October 15, 2001, court reporters and/or attorneys infringed upon patents after the defendants intentionally induced them to do so.

The defendants argue that they are entitled to summary judgment because Engate's evidence suffers from the same deficiency that we have found before: it shows only that court reporters and attorneys *could* infringe the patents, not that they *actually* did. *See Engate*, 2003 WL 22117805, at \*8. The defendants also argue that Engate cannot establish that the defendants had the requisite intent to induce infringement. If we find that Engate has failed to provide evidence from which a

reasonable jury could find intent to induce, we need not consider whether direct infringement has occurred because intent to induce infringement is an essential element to its claim.

Engate argues that Atkinson-Baker and Esquire's intent that court reporters and attorneys use patented functions can be inferred from the facts that:
• both defendants advertise and schedule real time reporting of depositions at which LiveNote is used;
• both defendants make money from real time reporting of depositions by independent contractors;
• both defendants resell LiveNote software;
• "Esquire provides a laptop loaded with LiveNote for third parties to use at real time depositions";
**\*4** • "Esquire lends equipment to its independent contractors to perform real time depositions";
• Esquire previously maintained web sites that offered "Interactive Realtime reporting (instantaneous transcription via on-site computer hookup with LiveNote™ or Summation®-software training available)";
• "Esquire has trained attorneys in the use of LiveNote software"; and
• "Atkinson-Baker maintained a list of 'LiveNote clients' who did not pay for a real time hook up."

Engate Resp. at 3-5; Engate Ex. V. But a jury could not reasonably infer from this evidence that either Esquire or Atkinson-Baker intended patented functions to be performed at depositions they scheduled. As we have previously noted, "[t]he patents in suit do not cover real time court reporting generally," and "Engate has no right to prevent the use of real time reporting in and of itself." *Engate*, 2003 WL 22117805, at \*2. Thus to survive summary judgment, Engate must show more than that Atkinson-Baker and Esquire intended for real time reporting of depositions to occur.

Engate argues that two press releases issued by Esquire discussing the progress of this lawsuit provide evidence of intent for infringement to occur. One passage states: We believe the court's rulings create a significant barrier for Engate. In addition to the difficulty of meeting its burden of proving that the patent claims (the methods and features) were *actually* infringed, its strategy of targeting its enforcement on the court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 4
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

reporting agencies has failed to achieve its desired goal. We have always believed that it is impractical and not very cost effective for Engate to sue thousands of court reporters across the country. Of course, we hope that will never happen and given the vast sums of money expended so far in this litigation, we empathize with those reporters that have settled to date.

Engate Ex. W at 5 (emphasis in original). The second passage states:In preparation for its defense, Esquire uncovered what it believes to be a solid defense for invalidity based upon "prior art ." Kenneth Thorn, CEO of the managing member of Esquire, revealed that Esquire's research demonstrates that many of the real time functions for which Engate obtained patent rights were in use in the late 1980s-well before the first patent was obtained. Esquire's motion cites various printed publications describing real time features in use that were not submitted to the patent office when it granted the patents.

Engate Ex. X. Engate argues that these two passages reflect Esquire's attempt to encourage court reporters "to continue to perform the accused real time reporting services, notwithstanding Engate's patent infringement claims." Engate Resp. at 4. But both press releases emphasize that the litigation is ongoing and that liability is still possible despite Esquire's optimism about the outcome. We fail to see how these general updates on the status of the lawsuit, which recognize that liability has not been entirely foreclosed, can be said to encourage court reporters to perform the particular functionalities that supposedly infringe Engate's patents.

**\*5** Engate also refers to a document, created by one of Esquire's regional offices, that we discussed in a previous ruling as listing services including the following:
Interactive Realtime-Connect a laptop computer to the reporter's computer by using interactive software such as LiveNote™, Summation™, or e-transcript binder™ to search, annotate and review the testimony as it is occurring. Internet Realtime-Deposition transcripts can be securely viewed by any member of parties in realtime via the internet using LiveNote™ or Summation™ internet software.
...

Synchronization of Video to Transcript-Instantly search and retrieve videotaped testimony using your computer.

*Engate,* 2003 WL 22117805, at * 11. Engate refers to this document by stating that "Esquire's regional offices have disseminated a document identifying as one of its services 'Interactive Realtime' in which LiveNote software is used." Engate Resp. at 3. When Engate previously provided the Court with this document to review, the Court noted:the document shows, at most, that Esquire offers to sell *something;* it is not evidence that Esquire offers to sell what is disclosed in the asserted claims. Such a demonstration would require more analysis comparing the services generally described in the document with the methods and systems described in those claims. Engate has not argued, for example, that "Interactive Realtime," "Internet Realtime" and "Synchronization of Video to Transcript" ... can be achieved only by means of the methods and systems claimed in the patents.

