Teleconference

                IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF DELAWARE


HONEYWELL INTERNATIONAL, INC., and )
HONEYWELL INTELLECTUAL PROPERTIES, )
INC.,                              )
                                   )
            Plaintiffs,            )   Civil Action No.
                                   )   04-1337-KAJ
v.                                 )
                                   )
AUDIOVOX COMMUNICATIONS CORP.,     )
AUDIOVOX ELECTRONICS CORPORATION,  )
NIKON CORPORATION; NIKON, INC.,    )
NOKIA CORPORATION; NOKIA, INC.,    )
SANYO ELECTRIC CO., LTD., and      )
SANYO NORTH AMERICA CORPORATION,   )
                                   )
            Defendants.            )
-----------------------------------
HONEYWELL INTERNATIONAL, INC., and )
HONEYWELL INTELLECTUAL PROPERTIES, )
INC.,                              )
                                   )
            Plaintiffs,            )   Civil Action No.
                                   )   04-1338-KAJ
    v.                             )
                                   )
APPLE COMPUTER, INC.; ARGUS A/K/A  )
HARTFORD COMPUTER GROUP, INC.;     )
CASIO COMPUTER CO., LTD; CASIO,    )
INC.; CONCORD CAMERAS; DELL INC.;  )
EASTMAN KODAK COMPANY; FUJI PHOTO  )
FILM CO., LTD.; FUJI PHOTO FILM    )
U.S.A., INC.; FUJITSU LIMITED;     )
FUJITSU AMERICA, INC.; FUJITSU     )
COMPUTER PRODUCTS OF AMERICA, INC.;)


                     CORBETT & WILCOX
               Registered Professional Reporters
        230 North Market Street    Wilmington, DE 19899
                      (302) 571-0510
               Corbett & Wilcox is not affiliated
             with Wilcox & Fetzer, Court Reporters

Teleconference

Page 2

```
 1      KYOCERA WIRELESS CORP.; MATSUSHITA )
        ELECTRICAL INDUSTRIAL CO.;         )
 2      MATSUSHITA ELECTRICAL CORPORATION  )
        OF AMERICA; NAVMAN NZ LIMITED;     )
 3      NAVMAN U.S.A. INC.; OLYMPUS         )
        CORPORATION; OLYMPUS AMERICA, INC.;)
 4      PENTAX CORPORATION; PENTAX U.S.A., )
        INC.; SONY CORPORATION; SONY        )
 5      CORPORATION OF AMERICA; SONY        )
        ERICCSON MOBILE COMMUNICATIONS AB; )
 6      SONY ERICCSON MOBILE COMMUNICATIONS)
        (USA) INC.; TOSHIBA CORPORATION;   )
 7      and TOSHIBA AMERICA, INC.,          )
                                            )
 8               Defendants.                )
        ----------------------------------
 9
        OPTREX AMERICA, INC.,              )
10                                         )
                 Plaintiff,               )  Civil Action No.
11                                         )  04-1536-KAJ
        v.                                 )
12                                         )
        HONEYWELL INTERNATIONAL, INC., and )
13      HONEYWELL INTELLECTUAL PROPERTIES, )
        INC.,                              )
14                                         )
                 Defendant.                )
15
                 Teleconference in the above matter taken
16      pursuant to notice before Renee A. Meyers, Certified
        Realtime Reporter and Notary Public, in the law offices
17      of Blank Rome, LLP, 1201 North Market Street, Wilmington,
        Delaware, on Tuesday, August 19, 2008, beginning at
18      approximately 9:30 a.m., there being present:

19      BEFORE:  THE HONORABLE VINCENT J. POPPITI, SPECIAL MASTER

20      APPEARANCES:

21
                 THOMAS C. GRIMM, ESQ.
22               MORRIS NICHOLS ARSHT & TUNNELL LLP
                   1201 North Market Street
23                 Wilmington, Delaware  19801
                   for Honeywell
24
```

Teleconference

Page 3

1       APPEARANCES (Continued):

2

                THOMAS L. HALKOWSKI, ESQ.
3               FISH & RICHARDSON, P.C.
                  919 N. Market Street, Suite 1100
4                 Wilmington, Delaware  19801
                  for Apple Computer, Inc.
5
                AMY EVANS, ESQ.
6               CROSS & SIMON, LLC
                  913 North Market Street, 11th Floor
7                 Wilmington, Delaware  19801
                  for Hartford Computer Group
8
                FRANCIS DI GIOVANNI, ESQ.
9               CONNOLLY BOVE LODGE & HUTZ LLP
                  1007 North Orange Street
10                Wilmington, Delaware  19801
                  for Sony Ericcson Mobile Communications AB
11                and Sony Ericcson Mobile Communications USA,
                  Inc., and Navman
12
                DONALD McPHAIL, ESQ.
13              DUANE MORRIS, LLP
                  505 9th Street, Suite 1000
14                Washington, D.C.  20006
                  for Audiovox Communications
15
                AIMEE CZACHOROWSKI, ESQ.
16              DUANE MORRIS, LLP
                  1100 North Market Street, Suite 1200
17                Wilmington, DE  19801
                  for Audiovox Communications
18
                CHAD M. SHANDLER, ESQ.
19              RICHARDS, LAYTON & FINGER
                  One Rodney Square
20                Wilmington, Delaware  19801
                  for Eastman Kodak
21
                RICHARD L. HORWITZ, ESQ.
22              POTTER ANDERSON & CORROON
                  1313 North Market Street
23                Wilmington, Delaware  19801
                  for Dell and Nikon
24

Teleconference

Page 4

 1                    MONTE T. SQUIRE, ESQ.

 2               YOUNG CONAWAY STARGATT & TAYLOR

 3                 1000 West Street, 17th Floor

 4                 Wilmington, Delaware  19801

 5                 for Sony and Olympus Corp. and Olympus
                   America, Inc.
 6
                 KAREN L. PASCALE, ESQ.
 7               YOUNG CONAWAY STARGATT & TAYLOR
                   1000 West Street, 17th Floor
 8                 Wilmington, Delaware  19801
                   for Optrex America
 9
                 ADAM POFF, ESQ.
10               YOUNG CONAWAY STARGATT & TAYLOR
                   1000 West Street, 17th Floor
11                 Wilmington, Delaware  19801
                   for Pentax
12
                 DAVID J. MARGULES, ESQ.
13               BOUCHARD MARGULES & FRIEDLANDER, P.A.
                   222 Delaware Avenue, Suite 1400
14                 Wilmington, Delaware  19801
                   for Citizen
15

16

17

18

19

20

21

22

23

24

Teleconference

Page 5

1              SPECIAL MASTER POPPITI:  Counsel, I am

2    sorry, we are going to have to go back through just to

3    make sure that we have the appropriate record on who is

4    attending.

5              Let's start with Honeywell.

6              MR. GRIMM:  Tom Grimm at Morris, Nichols

7    for Honeywell.

