

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
(302) 984-6140   Direct Phone
(302) 658-1192   Fax

August 28, 2008

**BY E-FILE, HAND DELIVERY AND E-MAIL**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801

> Re: Honeywell Int'l Inc., et al. v. Apple Computer, Inc., et al.
> D. Del., C.A. Nos. 04-1338-JJF
> Honeywell Int'l Inc. et al v. Audiovox Corporation, et al.,
> D. Del., C.A. No. 04-1337-JJF
> Optrex America Inc. v. Honeywell Int'l Inc., et al.
> D. Del., C.A. No. 04-1536-JJF

Dear Judge Poppiti:

  We write on behalf of Defendants FUJIFILM Corporation and FUJIFILM U.S.A., Inc., (collectively "Defendants"), in response to Your Honor's August 18, 2008 letter (D.I.1159), to supplement their prior filing (D.I. 1043) regarding potential restructuring of the case and the joint letter filed by all Manufacturer Defendants on August 27. This further supplement is necessitated by Honeywell's letter to Your Honor of August 27 which ignores the likely effect on the rest of these cases of a ruling on the common issue of validity and enforceability as directed by Judge Jordan and the basis on which the Manufacturer Defendants have reached this stage of this case.

  The '371 Patent issued on January 18, 1994 on an application filed July 9, 1992. The '371 patent issued with two independent claims, one of which (claim 3) is asserted in this case. Both independent claims recite a base combination (including a liquid crystal panel, two lens arrays and a the light source), which was finally rejected by the Examiner. See Ex. 1 (a slide not used in the Markman presentation where the language in red represents the added moiré related limitations and the language in black represents the base combination). Significant issues of validity surround the '371 Patent. During prosecution, Honeywell acquiesced in the Examiner's rejection of the base combination, but pointed to the dependent claims reciting rotation of the

lens array relative to the liquid crystal panel and a prescribed variation in pitch among the lens arrays and liquid crystal panel as solutions to moiré interference not taught in the prior art before the Examiner. The pitch and rotation limitations were added to the rejected base combination to produce patent claims 1 and 3, respectively, and the '371 patent issued. See Ex. 1. Annexed as Ex. 2 are the slides comprising the "Background" section of Defendants presentation to Judge Farnan at the July 10, 2008 Markman hearing. For Your Honor's convenience, we have numbered the slides in Ex. 2.

Moiré interference is an interference pattern created when two periodic structures with slightly differing pitches (frequencies) are overlaid on one another such that visible artifacts in the form of light and dark lines or bands are formed. Ex. 2, Slide 11. The moiré phenomenon occurs for the same reason no matter what the structure causing the moiré interference. Voluminous prior art establishes that both rotation and pitch selection were well known solutions to moiré interference before the alleged invention of the '371 patent. For example, as shown in Defendants' Markman presentation, the existence of moiré in direct view LCD modules having a lens array was taught by IBM (see Ex. 2, Slide 12), the use of rotation to avoid moiré interference was known in printing and lithography where moiré interference is caused by overlaying halftone images (see Ex. 2, Slide 13), in cathode ray tube displays (see Ex. 2, Slide 14) and in projection screen displays (see Ex. 2, Slide 15).

As the Supreme Court recently observed in greatly expanding the test for obviousness beyond the test previously used by the Federal Circuit (KSR Int'l Co. v. Teleflex Inc., 127 S.Ct. 1727 (2007)): a) A central principle in the obviousness inquiry is that "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." id. at 1740; b) "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one." id. at 1740; and c) "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103." Id. at 1742. Based on the KSR test, the widely established uses of rotation to avoid moiré interference, including of lens arrays used in various types of displays, raises significant issues of invalidity, which should be dealt with at the earliest possible time.

The lack of technical contribution of the '371 patent has been confirmed by Honeywell and its technical expert. First, Honeywell never practiced the '371 patent. Second, Honeywell's primary avionics customer for whom the technology was originally developed rejected the use of the alleged invention. Third, a Honeywell's expert, Dr. Lewin, surveyed LCD developments in 1993, 1994 and 1997 and took no notice of the '371 patent or the inventors' related article. Honeywell's expert did, however, report in a 1993 paper published by the Society for Information Display (SID), the leading world-wide organization devoted to display technology, on the use of lens arrays distributed by 3M to increase brightness in LCDs, the purpose of the base combination of the '371 Patent. Fourth, notwithstanding the widespread use of 3M's lens

arrays for use in LCD modules (with rotation as a solution to moiré interference), the patent lay dormant for 10 years—from its issuance in 1994 until 2004, when a third party brought it to Honeywell's attention and Honeywell initiated these cases. Ex. 2, Slides 2-8.

The enforceability of the '371 patent is equally suspect. The named inventor credited with contributing rotation worked in the area of projection displays, where rotation of lens arrays to address moiré interference was well known. The named inventors of the '371 patent were aware of a prior art reference that disclosed variation of pitch to address moiré interference before filing the application that led to the '371 Patent. The prior art reference of which the inventors were aware ("High Definition Liquid Crystal Projection TV", Noda et al., Japan Display 1989, pages 256-59 ("Noda article")) discloses the same pitch relationship—half integer multiples—as described and claimed in the '371 Patent. Ex. 2, Slide 16.

The suspect validity and enforceability of Honeywell's '371 Patent warrants an early trial on the issues of validity and enforceability likely to bring this case to an early close.

    Respectfully,

    Philip A. Rovner
    provner@potteranderson.com

PAR/mes/880427
cc:    All Counsel of Record – by CM-ECF