## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | ) ) ) ) | C.A. No. 04-1337-LPS (lead case) |
| Plaintiffs, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | **PUBLIC VERSION** |
| NIKON CORPORATION, *et al.*, | ) ) | |
| Defendants. | ) | |

### SAMSUNG SDI CO., LTD. AND SAMSUNG SDI AMERICA, INC.'S BRIEF IN SUPPORT OF THEIR RESTATED MOTION FOR ATTORNEY FEES AND EXPENSES

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Stephen S. Korniczky
SHEPPARD MULLIN RICHTER
 & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130
Tel: (858) 720-8900

*Attorneys for Defendant Samsung SDI Co., Ltd. and Samsung SDI America, Inc.*

Dated: February 18, 2011
Public Version Dated: February 25, 2011
1002860 / 29140

# TABLE OF CONTENTS

**Page**

I.   EXCEPTIONAL CIRCUMSTANCES IN THIS CASE WARRANT AN
     EXCEPTIONAL CASE FINDING AND ATTORNEY FEES ........................................3

    A.   Honeywell Litigated This Case Despite Clear Evidence of Inequitable
          Conduct..........................................................................................................3

        1.   Inequitable Conduct Standard ..................................................................4

        2.   Honeywell Committed Inequitable Conduct By Failing to Disclose
               the Offer to Sell the Invention ..................................................................5

            a.   Absolute duty to disclose any sale or offer to sell ...........................5

            b.   Honeywell had an undisputable duty to disclose the AIMS
                    Proposal and the sale of the prototype display units. .....................7

            c.   Honeywell had the intent to deceive and committed
                    inequitable conduct by failing to disclose the AIMS
                    Proposal. ......................................................................................7

        3.   Honeywell committed inequitable conduct by failing to disclose the
               Noda reference.........................................................................................10

    B.   Honeywell's Acts of Inequitable Conduct Constitute Fraud ..................................13

    C.   Honeywell's Bad Faith, Vexatious, and Unjustified Litigation Warrants a
          Finding That This Case is Exceptional..................................................................14

        1.   Honeywell Filed Suit With Knowledge that the '371 Patent Was
               Invalid and Unenforceable.......................................................................14

        2.   Honeywell Continued Litigation Despite Overwhelming Evidence
               of Invalidity ............................................................................................14

        3.   Honeywell Used This Lawsuit To Leverage An Invalid And
               Unenforceable Patent to Obtain Nearly ▮ Million Dollars From
               Defendants...............................................................................................15

        4.   Honeywell's Infringement Claim Was Baseless And Unsupported ..........15

    D.   Litigation Misconduct and Unprofessional Behavior Warrant a Finding
          That This Case is Exceptional ..............................................................................17

        1.   Honeywell Failed to Produce and Misled the Parties and Court
               Regarding Key Evidence of an Offer For Sale to Boeing ........................17

        2.   Honeywell Falsely Denied Or Refused To Admit RFAs .........................19

        3.   Honeywell's Citation to Contradicted Testimony to Obfuscate the
               Overwhelming Facts Supporting On Sale Bar Shows Bad Faith ..............20

II.  HONEYWELL'S BASELESS APPEAL IS EXCEPTIONAL ........................................21

III.   HONEYWELL'S ACTIONS CONSTITUTE FRAUD ON THIS COURT ....................24

IV.   THE COURT IS JUSTIFIED IN EXERCISING ITS DISCRETION TO AWARD
      FEES AND COSTS UNDER ITS INHERENT AUTHORITY .......................................24

V.    CONCLUSION ...............................................................................................................25

# TABLE OF AUTHORITIES

**Page**

Cases

*Aptix Corp. v. Quickturn Design Sys.*
   269 F.3d 1369 (Fed. Cir. 2001) ......................................................................................25

*Bayer Aktiengesellschaft v. Duphar Int'l Research*
   738 F.2d 1237 (Fed. Cir. 1984) ........................................................................................3

*Brasseler v. Stryker Sales Corp.*
   267 F.3d 1370 (Fed. Cir. 2001) ........................................................................................4

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*
   394 F.3d 1348 (Fed. Cir. 2005) ......................................................................................13

*C.R. Bard v. M3 Sys.*
   157 F.3d 1340 (Fed. Cir. 1998) ......................................................................................13

*Cambridge Prods. v. Penn Nutrients*
   962 F.2d 1048 (Fed. Cir. 1992) ......................................................................................25

*Chambers v. NASCO*
   501 U.S. 32 (1991) ..........................................................................................................25

*Critikon v. Beckton Dickinson Vascular Access*
   120 F.3d 1253 (Fed. Cir. 1997) ................................................................................6, 7, 8

*Dippin' Dots v. Mosey*
   476 F.3d 1337 (Fed. Cir. 2007) ...............................................................................*passim*

*Ferring v. Aventis Pharmaceuticals*
   437 F.3d 1181 (Fed. Cir. 2006) ........................................................................................5

*Honeywell Int'l v. Nikon Corp.*
   672 F. Supp. 2d 638 (D. Del. 2009) .................................................................................1

*Hughes v. Novi Am.*
   724 F.2d 122 (Fed. Cir. 1984) ...................................................................................10, 14

*Interspiro USA, Inc. v. Figgie, Int'l Inc.*
   18 F.3d 927 (Fed. Cir. 1994) ..........................................................................................15

*LaBounty Mfg. v. U.S. Int'l Trade Comm'n.*
   958 F.2d 1066 (Fed. Cir. 1992) ....................................................................................6, 7

*Mathis v. Spears*
   857 F.2d 749 (Fed. Cir. 1988) ........................................................................................23

*Paragon Podiatry Lab. V. KLM Labs.*
   984 F.2d 1182 (Fed. Cir. 1993) ................................................................*passim*

*Pfaff v. Wells*
   525 U.S. 55 (1998) ...............................................................................................21

*RCA Corp. v. Data General*
   887 F.2d 1056 (Fed. Cir. 1989) ..........................................................................23

*Refac Int'l Ltd. V. Hitachi, Ltd.*
   921 F.2d 1247 (Fed. Cir. 1990) ..........................................................................23

*Rohm & Haas Co. v. Crystal Chem. Co.*
   736 F.2d 688 (Fed. Cir. 1984) ............................................................................21

*Romala Corp. v. United States*
   927 F.2d 1219 (Fed. Cir. 1991) ..........................................................................24

*Scaltech v. Retec/Tetra*
   269 F.3d 1321 (Fed. Cir. 2001) ..............................................................21, 22, 23

*Semiconductor Energy Lab. Co. v. Samsung Electronics Co.*
   204 F.3d 1368 (Fed. Cir. 2000) ............................................................................8

*Sensonics, Inc. v. Aerosonic Corp.*
   81 F.3d 1566 (Fed. Cir. 1996) ............................................................................17

*State Indus. v. Mor-Flo Indus.*
   948 F.2d 1573 (Fed. Cir. 1991) ....................................................................21, 24

*Takeda Chem. Indus. v. Mylan Labs.*
   549 F.3d 1381 (Fed. Cir. 2008) ..........................................................................24

Statutes

28 U.S.C. § 1927 .......................................................................................................1

35 U.S.C. § 102(b)................................................................................................1, 14

35 U.S.C. § 285 ................................................................................................*passim*

Other Authorities

37 C.F.R. § 1.56.....................................................................................................6, 12

