IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL INC. and
HONEYWELL INTELLECTUAL
PROPERTIES INC.,

    Plaintiffs,

v.

NOKIA CORPORATION, *et al.*,

    Defendants.

C.A. No. 04-1337-LPS
(Consolidated)

**FILED UNDER SEAL**

Martin R. Lueck, Esquire, Matthew L. Woods, Esquire, Stacie E. Oberts, Esquire, Peter N. Surdo, Esquire, and Lauren E. Wood, Esquire of ROBINS, KAPLAN, MILLER & CIRESI L.L.P., Minneapolis, MN.
Anthony A. Froio, Esquire and Rebecca MacDowell, Esquire, of ROBINS, KAPLAN, MILLER & CIRESI L.L.P., Boston, MA.
Thomas C. Grimm, Esquire and Benjamin J. Schladweiler, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

    Attorneys for Plaintiffs Honeywell International, Inc. and Honeywell Intellectual Properties, Inc.

Lawrence Rosenthal, Esquire, Ian G. DiBernardo, Esquire, Matthew W. Siegal, Esquire, and Angie M. Hankins, Esquire of STROOCK & STROOCK & LAVAN LLP, New York, NY.
Philip A. Rovner, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE.

    Attorneys for Defendants FUJIFILM Corp. and FUJIFILM U.S.A., Inc.

Stephen S. Korniczky, Esquire of SHEPPARD MULLIN RICHTER & HAMPTON LLP, San Diego, CA.
Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE.

    Attorneys for Defendants Samsung SDI Co., LTD and Samsung SDI America, Inc.

**MEMORANDUM OPINION**

March 30, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are two motions: (1) the Restated Motion for Attorney Fees and Expenses (Docket Item ("D.I.") 1045 and, hereinafter, "Fuji's Award Motion") filed by defendants FUJIFILM Corp. and FUJIFILM U.S.A. Inc. (together, "Fuji"); and (2) the Restated Motion for Attorney Fees and Expenses (D.I. 1054 and, hereinafter, "Samsung's Award Motion"), filed by defendants Samsung SDI Co., LTD and Samsung SDI America, Inc. (together, "Samsung," and, with Fuji, the "Defendants").[1] For the reasons discussed below, the Court will deny Defendants' motions.

I. **BACKGROUND**

For purposes of these motions, the Court will not engage in a lengthy recital of the facts of the case. These parties have been litigating the patent-in-suit in this Court for approximately seven years, and their disputes, as well as those of other litigants, have generated numerous prior Court Opinions and Orders, as well as Special Master Reports and Recommendations. (*See, e.g.,* D.I. 119; D.I. 500; D.I. 515; D.I. 656; D.I. 712; D.I. 957; D.I. 958) For present purposes, a brief overview of the relevant background will suffice.

Beginning in October 2004, Honeywell International Inc. and Honeywell Intellectual Properties Inc. (together, "Honeywell" or "Plaintiffs") filed two patent infringement suits (C.A. Nos. 04-1337 and 04-1338) and, later, a third such action (C.A. No. 05-874). The cases, which were consolidated, allege infringement of United States Patent No. 5,280,371 ("the '371

---

[1]Fuji filed a joinder in which it incorporated by reference the arguments, papers and exhibits contained in the briefs of its co-defendant, Samsung (*see* D.I. 1062; D.I. 1101); Samsung likewise joined in Fuji's arguments (*see* D.I. 1055 at 1 n.1).