*Engate,* 2003 WL 22117805, at \*11 (emphasis in original). Engate has said nothing in this round of the litigation that causes the Court to reconsider these comments. In short, the defendant's references in the document to real time reporting and to the use of particular software products do not permit a reasonable inference that the identified services *necessarily* involve the infringement of Engate's patents.

It is uncontested that LiveNote and the other real time reporting software used at depositions scheduled by the defendants have substantial non-infringing uses. Engate provides no evidence that the primary incentive for customers to use the real time reporting services offered by the defendants is that the software they use has the capability of performing the supposedly patented functions. And we cannot simply assume that Atkinson-Baker and Esquire substantially benefit from or have an incentive to encourage the use of real time reporting software products for the purpose of performing supposedly patented functions. Engate has failed to present any direct evidence that the defendants intended the software to be used for anything other than non-infringing uses. Although circumstantial evidence is ordinarily sufficient to prove intent, *Warner-Lambert Co.,* 316 F.3d at 1363 (citation omitted), the Federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 5
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Circuit has suggested that when, as in this case, there are substantial uses of a product that do not infringe upon the plaintiff's patent, a court may not be able to infer intent to cause infringement without direct evidence. *Id.* at 1365.

**\*6** In this case, however, neither circumstantial nor direct evidence of the requisite intent exists. Even after the Court draws reasonable inferences in favor of Engate, as we must when considering the defendants' motions for summary judgment, the evidence Engate offers suggests, at most, that Atkinson-Baker and Esquire advertised and scheduled real time reporting of depositions, knowing that court reporters and attorneys might take advantage of the functionalities of the identified real time reporting software products, some of which functions, Engate contends, infringe upon its patents. This is not enough to raise a genuine issue regarding intent, because "[e]specially where a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent." *Id.*

Engate urges us to apply a more lenient standard, arguing it should be able to meet the intent requirement by providing evidence that the defendants " 'knew or should have known [their] actions would induce actual infringement." 'Engate Resp. at 2 (quoting *Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990)). However, the Federal Circuit's decision last year in *Warner-Lambert* explicitly stated that " 'knowledge of the acts alleged to constitute infringement" ' is not enough. *Warner-Lambert,* 316 F.3d at 1363 (citation omitted). Relying on the same case cited by Engate, the Federal Circuit concluded that "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Id.* at 1364 (citing *Manville Sales,* 917 F.2d at 554). In *Warner-Lambert* the plaintiff made the same argument offered by Engate. Warner-Lambert argued that the district court erred in granting summary judgment for the defendant because the defendant, Apotex, should be held liable for inducement because it knew or should have known that doctors would prescribe Apotex's generic drug for non-FDA approved uses that were patented by the plaintiff. The Federal Circuit rejected this argument, explaining that

if a physician, without inducement by Apotex, prescribes a use of gabapentin in an infringing manner, Apotex's knowledge is legally irrelevant. In the absence of any evidence that Apotex has or will promote or encourage doctors to infringe the neurodegenerative method patent, there has been raised no genuine issue of material fact.

*Id.* Under this standard, evidence that Atkinson-Baker and Esquire may have known that court reporters and attorneys were utilizing software products that allegedly had the capability of infringing Engate's patents is insufficient to permit a jury to find intent to induce infringement.

This conclusion is consistent with the Federal Circuit's holding in a slightly different context that a defendant's failure to prevent direct infringement is not enough to hold him liable for inducement. In *Tegal Corp. v. Tokyo Electron Co.* the Federal Circuit had to determine whether the district court properly held Tokyo Electron in contempt for violating an injunction prohibiting it from infringing upon a patent held by Tegal. Tegal argued that "by taking no action to prevent" a corporate affiliate from engaging in the behavior proscribed by the injunction, Tokyo Electron "was guilty of 'facilitating' infringement by its corporate affiliates." *Tegal Corp. v. Tokyo Electron Co.,* 248 F.3d 1376, 1378 (Fed.Cir.2001). In probing this theory of liability, the Federal Circuit analogized facilitation to inducement under § 271(b). The court stated that "[i]n the absence of a showing of control over another party, merely permitting the party to commit infringing acts does not constitute infringement, and it likewise cannot constitute 'facilitating infringing acts." *Id.* Thus the court concluded that "evidence of mere inaction did not constitute inducement." *Id.* at 1379 (citing *A. Stucki Co. v. Worthington Industries, Inc.,* 849 F.2d 593, 597 (Fed.Cir.1988)).