8              SPECIAL MASTER POPPITI:  Thank you.

9              MR. HALKOWSKI:  Tom Halkowski at Fish &

10   Richardson on behalf of Apple.

11             MR. SQUIRE:  Monte Squire from Young,

12   Conaway on behalf of Sony and Olympus.

13             MS. PASCALE:  Karen Pascale, also from

14   Young, Conaway, on behalf of Optrex America.

15             MS. ZACHAROWSKI:  Amy Zacharowski and

16   Don McVail of Duane Morris for Audiovox Communications

17   Corporation.

18             MR. HORWITZ:  Rich Horwitz from Potter

19   Anderson for Dell and Nikon.

20             MR. SHANDLER:  Chad Shandler from

21   Richards, Layton & Finger for Eastman Kodak.

22             MR. POFF:  Adam Poff from Young, Conaway

23   for Pentax.

24             MR. MARGULES:  David Margules, Bouchard

Teleconference

Page 6

1    Margules & Friedlander, for Citizen.

2                    MR. DI GIOVANNI:  Frank Di Giovanni from

3    Connolly Bove for the Sony Ericcson defendants and also

4    today for Navman.

5                    MS. EVANS:  This is Amy Evans from Cross

6    & Simon for Hartford Computer Group.

7                    SPECIAL MASTER POPPITI:  And I think

8    that rounds out everyone.

9                    Let me just make an observation or

10   several observations for the record.  This request to get

11   everyone on the line was precipitated by Mr. Grimm's

12   correspondence of yesterday requesting something that I

13   am not sure is provided for by the Rules, but, in any

14   event, requesting that I reconsider the finding and

15   recommendation that I issued on August the 15th in

16   several respects.  And it's not important, I think for

17   purposes of this call, to outline what they are.  They

18   are found in Mr. Grimm's letter of August the 18th.

19                   The reason why I thought it was

20   important to get everyone on the line right away was

21   because, as I suggested to you in my e-mail asking you

22   all to do me the courtesy of participating, was to

23   obviate the practice that is required by the Rule and

24   required by Judge Farnan's order of August the 15th where

Teleconference

Page 7

1    he entered the proposed order, or signed the proposed

2    order that I entered on August the 13th shortening the

3    time frame within which to file Rule 53(g)(2)

4    applications.

5            And I thought that even though the Rule

6    doesn't contemplate applications to reconsider, that it

7    makes, from my perspective, and I would anticipate from

8    Judge Farnan's perspective, and I hope from your

9    perspective, it makes some sense to revisit the process,

10   if you will, consider tolling the time within which an

11   application under Rule 53(g)(2) has to be filed even with

12   Judge Farnan's signature on the order.

13           If I could get everyone to focus on a

14   couple things that Mr. Grimm raised, one, of course,

15   being the determination that I made that the burden of

16   persuasion where there is an identification of a license

17   and if the motion to dismiss is grounded on that license

18   where the customers are claiming that they are either

19   covered directly by the license, but I believe are

20   covered, I think the claim is they are covered by virtue

21   of third-party beneficiary under those licenses, that it

22   becomes their responsibility to identify the license and

23   the fact that they are an entity that is covered, and I

24   determined that it was the responsibility of Honeywell to

Teleconference

Page 8

1   carry the burden forward to say, No, you are outside the

2   scope.

3                    Honeywell, on the other hand, has

4   suggested that the theory that the customer defendants

5   should be focused on is the theory of patent exhaustion,

6   and without getting into a discussion as to what patent

7   exhaustion may be in the context of this case or these

8   cases or these entities, it seems to me that the record

9   that presently exists on either the claim of the customer

10  defendants, that they are covered by the license, or if

11  they were to be claiming patent exhaustion, I am not

12  confident the record is full for purposes of joining,

13  briefing, arguing, and having me make a determination on

14  filings, namely, motions to dismiss.

15                   From Honeywell's perspective, Mr. Grimm,

16  I know you will correct me if I am not capturing this

17  correctly, from Honeywell's perspective, Honeywell is

18  saying, We need discovery, we haven't had discovery on

19  issues that bear either on licensure or that bear on

20  patent exhaustion up to this point because, quite

21  frankly, everything was stayed with respect to the

22  customer defendant, and in order for us to meet any

23  application that gets filed, we are going to need that

24  discovery.

Teleconference

Page 9

1                    I don't know what the customer

2      defendants' view of that assertion is, and I just want to

3      make sure that I create a very brief process within which

4      we can focus on Honeywell's position as stated in the

5      August 18th correspondence to me and get this thing

6      moving forward.

7                    If it includes, or if it should include

8      some opportunity to discover, more discovery either of

9      the customer defendants with respect to the licensing

10     issue or the patent exhaustion issue, or if it should

11     include third-party discovery as I had permitted, but

12     certainly the time frame is one that Honeywell rightly

13     questioned, what should these time frames look like?

14                   That's kind of the backdrop as I

15     approach today's conversations, knowing that everyone has

16     not had an opportunity to respond to Honeywell's

17     August 18th correspondence.

18                   Mr. Grimm, did I capture what I think

19     you were saying in your correspondence?  And perhaps I

20     have said too much.

21                   MR. GRIMM:  No.  I think you did very

22     well, Your Honor.  The burden of proof is obviously a

23     fundamental issue, but rather than avail ourselves of our

24     right to appeal to Judge Farnan, which we know would hold

Teleconference

1    up the process, we thought it made sense to come back and

2    say, Why not leave that issue open, reserve the parties'

3    ability to further brief it in connection with the motion

4    to dismiss, which is, frankly, the typical situation

5    litigants find themselves in.

6                    They don't typically have the

7    opportunity of getting a judge to tell them in advance

8    who has the burden of proof and then go out and take the

9    discovery.  Usually they take the discovery, they make

10   their motion, and then they are arguing about who has the

11   burden of proof.

12                   So we thought, in this instance, it made

13   a lot of sense to do that rather than for us to go to

14   Judge Farnan now, knowing that if we did not go to Judge

15   Farnan now, we could very well be met with an argument

16   that your ruling has become law of the case and we have

17   waived any right to appeal it later after the motion to

18   dismiss is heard.

19                   So we just felt that it was a prudent

20   and efficient way to go, even though, as Your Honor has

21   said, there isn't anything clearly stated in the Rules

22   that permits a reconsideration.

23                   SPECIAL MASTER POPPITI:  Right.  Let's

24   focus on that piece for a moment, and I certainly want to

Teleconference

Page 11

1    hear from any, hopefully not all of you, from the
2    customer defendants' side.
3                I am inclined to see that that is the
4    best approach rather than leaving everything as is, that
5    is, status quo, and expecting that one or all of you will
6    launch whatever you think is appropriate to put something
7    on Judge Farnan's desk.
8                I am not sure that that is the most
9    efficient way to move the defendants and Honeywell
10   forward on the customer defendants' view that they should
11   be out of this case or they should have been out of this
12   case some time ago.
13               Focus, then, for me first on the concept
14   of kind of putting this thing on ice for a bit and focus
15   on the burden of proof issue.  Who is going to speak?
16   Tom Halkowski, do you want to speak for everyone?
17               MR. HALKOWSKI:  I certainly don't
18   pretend to speak on behalf of others.  I do certainly
19   have a view on this.  Really, it's not a strong view one
20   way or the other.  We do have some abbreviated
21   guidelines -- not guidelines, instructions in terms of
22   how one is to raise things to Judge Farnan, but I don't
23   think there would be much of a delay for this small legal
24   issue to bounce up to him and have him confirm or modify

Teleconference

Page 12

1    it.  I don't see it as being a very big deal.