Fed. R. Civ. P. 37(b)(2) ............................................................................................1

Fed. R. Civ. P. 37(c)(2) ..........................................................................................20

Samsung SDI Co., Ltd. and Samsung SDI America, Inc. (collectively, "Samsung") hereby move the Court for an award of attorney fees and costs. Pursuant to 35 U.S.C. § 285, Samsung requests that this Court find this case and Honeywell's appeal to the Federal Circuit exceptional and award attorney fees for both. Additionally, or alternatively, Samsung requests this Court to award its fees and costs incurred as a result of Honeywell's bad faith, vexatious, grossly negligent and/or fraudulent actions in this litigation and before this Court pursuant to this Court's inherent authority, 28 U.S.C. § 1927, Fed. R. Civ. P. 37(b)(2).[1]

This is a baseless and frivolous action that should have never been filed. Plaintiffs Honeywell, Inc. and Honeywell Intellectual Properties, Inc. (collectively "Honeywell") brought multiple actions asserting infringement of U.S. Patent No. 5,280,371 ("the '371 patent") against more than 60 defendants and, in doing so, shook down an entire industry for $█████ million -- an outrageous windfall that will never be refunded to the 21 defendants that decided to license the '371 patent. Indeed, Honeywell brought this action and continued to litigate it even though it knew or should have known *prior to filing suit* that (1) the '371 patent was invalid because Honeywell violated the on sale bar, 35 U.S.C. §102(b), when it offered to sell the claimed invention to the Boeing Company ("Boeing") more than one year before filing the '371 patent application (*Honeywell Int'l v. Nikon Corp.*, 672 F. Supp. 2d 638 (D. Del. 2009)); and (2) the '371 patent was unenforceable and should never have issued but for Honeywell's fraudulent withholding of information from the U.S. Patent and Trademark Office ("PTO"). The information that Honeywell should have unequivocally disclosed, i.e., its offer to sell the patented invention to Boeing and a prior art publication written by H. Noda ("the Noda reference") were both known and readily

---

[1] Samsung incorporates by reference herein the arguments and authorities presented in FUJIFILM Corporation and FUJIFILM U.S.A., Inc. (collectively "Fuji")'s Brief in Support of their Restated Motion for Attorney Fees and Expenses, as well as the supporting declarations of Angie Hankins and Lawrence Rosenthal.

available to Honeywell prior to the filing of the '371 patent application and, indeed, this lawsuit. Any reasonable investigation by Honeywell and its attorneys would have brought forth the overwhelming evidence and conclusion that the '371 patent was invalid and unenforceable. It is unbelievable that Honeywell would not have known that it offered to sell the patented invention to Boeing when the invention was developed specifically for Boeing and/or that its attorneys would not have recognized Honeywell's unexplainable failure to disclose to the PTO the offer for sale.

Throughout this case, Samsung and Fuji warned Honeywell that they believed its June 1990 Airplane Information Management System Proposal (the "AIMS Proposal") violated the on sale bar and rendered the '371 patent invalid. Honeywell, however, denied the existence of, "forgot," "lost" and, ultimately, failed to produce the smoking gun document, i.e., Volume IV of the AIMS Proposal entitled, "Price Offering & Contractual Terms & Conditions," that established the patented invention had been offered for sale. Remarkably, Honeywell's position that Volume IV did not exist and that it had not been delivered to Boeing directly conflicted with its position that the actual contract that grew out of the AIMS Proposal was active. Indeed, Honeywell designated Volume III of the proposal at the highest level of confidentiality because it was an active contract thereby to preventing Defendants from discussing the on sale bar defense with their counsel.

Moreover, defendants ultimately obtained the missing Volume IV from Boeing pursuant to a subpoena, further contradicting Honeywell's position that Volume IV did not exist and was not delivered to Boeing. Having failed to suppress Volume IV containing the *pricing and contract terms* of the offer, Honeywell then argued to the Court against established legal precedent that there was no commercial offer – an argument that this Court squarely and appropriately rejected. This Court granted Samsung and Fuji's motion for summary judgment on this issue, just prior to trial citing "overwhelming" evidence that the patent was invalid based on the sale bar. D.I. 771 Indeed, the Court quoted liberally from Volume IV confirming that an offer for sale was made based

2

directly upon the very evidence Honeywell tried so hard to suppress.

Finally, Samsung's request for fees is further supported by Honeywell's bad faith litigation tactics. Even after defendants provided a detailed outline of the evidence supporting the on sale bar defense, Honeywell persisted in prosecuting this case for years, forcing Samsung to engage in extensive written and document discovery, take and defend a multitude of fact depositions, take and defend two rounds of expert depositions, brief and argue claim construction, test its products to establish non-infringement, engage in intense pre-trial activity, and defend against a frivolous appeal of summary judgment. In responding to discovery, it falsely denied or refused to answer requests for admission on key facts, tried to use the '371 patent licenses improperly extracted during this case from co-defendants to support the validity of the patent, and failed to provide a good faith basis for its infringement contentions. Moreover, to maintain the case, Honeywell argued claim construction positions that were unsupportable under even the most generous arguments and ultimately failed to provide any support for its infringement position following this Court's repeated rejection of its unsupportable claim construction. Honeywell's actions in filing this litigation, continuing to maintain the litigation, multiplying the litigation, and its attempts to suppress the clear evidence of invalidity constitute bad faith, vexatious litigation, and/or fraud.

I.   **EXCEPTIONAL CIRCUMSTANCES IN THIS CASE WARRANT AN EXCEPTIONAL CASE FINDING AND ATTORNEY FEES**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 "In awarding attorney fees to a prevailing accused infringer, such exceptional circumstances include, *inter alia*, inequitable conduct during prosecution of the patent, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit." *Bayer Aktiengesellschaft v. Duphar Int'l Research*, 738 F.2d 1237, 1242 (Fed. Cir. 1984).

A.   **Honeywell Litigated This Case Despite Clear Evidence of Inequitable Conduct**

From the start of this case, Defendants alleged that the '371 patent is unenforceable due to

inequitable conduct. Although it is not necessary for this Court to find inequitable conduct to

conclude that this case is exceptional, where there are allegations of inequitable conduct, it is

appropriate for the court to consider these allegations. *See e.g., Brasseler v. Stryker Sales Corp.,*

267 F.3d 1370, 1380 (Fed. Cir. 2001) (affirming award of attorney fees on remand after affirmance

of summary judgment of invalidity for on sale bar); *Paragon Podiatry Lab. V. KLM Labs.,*

984 F.2d 1182, 1188 n. 6 (Fed. Cir. 1993) (The issue of inequitable conduct "is not mooted by our

decision holding the patent invalid in view of KLM's motion for attorney fees.").

Samsung alleged several instances where the patentees failed to disclose material

information to the PTO. Although this Court need only conclude one of these is an intentional

failure to disclose material information in order to find inequitable conduct, inequitable conduct is a

doctrine in equity, and the evidence demonstrates Honeywell's pattern of failing to disclose highly

material information and is therefore relevant to the Court's findings that this is an exceptional case

meriting the award of Samsung 's attorney fees. *See Paragon*, 984 F.2d at 1192 n. 9 ("[w]e address

this second ground for inequitable conduct as it may have a cumulative effect on the district court's

determination of an exceptional case in connection with KLM's motion for attorney fees.).