1

patent"),[2] which pertains to a liquid crystal display ("LCD") said to furnish enhanced brightness and clarity when compared with prior art LCDs, while simultaneously reducing undesirable "moiré" interference effects on the screen. (*See* D.I. 119 at 2; D.I. 500 at 1; D.I. 515 at 1)

The patent infringement cases were brought against over sixty defendants comprised of two groups: manufacturers of allegedly infringing LCD modules ("Manufacturer Defendants"), of which Fuji and Samsung are members, and manufacturers of end-products incorporating alleging infringing LCD modules ("Customer Defendants"). (*See* D.I. 515; D.I. 957)

Prior to this case being reassigned to the undersigned judge, the Honorable Joseph J. Farnan, Jr. granted a joint motion by Defendants for summary judgment of invalidity based upon the on-sale bar.[3] (D.I. 957; *Honeywell Int'l, Inc. v. Nikon Corp.*, 672 F. Supp. 2d 638 (D. Del. 2009) (hereinafter, the "Invalidity Opinion"))

As recounted by the Invalidity Opinion, Fuji and Samsung successfully asserted that Honeywell offered to sell an embodiment of the invention claimed in claim 3 of the '371 patent[4]

---

[2]The three cases were consolidated with a fourth matter, C.A. No. 04-1536. In that case, Optrex America, Inc. ("Optrex") sued Honeywell for a declaratory judgment that it did not infringe Honeywell's rights under the '371 patent and that the patent was invalid. (*See* D.I. 119; D.I. 357) Optrex and Plaintiffs later entered into a stipulation of dismissal, which was approved by the Court on November 26, 2008. (D.I. 492)

[3]The opinion did not address Defendants' best mode defense. (*See* D.I. 957 at 1 n.1)

[4]Claim 3 of the '371 patent provides:

> 3. A display apparatus comprising:
>
> a light source;
>
> a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and

2

to The Boeing Company ("Boeing"), more than one year before the July 9, 1992 filing date of the patent, in violation of the on-sale bar of 35 U.S.C. § 102(b). (*See* D.I. 957) Defendants argued that "in January 1990, Honeywell set out to create display units which incorporated the crossed lens array embodiment of a directional diffuser so that these units could be demonstrated to Boeing." (*Id.* at 4) Later, in June 1990, Honeywell submitted to Boeing the Aircraft Information Management System Proposal (the "AIMS Proposal") – a four-volume sales proposal, including, *inter alia*, a volume devoted to "Technical Proposal & Plans" (Volume III), as well as another volume entitled "Price Offering & Contractual Terms & Conditions" (Volume IV). (*See id.*)

In his Invalidity Opinion, Judge Farnan concluded the evidence established that Honeywell "submitted the AIMS Proposal in response to Boeing's June 1990 Request For Proposal." (*Id.* at 8) The Court determined that "Honeywell intended the AIMS Proposal to constitute a formal offer," as shown in the terms of the proposal regarding price and delivery as well as reflected in the Statement Of Management Commitment attached to the AIMS Proposal, wherein "Honeywell confirm[ed] its 'firm and total commitment to a successful, on-schedule AIMS Program.'" (*Id.* at 9) Judge Farnan noted that "acceptance is not required for a proposal to be considered a commercial offer of sale." (*Id.* at 10) He emphasized, instead, that "the focus

---

> first and second lens arrays, each having a plurality of individual lenslets, disposed between said light source and said liquid crystal panel for providing a predetermined variation with viewing angle of light transmission from said light source through said lens arrays and said liquid crystal panel, wherein at least one of said first and second lens arrays is rotated about an axis perpendicular to said liquid crystal panel in order to provide a slight misalignment between said lenslets and said liquid crystal panel.

(D.I. 1084, Decl. of Matthew L. Woods ("Woods Decl."), Ex. 1, '371 patent, col. 6, lines 27-42)

3

of the inquiry is whether the offer could have been made into a binding contract by formal acceptance," and "the fact that further negotiations might arise, or even be expected, does not preclude the AIMS Proposal from being an invalidating offer." (*Id.*) Based upon the actual language of the AIMS Proposal, the Court concluded that there was a "definite offer [for sale], capable of acceptance, in the contract sense, and such offers have always been sufficient to invoke the on-sale bar." (*Id.* at 12-13)