**\*7** Atkinson-Baker and Esquire may have understood that court reporters and attorneys attending real time depositions scheduled by the defendants had available to them the functionalities patented by Engate. Because the software products they were using had substantial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

non-infringing uses, neither knowledge of possible or even probable infringement nor failure to prevent the infringement constitutes intent to actively induce infringement. Thus Engate cannot prove inducement or even create a genuine issue of fact as to that element.

Because a reasonable jury could not find Atkinson-Baker or Esquire intended to induce infringement, the defendants are entitled to summary judgment, and the Court need not consider whether Engate has offered sufficient evidence of direct infringement. Therefore, we need not consider the defendants' motion to strike the declaration of Rhett Dennerline, offered by Engate as evidence of direct infringement by court reporters and lawyers.

Conclusion

For the reasons stated above, the Court grants Atkinson-Baker and Esquire's motions for summary judgment [docket # 153]. Defendants' joint Motion to Strike the Declaration of Rhett R. Dennerline is terminated as moot [docket # 211-1, 2]. The defendants' motions for partial summary judgment of invalidity are also terminated as moot [docket # 183]. The Clerk is directed to enter judgment in favor of the defendants.

N.D.Ill.,2004.
Engate, Inc. v. Esquire Deposition Services, L.L.C.
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 740127 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Reply to Engate's Objections to Defendants' Bills of Costs (Feb. 6, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 740129 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Their Motion to Have the Case Declared Exceptional (Feb. 6, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 549041 (Trial Motion, Memorandum and Affidavit) Engate's Opposition to the Defendants' Motion to Have the Case Declared Exceptional (Jan. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 549040 (Trial Motion, Memorandum and Affidavit) Engate's Objections to Esquire's Bill of Costs (Jan. 12, 2006) Original Image of this Document (PDF)
• 2006 WL 549039 (Trial Motion, Memorandum and Affidavit) Engate's Objections to Atkinson-Baker's Bill of Costs (Jan. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 549038 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Their Motion to Have the Case Declared Exceptional (Jan. 9, 2006) Original Image of this Document (PDF)
• 2004 WL 2256985 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Their Motion for Reconsideration (Aug. 18, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2256983 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Engate's Motion for Reconsideration (Aug. 17, 2004) Original Image of this Document (PDF)
• 2004 WL 2256984 (Trial Motion, Memorandum and Affidavit) Engate's Reply in Support of its Opposition to the Defendants' Motion for Reconsideration (Aug. 17, 2004) Original Image of this Document (PDF)
• 2004 WL 2256982 (Trial Motion, Memorandum and Affidavit) Motion for Reconsideration (Aug. 11, 2004) Original Image of this Document (PDF)
• 2004 WL 2256981 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Engate's Opposition to Defendants' Motion to Strike (Jul. 7, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2256980 (Trial Motion, Memorandum and Affidavit) Engate's Sur-Reply in Opposition to the Defendants' Motion for Summary Judgment of Anticipation (Jun. 14, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2256977 (Trial Motion, Memorandum and Affidavit) Esquire's Response to Engate's Statement of Facts in Support of Summary Judgment on Esquire's Counterclaim of Unfair Competition and Esquire's Statement of Additional Facts (May 21, 2004) Original Image of this Document (PDF)
• 2004 WL 2256979 (Trial Motion, Memorandum and Affidavit) Esquire's Memorandum in Support of its Motion for Summary Judgment on its Unfair Competition Counterclaim and Its Opposition to Engate's Motion to Dismiss Esquire's Counterclaim for Unfair Competition Under Fed. R. Civ. P. 12(b)(6) or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

for Summary Judgment (May 21, 2004) Original Image of this Document with Appendix (PDF)

• 2004 WL 2256976 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Engate's ""Motion in Limine" (May 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2256972 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Engate's Opposition to Defendants' Motion for Partial Summary Judgment of Invalidity for Some of the Asserted Claims (May 11, 2004) Original Image of this Document (PDF)