2                    On the other hand, the suggestion made

3    by Honeywell of just rolling this issue into the briefing

4    that's going to be coming up soon is fine as well.  I

5    don't have, like I said, a big problem with that either

6    way.

7                    What I do have a much bigger problem

8    with is the motion of extending things out yet again for

9    several months.  And I am sure we will get to those

10   issues in a moment, but on this one, I think, either way,

11   it's going to be dealt with relatively quickly either,

12   you know, a matter of days of getting some submissions

13   into Judge Farnan and having him confirm or modify, or we

14   just, you know, put that off and make it clear that

15   Honeywell continues to have an opportunity to raise that

16   issue in the upcoming briefing that we will be submitting

17   in a couple weeks.

18                    Either way, it's going to get wrapped

19   up, in my view, within a few weeks.

20                    SPECIAL MASTER POPPITI:  The only

21   observation I would make about calling the finding and

22   recommendation, if you will, final for purposes of having

23   the time frame ultimately run for all of you to determine

24   whether you want to file applications taking exception to

Teleconference

1    the findings and recommendation, you all know, as members

2    of the local Bar, that, from my desk, I can do something

3    that I at least try to do in most instances, and, that

4    is, say, Okay, I have got a matter before me, this is

5    going to be an argument date, and I intend to commit to a

6    certain date, or thereabouts, and you are going to have a

7    document bringing the matter to closure from my desk.

8                    That's something that I just think is

9    important as part of my responsibility to the Court and

10    to all of you.

11                    The Court usually doesn't take that

12    approach to work that the Court has for a host of

13    different reasons, not the least of which is, of course,

14    the Court's Docket is jam packed, as you all know.

15                    So even if you put something on Judge

16    Farnan's desk that is clear and brief and to the point,

17    and I will even go so far as to say, the matter that is

18    simply joined, that doesn't mean that it's going to go to

19    the top of the pile for purposes of getting a quick

20    turnaround.

21                    So, I guess that's a gentle way of

22    saying that, in my communications with, particularly with

23    Judge Farnan over the years, I have never had a

24    conversation with him to say, You know, Judge Farnan,

Teleconference

Page 14

1    everyone would really like to see a decision from your

2    desk within a week or ten days.

3                 I don't know if you want me to have that

4    conversation with him.  I know I wouldn't want to.

5                 MR. HALKOWSKI:  No, I appreciate that.

6    Nonetheless, I do feel as if this issue, in my view, at

7    least, would likely be addressed relatively soon and it's

8    a relatively narrow issue, but, as I say, I don't have a

9    strong feeling on it.  I am just as happy to go with the

10   approach of having that issue remain open for further

11   briefing, you know, consistent with the schedule that we

12   have laid out.  Like I said, I have much stronger

13   concerns that relate to the, that we actually stick on

14   that schedule.

15                SPECIAL MASTER POPPITI:  Let's do this:

16   Does anyone disagree with the approach recommended by

17   Mr. Grimm with respect to the burden of proof issue and

18   wrapping it into the briefing schedule on anticipated

19   motions to dismiss?  Does anyone disagree?

20                MR. SQUIRE:  Your Honor, this is Monte

21   Squire for Sony as well as Olympus.  I don't necessarily

22   disagree, but I would like, at least, the opportunity to

23   confer with my co-counsel on that point and make sure

24   that they don't have any -- I anticipate that they won't

Teleconference

Page 15

1    disagree either, but I should have the -- I would like to

2    have the opportunity to review it with them and somehow

3    let the Court know after at least having a discussion

4    with them about it.

5            SPECIAL MASTER POPPITI:  I certainly

6    understand the responsibility that you have to confer

7    with your co-counsel, and expecting others may be in the

8    same circumstance, what I'd like to have happen, if you

9    can, is I'd like that conversation or communication to

10   occur shortly after we conclude business today, and I'd

11   like everyone's view that has to do that not later than,

12   I'd like to even say before close of business today so I

13   can make sure that things are moving in the appropriate

14   direction.

15           So, if you can do that before 3:00 p.m.

16   this afternoon, that would be great.

17           Do any others of you expect that you are

18   going to be needing that time to say definitely we agree

19   with Mr. Grimm's approach?

20           MR. HORWITZ:  Your Honor, this is Rich

21   Horwitz on behalf of Dell and Nikon.

22           Mr. Grimm's approach and your

23   articulation of it are fine for those two defendants.

24           SPECIAL MASTER POPPITI:  Okay.  Any

Teleconference

Page 16

1    others, please?  I will take everyone else's silence to

2    mean that no one takes exception to Mr. Grimm's approach

3    and understand that there may be one coming in not later

4    than 3:00 today.

5                    MS. EVANS:  Your Honor, this is Amy

6    Evans from Cross & Simon, and I would get with co-counsel

7    and get with Your Honor before 3:00 today.

8                    SPECIAL MASTER POPPITI:  Okay.  Thank

9    you, Ms. Evans.

10                    MS. EVANS:  Thank you.

11                    MR. DI GIOVANNI:  Your Honor, it's Frank

12    Di Giovanni.  I would also like to confer with my clients

13    and return by 3:00.

14                    SPECIAL MASTER POPPITI:  Thank you,

15    Mr. Di Giovanni.

16                    Let's, then, turn to the other issue

17    that is raised by Mr. Grimm.

18                    MR. GRIMM:  The issue regarding

19    third-party discovery, Your Honor?

20                    SPECIAL MASTER POPPITI:  Let's do that

21    one first.

22                    MR. GRIMM:  Okay.  This was just an

23    issue of practicality that, just from experience, we know

24    that conducting third-party discovery, even within the

Teleconference

Page 17

1    United States, in two weeks' time is very difficult, but

2    to do it with these foreign entities is, as Your Honor, I

3    am sure, appreciates, next to impossible, even if they

4    were to cooperate, which they have not to date.

5              As a side note, I would mention, with

6    respect to the cooperation of the manufacturers, if they

7    believe that, for example, we certainly believe

8    Mr. Halkowski's representation that he believes that his

9    products of Apple are covered by a license; at the same

10   time, it strikes us as odd that none of these

11   manufacturer defendants have come forward and said, Leave

12   my customer alone.  They are licensed.

13             And, so, we have not gotten that kind of

14   cooperation from them to date.  And if we were to have to

15   go through formal discovery procedures through the Hague,

16   as Your Honor knows, that's a hopelessly long process, so

17   we hope that it doesn't come to that.