Samsung believes there is sufficient record evidence to find that Honeywell committed inequitable

conduct, but requests that this Court entertain oral argument if it believes it necessary.

### 1.    **Inequitable Conduct Standard**

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent

to mislead or deceive the examiner, fails to disclose material information or submits materially false

information to the PTO during prosecution." *Dippin' Dots v. Mosey*, 476 F.3d 1337, 1346 (Fed.

Cir. 2007). The inequitable conduct inquiry is performed in two steps comprising "first, a

determination of whether the withheld reference meets a threshold level of materiality and intent to

mislead, and second, a weighing of the materiality and intent in light of all the circumstances to

determine whether the applicant's conduct is so culpable that the patent should be held

unenforceable." *Ferring v. Aventis Pharmaceuticals*, 437 F.3d 1181, 1187 (Fed. Cir. 2006) (internal

citations omitted). The predicate facts must be proven by clear and convincing evidence. *Id.*

Information is "material" if a reasonable examiner would have considered it important in deciding

whether to allow the application. *Id.* "Materiality does not presume intent, which is a separate and

essential component of inequitable conduct." *Id.* (internal citations omitted) The court balances

relatively weak evidence of intent together with strong evidence of materiality to find that on

balance, inequitable conduct has occurred. *Dippin' Dots*, 476 F.3d at 1346. "Smoking gun

evidence is not required to establish intent to deceive." *Paragon*, 984 F.2d at 1189. Rather, the

intent is inferred from the facts and circumstances surrounding the applicant's overall conduct. *Id.*

2.  **Honeywell Committed Inequitable Conduct By Failing to Disclose the Offer to Sell the Invention**

a.  **Absolute duty to disclose any sale or offer to sell**

The Federal Circuit has repeatedly held that "the omission of sales made before the critical

date is especially problematic." *Dippin' Dots*, 476 F.3d at 1345-46; *Paragon*, 984 F.2d at 1189.

"Absent explanation, the evidence of a knowing failure to disclose sales that bear all the earmarks of

commercialization reasonably supports an inference that the inventor's attorney intended to mislead

the PTO." *Paragon*, 984 F.2d at 1189. "The concealment of sales information can be particularly

egregious because, unlike the applicant's failure to disclose, for example, a material patent

reference, the examiner has no way of securing this information on his own." *Id.*

The regulations and guidelines for patent prosecution similarly state that inventors must be

diligent in disclosing *any colorable* pre-filing sale, experimental use, or offer for sale because of the

acknowledged difficulty for an examiner to learn of potential invalidating sales, offers for sale or

uses from resources available at the PTO. An applicant has an absolute "duty of candor and good

faith" with respect to disclosing to the PTO "all information known to the individual to be material

5

to patentability as defined in this section." 37 C.F.R. § 1.56. Such potential sales or offers for sale are generally considered material because an examiner does not have access to evaluate them unless they are disclosed by the applicant – it is irrelevant whether the examiner ultimately finds them a bar to the patent. *Dippin' Dots,* 476 F.3d at 1345 ("Had those sales been disclosed to the PTO, the patent may or may not have issued. At the very least, the existence of such sales prior to the critical date is a matter that "a reasonable examiner would have considered . . . important in deciding whether to allow the application.") (internal citation omitted).

*It is no excuse for failure to disclose that the patent applicant does not believe it to be a commercial sale, believes it to be for experimental purposes, or even believes it to not be of the completed invention. Paragon,* 984 F.2d at 1193 (Federal Circuit case law "does not excuse a patent attorney from disclosing pre-critical date sales to the examiner, based solely upon the inventor's representations, in the face of objective evidence that the sales were commercial in nature."); *LaBounty Mfg. v. U.S. Int'l Trade Comm'n.,* 958 F.2d 1066 (Fed. Cir. 1992) ("Close cases should be resolved by disclosure, not unilaterally by the applicant."). Thus, Honeywell did not have to believe that the AIMS Proposal was an invalidating sale – it had to disclose *any* colorable offer for sale or sale of the invention or some portion of the invention. The PTO's Manual of Patent Examining Procedures ("MPEP") which is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates, states that "[i]t may be desirable to submit information about prior uses and sales *even if it appears that they may have been experimental, not involve the specifically claimed invention, or not encompass a completed invention,*" expressly explaining that an applicant must disclose any potential sales, uses, or offers for sale of any colorable embodiment of the claimed invention. MPEP § 2004.11. (Declaration of Stephen Korniczky (hereinafter "Dec."), Ex. GG; *see Critikon v. Beckton Dickinson Vascular Access,* 120 F.3d 1253, 1257 (Fed. Cir. 1997).

    b.    **Honeywell had an undisputable duty to disclose the AIMS Proposal and the sale of the prototype display units.**

Here, Honeywell *knew* of the <u>offer</u> for sale and intentionally withheld it from the PTO.

Honeywell also knew of the <u>acceptance</u> of the offer in ▮▮▮▮▮▮ and did not disclose that actual

"sale" either. Because Honeywell had a duty to disclose any colorable offers, even if it thought they

were not necessarily offers to sell or an offer of the precise and/or completed invention, Honeywell

had an undisputable duty to disclose the AIMS Proposal offering to sell the invention of the '371

patent, the Boeing contract acceptance from ▮▮▮▮▮▮, and the actual sale of the prototype

display units ("DUs") embodying at least claim 3 of the patent. *See Paragon*, 984 F.2d at 1189.

This Court's holding, and the Federal Circuit's affirmance, that Honeywell's provision of the AIMS

Proposal to Boeing invalidated the patent establishes the high level of materiality of this

information by more than clear and convincing evidence.  Honeywell *admitted* that the prototype

units offered and described in the AIMs Proposal were a reduction to practice of the invention,

making the sale of the prototypes to Boeing and the AIMS Proposal the most highly material

information conceivable and disclosure necessary.  D.I. 957 at 16.  Honeywell's bare denial that it

did not have a duty to disclose because the invention was "not commercialized" is frivolous and

entirely unsupportable because there is a duty to disclose whether or not the offer or sale is

eventually held to be an invalidating offer to sell where "a reasonable examiner would have

considered the information important in deciding whether to allow the  application." *See Dippin'*

*Dots*, 476 F.3d at 1346; *LaBounty*, 958 F.2d at 1075; *see also* Dec. Ex. GG, no. 11.

    c.    **Honeywell had the intent to deceive and committed inequitable conduct by failing to disclose the AIMS Proposal.**

Intent may be inferred where a patent applicant knew, or should have known, that withheld

information would be material to the PTO's consideration. *Critikon*, 120 F.3d at 1256. "No single

factor or combination of factors can be said to require an inference of intent to mislead; yet a

patentee facing a high level of materiality and clear proof that it knew or should have known of that

materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." *Id.* at 1257. Where there is "[p]roof of high materiality and that the applicant knew or should have known of that materiality, [it is] difficult [for the patentee] to show good faith to overcome an inference of intent to mislead." *Semiconductor Energy Lab. Co. v. Samsung Electronics Co.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000).