While Honeywell "concede[d] that the AIMS Proposal disclose[d] a directional diffuser as required generally by claim 3 of the '371 patent," Plaintiff argued, among other things, that the directional diffuser "d[id] not meet the precise limitations of claim 3, because it only disclose[d] a directional diffuser having one lens – and not the two lens arrays limitation of claim 3." (*Id.* at 14) The Court found, however, that Honeywell prepared three prototypes for Boeing to consider – all three of which "were demonstrated to Boeing and fabricated with two lens arrays." (*Id.*) The Court pointed out that "[t]he technical individuals from Honeywell involved in the Boeing project all knew that what was under consideration to meet Boeing's needs was the double lens array." (*Id.*) The Court found clear and convincing evidence that "the patented invention was the subject of a commercial offer of sale by Honeywell to Boeing." (*Id.* at 16) Judge Farnan further found that "Honeywell knew that the double lens array was the assembly that provided the best results, that these double lens embodiments were offered to Boeing and tested by Boeing in the form of DU#8, #9 and #10, and that these DUs had a 'patent in process' which eventually became claim 3 of the '371 Patent." (*Id.* at 15-16) Judge Farnan added that Honeywell's own admissions and supporting documentation regarding reduction to practice by May 1990 – both prior to the critical date and prior to the submission of the AIMS Proposal to Boeing –

demonstrate that the invention was ready for patenting. (*See id.* at 16)

Honeywell filed an appeal. Subsequently, the Federal Circuit affirmed Judge Farnan's Invalidity Opinion, per curiam and without opinion. (*See* D.I. 1018)

Defendants filed their respective Award Motions for attorneys fees, costs, and expenses incurred in connection with the defense of Honeywell's infringement claim, pursuant to Rules 37 and 54 (d)(2) of the Federal Rules of Civil Procedure, District of Delaware Local Rule 54.1, 28 U.S.C. § 1927, 35 U.S.C. § 285, and this Court's inherent authority.[5] Specifically, as a result of the Invalidity Opinion, Fuji seeks approximately $▒▒▒▒▒ in fees, and Samsung seeks over $▒▒▒▒▒. (*See* D.I. 1055 at 25; D.I. 1046 at 24; D.I. 1084 at ¶ 102; *see also* D.I. 1096; D.I. 1099) Defendants assert this matter meets the "exceptional" case standard pursuant to 35 U.S.C. § 285. (*See generally* D.I. 1046; D.I. 1055; D.I. 1096; D.I. 1099)

The Court heard argument on December 20, 2011 (*see* Transcript of December 20, 2011 hearing (D.I. 1125) (hereinafter "Tr.")).[6]

## II.  PARTIES' CONTENTIONS

Defendants contend that:

> [While] Honeywell [allegedly] did not know (and never found out over six years of litigation and appeal) that it had offered to sell the patented technology to [Boeing], more than a year before the application for [the '371 patent] was filed . . . the uncontested

---

[5]Defendants urge that "[a] district court may invoke its inherent power to impose sanctions in the form of expert fees or costs beyond what is provided for by statute," particularly "in cases involving bad faith that cannot otherwise be reached by rules or statute[s]." (D.I. 1055 at 24 (citing *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008)); *see also id.* at 25)

[6]The Court also received and reviewed several post-hearing submissions. (*See* D.I. 1118, 1119, 1120, 1123, 1126)

> facts, combined with Judge Farnan's findings (affirmed on appeal, *per curiam* and without opinion), clearly establish that, [Defendants are] entitled to recover [their] attorney fees and expenses [they were] forced to incur in defending . . . against Honeywell's more than six years of vexatious, bad faith litigation over an invalid patent, obtained through inequitable conduct, which . . . [economically benefitted it] along the way.

(D.I. 1096 at 1) Thus, Defendants present three bases for recovering their attorney fees: (1) Honeywell's frivolous and vexatious assertion of its infringement suit with knowledge of its invalidating offer for sale; (2) Honeywell's bad faith litigation tactics; and (3) inequitable conduct before the U.S. Patent & Trademark Office ("PTO") in obtaining the patent-in-suit. (*See* D.I. 1046 at 1-2; D.I. 1055 at 1-3; D.I. 1096 at 1, 12-15; D.I. 1099 at 1)