• 2004 WL 2256967 (Trial Motion, Memorandum and Affidavit) Notice of Engate's Motion to Dismiss Esquire's Counterclaim for Unfair Competition Under Fed. R. Civ. P. 12(b)(6) or for Summary Judgment (Apr. 26, 2004) Original Image of this Document with Appendix (PDF)

• 2004 WL 2256969 (Trial Motion, Memorandum and Affidavit) Esquire's Supplemental Brief Regarding Issues Raised During the Hearing on the Defendants' Motions to Alter and Amend the Judgment (Apr. 23, 2004) Original Image of this Document with Appendix (PDF)

• 2004 WL 2256962 (Trial Motion, Memorandum and Affidavit) Brief of the National Court Reporters Association as Amicus Curiae in Support of the Motions Filed by Esquire Deposition Services, LLC and Atkinson-Baker, Inc. to Alter and Amend the Judgment (Apr. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2256965 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Engate's Submission Regarding Supplement Authorities in Regards to Their Motions to Alter and Amend the Judgment (Apr. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2256959 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Their Motions to Alter and Amend the Judgment (Apr. 19, 2004) Original Image of this Document (PDF)

• 2004 WL 2256957 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Motion to Alter Or Amend Judgment (Apr. 12, 2004) Original Image of this Document (PDF)

• 2004 WL 2256954 (Trial Motion, Memorandum and Affidavit) Esquire's Reply to Engate's Opposition to Esquire's Motion for Partial Summary Judgment of No Indirect Infringement (Mar. 11, 2004) Original Image

of this Document with Appendix (PDF)

• 2004 WL 2256953 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Engate's Opposition to Defendants' Joint Motion to Strike the Declaration of Rhett R. Dennerline Or, Alternatively, to Strike the Opinions Expressed Therein (Mar. 10, 2004) Original Image of this Document (PDF)

• 2004 WL 2256950 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker, Inc's Reply to Engate's Opposition to Defendant's Motion for Summary Judgment of No Indirect Infringement%n1%n (Mar. 5, 2004) Original Image of this Document (PDF)

• 2004 WL 2256951 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker Inc.'s Reply to Engate's Statement of ""Additional" Facts and Atkinson-Baker Inc.'s Statement of Additional Facts (Mar. 5, 2004) Original Image of this Document with Appendix (PDF)

• 2004 WL 2256952 (Trial Motion, Memorandum and Affidavit) Esquire's Response to Engate's Rule 56.1 Statement of Undisputed Facts and Additional Statement of Facts and Esquire's Additional Statement of Facts (Mar. 5, 2004) Original Image of this Document with Appendix (PDF)

• 2004 WL 2256949 (Trial Motion, Memorandum and Affidavit) Engate's Memorandum in Opposition to the Defendants' Motion for Summary Judgment of Anticipation (Mar. 4, 2004) Original Image of this Document (PDF)

• 2004 WL 869705 (Trial Motion, Memorandum and Affidavit) Engate's Memorandum in Opposition to the Defendants' Motion for Summary Judgment of Anticipation (Mar. 4, 2004) Original Image of this Document (PDF)

• 2004 WL 3607204 () (Partial Testimony) (Feb. 25, 2004) Original Image of this Document (PDF)

• 2004 WL 3609550 () The Videotaped Discovery Deposition of Rhett R. Dennerline (Feb. 25, 2004) Original Image of this Document (PDF)

• 2004 WL 3607832 () Declaration of Rhett Dennerline in support of Engate's Cross-Motion for summary Judgment that the claims of the patents in suit are not Anticipated (Feb. 23, 2004) Original Image of this Document (PDF)

• 2004 WL 869703 (Trial Motion, Memorandum and Affidavit) Defendants' Consent Motion to Supplement Their Motion for Summary Judgment of Invalidity with Two Additional Declarations (Feb. 2, 2004) Original