18             SPECIAL MASTER POPPITI:  It is, and I

19   don't want anyone to expect, although I may have left a

20   number of you, and, more likely, all of you scratching

21   your heads, saying, What's he thinking?  And, quite

22   frankly, what I was thinking was putting, whether it was

23   a two-week deadline, three-week deadline, or a four-week

24   deadline on something like that was really intended to

Teleconference

Page 18

1    prime the pump to see, No. 1, whether the gates for

2    cooperation could be completely open, or to simply get

3    some turnaround back from you saying, This is really the

4    time frame in which we think we can accomplish this.

5                   So, it has a desired effect in one

6    sense.  And what I am looking for is if a third-party

7    discovery is going to be conducted, and I don't think I

8    should be saying it is clearly not necessary because it

9    seems to me it may be critically important, if there are

10   no voluntary dismissals or if any individual customer

11   defendant remains standing, it's going to have to occur,

12   and I just need some sense as to when I should say it is

13   over.

14                   Mr. Grimm.

15                   MR. GRIMM:  Your Honor, that's very

16   helpful.  And when we put in our suggestion in our letter

17   to allow for 60 to 90 days, it was with the thought that

18   within some time period like that, and it can certainly

19   be shorter than 60 to 90 days, longer, I think, than two

20   weeks, we were thinking we would know whether or not we

21   were going to get the cooperation of the discovery we

22   needed, or whether we, in fact, came back to Your Honor,

23   because, obviously, 60 to 90 days wasn't going to be

24   enough if we had to go through the Hague Convention.

Teleconference

Page 19

1          So, I think if we put in a period of

2    time to do just what Your Honor said, to prime the pump,

3    so to speak, I do think that even just corresponding with

4    these people will take a little longer than two weeks, so

5    if we could have something in the order of 30 to 45 days,

6    I think would probably be, you know, more realistic.

7               SPECIAL MASTER POPPITI:  Does anyone,

8    and maybe the best way to approach this again, does

9    anyone disagree with Mr. Grimm's characterization and the

10   amount of time in which he thinks --

11              MR. HALKOWSKI:  Your Honor, as I

12   indicated, I take strong exception to any further

13   extensive delays, and I think it's important, when you

14   think about this, to take a step back and realize exactly

15   where we are.  We have raised this issue, you know, for

16   some time, I think over 18 months.

17              SPECIAL MASTER POPPITI:  It's almost two

18   years.

19              MR. HALKOWSKI:  And we have pointed out,

20   from whatever time, that we are licensed, our suppliers

21   are licensed, and fully expecting to hear back from

22   Honeywell a reasonable response along the lines of, Oh,

23   gee, didn't realize that, we are happy to stipulate to a

24   dismissal, even without prejudice, so if something turned

Teleconference

Page 20

1    up down the road that turned up as something is not

2    covered, you know, we can deal with it.

3                    We didn't get that.

4                    And Honeywell didn't deem it important

5    and certainly didn't, apparently, believe that there was

6    any concern that any of these licences had been exceeded

7    in scope or that there is anything else breached of the

8    license, so they haven't, apparently, done the discovery,

9    which now, all of a sudden, they want to do.

10                   So, from our view, Honeywell has had

11   almost two years to do this and they had, for whatever

12   reason, they chose not to.

13                   And, secondly, as I mentioned, another

14   easy solution here is for Honeywell to say, Well, gee, we

15   have licensed all these people, and some of them, we

16   have, a lot of them have been part of this lawsuit and we

17   dismissed them, some of them we never even bothered to

18   bring into the lawsuit because, apparently, they believed

19   the licenses are in effect and they are strolling along

20   and none of the tasks have been exceeded, etcetera, and,

21   so, there is no apparent reason on Honeywell's side to

22   believe that the licenses are, as I say, have been

23   breached or the limitations have been exceeded.

24                   And, so, if that's the case, then it's

Teleconference

1    just, it's difficult to imagine that this is now an issue

2    that all of a sudden requires attention, whereas, you

3    know, it didn't before, No. 1, and, No. 2, like I said, a

4    simple solution if they are concerned about, you know,

5    getting a final resolution to this, is to just

6    cooperatively agree to dismiss the customer defendants

7    without prejudice, and if, down the road, it turns out

8    that scopes have been exceeded for the licenses or

9    whatever and they need to bring people back in, you know,

10   whatever, happy day, have at it.

11           But I think, at this point, you know, we

12   have got, the record is what it is, Honeywell has had

13   plenty of opportunity to deal with this issue in some

14   more cooperative way or in some other approach if they

15   wanted to get discovery and figure out whether they

16   needed to bring some of these module suppliers, who are

17   supposedly licensed, if they really truly believed that

18   they needed to bring some of them back into the suit

19   because the licenses have been exceeded, they have had

20   that opportunity.

21           And to now say, Hey, wait a minute, wait

22   a minute, we have done all this stuff that we didn't

23   know, we need to kind of basically tie this thing up, we

24   start talking about the Hague convention and going into

Teleconference

Page 22

1    that kind of discovery, we could be here forever.

2                    MR. GRIMM:  Can I respond to that?

3                    SPECIAL MASTER POPPITI:  I understand

4    that and certainly Mr. Grimm has identified that.  My

5    question is this with respect to your comments that

6    Honeywell could have done certain things, and I will

7    certainly want Honeywell to speak to this, but the

8    observation that I have, and I am not telling you that,

9    although I believe I have a fairly good handle, and I

10   have been able to get my arms around, I believe, the

11   process of this case up through when Judge Farnan was

12   assigned the responsibility to try the case, it seems to

13   me that the customer defendants asked for a complete stay

14   of proceedings as it related to them, and it seems to me,

15   and I know that I articulated some of this history in my

16   findings and recommendations, that as of a certain date,

17   once there were some conditions met, that, in fact, there

18   was a complete stay of all proceeding as it related to

19   the customer defendants.

20                    And I expect that that means that if

21   Honeywell had an inclination, I am not sure why they

22   would have had it, but if they had an inclination to want

23   to conduct third-party discovery, for example, with

24   respect to licenses that the customer defendants have,

Teleconference

Page 23

1    that there would have to have been a lift of the stay.

2                    MR. GRIMM:  Your Honor, there is one

3    thing that maybe I didn't explain as well as I could

4    have.  What I meant to say was we are talking about

5    third-party discovery.

6                    SPECIAL MASTER POPPITI:  Correct.

7                    MR. HALKOWSKI:  And then the third-party

8    discovery we are talking about is discovery from the

9    Honeywell's licensees.

10                   SPECIAL MASTER POPPITI:  Correct.

11                   MR. HALKOWSKI:  And these -- so if

12   Honeywell -- this has nothing to do with whether or not

13   there was a stay with regard to the customers.  We are

14   talking about whether or not Honeywell could have gotten

15   discovery from Honeywell's licensees, the majority of

16   whom were previously defendants in this case.

17                   So the point is if Honeywell had an

18   inkling that, Well, gee, we are not so sure that the

19   licensees that we have made deals with are abiding by

20   those terms and that there hasn't been some exceeding of

21   the scope of some of those licensees and we might want to

22   bring some of them back into this suit, that's why I am

23   saying they have had that opportunity for some time.