Here, it is difficult to imagine a situation where the omission is more material or egregious. However, there is also strong, even overwhelming, evidence of intent to deceive. The record shows that Honeywell and the inventors knew of the Boeing project and Honeywell's submission of the AIMS Proposal to Boeing. Inventors Daniel Syroid, Richard McCartney, and Karen Jachimowicz were all involved in the Boeing project and executed an oath filed with the PTO which explicitly set forth their duty of candor to the PTO and their requirement to disclose information where "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." Dec. Ex. HH. Honeywell admitted that two of the inventors employed by Honeywell, Syroid and McCartney, knew about the AIMS Proposal and did not disclose it. Dec., Ex. G, Nos. 44, 45 ███████████████████████████

███████████████████████████ Dec., Ex. L at 615:18–616:13.

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ Dec., Ex. L, 268-272, 303, 369-70, 652-53. Yet, none of the inventors, nor anyone at Honeywell, disclosed the Boeing project, including the AIMS Proposal, the sale of the DU's containing the claimed invention, or the executed Boeing/Honeywell contract - all of which were dated prior to the critical date.

A reasonable pre-suit investigation would, and should have, easily uncovered the explicit commercial offer and sales of the DUs that embodied claim 3. It is (and always has been)

undisputed that the '371 Patent evolved from the Boeing project, as was well known to the
inventors. There can be no doubt that Honeywell or its attorneys knew or should have known after
reasonable (or really any) inquiry that the AIMS Proposal was a commercial offer for sale of the
alleged invention of Claim 3. Indeed, inherent in this Court's grant, affirmed by the Federal Circuit,
of Samsung's Motion for Summary Judgment of Invalidity for On Sale Bar, is that the evidence so
overwhelmingly established that Claim 3 was on sale that no reasonable juror could have concluded
otherwise. As noted by the Court, the explicit language of the AIMS Proposal included a "Bidder's
Offer," which includes "firm and definite commitments regarding, other things, price and
delivery . . ." D.I. 957 at 8  Honeywell's 30(b)(6) designee confirmed Boeing could have accepted
the offer as it was made. Dec. Ex. II, 51:1-16; D.I. 957 at 10-11.

 Honeywell has failed to provide anything but conclusory denials of materiality. Dec., Ex. D,
No. 20. "A mere denial of intent to mislead (which would defeat every effort to establish
inequitable conduct) will not suffice in such circumstances." *Id.* Its arguments that this was not a
commercial sale fly in the face of overwhelming evidence and Volume IV of the AIMS Proposal it
tried to hide that states on its face that it was an offer for sale. Moreover, Honeywell should not be
allowed to allege an early reduction to practice date for the purposes of defending against other
prior art references, and then argue that the devices offered in the AIMS Proposal were not ready
for patenting. Honeywell would still have had the duty to disclose evidence of commercial sales,
even if it had an argument that the invention was not reduced to practice. *Paragon*, 984 F.2d at
1193 n. 10 ("[w]e clarify that *Reactive Metals* does not excuse a patent attorney from disclosing
pre-critical sales to the examiner, based solely upon the inventor's representations, in the face of
objective evidence that the sales were commercial in nature.").

 Given the high materiality and no plausible, credible or supportable explanation by
Honeywell negating an intent to deceive, the evidence is overwhelming that Honeywell committed

inequitable conduct by failing to disclose the invalidating offer to sell and sales of the prototypes, justifying this Court's finding the case exceptional and awarding attorney fees. *See Dippin' Dots*, 476 F.3d at 1346 ("Absent explanation, the evidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the PTO."); *see also,, Hughes v. Novi Am.*, 724 F.2d 122, 124 (1984) (awarding attorney fees finding inequitable conduct for failure to disclose offers for sale).

3. **Honeywell Committed Inequitable Conduct By Failing To Disclose The Noda Reference.**

Honeywell also committed inequitable conduct by its failure to disclose an article by H. Noda entitled "High Definition Liquid Crystal Projection TV" published in *Japan Display* in 1989 ("Noda"), that it used as the basis for the design of the lens array for the directional diffuser development leading to the '371 patent. Noda teaches reducing moiré interference by selecting the pitch of a lens array that is a non-integer multiple of the display pitch. Honeywell not only chose not to disclose Noda, but further argued to the PTO that the references that Honeywell did disclose had no discussion of eliminating moire effects with selection of the relative pitch of the lenses involved – the very subject of the omitted Noda reference. Dec., Ex. Q.

There is overwhelming evidence that Honeywell and the inventors knew of Noda and its high degree of materiality to the issue of moiré avoidance by pitch selection to which claims 1 and 2 of the '371 Patent are directed. Noda describes a technique for eliminating the moiré interference by the appropriate selection of display pitch, and concludes that the pitches (Pd/P1) should be related by half integers, such as 1.5, 2.5, 3.5, 4.5, 5.5 etc. Dec., Ex. V, at Fig. 5. Perhaps most obviously, the '371 patent specification on its face cites 2.5, 3.5, 4.5 and 5.5 as the relation between the pitches of the two lens arrays and the liquid crystal panel, showing that the inventors adopted the teaching of Noda in this regard, even to the precise ratios. There is also direct testimony and corroborating evidence that Honeywell and the inventors knew of this highly material reference and

chose not to disclose it, thereby committing inequitable conduct. Honeywell directed its consultant for a custom lens array for the development of the directional diffuser that led to the '371 Patent, Fresnel Technologies Inc. ("FTI"), ███████████████████████████████████

███████████████████████████████████████ To this end, inventor Syroid provided a copy of Noda to FTI, on Nov. 24, 1990. Dec., Exs. Q & V. *Prior to and during the prosecution of the '371 patent,* FTI relied on Noda in designing the lens array for Honeywell, as evidenced in FTI's July 2, 1991 "Final Report" to Honeywell which acknowledged that FTI

████████████████████████████████████████████

Dec. Ex. JJ, at HW012839 & Ex. KK at 89-92, 97.

Honeywell also knew of the high materiality of and need to disclose the Noda reference because Syroid and co-inventor, McCartney, directly cited to Noda in their article "Directional Diffuser Lens Array for Backlit LCDs", which was publicly presented at the October 12-14, 1992 Twelfth International Display Research Conference for the Society of Information Display ("SID Article"). Dec., Ex. U. The SID Article specifically cites to Noda: "By using a lens pitch that was higher than, and between integer multiples of, the display pitch we were able to counteract most of the moiré." Id. at 261. Further, the third co-inventor, Jachimowicz, referenced Noda in her chapter of the book "Electro-Optical Displays" which was published in 1992. Dec., Ex. LL at 244, 288 & Ex. T at 14:20–25. Thus, it is simply unsupportable that the inventors and Honeywell did not understand the high materiality of this reference used at their direction in the lenses made for the development of the directional diffuser that led to the '371 Patent, and cited in their publications.

Because Honeywell's direction to FTI ████████████████████, the SID article and presentation, and Jachimowicz's published chapter, all occurred either directly prior to the patent's filing on July 9, 1992, or *during prosecution* and prior to the issue date on January 18, 1994, the inventors and Honeywell had ample opportunity to realize this material omission (for example,

11

while presenting their paper that cited it at the SID conference) and correct it prior to the issuance of the patent. Yet, the inventors did not disclose the Noda Article to ███████████████ ███████ or the PTO. Dec., Ex. W at 88:25–89:13. Mr. Jepsen even testified that ███████ ████████████████████████████████████ *Id.* at 93:24–94:10.