First, Defendants assert this Court should require Honeywell to pay Defendants' attorney fees incurred as a result of Honeywell "unreasonably and vexatiously" lengthening the litigation. *See* 28 U.S.C. § 1927; D.I. 1099 at 14. In Defendants' view, Honeywell "pressed the suit, even after the on sale bar was brought to its attention." (D.I. 1096 at 1; *see id.* at 14)

Defendants also argue that Honeywell's failure to disclose the Boeing project and AIMS Proposal to the PTO, as well as its failures to obtain Volume IV of the AIMS Proposal, was in bad faith. (*See generally* D.I. 1046; D.I. 1055; D.I. 1096; 1099) To Defendants, Honeywell's "purely technical arguments that the AIMS Proposal was not an invalidating offer for sale and that the invention embodied in claim 3 of the '371 Patent was not disclosed in the AIMS documents" were litigated and rejected on summary judgment and again on appeal; they do not justify Honeywell's failure to disclose the AIMS Proposal. (D.I. 1099 at 8) Defendants conclude, "The decision not to disclose this information to the PTO yields a very strong inference of intent to mislead." (*Id.*)

Defendants further contend that Honeywell committed inequitable conduct by failing to disclose the Noda Reference[7] – a purportedly highly material prior art reference on the issue of moiré avoidance by pitch selection – which was known to Honeywell and should have been disclosed to the PTO. (*See* D.I. 1046 at 18-20; D.I. 1055 at 10-11; D.I. 1096 at 12; D.I. 1099 at 5-6)

Plaintiffs counter Defendants' arguments by contending that while Defendants prevailed on one issue, their success does not make this case "exceptional." (*See* D.I. 1083) In particular, Plaintiffs assert there is no record to support bad faith, litigation misconduct, or inequitable conduct; moreover, "the issue of inequitable conduct is not amenable to a fees request in this case because the issue has never been heard or decided (and in many respects, was never even alleged prior to the Defendants' requests for fees)." (D.I. 1110 at 1; *see also* D.I. 1083 at 1, 10, 14, 16, 30-35)

Defendants reply that "[t]he timing of when the on sale bar arguments appeared in Samsung's case preparation is simply a function of the way in which a large volume of information, correspondence, work product, and expert and attorney analysis was organized and compiled – not an indication of how strong Samsung believed the on sale bar defense to be." (D.I. 1099 at 9) In explaining why it did not file a motion for summary judgment on inequitable conduct, Samsung responds that it only "needed *one* of its dispositive motions to be granted and made a prudent decision to conserve resources, rather than file a motion on every possible issue." (*Id.*; *see also* D.I. 1046 at 10-11; D.I. 1096 at 5) Defendants add that their assertion of

---

[7]The "Noda reference" is a publication written by H. Noda, entitled "High Definition Liquid Crystal Projection TV," published in *Japan Display* in 1989. (D.I. 1055 at 1, 10)

inequitable conduct is timely, insisting that "[a]fter the entry of judgment, the district court retains jurisdiction to determine a motion for attorney fees under 35 U.S.C. 285 and to make findings of inequitable conduct *whether or not there is a pending defense or counterclaim of inequitable conduct*." (D.I. 1099 at 10; *see id.* at 12; *see also* D.I. 1096 at 8-10) Defendants further assert that a request for attorney fees as prevailing parties, whether or not included in their pleadings, is appropriate, and there has been no waiver. (*See* D.I. 1099 at 12-13)

## III.   LEGAL STANDARDS

In patent cases, reasonable attorney fees may be awarded to prevailing parties if the case is declared "exceptional." 35 U.S.C. § 285. Shifting attorney fees is discretionary. *See Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712–13 (Fed. Cir. 1983). The prevailing party must prove a case is exceptional by clear and convincing evidence. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003).

"The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1358 (Fed. Cir. 2010) (internal quotation marks omitted). "Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may [alone] suffice to make a case exceptional." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996). The Federal Circuit has cautioned that an award of attorney fees under § 285 is not intended to be an "ordinary thing in patent suits," but instead should be limited to circumstances in which it is necessary to prevent "a gross injustice," particularly in cases of bad faith patent procurement or litigation. *See Forest Labs.*, 339 F.3d at 1329 (internal quotation

8

marks omitted).