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 8

Image of this Document with Appendix (PDF)
• 2004 WL 869704 (Trial Pleading) Defendants' Amended Statement of Undisputed Facts in Support of Their Motion for Partial Summary Judgment of Invalidity for Some of the Asserted Claims (Feb. 2, 2004) Original Image of this Document (PDF)
• 2004 WL 869702 (Trial Motion, Memorandum and Affidavit) Defendants' Consent Motion for a Five Week Extension to File Their Reply Briefs on Their Motions for Summary Judgment of No Indirect Infringement (Jan. 29, 2004) Original Image of this Document (PDF)
• 2004 WL 2256948 (Trial Motion, Memorandum and Affidavit) Engate's Response to Esquire's Rule 56.1 Statement of Undisputed Facts and Statement of Additional Statement of Facts (Jan. 28, 2004) Original Image of this Document with Appendix (PDF)
• 2003 WL 23417494 (Trial Motion, Memorandum and Affidavit) Engate's Motion to Extend Time and for An Increase in the Maximum Number of Depositions (Nov. 10, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23818474 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Partial Summary Judgment of Invalidity for Some of the Asserted Claims (Nov. 5, 2003) Original Image of this Document (PDF)
• 2003 WL 23417490 (Trial Motion, Memorandum and Affidavit) Motion for Entry of Protective Order (Sep. 10, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23818468 (Trial Motion, Memorandum and Affidavit) Engate's Reply in Support of its Motion to Compel Documents from Wordwave (Aug. 27, 2003) Original Image of this Document (PDF)
• 2003 WL 23417487 (Trial Motion, Memorandum and Affidavit) Motion to Compel Documents from Wordwave (Aug. 6, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23818472 (Trial Motion, Memorandum and Affidavit) Notice of Engate's Motion to Compel Documents from Wordwave (Aug. 6, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23417485 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Reconsideration (Aug. 4, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23818466 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Reconsideration

(Aug. 4, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23818462 (Trial Motion, Memorandum and Affidavit) Engate's Reply in Support of its Rule 56(F) Motion (Jul. 18, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23417483 (Trial Motion, Memorandum and Affidavit) Engate's Memorandum in Support of Its Motion for Additional Discovery Pursuant to Fed. R. Civ. P. 56(f) (Jul. 8, 2003) Original Image of this Document (PDF)
• 2003 WL 23818457 (Trial Motion, Memorandum and Affidavit) Engate's Reply in Support of its Motion for Reconsideration (Jul. 8, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23818459 (Trial Motion, Memorandum and Affidavit) Engate's Memorandum in Support of its Motion for Additional Discovery Pursuant to Fed. R. Civ. P. 56(f) (Jul. 8, 2003) Original Image of this Document (PDF)
• 2003 WL 23417478 (Trial Motion, Memorandum and Affidavit) Esquire's Motion for Partial Summary Judgment That It is not Liable for Contributory or Inducing Infringement (Jun. 23, 2003) Original Image of this Document (PDF)
• 2003 WL 23417481 (Trial Motion, Memorandum and Affidavit) Esquire's Memorandum in Support of Its Motion for Partial Summary Judgment That It is not Liable for Contributory or Inducing Infringement (Jun. 23, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23818454 (Trial Motion, Memorandum and Affidavit) Esquire's Memorandum in Support of its Motion for Partial Summary Judgment That it is not Liable for Contributory or Inducing Infringement (Jun. 23, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23417474 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Atkinson-Baker's Motion for Summary Judgment of No Indirect Infringement (35 USC %4F271 (b) and (c)) (Jun. 18, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23818450 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Atkinson-Baker's Motion for Summary Judgment of no Indirect Infringement (35 USC |271 (b) and (c)) (Jun.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

18, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23417476 (Trial Motion, Memorandum and Affidavit) Motion to Amend Judgment and for Partial Reconsideration of Summary Judgment in Defendants' Favor of No Literal Infringement (Jun. 16, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23818452 (Trial Motion, Memorandum and Affidavit) Notice of Engate's Motion to Amend Judgment and for Partial Reconsideration of Summary Judgment in Defendants' Favor of no Literal Infringement (Jun. 16, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23818434 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Reply to Engate's Memorandum in Opposition to Atkinson-Baker's (the Defendants') Cross Motion for Summary Judgment (Apr. 21, 2003) Original Image of this Document (PDF)

• 2003 WL 23818438 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Response to Engate's Statement of Additional Facts Warranting the Denial of Atkinson's Summary Judgment Motion (Apr. 21, 2003) Original Image of this Document (PDF)

• 2003 WL 23818442 (Trial Motion, Memorandum and Affidavit) Wordwave's Reply in Support of Its Motion for Summary Judgment of no Direct Literal Infringement (Apr. 21, 2003) Original Image of this Document (PDF)

• 2003 WL 23818445 (Trial Motion, Memorandum and Affidavit) Esquire's Reply in Support of Its Motion for Partial Summary Judgment That it is not Liable for Direct Infringement (Apr. 21, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23818447 (Trial Motion, Memorandum and Affidavit) Defendant Esquire Deposition Services, L.L.C.'s Response to Plaintiff Engate, Inc.'s Statement of Additional Facts Warranting the Denial of the Defendants' Summary Judgment Motions (Apr. 21, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23818431 (Trial Motion, Memorandum and Affidavit) Engate's Response to the Defendants' Statement of Facts in Support of Its Opposition to Defendants' Motions for Summary Judgment of no Literal Infringement (Apr. 7, 2003) Original Image of this Document (PDF)