24                   And in addition to that, for over two

Teleconference

Page 24

1    years, they have been, or nearly two years, I think it's

2    only, whatever, between a year-and-a-half and two, but

3    for all that time, they have additionally known of our

4    concerns that we think we are all completely licensed up.

5              So, taken in combination, there

6    certainly was no reason for them not to have pursued this

7    if they had a legitimate concern or belief that there was

8    some, you know, real possibility that these licenses have

9    been exceeded in some way.  And, as I say, so they could

10   have done that with, just with regard to finding out

11   whether or not the manufacturer, the suppliers, were

12   exceeding their licenses and whether or not those

13   manufacturers and suppliers should be brought back into

14   this suit.

15             MR. GRIMM:  Your Honor, this is

16   completely irrelevant to the question we are talking

17   about here, which is whether or not their licenses are

18   covered.  You put your finger right on it.  We had no

19   reason to address this issue because there was a complete

20   stay of the case.  It would have required a lifting of

21   the stay.

22             And although Apple raised this issue two

23   years ago, Judge Thynge said she was not going to address

24   it at that time.  She was not going to lift the stay.

Teleconference

Page 25

1    She was not going to address the issue.

2                So to suggest that Honeywell should have

3    then started taking discovery on the issue, I think, is

4    slightly unfounded, unfair, and probably would have been

5    met by objections from the customer defendants.

6                Even since April, when the issue, as was

7    put on the table, we received no cooperation from anybody

8    in getting any discovery, and it's only Your Honor's

9    order that made it clear again that we are entitled to

10   some limited discovery that we hope we will break that

11   wall down.  But to suggest that we should have done it

12   earlier, I think, is just not right at all.

13               MR. HALKOWSKI:  Your Honor, the issue on

14   the stay is truly a red herring.  This is actually

15   nothing to do with the stay on discovery from customer

16   defendants.  I mean, that's one thing.  But it's

17   certainly, you know, third-party discovery, there is

18   certainly no particular obstacle to pursuing that with

19   regard to Honeywell's own licensees if they actually had

20   a legitimate concern that, Gee, we had these licenses

21   with these guys and we think maybe there is an issue that

22   you guys have exceeded the scope of them somehow.  And,

23   you know, we have got this other issue with the customers

24   that they say, They are all licensed up.

Teleconference

Page 26

1          SPECIAL MASTER POPPITI:  Help me

2    understand something.  What you are saying is that some

3    of them, not all of them, were in the case at various

4    points in time because a number of them have been let out

5    of the case over the course of time, those that were in

6    the case at any particular time, Honeywell could have

7    initiated discovery against them on this issue, you would

8    not have to have been noticed, and you would not have

9    been able to participate in any, for example, any

10   depositions that would occur?

11          MR. HALKOWSKI:  As far as I understand,

12   you know, the Federal Rules of Procedure, there may have

13   been, you know, whatever the notice is that go into the

14   Court to the depositions being taken and then these, you

15   know, anybody that's a party to the suit would certainly

16   be aware of that, but in terms of Honeywell pursuing

17   third-party discovery, which is, again, the issue we are

18   talking about, I don't know of any, like I said, any

19   obstacle or anything that we, as customers, would have

20   been able to say, Hey, wait a minute, discovery is stayed

21   with regard to the customers, so you can't have discovery

22   with regard to your licensee manufacturers.

23          That's, like I said, it's a red herring.

24   It's besides the point.

Teleconference

Page 27

1                    And, again, this is all just a point to

2    be made that it's just interesting, if nothing else, that

3    now, you know, Honeywell says, Well, wait a minute,

4    before we let anybody go, we need to see whether some of

5    these licenses have been exceeded in some way.

6                    But, you know, they have had that

7    opportunity and it's, you know, the issue has been out

8    there, and if, like I said, as I said before, they had a

9    legitimate concern about that, they certainly had an

10   opportunity to pursue it before.

11                   And at this point, I think, you know, we

12   have got a record that it is what it is in terms of

13   discovery, and, you know, we ought to move forward and

14   get our briefing in and see where it leads.

15                   SPECIAL MASTER POPPITI:  Let me just

16   shift focus for a moment.  You said the record is what it

17   is with respect to discovery.

18                   Tell me what that record is in terms of

19   what it is with respect to discovery from the customer

20   defendant.

21                   MR. HALKOWSKI:  From the customer

22   defendants, I believe it's fairly limited, and, again, I

23   don't think there is, from our perspective, certainly,

24   anything that we have that's of significant interest

Teleconference

1    other than the issue that we have been around a couple of

2    times on it, and I think Your Honor has now addressed,

3    and, that is, our identification of which manufacturers

4    have supplied which modules with regard to the accused

5    products.

6                    And, so, you know, that issue is

7    something that we have provided information on, and, you

8    know, there is certain obligations that we have got in

9    terms of having some sworn declarations, and I know there

10   is some other issues with regards to some other

11   discovery, so in terms of the customer defendants,

12   that's, you know, that's really, you know, the key issues

13   with regard to this licensing issue, and that's, you

14   know, all that I am aware of with regard to discovery.

15                   Now, this, again, that's, at least in my

16   view, it appears to be a separate issue from the concern

17   about information that might be within the hands of

18   Honeywell's licensees LCD manufacturers and whether or

19   not they have got information in their possession that

20   shows that, you know, Gee, it turns out that we entered

21   this license with you and we have now exceeded, you know,

22   certain bounds of it, and, so, we ought to be back in the

23   suit.

24                   Now, whether that's out there or not, I

Teleconference

Page 29

1    don't know, but, again, I don't think that has anything

2    to do with customer discovery.

3                      SPECIAL MASTER POPPITI:  What I'd like

4    to do, and Mr. Grimm, you can outline the discovery that

5    you propose for the customer defendants, you first

6    mentioned it in the first full paragraph of page 2 of

7    your August 18th letter.

8                      MR. GRIMM:  Yes, Your Honor.  It seems

9    like, you know, simple enough to us and it should be

10   discoverable, it seems to us, that they provide us with

11   any correspondence that they have had with their

12   manufacturers on this issue.  I think that could quickly

13   dispose of it if the manufacturers make it clear that,

14   yes, we believe that you are covered by this license, we

15   intended to cover you by this license, and here is why,

16   to the contrary, there could be, you know, correspondence

17   that indicates just the opposite.

18                     That's, you know, it's not privileged, I

19   don't think.  It seems like it should be equally

20   discoverable and we think would facilitate and expedite

21   any third-party discovery that we would need to get from

22   the manufacturers.

23                     The second component is whether or not

24   they purchased, these customers, whether or not they

Teleconference

1    purchased a completed module from the manufacturing

2    defendants because it's only completed modules that are

3    licensed.  And in this industry, it won't surprise Your

4    Honor, that a lot of times one entity, a manufacturing

5    defendant, will create the LCD screen.

6                    SPECIAL MASTER POPPITI:  Right.

7                    MR. GRIMM:  And that's the critical

8    component.  And then perhaps they then send it on to

9    another company who puts, assembles the back light, which

10   is a less critical component, and then that package deal

11   is then sent on to one of these customer defendants.