Further, the inventors and Honeywell actually argued to the patent examiner that such a reference did not exist. Claims 1 and 2 were allowed in response to the affirmative argument by Honeywell's prosecuting attorney that the prior art did not teach the moiré avoiding, pitch selection feature of the claims, stating: "In addition, at no point in any of the references is there *any discussion of eliminating moiré effects with appropriate selection of the relative pitch of the two lens arrays as specifically described and claimed by the applicants.*" Dec., Ex. S at 3. Noda, as the inventors and Honeywell knew, did teach eliminating moiré effects with appropriate selection of relative pitch. They had just acknowledged this in their paper and book chapter. The Noda reference had to be disclosed because it fit squarely into the category of information that, per 37 C.F.R. § 1.56, is material because it is "inconsistent with a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the Office, or (ii) asserting an argument of patentability." 37 C.F.R. § 1.56. Here both conditions apply.[2]

The inventors also provide conflicting testimony rather than a credible explanation for failing to disclose Noda. Dec., Ex. X at 386:18–388:6–8; Ex. L at 173:25–174:15.[3] Intent to

_____

[2] Honeywell also misrepresented to the PTO that projection systems were irrelevant to direct view systems in order to overcome a rejection even though it had used the Noda Article, which discloses a projection LCD display, to develop the technology disclosed in the '371 patent. Honeywell cited the Noda Article, demonstrating that projection system art was in fact relevant to the design of a direct view system, first, in the 1992 SID article, (Dec., Ex. U.), and second, when Syroid sent Noda to FTI. Dec., Ex. V.

[3] McCartney and Syroid offered differing and contradictory reasons why they did not submit the ████████████████████████████████████████████████████████████████████

(footnote continued)

deceive the PTO can be inferred because the inventors knew of each of these items and have not

provided credible explanations for their non-disclosure. *Bruno Indep. Living Aids, Inc. v. Acorn*

*Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005). The strong evidence of inequitable

conduct, and indeed, a pattern of inequitable conduct, merits finding this case exceptional and

awarding attorney fees. *See Paragon*, 984 F.2d at 1193 ("The prosecution of the patent application

in this case, viewed in its entirely, demonstrates an overriding pattern of misconduct sufficient to

support the district court's finding of culpable intent.").

### B.   Honeywell's Acts Of Inequitable Conduct Constitute Fraud

In the context of patent prosecution, fraud is analogous to inequitable conduct but requires a

greater showing of intent. *C.R. Bard v. M3 Sys.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998). Because it

is simply unbelievable that any investigation, let alone a "reasonable" one, by Honeywell's attorneys

would not have discovered the offer of the AIMS Proposal which arose out of the development of

the alleged invention of the '371 patent, the evidence here indicates that Honeywell's actions

demonstrate the heightened intent for fraud. Similarly, as discussed above, it is unsupportable that

any investigation by Honeywell's attorneys prior to or during the filing of the patent would not have

found the Noda reference highly material, mandating its disclosure. The evidence supports that

failure to disclose Noda and the attorney argument that such a reference does not exist to obtain

allowance of the '371 patent claims constituted fraud on the PTO.



Dec., Ex. at 386:18–387:4; 387:13-16; 387:22-24; 388:1-6; *Id.* at 388:6-8. *Id.* at 391:7–16. *Id.* at 391:3-6 Dec., Ex. L at 173:25-174:15. Dec., Ex. X at 386:18-387:4. When asked about their failure to disclose the Noda Article, Syroid and McCartney gave inconsistent stories. Id. at 387-91.

13

**C.**     **Honeywell's Bad Faith, Vexatious, And Unjustified Litigation Warrants A Finding That This Case is Exceptional**

       1.     **Honeywell Filed Suit With Knowledge that the '371 Patent Was Invalid and Unenforceable**

Honeywell had knowledge of the facts invalidating the patent before it brought this action. An exhaustive description of this defense can be found in Samsung's Motion for Summary Judgment of Invalidity Based on (1) The On Sale Bar And/Or (2) Failure to Disclose the Inventors' Best Mode (hereinafter "On Sale Bar Motion"). D.I. 771. Honeywell cannot claim that it was unaware of a single fact in that motion because its employees, including the inventors, were involved in both the development of the diffuser that led to the '371 patent and the Boeing contract process. *Id.* at 6-9. Similarly, it is not believable that any investigation for either the prosecution of the patent or for filing this lawsuit would not have uncovered that Honeywell failed to disclose that the AIMS Proposal was an offer to sell the patented invention to Boeing. Given the extremely high materiality of this information, the PTO mandate to disclose any and all colorable offers or sales, and the utter lack of explanation by Honeywell for its failure to do so, Honeywell knew or should have known that the '371 patent was unenforceable.

       2.     **Honeywell Continued Litigation Despite Overwhelming Evidence Of Invalidity**

Honeywell's insistence on maintaining its case in the face of Samsung's strong on sale bar defense justifies declaring this case exceptional. *Hughes*, 724 F.2d 122. Samsung and its co-defendants informed Honeywell that they intended to rely on the AIMS Proposal to support an on sale bar defense as early as September 6, 2007. Dec., Ex. A at 43, Ex. B at 13-15, Ex. C at 13-16. Honeywell evaded discovery on the issue. In response to Samsung's request that it: "[s]tate all facts supporting your contention that the AIMS proposal was not an invalidating offer for sale pursuant to 35 U.S.C. § 102(b) . . . ", Honeywell stated that: 1) the '371 patent is presumed valid; 2) the AIMS proposal does not constitute an offer for sale; and 3) the AIMS proposal was not an offer to sell the

14

claimed invention. This conclusory response demonstrated Honeywell had no legitimate basis to dispute the defense. Dec. Ex. E.

3. **Honeywell Used This Lawsuit To Leverage An Invalid And Unenforceable Patent to Obtain** ███████████████ **From Defendants**

Although Honeywell failed to produce Volume IV, Honeywell did produce Volume III, the technical volume of the AIMS Proposal on August 16, 2006, more than a year and a half after it brought suit against dozens of companies. Dec., Ex. M. By that time, Honeywell had already collected more than $██ million in lump sum settlement payments from ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Dec., Ex. N. Thus, for the first two years of this litigation, Honeywell used a patent it knew to be invalid and unenforceable to collect more than $██ million from eleven companies while withholding Volume IV, the critical evidence devastating to its case. Further, when Honeywell finally produced the AIMS Proposal, it did so under the highest level of confidentiality, arguing it was an active contract – thereby admitting that it was an offer for sale that had been accepted. Dec., Ex. O. In total, Honeywell has collected over $██ million in license payments from the LCD industry. Dec., Ex. N. It attempted to use those payments to support the validity of the '371 patent, ignoring the fact that most, if not all, of the payments were made by companies who did not know that this patent was fraudulently obtained and invalid based on the on sale bar. Dec. Ex. P.

4. **Honeywell's Infringement Claim Was Baseless And Unsupported**

Where, as here, the question of infringement is "not close," and the patentee continues to litigate, a finding of exceptional case and an award of attorney fees is justified. *Interspiro USA, Inc. v. Figgie, Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994) (affirming district court's finding of an exceptional case premised on court's determination that the question of infringement "was not close"). Here, Honeywell's claim construction was unsupportable and this Court rightly rejected it –

three times. Despite having no basis for its infringement claims, Honeywell continued litigating.