## IV. DISCUSSION

The Court will not order Honeywell to pay Defendants' attorney fees under Section 285 (or any other basis). Defendants have not proven by clear and convincing evidence that the present action rises to the level of "exceptional."

### A. The Court is not persuaded that Honeywell brought, maintained, or litigated this case in bad faith or vexatiously.

Defendants have presented no evidence that Honeywell failed to consider the validity of the '371 patent prior to suit. Additionally, after Defendants made allegations of invalidity due to the AIMS offer for sale, Honeywell investigated, and continued to have a colorable basis to believe that the patent would be found valid. (*See, e.g.,* D.I. 1084, Woods Decl., Ex. 14 (Invention Disclosure Sheet); D.I. 1118 (same); *see also* Tr. at 56-59) While Judge Farnan found, on summary judgment, invalidity due to the on-sale bar, there is no indication from his opinion that he felt Honeywell's position was frivolous or outrageous. All Defendants can point to is that Judge Farnan granted summary judgment and that he used the word "untenable" in describing Honeywell's contentions. (*See* Tr. at 20; D.I. 957 at 14-15 ("The technical individuals from Honeywell involved in the Boeing project all knew that what was under consideration to meet Boeing's needs was the double lens array and Honeywell's argument to the contrary suggesting a single lens array is untenable in light of this evidence.")) As Defendants concede, even this sentence was a very "specific reference to the issue of the one or two [] lens array versions [] being offered" (Tr. at 21); it was not, in the Court's view, a blanket statement as to

9

Honeywell's entire case.[8]

Honeywell's failure to find a copy of Volume IV of the AIMS Proposal is mysterious, but the odd conspiracy alleged by Defendants – that Honeywell and its litigation team intentionally hid Volume IV by producing Volume III,[9] which expressly references Volume IV, and failed to explain the conspiracy to Boeing, which eventually produced Volume IV – is far from proven.[10]

Nothing else that occurred during this plainly contentious and long-running litigation sinks to the level of misconduct meriting an award of attorney fees, particularly as Defendants never moved to compel discovery, or requested sanctions during discovery. (*See* Tr. at 7, 11-12)

**B.     Even assuming applicants engaged in inequitable conduct before the PTO, this case is not "exceptional" for purposes of awarding attorney fees.**

Defendants contend that the patent applicants engaged in inequitable conduct by not

---

[8] Judge Farnan's analysis of whether the AIMS Proposal constituted an invalidating offer for sale of the patented invention stretches to ten pages and notes the context- and circumstance-specific nature of the relevant inquiries. (*See* D.I. 957 at 7 ("In addition to the language used by the parties, it is also appropriate to consider the circumstances surrounding the making of the offer, including the context of any prior communications or course of dealing between the parties; whether the communication was private or made to the general public; whether the communication comes in reply to a specific request for an offer; and whether the communication contains detailed terms."), 14 ("Honeywell's argument ignores the *totality of the evidence* presented.") (emphasis added))

[9] (*See* D.I. 1084, Woods Decl., ¶ 24 ("Within this initial production, Honeywell produced Volume III of the AIMS Proposal. Volume III contained a cover sheet disclosing the 'Proposal Architecture' of Honeywell's response to Boeing's RFP. Exhibit 20 at HW016269-270. This cover sheet explicitly discloses the existence of Volume IV, and its title, 'Price Offering and Contractual Terms and Conditions.'"))