• 2003 WL 23417471 (Trial Motion, Memorandum and Affidavit) Engate's Motion to Compel the Deposition Testimony of Ms. Sheila Atkinson-Baker (Mar. 19, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23417460 (Trial Motion, Memorandum and Affidavit) Wordwave's Motion for Summary Judgment of No Direct Literal Infringement (Mar. 3, 2003) Original Image of this Document (PDF)

• 2003 WL 23417463 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Motion for Summary Judgment of No Direct, Literal Infringement of Engate's 26 Asserted Claims (Mar. 3, 2003) Original Image of this Document (PDF)

• 2003 WL 23417464 (Trial Motion, Memorandum and Affidavit) Esquire's Motion for Partial Summary Judgment That it is Not Liable for Direct Infringement (Mar. 3, 2003) Original Image of this Document (PDF)

• 2003 WL 23417466 (Trial Motion, Memorandum and Affidavit) Esquire's Memorandum in Support of Its Motion for Partial Summary Judgment That it is Not Liable for Direct Infringement%n1%n (Mar. 3, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23417468 (Trial Motion, Memorandum and Affidavit) Consolidated Memorandum of Atkinson-Baker in Opposition to Plaintiff's Motion for Summary Judgment of Direct, Literal Infringement and in Support of Atkinson-Baker's Cross-Motion for Summary Judgment of No Direct, Literal Infringement of Engate's 26 Asserted Claims (Mar. 3, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23417469 (Trial Motion, Memorandum and Affidavit) Wordwave's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment of Direct Literal Infringement and in Support of Wordwave's Motion for Summary Judgment of No Direct Literal Infringement (Mar. 3, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23818420 (Trial Motion, Memorandum and Affidavit) Esquire's Memorandum in Support of its Motion for Partial Summary Judgment that it is not Liable for Direct Infringement%n1%n (Mar. 3, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23818422 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Response to Engate's Statement of Facts (Mar. 3, 2003) Original Image of this Document (PDF)

• 2003 WL 23818424 (Trial Motion, Memorandum and

Not Reported in F.Supp.2d                                          Page 10
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Affidavit) Consolidated Memorandum of Atkinson-Baker in Opposition to Plaintiff's Motion for Summary Judgment of Direct, Literal Infringement and in Support of Atkinson-Baker's Cross-Motion for Summary Judgment of no Direct, Literal Infringement of Engate's 26 Asserted Claims (Mar. 3, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23818426 (Trial Motion, Memorandum and Affidavit) Wordwave's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment of Direct Literal Infringement and in Support of Wordwave's Motion for Summary Judgment of no Direct Literal Infringement (Mar. 3, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23818428 (Trial Motion, Memorandum and Affidavit) Wordwave's Response to Plaintiff's Statement of Facts in Support of Its Motion for Summary Judgment of Direct Literal Infringement (Mar. 3, 2003) Original Image of this Document (PDF)

• 2003 WL 23417458 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Summary Judgment of Direct Literal Infringement (Jan. 15, 2003) Original Image of this Document (PDF)

• 2003 WL 23818418 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiff's Motion for Summary Judgment of Direct Literal Infringement (Jan. 15, 2003) Original Image of this Document (PDF)

• 2002 WL 32451104 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Reply Memorandum in Support of Its Motion for Summary Judgment of Non-Infringement (Nov. 8, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32678012 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Reply Memorandum in Support of its Motion for Summary Judgment of Non-Infringement (Nov. 8, 2002) Original Image of this Document (PDF)

• 2002 WL 32678022 (Trial Motion, Memorandum and Affidavit) Esquire's Reply to Engate's Opposition to Esquire's Motion for Partial Summary Judgment that Esquire does not Directly Infringe Any Patent Based on Actions of Independent Court Reporters (Nov. 8, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32451096 (Trial Motion, Memorandum and Affidavit) Engate's Memorandum in Opposition to the Defendants' Motions for Summary Judgment of