12                    If we could get information from the

13   customer defendants on, you know, What state is the

14   module in when you receive it?, Is it a fully complete

15   module that's covered by these licenses or not?, that

16   also would, obviously, facilitate and expedite whatever

17   third-party discovery we had to get from the

18   manufacturing defendants.

19                    MR. HALKOWSKI:  Your Honor, if I could

20   speak to that issue.

21                    SPECIAL MASTER POPPITI:  Please.

22                    MR. HALKOWSKI:  It seems, from my

23   perspective, I am looking this over, and, again, I have

24   only looked this over briefly, but with regard to the

Teleconference

Page 31

1    discovery that Honeywell is now seeking from the

2    customers in this letter, it appears to be material that

3    it's going to either come to light and be relied upon as

4    a part of the upcoming motion, and if so, you know, it

5    will be something that Honeywell might want to pursue or

6    might want to get some further information on or have a

7    file, you know, request for a deposition to maybe present

8    some correspondence from X, Y, Z supplier, that may or

9    may not happen.

10                    I don't see that happening certainly for

11   Apple because, from our perspective, this is all besides

12   the point.  It's hand waving.  It might be interesting,

13   but what's at issue is the licenses, the licenses and

14   particular terms.  They either cover what's going on or

15   they don't.  It's the licenses.  It's not X, Y, Z

16   corporation saying, You know what, I think you are

17   covered by this license.  That's certainly our view, and,

18   you know, the customer saying, Oh, great, I am glad to

19   hear that, we think we are covered, too.  So what?

20                    It's really the licenses.  The licenses

21   have terms and they either cover what's going on or they

22   don't.

23                    And, so, certainly --

24                    MR. GRIMM:  Can I speak to that, Your

Teleconference

Page 32

1    Honor.

2                    SPECIAL MASTER POPPITI:  It's your

3    position that it's Honeywell's burden to prove that the

4    scope, the activity is beyond the scope of the license,

5    and if I ultimately conclude that that is Honeywell's

6    burden, shouldn't they have the opportunity to discover

7    that information?

8                    MR. HALKOWSKI:  They should.  And I

9    think they have.  I guess that was, you know, my point,

10   that, yes, they have had, you know, like I said, as much

11   time as they could have possibly wanted to pursue any of

12   this discovery from the licensee manufacturers.

13                    Now, again, it goes back on looking at

14   the customers now, and with regard to the customers, I

15   just, I can't imagine any of the customers having

16   information in their possession that, you know, that's

17   going to be particularly dispositive or helpful in terms

18   of Honeywell being able to determine whether or not the

19   terms of the licenses have been exceeded or not.

20                    Whatever information and whether that

21   exists or not is going to be in the possession of

22   licensee manufacturers.

23                    Frankly, it really comes down to one of

24   the key issues is these sales caps, and some of the

Teleconference

Page 33

1    licenses have sales caps, and we are not going to have

2    that information, that's for sure.  If anyone is going to

3    have it, it's going to be the licensee manufacturers.

4                     And, again, if Honeywell had an inkling

5    that there was an issue there, they have had eons of time

6    to pursue that, and that's our concern about, at this

7    point, trying to tie things up and not further to allow

8    them, you know, yet another delay in these proceedings.

9                     Now, in terms of, like I said,

10   specifically what it seems they are looking for from the

11   customers, the correspondence, again, is, you know, I

12   don't believe it's going to be relevant, I can't imagine

13   that there is going to be anything there, but, and,

14   again, I think it's besides the point, but, you know,

15   frankly, the biggest concern that we have got is the

16   additional delay that would be engendered by continuing

17   to run down these various different rabbit holes, in our

18   view.

19                     MR. GRIMM:  Can I speak?  Do you want me

20   to speak to any of that, Your Honor?

21                     SPECIAL MASTER POPPITI:  Yes, please.

22                     MR. GRIMM:  No. 1, going in reverse, I

23   don't see any additional delay.  We are just asking them

24   to search their files for this correspondence and to tell

Teleconference

Page  34

1    us what state they received the module in.

2                    All Mr. Halkowski says is, I don't think

3    there will be anything there.  Well, let's find out.

4                    As Your Honor said, we are entitled to

5    discovery either to carry our burden of proof or to rebut

6    their burden.  The notion that Honeywell has had the

7    opportunity is, I hate to use the word, you know,

8    ludicrous or ridiculous, but that's where we are heading

9    here.  We have had no opportunity to discover these

10   issues.  These issues were never on the table.  Judge

11   Thynge said they were not on the table.

12                   Why would Honeywell take discovery of

13   people it's already licensed, who have already

14   capitulated to this patent to see if they have exceeded

15   their caps.  We have audit rights to do that.

16                   The only reason to do it now is these

17   customer defendants now want out of the case.  We are not

18   looking to double dip.  We have had a tremendously

19   successful licensing program.  We were forced to go out

20   to the manufacturing defendants first.  The customer

21   chose that.  They got the stay that they wanted.

22                   We are happy to let them out once there

23   is a showing that they are entitled to be out, but as

24   Your Honor knows, it's not crystal clear under these

Teleconference

Page 35

1      licenses.  The supplier licenses don't say, We are

2      covering all the modules we sold to Apple.

3                 If Mr. Halkowski is so sure that he is

4      covered, then he can come forward with evidence of that.

5      But we should have the opportunity to take the discovery

6      now, that we have never had any reason to take, that we

7      would have been met with an argument that was stayed

8      because, as Your Honor pointed out, the customers would

9      have wanted to be involved in that discovery, and,

10     frankly, we had no reason to take that discovery.  We are

11     only taking it now to see whether or not these customers

12     are licensed or not.

13                 And, so, you know, Honeywell has taken

14     it upon itself to go forward and try to take this

15     discovery.  We put out 30(b)(6) deposition notices the

16     day after Your Honor's recent order.  We sent out letters

17     asking for the declarations that Your Honor suggested.

18     We are prepared to proceed on the schedule that Your

19     Honor set, but for the request that we have a little bit

20     more time to prime the pump, as you say, to conduct

21     third-party discovery, and we make this one simple

22     suggestion with respect to the customers because we think

23     that would facilitate all of it.

24                 And, so, that's where we are.  And, you

Teleconference

Page 36

1    know, I think those are relatively simple issues and we

2    ought to get on with it.

3                    MR. HALKOWSKI:  Your Honor, just to be

4    clear, it's not, I don't have a huge problem with narrow,

5    you know, particular requests that don't result in

6    additional delay.  I mean, that's really our concern.

7                    I mean, we are happy to, you know,

8    provide some limited, you know, kind of focused

9    information as opposed to the, kind of the broadside that

10   we initially got from Honeywell a few weeks ago.  So

11   that's point one.

12                   Point two, again, I will just point out

13   that Honeywell, it is really either the licensee

14   manufacturers, you know, should be back in the suit and

15   Apple should not be out because it's the scope of the

16   license had been exceeded or the scope of the licenses

17   have not been exceeded and there is no reason to bring

18   back in the licensee manufacturers and there is no reason

19   for Apple to be in this suit.  It's kind of you are

20   either both in or both out.