Specifically, Honeywell argued that the term "slight misalignment" included any rotation from zero degrees to the maximum of forty-five degrees. This Court first rejected it on December 9, 2008, in this Court's initial claim construction (D.I. 500, 501), again on April 27, 2009 in the Special Master's Supplemental Claim Construction (D.I. 656), and again on August 12, 2009 in this Court's Final Claim Construction (D.I. 712, 713), construing the term "slight misalignment" to mean "a slight misalignment resulting from a rotation of the lenslets of the lens array, relative to an axis of the LCD panel causing moiré, by just enough, and not more, number of degrees to eliminate moiré effects due to the structure of the display." D.I. 712 and 713. At no time did this Court appear to seriously consider that "slight misalignment" could mean the entire rotation spectrum at issue, i.e., "any" misalignment.

Further, Honeywell attempted to avoid, and ultimately to exclude, the evidence that Samsung did not infringe, in spite of this Court's identification of the three remaining relevant factual issues for proof of infringement. D.I. 712 at 11-12. Honeywell completely ignored these three factors and chose not to perform any tests despite the testimony of Honeywell's own expert, Dr. Ian Lewin, that the only way to reliably address these issues was to individually and physically examine the accused products to determine if moiré exists and, if so, determine the angle where it disappears. Dec., Ex. Y at 58:11-60:7, 152:8-153:6, 284:6-13, 311:7-14 & D.I. 767, at 7-9. Honeywell concedes that it failed to conduct any tests whatsoever to establish that the lens arrays in the accused modules met the "slight misalignment" claim limitation. Dec., Ex. Y, 266:5-269:17. Although it was Honeywell's burden to prove infringement, Honeywell's choice to forego the necessary testing ultimately forced Samsung to reverse engineer its own displays to insure its noninfringement defense. Having failed to conduct its own tests, Honeywell then tried to exclude Samsung's evidence of the reverse engineering by ███████████████████████████

16

███████████████████████████████████████████

██████████████████████████████████ Samsung's motion for summary judgment

of non-infringement demonstrated that Honeywell could not have met its burden of proof that any

accused Samsung modules met the "slight misalignment" limitation. D.I. 776.

### D.    Litigation Misconduct And Unprofessional Behavior Warrant A Finding That This Case Is Exceptional

"Litigation misconduct and unprofessional behavior are relevant to the award of attorney

fees, and may suffice to make a case exceptional under § 285." *Sensonics, Inc. v. Aerosonic Corp.*,

81 F.3d 1566, 1574 (Fed. Cir. 1996).  Honeywell failed to produce and mischaracterized Volume

IV, key evidence that this Court eventually found provided "overwhelming" evidence of the patent's

invalidity.  Honeywell further attempted to obfuscate, hide and avoid the clear facts that the patent

was invalid for on sale bar and/or unenforceable for inequitable conduct.

### 1.    Honeywell Failed to Produce and Misled the Parties and Court Regarding Key Evidence of an Offer For Sale to Boeing

This Court heavily relied on Volume IV of the AIMS Proposal as evidence to find that an

invalidating, commercial sale occurred. D.I. 957.  The AIMS Proposal consists of four volumes.

Honeywell produced Volume III containing technical descriptions in August 2006.  The third page

of Volume III contained a description of Volume IV as "Price Offering & Contractual

Terms & Conditions" on its inside cover; yet Honeywell denied its relevance, its existence, and in

fact *never* produced Volume IV. Dec., Ex. O at HW016269.  Volume IV includes an entire section

entitled "Bidder's Offer," with specific contractual terms covering all aspects of Honeywell and

Boeing's performance, defines the proposal as a "firm fixed price proposal," and indicates that the

"prices are valid for 120 days from 15 June 1990."  Honeywell should have known that Volume IV,

"Price Offering & Contractual Terms & Conditions," was highly relevant.

The parties attempted to obtain Honeywell's cooperation in finding and obtaining

17

Volume IV. Samsung sought documents concerning actual or potential offers of the invention or components thereof that would have unquestioningly included Volume IV.[4] The parties explicitly requested at least Volumes I, II, and IV of the AIMS Proposal in depositions and in correspondence. Dec., Exs. MM, NN. Defendants also issued subpoenas on, and deposed, Boeing. Dec., Ex. OO.

Prior to deposing Honeywell's corporate representative on the search for and collection of documents, Kurt Luther, the defendants requested that Honeywell search for the missing volumes of the AIMS Proposal. Dec., Ex. NN. ███████████████████████████

████████████████████████████████████ Dec., Ex. PP, 141:20-

143:24. ██████████████████████ *Id.* In an ill-disguised attempt to dissuade

defendants of the relevance of Volume IV, ████████████████████████████

████████████████████████████████████████████████

████████████████████████ *Id.* at 143:15-24.

Honeywell and its attorneys did not search for Volume IV or the rest of the AIMS Proposal. Its attorneys did not return to Honeywell and specifically ask anyone for Volume IV or any of the remaining AIMS Proposal, but merely re-reviewed the previously collected documents and characterized it as a "new search." Dec., Ex. QQ. Unbelievably, Honeywell further represented that there was no record or evidence of the other volumes' existence. Specifically, Honeywell refused to admit or deny Requests for Admission concerning the "Price Offering Volume," representing that "there is no record or evidence that such materials exist or what was specifically contained therein." Dec., Ex. G, Nos. 33-37. Given Volume III's reference to Volume IV, Honeywell's representations that there was no record of it existing is a deliberate attempt to mislead

---

[4] Samsung propounded a comprehensive series of document requests on April 10, 2006, that included, *inter alia,* express requests for "all documents relating to sales of products or services, *contracts to sell products or offer services, offers of products or services for sale, demonstrations of products or services.*" Dec., Ex. SS, Nos. 24, 25, 26.

the defendants.[5]

The parties ultimately obtained Volume IV of the AIMS proposal from Boeing. However, defendants did not receive this document until the eve of the close of fact discovery and just prior to the filing date for expert reports. Dec., Exs. OO, RR. Honeywell's blatant attempts to deny the relevance and existence of Volume IV demonstrate bad faith litigation and suggest that Honeywell intentionally withheld or spoliated evidence, warranting an award of fees.

### 2.    Honeywell Falsely Denied Or Refused To Admit RFAs

Samsung propounded requests for admission on September 6, 2007, regarding facts concerning the on sale bar and failure to disclose the potential sale to the PTO. Dec., Ex. F. Honeywell responded on October 22, 2007 and either denied facts that are clearly true or avoided admitting the truth by refusing to admit or deny three quarters of the requests. Dec., Ex. G at 16–20 (Request Nos. 32–36, 38–40, 43). Honeywell falsely denied at least the following requests:

- Honeywell falsely denied that "at least one of the lens arrays in the 'directional diffuser' ██████████████████████████████████████ *Id.* at 19 (Request No. 40).

- Honeywell falsely denied that the "directional diffuser" ████████████████████ ████████████████████| (Request No. 38).

- Honeywell falsely denied that the "directional diffuser" ██████████████████████ ██████████████████ *Id.* at 18 (Request No. 39).