[10] Honeywell looked repeatedly for Volume IV. When "an additional search for AIMS documentation" was requested of it, Honeywell "agreed to undertake yet another search, writing [that] . . . 'we will undertake yet another investigation for the remaining volumes of the Boeing report.' That search did not locate Volume IV." (D.I. 1084, Woods Decl., ¶ 43; *see also* D.I. 1085 Ex. 40)

10

disclosing to the PTO either the AIMS offer for sale or the Noda reference. However, as acknowledged by all parties, there has been no finding of inequitable conduct by the Court. (*See* D.I. 1084, Woods Decl., ¶ 86; Tr. at 32, 49, 65, 67) Even assuming the applicants knew of the AIMS offer, they had a colorable, not objectively baseless basis for believing it was not an invalidating offer for sale. Further, the applicants appear to have had a colorable basis to believe the Noda reference was cumulative, given the projection art that was already in front of the PTO Examiner. (*See* D.I. 1084, Woods Decl., ¶ 87; D.I. 1086, Woods Decl., Ex. 73; Tr. at 49, 69-71)[11]

In any event, even assuming the applicants engaged in inequitable conduct, it does not automatically follow that this case is "exceptional." *See Gardco Mfg., Inc., v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987) ("[I]t has not been held that every case of proven inequitable conduct must result in an automatic attorney fee award, or that every instance of inequitable conduct mandates an evaluation of the case as 'exceptional.'") The Court does not find Defendants have proven this case is exceptional.

C. **Exercising its discretion, the Court finds attorney fees are not merited.**

Finally, exercising its discretion, the Court finds that attorney fees are not merited. This is a case in which dozens of alleged infringers – sophisticated parties all – settled with

---

[11]Given the Court's conclusions, it is not necessary to determine if Defendants' inequitable conduct contentions are timely. The Court notes, however, it is troubling to be asked at this late stage to make a determination of inequitable conduct, when Defendants passed on the opportunity for an inequitable conduct trial at a time Honeywell and Judge Farnan appear to have been ready for such a trial. (*See* D.I. 931; D.I. 933; D.I. 951; *see also* Tr. at 67-69, 72; D.I. 1118) Nor does it appear that all necessary discovery on inequitable conduct – such as asking the inventors if they knew their invention had been offered for sale, as opposed to demonstrated or presented (*see, e.g.,* Tr. at 63-64, 68-69; D.I. 1118) – has been completed.

Honeywell, for approximately ▮▮▮▮▮ licensing fees. (*See* D.I. 1055 at 24; D.I. 1099 at 15; D.I. 1084, Woods Decl., ¶ 28; D.I. 1052, Decl. of Angie M. Hankins ("Hankins Decl."), Ex. 14) Although many of these settlements occurred relatively early in the case, and prior to Honeywell's production of discovery, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ even after Honeywell had produced in discovery almost everything on which the Court relied in invalidating the patent. (*See* D.I. 1099 at 2; D.I. 1083 at 24; Tr. at 10) At least ten licenses were entered into after Honeywell's August 2006 production of AIMS-related documents. (*See* D.I. 1083 at 8, 24; D.I. 1084, Woods Decl., ¶ 28) Indeed, Defendant Optrex, which evidently was taking the lead on crafting the offer for sale invalidity defense and had been pursuing additional AIMS documentation, settled with Honeywell ▮▮▮▮▮▮▮▮▮▮▮▮▮ in October 2008. (*See* D.I. 1084, Woods Decl., ¶¶ 36, 58, 96, 98; *see also* Tr. at 57; D.I. 1083 at 8) In this context, the Court remains unpersuaded that this case was frivolous or vexatious, or either filed or litigated in bad faith. To the contrary, the numerous licenses entered into by accused infringers over the course of this litigation provided a basis for Honeywell's good faith pursuit of the case. *See generally Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1298 (Fed. Cir. 2004).[12]

## V.   CONCLUSION

For the reasons set forth above, the Court will deny Defendants' Award Motions. A separate Order, consistent with this Memorandum Opinion, will be entered.

---

[12] Given the Court's conclusions, it is not necessary to determine whether Samsung's Motion should be dismissed for any of the reasons offered by Honeywell. (*See* D.I. 1083) Nor need the Court analyze the specific fee requests made by Fuji and Samsung. However, consistent with D. Del. LR 54.1, the Clerk of Court will review Defendants' bill of costs. (*See also* D.I. 1025, D.I. 1027, D.I. 1038; D.I. 1040, D.I. 1119)