Non-Infringement (Nov. 1, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32678004 (Trial Motion, Memorandum and Affidavit) Engate's Memorandum in Opposition to the Defendants' Motions for Summary Judgment of Non-Infringement (Nov. 1, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32451091 (Trial Motion, Memorandum and Affidavit) Engate's Brief on Claim Construction (Oct. 25, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32677997 (Trial Motion, Memorandum and Affidavit) Engate's Brief on Claim Construction (Oct. 25, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32451059 (Trial Motion, Memorandum and Affidavit) Defendant Esquire's Motion for Partial Summary Judgment That Esquire Does Not Directly Infringe any Patent Based on Actions of Independent Court Reporters (Sep. 30, 2002) Original Image of this Document (PDF)

• 2002 WL 32451067 (Trial Motion, Memorandum and Affidavit) Esquire's Memorandum in Support of its Motion for Partial Summary Judgment That Esquire Does Not Directly Infringe Any Patent Based on Actions of Independent Court Reporters (Sep. 30, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32451075 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker, Inc.'s Motion for Summary Judgment (Sep. 30, 2002) Original Image of this Document (PDF)

• 2002 WL 32451083 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Memorandum in Support of its Motion for Summary Judgment of Non-Infringement (Sep. 30, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32677983 (Trial Motion, Memorandum and Affidavit) Esquire's Memorandum in Support of its Motion for Partial Summary Judgment that Esquire does not Directly Infringe any Patent Based on Actions of Independent court Reporters (Sep. 30, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32677988 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Memorandum in Support of its Motion for Summary Judgment of Non-Infringement (Sep. 30, 2002) Original Image of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 11
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

this Document with Appendix (PDF)

• 2002 WL 32451039 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Summary Judgment of Direct Literal Infringement (Aug. 6, 2002) Original Image of this Document (PDF)

• 2002 WL 32677969 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Summary Judgment of Direct Literal Infringement (Aug. 6, 2002) Original Image of this Document (PDF)

• 2002 WL 32451046 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike Seven Recently Added Claims and to Enforce Agreement (Jul. 31, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32451053 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Strike Seven Recently Added Claims and to Enforce Agreement (Jul. 31, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32677976 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Strike Seven Recently Added Claims and to Enforce Agreement (Jul. 31, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32451032 (Trial Motion, Memorandum and Affidavit) Esquire's Consent Motion on Behalf of All Parties to Extend All Discovery Dates Two Months (Jun. 14, 2002) Original Image of this Document (PDF)

• 2002 WL 32451016 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker's Joinder in Wordwave's Motion for Bifurcation on the Issue of Liability and Damages (May 3, 2002) Original Image of this Document (PDF)

• 2002 WL 32677957 (Trial Motion, Memorandum and Affidavit) Wordwave's Reply to Engate's Opposition to the Motion for Bifurcation on the Issues of Liability and Damages (May 3, 2002) Original Image of this Document (PDF)

• 2002 WL 32677953 (Trial Motion, Memorandum and Affidavit) Engate's Response to Wordwave's Motion to for Bifurcation on the Issues of Liability and Damages (Apr. 30, 2002) Original Image of this Document (PDF)

• 2002 WL 32451023 (Trial Motion, Memorandum and Affidavit) Wordwave's Motion for Bifurcation on the Issues of Liability and Damages (Apr. 29, 2002) Original Image of this Document (PDF)

• 2002 WL 32677963 (Trial Motion, Memorandum and Affidavit) Wordwave's Motion for Bifurcation on the Issues of Liability and Damages (Apr. 29, 2002) Original Image of this Document (PDF)

• 2002 WL 32677949 (Trial Pleading) Engate's Answer to Esquire's Counterclaims (Mar. 21, 2002) Original Image of this Document (PDF)

• 2002 WL 32677946 (Trial Pleading) Answer to Amended Complaint and Counterclaims by Esquire Deposition Services LLC (Mar. 19, 2002) Original Image of this Document (PDF)

• 2002 WL 32677920 (Trial Pleading) Engate's Answer to Atkinson-Baker's Counterclaim (Mar. 1, 2002) Original Image of this Document (PDF)

• 2002 WL 32677934 (Trial Pleading) Atkinson-Baker, Inc.'s Answer to Amended Complaint and Counterclaim (Mar. 2002) Original Image of this Document (PDF)

• 2002 WL 32451002 (Trial Motion, Memorandum and Affidavit) Consent Motion for Extension of Time to File Answer to Amended Complaint (Feb. 26, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32677899 (Trial Pleading) Atkinson-Baker, Inc.'s Answer to Amended Complaint and Counterclaim (Feb. 26, 2002) Original Image of this Document (PDF)