21                   And what my point has been is that for,

22   you know, a year-and-a-half or two years, Honeywell has

23   not deemed it of any concern that these other -- that

24   Apple's manufacturers exceeded their licenses, and, so,

Teleconference

Page 37

1    they haven't pursued discovery from them saying, you

2    know, We think maybe we might need to bring you back in

3    the suit because we think you exceeded the scope of this

4    and that's why we can't let Apple out of this suit and

5    that's why you need to come back in, they have had that

6    opportunity and they just simply haven't pursued that.

7                    That's what our bigger concern is that

8    they, you know, they now kind of throw a monkey wrench

9    into this process that we finally thought we had started

10   on the right track in terms of getting an opportunity to

11   brief it to Your Honor.

12                   SPECIAL MASTER POPPITI:  We are on a

13   track, I can assure you that.  I do want to hear from any

14   other customer defendant if they want to speak.

15                   MR. DI GIOVANNI:  Your Honor, my one

16   concern that hasn't been addressed is the scope of

17   discovery, and some of the things I have heard today from

18   Honeywell makes me a little bit concerned.  For example,

19   they mentioned taking document discovery or other

20   discovery of the communications between the manufacturers

21   and customer defendants.  I think that would go beyond

22   the scope of what I would have anticipated and what I

23   would consider reasonable.  And, I actually don't agree

24   with Honeywell that, in fact, such documents would not be

Teleconference

Page 38

1    privileged.  I think there would be a privilege, in most

2    instances, a common legal interest privilege.

3                    So that just makes me a bit concerned

4    that the discovery that we are talking about here, that

5    at least Honeywell is going to seek, is going to be far

6    beyond what is called for in this circumstance.

7                    SPECIAL MASTER POPPITI:  The

8    limitations, as I understand it, and, Mr. Grimm, correct

9    me if I am wrong, if you kind of draw a box, forget

10   third-party for a moment, around the first full paragraph

11   of page 2 and its last full sentence, that's what I am

12   focused on, and that's what, Mr. Grimm, I expect you

13   wanted me to focus on?

14                   MR. GRIMM:  Correct, Your Honor.

15                   SPECIAL MASTER POPPITI:  With respect

16   to, quote/unquote, limited discovery.

17                   So, let me just make this observation.

18   No. 1, I think it's important to toll the time within

19   which to take exceptions to my findings and

20   recommendations so that everyone can, in a sense, stand

21   down from the need to focus on that activity.

22                   No. 2, I will be getting out today a

23   letter, which I may now have to modify, although I don't

24   think I do, with respect to the work we are doing today,

Teleconference

1    that will focus all parties on what I think is going to

2    be important for me to have before the hearing scheduled

3    for September 4 and in anticipation of my recommendation

4    to Judge Farnan as to how the case should be configured

5    going forward to trial/trials, or going forward to

6    disposition of pending motions for summary judgment, for

7    example, of Citizen.

8                    With all of that in mind, what makes

9    some sense to me is to say to you, between now and the

10   4th, I'd like you to take a step at trying to, not trying

11   to, meeting and conferring and coming to some four-corner

12   resolution on at least what the discovery should be from

13   the customer defendants.

14                   I think that makes the most sense in

15   terms of the time frames coming up.

16                   I realize that that may have some impact

17   on the briefing schedule, and, quite frankly, I don't

18   have a mirror image of it in my mind to see what that

19   would do with it, but I think that if it does, I will

20   take a look at it during the course of the day today and

21   we will accommodate in terms of what it should look like

22   after you all say to me, We are in agreement this is what

23   should be occurring.

24                   If a shorter time frame makes some sense

Teleconference

Page 40

1    to keep on track with the briefing schedule, I am happy

2    to say, Meet and confer between now and the end of the

3    week, come up with what is the limited discovery as

4    proposed by Mr. Grimm in the August 18th letter to me,

5    and then we just simply move forward on the same

6    schedule.

7              On the issue of third-party discovery, I

8    have made it a practice of my professional life not to

9    try to look over my shoulder to try and second guess what

10   a Court of Appeals would or would not do with any order

11   that I enter.  And I am not intending to suggest that I

12   am doing that today.

13             However, I would not want to, and I

14   don't think the parties would want to be in the position

15   of having to argue, not to Judge Farnan but to the

16   Circuit, that because of the way this case was configured

17   moving forward, that there would be some determination

18   that the parties did not have a full and fair

19   opportunity, within the framework of how this case was

20   structured, to conduct discovery without having gone back

21   and forth to the Court for applications to lift stay and

22   applications for leave to do other things.

23             I don't think anyone wants to be in that

24   kind of position.  I think the customer defendants want

Teleconference

Page 41

1    out.  My sense is that Honeywell would want the, needs

2    information to either agree to let them out or needs

3    information to help permit them to respond to any motions

4    to dismiss.

5                    I believe that there needs to be a time

6    frame within which to secure third-party cooperation

7    and/or third-party discovery.  I am hoping it is not the

8    latter.  If it's the latter, I am not sure where we are

9    in terms of time frame.

10                   So, I would like you, within the context

11   of those meet and confers, to also reach agreement, and

12   if you don't, I will make some determination with respect

13   to the time frame within which to prime the pump with the

14   third parties.

15                   I know you have already tried to do

16   that.  I know that some dialogue is occurring but I'd

17   like there to be one last shot at it and I'd like a time

18   certain to see that accomplished within.

19                   MR. GRIMM:  Very well, Your Honor.

20   Thank you.

21                   SPECIAL MASTER POPPITI:  If the 4th

22   makes sense, let's say the 4th, and I will write an

23   appropriate document which tolls the time within which to

24   file exceptions, if you think it can be done before the

Teleconference

Page 42

1    4th, then please someone suggest to me a different and

2    earlier date.

3                    MR. GRIMM:  Can you clarify what you

4    mean by what would be on the 4th?

5                    SPECIAL MASTER POPPITI:  Well, on the

6    4th, there is either going to be, you are all going to be

7    telling me that there is full resolution to the issues

8    that have been raised with respect to discovery, or you

9    are going to be telling me you haven't reached resolution

10   and I am going to be telling you what the road signs are

11   going to look like going forward.

12                   And if you can do it beforehand and you

13   want to set a different date and have a brief

14   teleconference so we keep everybody moving on the

15   schedule that I have already set, then I am happy to do

16   that as well.

17                   MR. GRIMM:  I certainly think it would

18   be helpful to do it much earlier than that.

19                   MR. HALKOWSKI:  I agree.

20                   MR. GRIMM:  So we would be prepared to

21   wrap up the meet and confer process by the end of this

22   week, as you suggested earlier.

23                   SPECIAL MASTER POPPITI:  Is there any

24   disagreement from any of the customer defendants?