- Honeywell denied that the LCD display described in the AIMS Proposal was covered by claim 3 of the '371 patent. *Id.* at 19 (Request No. 43). However, Honeywell admitted and separately argued that this LCD display was a reduction to practice of claim 3 of the '371 patent. *See* D.I. 957, Memorandum Opinion, *citing* Honeywell Response to Interrogatory No. 6 & Supplemental Response to Samsung's Interrogatory No. 6.

Honeywell further refused to admit the following facts:

- Honeywell inexplicably refused to admit that a volume that it had entitled "Price Offering & Contractual Terms & Conditions" in fact contained pricing information and

---

[5] Honeywell's claim that it does not have Volume IV is questionable in light of Honeywell's position that the terms became part of its still active contract with Boeing. Dec., Ex. O.

contractual terms and conditions. *Id.* at 17-18 (Request Nos. 35-36).

- Honeywell refused to admit that the AIMS Proposal was ever presented to Boeing. *Id.* at 16-17 (Request Nos. 32-34).

Honeywell never admitted that the AIMS Proposal was presented to Boeing despite the fact that Boeing produced it from its files, demonstrating that it received the document from Honeywell. Dec., Ex. S. Even Honeywell's own witnesses admitted that the AIMS Proposal was given to Boeing. Dec., Ex. I at 127:14–19. Despite requests that it update its responses, Honeywell never changed its responses to Samsung's Requests for Admissions. Dec., Ex. TT. Although Honeywell's false responses and non-responses further demonstrate Honeywell's bad faith in litigation, Samsung requests, in the alternative, that the Court at least award fees and costs incurred pursuant to Fed. R. Civ. P. 37(c)(2) because Honeywell unjustifiably denied RFA Nos. 32, 34, 35, 36 and 43, forcing Samsung to prove those facts through its motion for summary judgment. Dec., Ex. G at 16-20.

### 3. Honeywell's Citation To Contradicted Testimony To Obfuscate The Overwhelming Facts Supporting On Sale Bar Shows Bad Faith

Honeywell tried to negate the clear evidence that an offer for sale had occurred by using a declaration from Darcelle Ioli, its 30(b)(6) witness, ██████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Dec., Ex. J ¶ 11. Ioli had previously testified, however, over numerous blatant and improper speaking objections from Honeywell's counsel, ████████████████████████████████████████████████████████████

██████████████████████ Dec., Ex. K at 33:20–34:12. Likewise, after McCartney testified

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████ Dec., Ex. L at 624:11–25; 653:13-22. Honeywell then used McCartney's uncorroborated and contradicted testimony to support its refusal to admit

that the AIMS Proposal was in fact an offer to sell the claimed invention to Boeing.

## II.   HONEYWELL'S BASELESS APPEAL IS EXCEPTIONAL

Section 285 authorizes awards of attorney fees for appeals when the appeal itself is

exceptional. *See e.g., Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 692 (Fed. Cir. 1984);

Donald S. Chisum, Chisum on Patents § 20.03[4][c][iv]. Section 285 thus provides a mechanism

for sanctioning frivolous appeals in patent cases where bad faith is also shown. *See State Indus. v.

Mor-Flo Indus.*, 948 F.2d 1573, 1577-78 n. 1 (Fed. Cir. 1991).

The Federal Circuit has recognized two distinct (though in practice often related) senses in

which an appeal may be frivolous. First, where the appeal is "taken in a case where the judgment

by the tribunal below was so plainly correct and the legal authority contrary to the appellant's

position so clear that there really is no appealable issue." *Id.* "Second, even in cases in which

genuinely appealable issues may exist, so that the taking of an appeal is not frivolous, the

appellant's misconduct in arguing the appeal may be such as to justify holding the appeal to be

'frivolous as argued.'" *Id.* Here, Honeywell's appeal was frivolous as appealed and as argued. The

judgment by this Court was so plainly correct and legal authority contrary to Honeywell's position

was so unequivocal, that there was no issue for appeal. That is, the two elements required to prove

that a patent is invalid for on sale bar are: 1) that it is the subject of a commercial offer for sale, and

2) that the invention is ready for patenting. *Pfaff v. Wells*, 525 U.S. 55, 67 (1998). Because

Honeywell admitted that the invention was ready for patenting when it admitted that it was reduced

to practice, the only remaining element was whether it was the subject of a commercial sale. *See

Scaltech v. Retec/Tetra*, 269 F.3d 1321, 1331 (Fed. Cir. 2001) (whether the invention was ready for

patenting could be proven by: 1) reduction to practice, or 2) a showing that the inventor's

drawings/descriptions enabled one skilled in the art to practice the invention.). Volume IV of the

AIMS Proposal, itself titled "Price Offering & Contractual Terms & Conditions" (along with

overwhelming admissions, testimony and documents), left no room for doubt that it was a complete offer that Boeing could have accepted and that, indeed, Honeywell hoped it would accept – a commercial offer for sale. As discussed, Honeywell's admission of reduction to practice meant that Samsung only had to show the AIMS Proposal was a commercial offer for sale of the invention.

This Court explicitly acknowledged that Honeywell relieved it considering a majority of the analysis by Honeywell's admissions that the invention was reduced to practice. D.I. 957 at 16, n. 4. For the remaining analysis, this Court concluded that the language in Volume IV of the AIMS Proposal and admissions by Honeywell that the Proposal could have been accepted were sufficient as a matter of law to constitute a definite commercial offer for sale. This Court further concluded that the evidence showed that the AIMS Proposal offered the patented two lens array directional diffuser, and that Honeywell's argument ignored the evidence that each of the three prototypes demonstrated and referenced in the Proposal concerned the double lens array. D.I. 957 at 14-16. This Court found the evidence so compelling, it stated that Honeywell's argument to the contrary was "untenable" in light of evidence. *Id.* at 14.

On appeal, Honeywell primarily argued three issues: that this Court erred in concluding that the subject of the alleged offer embodied claim 3, that there was a commercial offer, and that this Court's claim construction of "slight misalignment" was in error. Dec., Ex. UU at 37-64. Honeywell attempted to create an appealable issue of material fact by impermissibly citing to evidence and testimony not in the record and arguments, such as experimental use, which are defenses to on sale bar, but not argued below. Dec., Ex. VV at 29-30, 34-36, 45-51. Even if considered, however, these arguments would have been insufficient to raise a material issue of fact as they either lacked evidentiary support, e.g. self-serving contradicted testimony or attorney arguments, or were contrary to Honeywell's admissions in the case. Honeywell misrepresented the record on the offering of the directional diffuser, attempting to argue against its own admissions

that, *inter alia,* there was no evidence that all three DU's were built or embodied claim 3. *Id.* at 40-43. Similarly, Honeywell's claim construction argument was not at issue in this Court's invalidity judgment – Honeywell never conditioned its admission of reduction to practice on claim construction. Dec., Ex. A. Honeywell's argument was inapposite for two reasons: 1) it is well-established that actual reduction to practice means that an actual embodiment that included all of the elements was ready for patenting, *RCA Corp. v. Data General,* 887 F.2d 1056, 1060 (Fed. Cir. 1989), and 2) there was uncontroverted evidence that Honeywell was offering the reduced to practice embodiments of the invention. Samsung Ap. at 37-40, 50-53. Further, the Federal Circuit has held that the *offer* itself does not have to recite all the elements of the invention – it just needs to identify what was offered with sufficient information to identify that what was offered was the invention. *RCA,* 887 F.2d at 1060.