• 2002 WL 32677889 (Trial Pleading) Engate's Answer to Wordwave, Inc.'s Counterclaim (Feb. 25, 2002) Original Image of this Document (PDF)

• 2002 WL 32677875 (Trial Pleading) Defendant Wordwave, Inc.'s Answer to Amended Complaint and Counterclaim (Feb. 21, 2002) Original Image of this Document (PDF)

• 2002 WL 32677883 (Trial Pleading) Defendant Wordwave, Inc.'s Answer to Amended Complaint and Counterclaim (Feb. 21, 2002) Original Image of this Document (PDF)

• 2002 WL 32450988 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker, Inc.'s Agreed Motion for Leave to File its Answer and Counterclaim to Plaintiff's Amended Complaint Instanter (Feb. 20, 2002) Original Image of this Document (PDF)

• 2002 WL 32450979 (Trial Motion, Memorandum and Affidavit) Atkinson-Baker, Inc.'s Agreed Motion for an Enlargement of Time of Serve Responses to Plaintiff's Interrogatories and Request for Production (Feb. 19, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32450315 (Trial Motion, Memorandum and Affidavit) Consent Motion for Extension of Time to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 12
Not Reported in F.Supp.2d, 2004 WL 609800 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

File Answer to Amended Complaint (Feb. 5, 2002) Original Image of this Document with Appendix (PDF)
• 2002 WL 32677867 (Trial Pleading) The Reporters Group's Answer to Amended Complaint, Counterclaim and Jury Demand (Feb. 5, 2002) Original Image of this Document (PDF)
• 2002 WL 32677845 (Trial Pleading) Engate's Answer to Spherion's Amended Counterclaim (Jan. 22, 2002) Original Image of this Document (PDF)
• 2002 WL 32677838 (Trial Pleading) Answer to Amended Complaint and Counterclaim of Spherion Corporation (Jan. 18, 2002) Original Image of this Document (PDF)
• 2002 WL 32677856 (Trial Pleading) Amended Complaint (Jan. 13, 2002) Original Image of this Document (PDF)
• 2002 WL 32450312 (Trial Motion, Memorandum and Affidavit) Motion to Amend Complaint (Jan. 11, 2002) Original Image of this Document with Appendix (PDF)
• 2001 WL 34483367 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Dismiss the Plaintiff's Complaint Under Frcp 12(b)(6) or, in the Alternative, Defendant's Motion for A More Definite Statement Under Frcp 12(e) (Dec. 27, 2001) Original Image of this Document with Appendix (PDF)
• 2001 WL 34667095 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Dismiss the Plaintiff's Complaint Under FRCP 12(b)(6) or, in the Alternative, Defendant's Motion for a More Definite Statement Under FRCP 12(e) (Dec. 27, 2001) Original Image of this Document with Appendix (PDF)
• 2001 WL 34667089 (Trial Pleading) Engate's Answer to Spherion's Counterclaim (Dec. 26, 2001) Original Image of this Document (PDF)
• 2001 WL 34667086 (Trial Pleading) Answer and Counterclaim of Spherion Corporation (Dec. 21, 2001) Original Image of this Document (PDF)
• 2001 WL 34667083 (Trial Pleading) Defendant Wordwave, Inc.'s Answer (Dec. 14, 2001) Original Image of this Document (PDF)
• 2001 WL 34483365 (Trial Motion, Memorandum and Affidavit) Motion for Leave to File Additional Appearance (Dec. 12, 2001) Original Image of this Document (PDF)
• 2001 WL 34667080 (Trial Motion, Memorandum and Affidavit) Dickman Davenport's Reply to Plaintiff's Opposition to the Motion to Dismiss (Dec. 7, 2001)

Original Image of this Document with Appendix (PDF)
• 2001 WL 34667075 (Trial Pleading) Engate's Answer to Atkinson-Baker's Counterclaim (Nov. 5, 2001) Original Image of this Document (PDF)
• 2001 WL 34667069 (Trial Pleading) Atkinson-Baker's Answer, Counterclaim and Jury Demand (Oct. 30, 2001) Original Image of this Document (PDF)
• 2001 WL 34667059 (Trial Pleading) Complaint (Aug. 13, 2001) Original Image of this Document with Appendix (PDF)
• 1:01cv06204 (Docket) (Aug. 13, 2001)
• 2001 WL 34483808 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Partial Summary Judgment of Invalidity for Some of the Asserted Claims (2001) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.