Teleconference

Page 43

1              MR. HALKOWSKI:  That is certainly better
2     from our perspective as well.  I do have a question that
3     is contemplated for the in-person hearing on the 4th,
4     primarily because I am going to be in trial on that day
5     and I am uncertain as to whether that hearing is more
6     focused on the case in general or is it more focused on
7     what we have been talking about with Your Honor, the
8     various licensing issues?
9              SPECIAL MASTER POPPITI:  It is more
10    focused on the case in general because I certainly
11    anticipated that the licensing/exhaustion issues were, if
12    you will, covered by the findings and recommendations.
13    Clearly, there needs to be some fine tuning to that.  But
14    it will be focused on the case in general.
15              MR. HALKOWSKI:  Is it, I guess,
16    necessary, from Your Honor's perspective, to have the
17    full participation of the customer defendants, then, for
18    the hearing on the 4th?
19              SPECIAL MASTER POPPITI:  I think that if
20    we establish a different date going forward, if you are
21    going to finish meet and conferring by the 22nd, we may
22    want to schedule a very brief teleconference on the 25th,
23    for example.  I am not sure that I would see the need for
24    customer defendants to be participating, but I am

Teleconference

Page 44

1    certainly not going to suggest that they can't or

2    shouldn't.

3                    MR. HALKOWSKI:  Okay.  Thank you for

4    that clarification.  I guess we will get to work on the

5    meet and confer and get a report to you by Friday.

6                    SPECIAL MASTER POPPITI:  And what time

7    on Monday, the 25th, if you are going to be getting

8    something to me on Friday?

9                    MR. GRIMM:  I would suggest sometime

10   early afternoon just for anybody who may be in a

11   different time zone.

12                    SPECIAL MASTER POPPITI:  Yes.  That

13   makes sense.

14                    MR. HALKOWSKI:  Do you want to say 1:00

15   or 1:30?

16                    SPECIAL MASTER POPPITI:  Let's do this,

17   because if you are going to be sending something to me

18   that is other than a resolution on the 22nd, I am

19   actually going to be leaving the office on the 22nd

20   around 3:00, so if it comes in after that, I am not going

21   to get to look at it -- well, let's do 2:00 on the 25th.

22                    MR. HORWITZ:  Your Honor, I hesitate to

23   throw a monkey wrench into what you have just discussed,

24   but I don't know whether people who would like to

Teleconference

Page 45

1    participate in these meet and confers are around,

2    especially now, given the time of year that we are in,

3    and I wonder whether it would be more prudent to have

4    Monday as the deadline so that if some people are away,

5    we will at least be able to have some communications and

6    have people back in the office for one day to submit

7    something to you and then have a follow-up call the next

8    day.

9                    MR. HALKOWSKI:  Apple doesn't have any

10   objection to that.

11                   MR. GRIMM:  Honeywell does not either.

12                   SPECIAL MASTER POPPITI:  All right.  If

13   there is no disagreement with that, we can just move the

14   2:00 on the 25th to 2:00 on the 26th.

15                   MR. GRIMM:  Your Honor, do you want to

16   set a deadline on the 25th at 3:00 p.m.?

17                   SPECIAL MASTER POPPITI:  That would be

18   great.

19                   MR. GRIMM:  Okay.  Your Honor, will we

20   keep the September 4th hearing in place just in case we

21   need it?

22                   SPECIAL MASTER POPPITI:  Yes.  The

23   September 4th hearing will be going forward in any event,

24   and if it's important, once you see my letter, because

Teleconference

Page 46

1    the draft of the letter essentially says that the 24th

2    will be focused on things other than those that were

3    addressed in the report and recommendation that I have

4    issued, if it's important to say, We need to also revisit

5    some things with respect to that, then just simply

6    advise.

7              And I think, in light of what we have

8    all said, and even Mr. Grimm, your suggestion that

9    perhaps there may be some things left over for the 4th, I

10   am going to suggest to you all, and just let me know if

11   anyone disagrees, that the -- I am wondering whether I

12   should suspend the time within which to take exceptions

13   to the report and recommendation until the 5th.

14             I realize that that may not make any

15   darn sense because we are chugging along on the schedule.

16   Does anyone have a view as to when you think it would be

17   important to set that deadline?  And I will accept

18   anything from you that makes sense.

19             MR. GRIMM:  I would think a deadline

20   that coincides with the date on which Your Honor decides

21   the motions to dismiss.

22             MR. HALKOWSKI:  Your Honor, I wouldn't

23   have an issue with that if we were basically sticking

24   with our original schedule on the briefing, but if we are

Teleconference

Page 47

1    not going to be sticking with that and if there is,

2    indeed, going to be an extensive delay, for whatever

3    reason, third-party or Hague Convention or whatever you

4    want to talk about, but if there is going to be an

5    extensive delay, then I see no reason why we shouldn't at

6    least try to get this burden of proof issue through the

7    hopper with Judge Farnan as soon as possible.

8                    If, on the other hand, we are going to

9    be able to stick to a briefing schedule that is along the

10   lines that we had previously set forth and with the

11   hearing in October, I mean, that's a different story.

12   So, from my perspective, it entirely depends upon how far

13   out we are going to end up going for --

14                    SPECIAL MASTER POPPITI:  Let's do this.

15   Let's review the date on the, we can talk about the date

16   again on the 26th because that will give me and that will

17   give everyone a sense as to where we are with respect to

18   hopefully your agreement on most if not everything, and

19   that would include any tweaking of the briefing schedule

20   that I have already issued.  So I will draft an

21   appropriate order which simply tolls the time within

22   which to file something under the Rule without setting a

23   new date yet.

24                    MR. GRIMM:  That's fine, Your Honor.

Teleconference

Page 48

1                         MR. HALKOWSKI:  That makes sense from

2        Apple's perspective, Your Honor.

3                         SPECIAL MASTER POPPITI:  All right.

4        Thank you everyone for participating, and I look forward

5        to seeing an agreement; if not, look forward to working

6        with you on the 26th at 2:00.

7                         MR. GRIMM:  Thank you, Your Honor, for

8        scheduling this on such short notice.  We very much

9        appreciate it.

10                        MR. HALKOWSKI:  Thank you, Your Honor.

11                        SPECIAL MASTER POPPITI:  Bye, now.

12                        (The hearing was concluded at

13       10:38 a.m.)

14

15

16

17

18

19

20

21

22

23

24

Teleconference

Page 49

1                C E R T I F I C A T E

2    STATE OF DELAWARE:
                       :
3    NEW CASTLE COUNTY:

4              I, Renee A. Meyers, a Registered Professional

5    Reporter, within and for the County and State aforesaid,

6    do hereby certify that the foregoing teleconference was

7    taken before me, pursuant to notice, at the time and

8    place indicated; that the teleconference was correctly

9    recorded in machine shorthand by me and thereafter

10   transcribed under my supervision with computer-aided

11   transcription; that the foregoing teleconference is a

12   true record; and that I am neither of counsel nor kin to

13   any party in said action, nor interested in the outcome

14   thereof.

15             WITNESS my hand this 20th day of August A.D.

16   2008.

17

18

19   RENEE A. MEYERS
     REGISTERED PROFESSIONAL REPORTER
20   CERTIFICATION NO. 106-RPR
     (Expires January 31, 2011)

21

22

23

24