The complete lack of merit of Honeywell's arguments was exemplified by Judge Prost's direct question at oral argument asking Honeywell to point the Court to any genuine issue of material fact. Honeywell could not. Dec., Ex. UU. Filing the appeal and failing to explain how the trial court erred or to present clear or cogent arguments for reversal, constitutes sanctionable behavior for which attorney fees may be awarded. *See Refac Int'l Ltd. V. Hitachi, Ltd.,* 921 F.2d 1247, 1256 (Fed. Cir. 1990). Similarly, Honeywell's unsupportable legal arguments, record distortions in adding arguments and facts not presented below, and attempts to substitute attorney argument to create issues of fact, constitute sanctionable behavior and are indicative of bad faith in appealing the judgment of the district court. *See Mathis v. Spears,* 857 F.2d 749, 761-62 (Fed. Cir. 1988) (awarding attorney fees for appeal based on "record distortions, manufactured facts, and implausible and unsupportable legal arguments"). This misconduct coupled with the frivolousness of the appeal both as filed and as argued, warrant finding the appeal exceptional and awarding attorney fees to Samsung. Even if this Court does not find the appeal frivolous, it may

still award attorney fees for the continued litigation misconduct on appeal pursuant to its inherent

authority. *See State Indus.*, 948 F.2d at 1579 & n. 4; *see also Romala Corp. v. United States*,

927 F.2d 1219, 1222 (Fed. Cir. 1991).

## III.   HONEYWELL'S ACTIONS CONSTITUTE FRAUD ON THIS COURT

As discussed in detail above, it is simply not believable that any investigation by Honeywell

and its attorneys would not lead them to conclude the patent was invalid for the offer to sale to

Boeing. Further, it is not believable that a pre-suit filing investigation by Honeywell's attorneys

would not have found the AIMS Proposal and Contract, signed prior to the critical date for the

patent, or revealed that Honeywell intentionally failed to disclose this information to the patent

office. As it is undisputed that the '371 patent arose out of this research, *any* investigation would

have yielded the existence of this offer, which there was simply no excuse not to have disclosed.

Thus, it is inexcusable that Honeywell's attorneys would not have known of the unenforceability of

the '371 patent. Yet, Honeywell's attorneys not only filed this action, they filed it in multiple

lawsuits, against more than 60 defendants, and used this Court and the litigation filed on an

unenforceable patent to obtain nearly ▮▮ million dollars in upfront license fees. These actions

exemplify bad faith, abuse of process and fraud, and justify an award of all fees (attorney and

expert) and all costs to Samsung in the amount of $▮▮▮▮ in attorneys fees, $▮▮▮ in expert

fees and costs, for a total of $▮▮▮▮.

## IV.   THE COURT IS JUSTIFIED IN EXERCISING ITS DISCRETION TO AWARD FEES AND COSTS UNDER ITS INHERENT AUTHORITY

A district court may invoke its inherent power to impose sanctions in the form of expert fees

or costs beyond what is provided for by statute. *See Takeda Chem. Indus. v. Mylan Labs.*,

549 F.3d 1381, 1391 (Fed. Cir. 2008). Even where the conduct does not amount to actual fraud,

courts may award sanctions in cases involving bad faith that cannot otherwise be reached by rules

or statute. *Id.* Thus, even if this Court does not find Honeywell committed fraud on either the PTO

or before this tribunal, it may use its inherent power to award the fees and costs not awardable pursuant to 35 U.S.C. § 285, or other statutory authority. *Chambers v. NASCO*, 501 U.S. 32, 48-50 (1991) ("There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. . . . But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules."). Similarly, even if it does not find this case exceptional, this Court may award the fees and costs based on Honeywell's bad faith litigation. *See e.g., Aptix Corp. v. Quickturn Design Sys.*, 269 F.3d 1369, 1378 (Fed. Cir. 2001) (affirming district court award of attorney fees and costs under inherent authority as sanction for bad faith conduct); *Cambridge Prods. v. Penn Nutrients*, 962 F.2d 1048, 1051-52 (Fed. Cir. 1992) (awarding fees for appeal under inherent authority where no finding of exceptional case).

Because of Honeywell's bad faith and vexatious litigation, the use of the Court's inherent authority to award the full fees and costs of Samsung is warranted. Honeywell has collected nearly $███ million in license payments from the LCD industry in asserting a patent it knew or should have known was invalid and unenforceable, continued to litigate despite overwhelming evidence of these facts, made false denials in its responses to admissions, and tried to hide the key evidence supporting the patent's invalidity and unenforceability. Dec., Ex. N. Defendants Samsung and Fuji were the only manufacturing defendants that persisted in litigating the case to its proper conclusion. Accordingly, denying Samsung its attorney fees would be unjust.

## V.    CONCLUSION

This matter meets the exceptional case standard pursuant to 35 U.S.C. § 285 and for that reason and the other reasons set forth herein, the Court should award Samsung attorney fees and costs in the amount of $███████.

                                        POTTER ANDERSON & CORROON LLP


OF COUNSEL:                             By:  _/s/ David E. Moore_____
                                             Richard L. Horwitz (#2246)
Stephen S. Korniczky                         David E. Moore (#3983)
SHEPPARD MULLIN RICHTER                      Hercules Plaza, 6th Floor
  & HAMPTON LLP                              1313 N. Market Street
12275 El Camino Real, Suite 200              Wilmington, DE  19801
San Diego, CA 92130                          Tel:  (302) 984-6000
Tel:  (858) 720-8900                         rhorwitz@potteranderson.com
                                             dmoore@potteranderson.com

Dated:  February 18, 2011
Public Version Dated: February 25, 2011   *Attorneys for Defendant Samsung SDI Co., Ltd.*
1002860 / 29140                            *and Samsung SDI America, Inc.*


                                           26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 25, 2011, the within document

was served via electronic mail and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification of such filing(s) to the following and the document is

available for viewing and downloading from CM/ECF:

Thomas C. Grimm
Benjamin Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19899-1347
tgrimm@mnat.com
bschladweiler@mnat.com
*Attorneys for Honeywell International Inc.,*
*and Honeywell Intellectual Properties Inc.*

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19899
provner@potteranderson.com
*Attorneys for FujiFilm Corporation and*
*FujiFilm USA, Inc.*

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Peter N. Surdo
Lauren E. Wood
Robins, Kaplan, Miller Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402
mrlueck@rkmc.com
mlwoods@rkmc.com
seoberts@rkmc.com
pnsurdo@rkmc.com
lewood@rkmc.com
*Attorneys for Honeywell International, Inc.*
*and Honeywell Intellectual Properties, Inc.*

Lawrence Rosenthal
Ian G. DiBernardo
Matthew Siegal
Angie M. Hankins
Strook, Stroock & Lavan LLP
180 Maiden Lane
New York, NY  10038
(212) 806-5400
lrosenthal@stroock.com
idibernardo@stroock.com
msiegal@stroock.com
ahankins@stroock.com
*Attorneys for FujiFilm Corporation and*
*FujiFilm USA, Inc.*

/s/ David E. Moore
David E. Moore

996347 / 29140